FILED
Clerk
District Court

APR 21 2006

For The Northern Mariana Islands
By_____
(Deputy Clerk)

1  MARK B. HANSON, ESQ.
   First Floor, Macaranas Building
2  Beach Road, Garapan
   PMB 738 P.O. Box 10,000
3  Saipan, Mariana Islands 96950
   Telephone:   (670) 233-8600
4  Facsimile:   (670) 233-5262

5  Attorney for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS

| | |
|---|---|
| LI YING HUA, LI ZHENG ZHE and XU JING JI, | CASE NO. CV 05-0019 |
| Plaintiffs, | |
| vs. | DECLARATION OF XU JING JI |
| JUNG JIN CORPORATION, a CNMI corporation, ASIA ENTERPRISES, INC., a CNMI corporation, PARK HWA SUN and KIM HANG KWON, | DATE: 5/25/06<br>TIME: 8:30am |
| Defendants. | |

I, XU JING JI, do hereby declare as follows:

1. I am competent to testify, and if called to testify, I would do so in accord herewith.

2. I am a plaintiff in the above-captioned case.

3. I was an employee of defendants from November 28, 2003 through April 25, 2005.

4. I began my employment with defendants through a consensual transfer from my previous Saipan employer.

5. On December 29, 2003, Defendant Park Hwa Sun and I executed the documents necessary to obtain my permanent transfer to the employment of defendants.

6. On December 31, 2003, the CNMI Director of Labor approved a Conditional Grant of Transfer for me to work for defendant Jung Jin Corporation, and sometime thereafter, the Director of Labor approved the employment contract signed by Ms. Park Hwa Sun and myself in December

ORIGINAL

2003. A true and accurate copy of the Employment Contract I signed with Ms. Park Hwa Sun and Jung Jin Corporation is attached hereto as Exhibit "A."

7. When my one-year contract with defendants came up for renewal, Defendants Park and Kim decided that I should be transferred from the record employment of Defendant Jung Jin Corporation to the record employment of Defendant Asia Enterprises, Inc., both corporations which are owned and controlled by Defendants Park and Kim.

8. Accordingly, on January 21, 2005, Defendant Park Hwa Sun (on behalf of Asia Enterprises, Inc.) and I signed a conditional transfer document to affect my transfer from Jung Jin Corp. to Asia Enterprises, Inc.

9. That same day I also signed a new Employment Contract with Asia Enterprises, Inc. The Employment Contract was executed by Defendant Kim Hang Kwon on January 7, 2005.

10. The CNMI Director of Labor approved my conditional transfer to Asia Enterprises, Inc. on January 24, 2005. A true and accurate copy of that conditional transfer document is attached hereto as Exhibit "B."

11. The CNMI Director of Labor approved my new Employment Contract with Asia Enterprises, Inc. on March 8, 2005. A true and accurate copy of that Employment Contract is attached hereto as Exhibit "C."

12. Pursuant to my Employment Contracts with the defendants, defendants were required to pay me $3.05 per hour for each hour I worked and overtime in the amount of 1.5 times that amount for all hours worked in excess of 40 hours in one week.

13. The Employment Contracts required that I be paid by check in bi-weekly intervals and the most recent contract term was due to expire on January 24, 2006.

14. Beginning on November 28, 2003, and continuing through April 25, 2005, I worked for defendants twelve hours per day, seven days per week. During the entire period of my employment with the defendants, I only missed two (2) days of work.

15. During my employment with defendants I worked as a poker room cashier.

16. As a poker room cashier with defendants, I worked at various poker rooms of defendants in Saipan, CNMI, including: "J Poker" in Susupe, Saipan and "Daora Poker" located in Chalan Lau Lau, Saipan.

17. Throughout my employment with defendants, I received most of my instructions from Ms. Park Hwa Sun, although Ms. Park Hwa Sun and Mr. Kim Hang Kwon made it very clear that they were both my bosses and that I should do whatever either of them said to me.

18. Ms. Park Hwa Sun is the person that initially informed me the salary I would receive for my services, the hours I would work, and she was the one who paid me my salary each month.

19. On a daily basis while I was working at the various poker rooms of defendants, Mr. Kim Hang Kwon gave me instruction regarding small job assignments while on duty. Mr. Kim directed my daily work as a cashier.

20. For my services from November 28, 2003 through the final approval of my permanent transfer in February 2004, the defendants paid me $650.00 per month with no deductions for taxes.

21. Thereafter, and for the duration of my employment, defendants paid me $700.00 per month in cash from which they deducted $50.00 for a net cash payment of $650.00. The defendants told me that the $50.00 deduction was for taxes, although they never provided me any tax forms showing the deductions they made from my salary.

22. To secure my employment with the defendants, the defendants required that I repay them a total of $580.00 for the expenses associated with processing the Employment Contract documents with the CNMI government, including the filing fee, the third-party processing fee, and other expenses associated with the application. For the first six months of my employment with defendants after my permanent transfer, defendants deducted installments in cash from my monthly salary until the processing fees were repaid by me in full.

23. I was also required, twice, to pay $75.00 for the medical examination, health certificate

Page 3 of 5

and police clearance records necessary for my employment by defendants.

24. On four occasions during my employment with the defendants, the defendants made additional deductions from my monthly salary for "cash shortages" for which they claimed I was responsible. The total amount deducted by defendants from my monthly salary for these "cash shortages" was $125.00.

25. In May 2004, after the defendants had purchased an apartment building in Chalan Kanoa, the defendants required that I rent an apartment from them. So, from May 1, 2004 through December 31, 2004, I lived in housing provided by the defendants for which the defendants charged me $150.00 per month which amount was deducted from my monthly salary. Sometime in December 2004, Defendant Kim Hang Kwon told me that he wanted to renovate the apartments so he asked us to move out as soon as possible. I moved out on January 1, 2005.

26. On several occasions, up to and including the day defendants terminated my employment, I requested that the defendants provide me with the forms that showed the withholdings from my wages for taxes and the payment of those withholdings to the government. Each time, Ms. Park Hwa Sun and Mr. Kim Hang Kwon declined to provide me such documents. Eventually, my requests began to cause problems with my relationship with the defendants.

27. In mid-April 2005, Defendant Kim Hang Kwon informed me that he was considering closing down Daora Poker and terminating my employment with Asia Enterprises, Inc.

28. About one week later, on the evening of April 25, 2005, while I was on-duty as the cashier Daora Poker, Mr. Kim Hang Kwon came to the poker room and informed me that my employment was terminated.

29. The last monthly salary I received from defendants was for the month of March 2005.

1  I swear under the penalty of perjury that the foregoing Declaration was translated to me in
2  Mandarin Chinese, a language I speak fluently, that the above-stated facts are true and correct, and
3  that this Declaration was executed this 28th day of March, 2006 in Saipan, Commonwealth of the
4  Northern Mariana Islands.

_Xu: Jing Ji_
XU JING JI

## CERTIFICATE OF TRANSLATION

I hereby certify that the forgoing declaration was translated by me from English into Mandarin Chinese for the Declarant and that Declarant acknowledged to me the she understood all of the Declaration so translated and that the above-Declaration is her sworn testimony as above-stated.

DATED: 3-26-2006

DENNIS TSE, Translator

# EMPLOYMENT CONTRACT

This employment contract is entered into by and between __JUNG JIN CORPORATION__ of __P.O. Box 503428__, __Saipan, MP 96950__, hereinafter referred to as the Employer, and __XU, JINGJI__ of __#256-2-16 Shinheung-ka, Yeongil-si, Jilin-sung__ China hereinafter referred to as the Employee. The Employer hereby employs the Employee and the Employee hereby accepts to be employed by the Employer to serve and perform the duties required of him/her in the job category provided below:

A. **DUTIES AND RESPONSIBILITIES:** The parties hereto agree that the Employee shall be employed only in the job category of __COMMERCIAL CLEANER__ and shall perform the following duties and responsibilities including training of resident workers:

   Keeps premises of office, apartment, house, or other commercial or institutional building in clean and orderly condition. Cleans and polishes lighting fixtures, surfaces of equipments. May cut and trim grass using equipment or handtools. Performs other related duties assigned.

B. **TERM:** The term of this Contract shall be for a period of __One Year__ commencing upon the Employee's arrival in the Commonwealth of the Northern Mariana Islands ("CNMI") and ending on _____.

C. **WORK DAYS AND HOURS:** The Employee's work days and hours shall be __Monday__ to __Sunday__, from __FLEXIBLE HOURS__, for a total of __MLT 40__ hours per week. 1 day off

D. **COMPENSATION:** In consideration of the services to be performed by the employee, the Employer agrees to pay the Employee compensation in the amount of:
   1. $__3.05__ per __hour__ and
   2. $__x 1.5__ per __hour__ for overtime compensation payable by check in bi-weekly intervals.
   3. other compensation (bonuses, commissions, etc.); specify amount and method of calculation:

E. **DEDUCTIONS:** CNMI taxes and Social Security, if applicable, shall be withheld from the employee's salary each pay period. No other deductions from the Employee's compensation shall be made by the Employer unless specified herein and approved by the Director of Labor or his authorized designee. Other deductions (set forth amount and purpose of deduction):

F. **PRINCIPAL PLACE OF WORK:** The Employee's principal place of employment shall be on __SAIPAN__, CNMI. However, the employee may be required to perform his/her duties at the other senatorial districts within the CNMI depending on the nature of the Employer's business and upon the Employer's compliance with applicable labor policies and/or regulations.

G. **TRANSPORTATION:** The Employer shall be responsible for the payment of the Employee's return airplane ticket to his/her point of hire at the expiration or termination of the Employment Contract, regardless of the nature of the termination.

H. **INSURANCE/MEDICAL EXPENSES:** The Employer shall be responsible and liable for the medical insurance or payment of all medical expenses of the Employee, including the cost of referral and evacuation of medical treatment outside of the CNMI and, in the event of Employee's death, the cost of embalming and transportation of the Employee's corpse back to his point of origin.

I. **NOTIFICATION OF NEXT-OF-KIN:** In the case of an emergency involving serious illness, accident or death of the Employee, the Employer shall immediately notify the Employee's next-of-kin whose name and address are as follows:
   __Chang, So Bin (Husband)__
   __same as above__

00277

Form: L921014.1   Page 1 of 3

J. **BOARD, LODGING AND OTHERS:**
   The Employer shall ensure that the following facilities are provided:
   1. [ ] Employer-provided housing at a charge of $_____ per month.
      [ ] Employer-provided housing free of charge.
      [XX] Employee self-arranged housing.
          (Attach statement or rental agreement.)
   2. [ ] _____ (number meals per day at a charge of $_____ per month.
   3. [XX] Employee to provide own food.
   4. [ ] Free transportation to and from job site at employer designated pick-up points.
   5. [XX] Employee to provide transportation to and from job site.
   6. [ ] Allowance:
   7. [ ] Others:

K. **OTHER PROVISIONS:** The following additional provisions apply to this Contract: (Set forth or attach any work rules, living accommodation rules and standards for Employee conduct. Every page of every attachment must be signed by Employee and Employer.)

L. **TERMINATION:** This Contract may only be terminated for cause by either party by giving the other party __15__ days advance written notice and only after an unsuccessful good faith attempt to settle any dispute has been made with the Director of Labor or his designee.

   1. In the event of termination for cause, the Employer shall pay the Employee's wages or salary for work or services performed or for work not performed when an employer refuses to allow the employee to continue working through the effective date of termination and shall purchase a one-way ticket for the return of the Employee to his/her point of hire.

   2. Termination for cause may include any of the following:
      a. __3__ unauthorized absences and/or __3__ unauthorized tardiness to work by the Employee;
      b. Neglect, careless performance, non-performance or non-completion of assigned work by the Employee;
      c. Conviction in the CNMI of any felony or two or more misdemeanors;
      d. Abandoning of job or assigned duty by the employee;
      e. Incompetence or misrepresentation of the qualifications, skills, physical or mental fitness to satisfactorily perform the duties for which the Employee was hired;
      f. Extreme cruelty or abuse, physical or otherwise;
      g. Unreasonable delays in the payment of the employee's wages or salary;
      h. A breach of any provision of this Contract and not corrected within ten (10) days;
      i. Cessation of business activities or bankruptcy;
      j. Others (specify);

M. **SETTLEMENT OF DISPUTE:**                                    00278

   Grievance and Good Faith Settlement

   All grievances or disputes under this employment contract shall be subject to the following grievance procedure:

   1. The employee shall communicate to his/her supervisor, or if there is no supervisor, then directly to the employer, any and all grievances or disputes he/she may have regarding his/her employment;

   If the supervisor is unable to resolve the matter immediately, the grievance or dispute shall be reduced to writing by the supervisor which shall state the section of the contract, law, or rules and regulations to have been violated. Management shall have five working days to resolve the grievance, dispute or state in writing his/her reasons why there is no violation.

   3. If the grievance or dispute is not resolve in step 1 or 2 above, the employee may file a compliant with the Director of Labor or his designee.

   The employee and employer shall maintain the employment relationship during the pendency of any grievance or dispute unless the Director of Labor, his authorized designee, or a hearing officer grant a temporary work authorization.

N. **REMITTANCE/OTHER OBLIGATIONS:** The Employee shall be responsible for remitting any money to his/her family and payment of any taxes as required by his/her government in his/her country of origin.

O. **ENTIRE AGREEMENT:** The foregoing terms and conditions constitute the sole, entire agreement of the parties herein and shall supersede any other agreement, either written, verbal, or otherwise.

   **IN WITNESS WHEREOF,** the parties hereto affix their names on the date and space so specified.

DATE: 12-29-2003           Park, Hwa Sun/President
                           EMPLOYER
                           (Print Name, Title and Sign)

DATE: 12-29-2003           Xu, Jingji
                           EMPLOYEE
                           (Print Name and Sign)

Saipan, COMMONWEALTH ) ss: **ACKNOWLEDGEMENT**
OF THE NORTHERN MARIANA ISLANDS )

On this 29th day of Dec., 2003, personally appeared before me PARK, HWA SUN and XU, JINGJI, known to me to be the person(s) whose signature(s) is/are subscribed to the foregoing instrument and who acknowledged to me that he/she/they executed the same as a voluntary act for the purposes set forth therein.

**IN WITNESS WHEREOF,** I have hereunto set my hand and official seal on the day and year first written above.

SEUNG-HEE CINDY YU
NOTARY PUBLIC
Commonwealth of the Northern Mariana Islands
My Commission expires: Oct. 31, 2004

) ss: **ACKNOWLEDGEMENT**
)

On this ___ day of _____, ____, personally appeared before me _____ and _____, known to me to be the person(s) whose signature(s) is/are subscribed to the foregoing instrument and who acknowledged to me that he/she/they executed the same as a voluntary act for the purposes set forth therein.

**IN WITNESS WHEREOF,** I have hereunto set my hand and official seal on the day and year first written above.

                                               NOTARY PUBLIC

                                                          00279
DATE: _____    APPROVED BY: _____
                    **DIRECTOR OF LABOR**

Form: L921014.1                                        Page 3 of 3



**Commonwealth of the Northern Mariana Islands**
**DIVISION OF LABOR**
**P.O. Box 10007, Saipan, MP 96950**

## DECLARATION OF ACCEPTING EMPLOYER

I, _____ of _____, located in the CNMI,
   (NAME OF AUTHORIZED SIGNATORY)      (CORPORATION/BUSINESS NAME)
declare under penalty of perjury that I knowingly and freely accept the transfer of employment of _____, of the _____, from
                                       (NAME OF EMPLOYEE)                              (COUNTRY OF ORIGIN)
_____ the Employer of Record. Furthermore, I hereby declare that I will assume all duties, responsibilities, obligations, etc., of an Employer of Non-resident Worker as required and provided under the Non-resident Workers Act, Minimum Wage and Hour Act and the CNMI Alien Labor Rules and Regulations, C.R. Vol. 10, No. 4 (April 15, 1988), et seq. Furthermore, I hereby declare that the above named transferee will be under my employment as a _____ and that I will be responsible for the payment of all applicable fees to effectuate this Transfer and that I knowingly assume all liabilities.

Entry Permit No. _____    Surety Bond Co./No. _____

## CONDITIONAL GRANT OF TRANSFER

The transfer of the employee _____
to _____ Accepting Employer is hereby **CONDITIONALLY GRANTED** as of this date pursuant to Section 3(b) of Public Law No. 11-6 and Section 5 (b) of P.L. 12-11, to perform services in the job category of _____.

**The Employee's Work Days and Hours** shall be _____ to _____, from _____ to _____, for a total of _____ hours per week.

**Compensation**: In consideration of the services to be performed by the Employee, the Employer agrees to pay the Employee compensation in the amount of:
   1. $ _____ per _____ and
   2. $ _____ per _____ for ovetime compensation payable by check in bi-weekly intervals.
   3. Other compensation, specify amount and method of calculation.

**All other contract provisions, obligations and restrictions** including **termination** or employment shall be controlled by the terms and conditions of the attached employment contract signed by the employer and employee.

<u>Both the Accepting Employer and the Employee</u> understand this conditional transfer / accompanying application shall be **denied later** should the Accepting employer **fail to comply with all requirements** of law, regulation and policy **within the standard time allowed** in order to obtain a Work/Entry Permit. Should the application be denied or should either the employee or Accepting Employer terminate the employment relationship, the <u>Accepting Employer shall be liable</u> for/required to purchase a one-way ticket to the employee's original point of recruitment outside the Commonwealth and the employee shall depart on the next available flight.

If the application is denied by the Division, this conditional transfer will also expire the same day of denial issuance. However, if for any reason the application is neither approved nor denied by the Division, this conditional transfer will expire one year from the date the conditional transfer is approved.

Date: _____       Date: _____

_____       _____
Accepting Employer: Print Name and Sign   Employee: Print Name and Sign
Title: _____

IN WITNESS WHEREOF, I hereunto set my hand and official seal this _____ day of _____, 200\_\_\_\_\_.

                                                                    NOTARY PUBLIC

                                                                          00255

_____          _____
**Approval Date**                         **Director of Labor/Designee**

# EMPLOYMENT CONTRACT

This employment contract is entered into by and between ASIA ENTERPRISES INCORPORATED of P.O. Box 503448, SAIPAN, MP 96950 hereinafter referred to as the Employer, and XU, JINGJI #156-2-16 SHINHEOUNG-KA, YEONGIL-SI, JILIN-SUNG., CHINA, hereinafter referred to as the Employee. The Employer hereby employs the Employee and the Employee hereby accepts to be employed by the Employer to serve and perform the duties required of him/her in the category provided below:

A.  **DUTIES AND RESPONSIBILITIES:** The parties hereto agree that the Employee shall be employed only in the job category of COMMERCIAL CLEANER and shall perform the following duties and responsibilities including training of resident workers:
    Keeps premises of office, apartment, house, or institutional establishments in clean and orderly condition. Cleans and polishes lighting fixtures, surfaces of equipments. May cut and trim grass using equipment or handtools. Performs other related duties assigned.

B.  **TERM:** The term of this Contract shall be for a period of One Year commencing upon the Employee's arrival in the Commonwealth of the Northern Mariana Islands ("CNMI") and ending on _____.

C.  **WORK DAYS AND HOURS:** The Employee's work days and hours shall be MONDAY to SUNDAY, from FLEXIBLE HOURS for a total of NLT 40 hours per week. (1 day off/week)

D.  **COMPENSATION:** In consideration of the services to be performed by the employee, the Employer agrees to pay the Employee compensation in the amount of:
    1. $ 3.05 per hour and
    2. $ x 1.5 per hour for overtime compensation payable by check in bi-weekly intervals.
    3. other compensation (bonuses, commissions, etc.); specify amount and method of calculation:

E.  **DEDUCTIONS:** CNMI taxes and Social Security, if applicable, shall be withheld from the employee's salary each pay period. No other deductions from the Employee's compensation shall be made by the Employer unless specified herein and approved by the Director of Labor or his authorized designee. Other deductions (set forth amount and purpose of deduction):

F.  **PRINCIPAL PLACE OF WORK:** The Employee's principal place of employment shall be on SAIPAN, CNMI. However, the employee may be required to perform his/her duties at the other senatorial districts within the CNMI depending on the nature of the Employer's business and upon the Employer's compliance with applicable labor policies and/or regulations.

G.  **TRANSPORTATION:** The Employer shall be responsible for the payment of the Employee's return airplane ticket to his/her point of hire at the expiration or termination of the Employment Contract, regardless of the nature of the termination.

H.  **INSURANCE/MEDICAL EXPENSES:** The Employer shall be responsible and liable for the medical insurance or payment of all medical expenses of the Employee, including the cost of referral and evacuation of medical treatment outside of the CNMI and in the event of Employee's death, the cost of embalming and transportation of the Employee's corpse back to his point of origin.

I.  **NOTIFICATION OF NEXT-OF-KIN:** In the case of an emergency involving serious illness, accident or death of the Employee, the Employer shall immediately notify the Employee's next-of-kin whose name and address are as follows:
    CHANG, SO BIN
    same as above

00250

Form: L931014.1     Page

J.  **BOARD, LODGING AND OTHERS:**
    The Employer shall ensure that the following facilities are provided:
    1.  [ ]  Employer-provided housing at a charge of $_____ per month.
        [ ]  Employer-provided housing free of charge.
        [XX] Employee self-arranged housing.
             (Attach statement or rental agreement.)
    2.  [ ]  _____ (number meals per day at a charge of $_____ per month.
    3.  [XX] Employee to provide own food.
    4.  [ ]  Free transportation to and from job site at employer designated pick-up points.
    5.  [XX] Employee to provide transportation to and from job site.
    6.  [ ]  Allowance:
    7.  [ ]  Others:

K.  **OTHER PROVISIONS:** The following additional provisions apply to this Contract. (Set forth or attach any work rules, living accommodation rules and standards for Employee conduct. Every page of every attachment must be signed by Employee and Employer.)

L.  **TERMINATION:** This Contract may only be terminated for cause by either party by giving the other party ___15___ days advance written notice and only after an unsuccessful good faith attempt to settle any dispute has been made with the Director of Labor or his designee.

    1.  In the event of termination for cause, the Employer shall pay the Employee's wages or salary for work or services performed or for work not performed when an employer refuses to allow the employee to continue working through the effective date of termination and shall purchase a one-way ticket for the return of the Employee to his/her point of hire.

    2.  Termination for cause may include any of the following:
        a.  ___3___ unauthorized absences and/or ___3___ unauthorized tardiness to work by the Employee;
        b.  Neglect, careless performance, non-performance or non-completion of assigned work by the Employee;
        c.  Conviction in the CNMI of any felony or two or more misdemeanors;
        d.  Abandoning of job or assigned duty by the employee;
        e.  Incompetence or misrepresentation of the qualifications, skills, physical or mental fitness to satisfactorily perform the duties for which the Employee was hired;
        f.  Extreme cruelty or abuse, physical or otherwise;
        g.  Unreasonable delays in the payment of the employee's wages or salary;
        h.  A breach of any provision of this Contract and not corrected within ten (10) days;
        i.  Cessation of business activities or bankruptcy;
        j.  Others (specify);

00251

M.  **SETTLEMENT OF DISPUTE:**

    Grievance and Good Faith Settlement

    All grievances or disputes under this employment contract shall be subject to the following grievance procedure:

    1.  The employee shall communicate to his/her supervisor, or if there is no supervisor, then directly to the employer, any and all grievances or disputes he/she may have regarding his/her employment;

Form: L921014.1                                                          Page 2 of 3

2. If the supervisor is unable to resolve the matter immediately, the grievance or dispute shall be reduced to writing by the supervisor which shall state the section of the contract, law, or rules and regulations to have been violated. Management shall have five working days to resolve the grievance, dispute or state in writing his/her reasons why there is no violation.

3. If the grievance or dispute is not resolve in step 1 or 2 above, the employee may file a compliant with the Director of Labor or his designee.

The employee and employer shall maintain the employment relationship during the pendency of any grievance or dispute unless the Director of Labor, his authorized designee, or a hearing officer grant a temporary work authorization.

N. **REMITTANCE/OTHER OBLIGATIONS:** The Employee shall be responsible for remitting any money to his/her family and payment of any taxes as required by his/her government in his/her country of origin.

O. **ENTIRE AGREEMENT:** The foregoing terms and conditions constitute the sole, entire agreement of the parties herein and shall supersede any other agreement, either written, verbal, or otherwise.

   **IN WITNESS WHEREOF**, the parties hereto affix their names on the date and space so specified.

DATE: __Jan. 07, 2005__                    __[signature]__
                                           KIM, HANG KWON/PRESIDENT
                                           EMPLOYER
                                           (Print Name, Title and Sign)

                                           __Xu Jing Ji__
DATE: __Jan. 21, 2005__                    XU, JINGJI
                                           EMPLOYEE
                                           (Print Name and Sign)

__SAIPAN__, COMMONWEALTH      )
OF THE NORTHERN MARIANA ISLANDS ) ss: **ACKNOWLEDGEMENT**
                                )

On this __7th__ day of __JAN.__, __2005__, personally appeared before me __KIM, HANG KWON__ and __XXXXXXXXXXXX__, known to me to be the person(s) whose signature(s) is/are subscribed to the foregoing instrument and who acknowledged to me that he/she/they executed the same as a voluntary act for the purposes set forth therein.

   **IN WITNESS WHEREOF**, I have hereunto set my hand and official seal on the day and year first written above.

                                           __[signature]__
                                           NOTARY PUBLIC
SAIPAN, COMMONWEALTH      __Oct. 31, 2006__
OF THE NORTHERN MARIANA ISLANDS) ss: **ACKNOWLEDGEMENT**
                                )

On this __21st__ day of __JAN.__, __2005__, personally appeared before me __XU, JINGJI__ and __XX__, known to me to be the person(s) whose signature(s) is/are subscribed to the foregoing instrument and who acknowledged to me that he/she/they executed the same as a voluntary act for the purposes set forth therein.

   **IN WITNESS WHEREOF**, I have hereunto set my hand and official seal on the day and year first written above.

                                           __[signature]__
                                           NOTARY PUBLIC
                          __Oct. 31, 2006__

DATE: __3/6/[?]__              APPROVED BY: __[signature]__
                                            DIRECTOR OF LABOR

00252

Form: L921014.1                                            Page 3 of 3