**Robert Tenorio Torres**
**Attorney at Law**
P.O. Box 503758
Saipan, MP 96950
Tel: (670) 234-7859

Attorney for Mrs. Kim Sung Eun, Mr. Kim Ki Sung
and KSK Corporation, A CNMI Corporation

F I L E D
Clerk
District Court

MAY 2 2 2006

For The Northern Mariana Islands
By_____
(Deputy Clerk)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| **LI YING HUA, LI ZHENG ZHE, and XU JING JI,**<br><br>                    **Plaintiffs,**<br><br>**vs.**<br><br>**JUNG JIN CORP., a CNMI corporation, ASIA ENTERPRISES, INC., a CNMI corporation, PARK HWA SUN, KIM HANG KWON, KSK CORPORATION, a CNMI corporation, and KIM KI SUNG,**<br><br>                    **Defendants.** | **Case No. CV 05-00019**<br><br>**NOTICE OF LIMITED AND SPECIAL APPEARANCE OF COUNSEL TO OBJECT TO MOTION TO AMEND VERIFIED COMPLAINT/**<br><br><br>**SPECIAL APPEARANCE OF KSK CORPORATION AND KIM KI SUNG TO OBJECT TO MOTION TO AMEND VERIFIED COMPLAINT**<br><br>Date: _____<br>Time: _____<br>Judge: <u>Hon. Alex R. Munson</u> |

## NOTICE OF ENTRY OF LIMITED AND
## SPECIAL APPEARANCE BY COUNSEL

Robert T. Torres, Esq. hereby enters a limited and special appearance before this Court to file objections on behalf of intended defendants Mr. Kim Ki Sung and KSK Corporation as well as Mrs. Kim Sung Eun, majority shareholder of KSK Corporation.

## SPECIAL APPEARANCE OF KSK CORPORATION AND KIM KI SUNG TO OBJECT TO MOTION TO AMEND VERIFIED COMPLAINT

KSK Corporation and Mr. Kim Ki Sung, through counsel, hereby enter a special appearance to register their objections and opposition to the Motion to Amend Verified Complaint by Plaintiffs. For the reasons set forth below, the motion should be denied.

# INTRODUCTION

To locate a deep pocket to tap for their unpaid wages, Plaintiffs seek leave to amend their complaint to add KSK Corporation and Kim Ki Sung as party defendants. According to Plaintiffs, KSK Corporation and Kim Ki Sung qualify as successors in interest to some – or all – of the defendants in this case, even though the corporate defendants have not been dissolved and even when there is no proof that any of the named defendants cannot satisfy any judgment.

Because the motion to amend is untimely and prejudicial, and because adding Mr. Kim and KSK would be an exercise in futility, Plaintiffs cannot demonstrate good cause so as to justify the amendment. The motion to add additional parties at this late juncture should, therefore, be denied.

# PROCEDURAL BACKGROUND

On or about February 1, 2006 and nearly three months after the motions deadline, Plaintiffs subpoenaed Mrs. Kim Sung Eun to provide documents reflecting payments from, as well as the obligations and property of, Defendants Asia Enterprises, Inc., Jung Jin Corporation, Kim Hang Kwon and/or Park Hwa Sun.

1       Mrs. Kim Sung Eun is the president of a CNMI corporation doing

2   business as KSK Corporation ("KSK").[1]  Neither Mrs. Kim Sung Eun nor

3   KSK own any interest in Defendant Asia Enterprises, Inc. ("Asia

4   Enterprises") or Defendant Jung Jin Corporation ("Jung Jin").[2]  Mrs. Kim,

5   moreover, is the wife of KSK's manager, the proposed additional party-

6   defendant, Mr. Kim Ki Sung.  See Exhibit "A" at ¶ 2.  Kim Ki Sung

7

8   likewise owns no interest in Defendant Asia Enterprises or Jung Jin.  Nor

9   was the February subpoena directed to the corporation or to him.

10       Because his wife was off-island, Mr. Kim Ki Sung appeared at

11   Plaintiffs' counsel's offices, with the documents responsive to the

12   subpoena, on the date and at the time scheduled for his wife's deposition.

13   Mr. Kim appeared without counsel, without a translator, and without any

14   knowledge of the purpose of the deposition or the reality that he had no

15

16   obligation to appear or provide documents on his wife's behalf.  *See*

17   Declaration of Kim Ki Sung, attached hereto as Exhibit "B" at ¶¶ 16-19.

18   Mr. Kim, moreover, is not a speaker of the English language, and up until

19   the time of this incident, had no prior experience with deposition

20

21

22   [1] See Declaration of Kim Sung Eun, attached hereto and incorporated herein by
reference as Exhibit "A."

23

[2] *Id.*

1  proceedings.[3/]

2     The unsigned, unsworn, and partial transcript provided by Plaintiffs

3  in their Motion to Amend Verified Complaint[4/] contains a statement by

4
   Plaintiff's counsel that Mr. Kim appeared in response to the subpoena of his
5
6  wife.  Dep.Tr. 5:3-9.[5/] Viewed against the context of what transpired during

7  the deposition proceedings, however, that statement is only partially true.

8     At no point does the partial transcript reflect any advice to Mr. Kim

9  that he could have counsel present, that he had no obligation to answer any

10
   questions, or that he had no obligation to turn over any documents.  Instead,
11
   and after representing to Mr. Kim that his clients were not "making claims
12
13 that [Mr. Kim] owe[d] them wages,"[6/] after confirming that his clients did

14
      [3] *See* Excerpts of Deposition Testimony of Kim Ki Sung, Civil Case No. CV 05-
15  0019 (March 9, 2006) ("Dep. Tr."), attached to Plaintiffs' Motion to Amend Verified
    Complaint at 5.  However, the page numbers used herein are those page numbers from
16  the deposition itself and not the bate stamp numbers appearing on the right-hand corner.
    Since the deposition was not provided in its entirety, use of the bate stamp numbers
17  suggests a complete record but it is misleading.

18     [4] Appended to the Motion were selected excerpts from Mr. Kim's deposition.
    Regrettably, Plaintiffs have not provided the court or Mr. Kim with an entire copy of the
19  deposition transcript, nor did they provide Mr. Kim with a review copy or an errata sheet.
    Nor was there a notary page or a signature page attached to the "excerpts."  Plaintiffs
20  have all the documents to which they have cited, not Mr. Kim or KSK.

21     [5] Remarkably, Plaintiffs assert that Mr. Kim "appeared to testify on her behalf"
    (Motion at 3:1), and that he "volunteered to have his own deposition taken."  Mr. Kim,
22  following consultation with counsel, unequivocally disputes Plaintiffs'
    mischaracterization of the facts.  See Declaration of Kim Ki Sung, attached hereto as
23  Exhibit "B" at ¶¶ 16-19.

      [6] *Id.* at 18:19.

1   not "have any claims against [Mr. Kim] that he owed them any money,"[7]

2   and after making it clear to Mr. Kim that Plaintiffs were only interested in

3   collecting their unpaid wages from Defendants Kim Hang Kwon and Park

4
    Hwa,[8] the partial transcript portrays a scenario wherein Plaintiffs' counsel
5
6   induced Mr. Kim to cooperate and questioned him extensively about his

7   businesses and his relationship with the defendants.

8        Even though Plaintiffs had not bothered to subpoena KSK

9   Corporation, moreover, and had instead only elected to schedule the

10  personal deposition of Mrs. Kim, Plaintiffs' counsel insisted that Mr. Kim

11
    turn over corporate documents, representing to Mr. Kim that the documents
12
13  "were under the subpoena."[9]   With full knowledge of Mr. Kim's English

14  language limitations and his confusion as to the purposes of the proceeding,

15  moreover, Plaintiff's counsel nevertheless instructed the translator NOT to

16  permit Mr. Kim "to talk too much," since the translator would otherwise be

17  obliged to translate all of what Mr. Kim said.  See Dep. Tr. at 26:2-3.

18

19   _____

20      [7] *Id.* at 18: 18-23; 19-1.

21      [8] *Id.*.

22      [9] See Dep.Tr. at 25: 12-13.  When Plaintiff's counsel proceeded to reach for
    certain papers that Mr. Kim had brought with him, Mr. Kim objected to Plaintiff's
23  counsel's touching his documents. See *id.* at 25:1-18. Plaintiff's counsel represented that
    Mr. Kim was required to provide copies "because that's under the subpoena right there."
    *Id.* at 25:12-13.

Mr. Kim repeatedly objected to the questioning. *See, e.g.,* Dep. Tr. at 24:22-23.[10] Mr. Kim objected to the questions concerning his wife's business operations. *E.g.,* Dep.Tr. At 25:1-4. Mr. Kim repeatedly disavowed any responsibility for Kim Hang Kwon's obligations; he disclaimed any ownership or management role in Mrs. Park's and Mr. Hang Kwon Kim's business operations; and he consistently described his status as a creditor, maintaining that all he had done was loan Kim and Park money (Dep. Tr. at 24-25).

No independent court reporter took down Mr. Kim's answers and no independent notary swore Mr. Kim at the commencement of this proceeding.[11] Notwithstanding the obvious and glaring language barrier, Plaintiffs also neglected to provide Mr. Kim with an opportunity to review his testimony or to correct any inaccuracies in the record.[12] Conspicuous in its omission from the deposition "transcript," moreover, are a number of key deposition exhibits. As with the excerpts of testimony, the selection of

---

[10] Even a cursory review of the "excerpts" provided by Plaintiffs in support of their motion reflects many omissions. The transcript is incomplete; it omits background; it eliminates answers to certain questions; and fails to provide the questions to which Mr. Kim attempted to supply answers.

[11] See Dep. Tr. at 3. Mr. Hanson acted as attorney, examiner, reporter, and notary at this proceeding.

[12] See Dep. Tr. at 3:19-20. Mr. Kim was given the oath by Plaintiff's counsel who held himself out as a notary.

1  exhibits is at best incomplete.

2  Against this background and the distorted and incomplete deposition

3  testimony that Plaintiffs hold out as belonging to Mr. Kim, Plaintiffs filed

4
5  their untimely motion to amend to add Mr. Kim and KSK as parties to this

6  proceeding.

7  Plaintiffs claim that joinder is necessary on grounds that KSK is a

8  successor to Jung Jin Corporation, and that Mr. Kim is the alter ego of KSK.

9  As reflected below, no competent evidence supports these assertions.

10  Accordingly, and for the reasons set forth below, the deposition testimony

11
12  relied upon by Plaintiffs to support their theory of successor liability should

13  be rejected by this Court and the motion to add Mr. Kim and KSK should be

14  denied.

15  **FACTUAL BACKGROUND**

16  1.    The friendship between Mr. Kim Ki Sung and Defendant Kim

17  Hang  Kwon dates back more than twenty years.  Exhibit "B" at ¶ 3.

18
19  2.    Other than as a passive investor in a short term business

20  venture with Defendant Kim Hang Kwon that dissolved after a few

21  unprofitable months,[13] Kim Ki Sung's relationship to all defendants in this

22  case is as a creditor.  Exhibit "B" at ¶¶ 7-10; Dep. Tr. at 26: 4-8, 20-23.

23
---

[13]  See Exhibit "B" at ¶ 7.

3.     Kim Ki Sung allowed his friend the use of his American Express card so that Kim Hang Kwon could pay Asia Enterprises' poker machine license fees.  Exhibit "B" at ¶ 7.

4.     Kim Ki Sung loaned Kim Hang Kwon $100,000 so that Jung Jin Corp., the business owned by defendants Mr. Kim Hang Kwon and Mrs. Park, could continue to operate.  Dep. Tr. 26:4-8; Exhibit "B" at ¶¶ 8-9.

5.     Kim Ki Sung is not a shareholder of KSK Corporation.  Nor is he an officer or director of that company.  Exhibit "A" at ¶ 2; *see also,* Exhibit "C" Corporation Report for KSK Corporation for 2005.  Mr. Kim does, however, serve as manager of the company and is responsible for the management of its day to day operations.  *Id.*

6.     Plaintiffs have not produced a shred of evidence showing that Kim Ki Sung has co-mingled his assets with that of KSK; that KSK has diverted corporate funds for Kim Ki Sung's personal use; nor that KSK assets have been used for anything other than legitimate business purposes.

7.     Plaintiffs have failed to produce a shred of evidence that Kim Ki Sung uses KSK assets as his own.

8.     Plaintiffs have failed to provide a shred of evidence establishing that Kim Ki Sung holds himself out to be personally liable for the debts of KSK.

9.      Plaintiffs have failed to establish that KSK is not adequately capitalized; that it has no corporate assets, or that it was intentionally or otherwise undercapitalized.

10.     Plaintiffs have failed to produce a shred of evidence establishing that Kim Ki Sung uses KSK as a mere shell, instrumentality or conduit for his own private business dealings.

11.     There is not a shred of evidence establishing that KSK concealed or misrepresented to anyone the identities of its owners and managers, or that it concealed any of its business activities.  Plaintiffs have likewise produced no evidence that Mr. Kim's management of KSK is not in accord with its shareholder and director policies.

12.     There is not a shred of evidence establishing that Kim Ki Sung has used KSK, at any time, to procure labor, services or merchandise for his own personal use or for the use of any other person or entity.

13.     Plaintiffs have failed to provide a shred of evidence that Kim Ki Sung uses KSK to avoid performance of his personal obligations or responsibilities; that he uses KSK as a shield against personal liability; or that he uses KSK as a subterfuge for illegal transactions.

14.     Plaintiffs have not produced a shred of evidence establishing that KSK fails to observe corporate formalities or file corporate reports; that

KSK does not hold corporate meetings; or that KSK fails to keep corporate records.

15.    Plaintiffs have not produced a shred of evidence establishing that Kim Ki Sung has stripped KSK of its corporate assets; that he has appropriated KSK property for his own individual purposes; that he has used corporate funds to satisfy his individual obligations; or that he has agreed to assume personal responsibility for KSK's obligations.

16.    Plaintiffs have not produced a shred of evidence establishing that KSK cannot meet its business or financial obligations. To the contrary, all of the evidence produced by Plaintiffs confirms that KSK is a thriving CNMI corporation. See Dep. Tr., *passim*.

17.    Plaintiffs have failed to produce any evidence that KSK Corporation conducts its business as Kim Ki Sung; that Kim Ki Sung conducts his business as KSK, or that Kim Ki Sung has taken advantage of the corporation or otherwise abused it in any way.

18.    To the contrary:  Kim Ki Sung distinguishes between himself and his wife, on the one hand, and KSK Corporation, on the other. To Mr. Kim Ki Sung, the corporation and its owners are not one and the same. Dep. Tr. 64:7-23. Without sufficient opportunity to explain his statement

1   fully,[14] Kim Ki Sung nevertheless stated that according to Korean custom,

2   "couples are family" and husbands and wives are one and the same; that

3   what money belongs to one belongs to the other.  Dep. Tr. 64:9-23 - 65:1.

4   19.    The Court's Case Management Scheduling Order dated August

5   26, 2005 set November 25, 2005 as the last date for filing motions to amend

6   pleadings.  That deadline passed several months ago.  Trial is now

7

8   scheduled soon.

9                              **ARGUMENT**

10  **A.  LEGAL STANDARD GOVERNING THIS MOTION**

11      Where, as here, the Court has entered a scheduling order setting forth

12  deadlines, a request to amend the pleadings is no longer governed by Rule

13  15 but rather the dictates and policies of Rule 16.  *See Coleman v. Quaker*

14  *Oats Co.*, 232 F.3d 1271, 1294-95 (9th Cir. 2000).  Thus, when a party

15  moves to amend the pleadings after a deadline set in the Rule 16 scheduling

16  order, the Court should not modify the scheduling order "except upon a

17  showing of good cause." Fed.R.Civ.P. 16(b).[15]

18

19

20      [14]  The distorted record in this proceeding reflects that when Mr. Kim did attempt
    to explain his statement, Plaintiffs simply excised it from the "Excerpts' and failed to
21  include the explanation in the submission to this court. See Dep.Tr. at 39:15-23.
    Plaintiffs excluded from the Excerpts Mr. Kim's concept of joint ownership.  Pages 40
22  through 45 were omitted from the record or excerpts of the transcript.

23      [15]  Case law developed under Rule 15(a) states that in deciding a motion to amend
    under that rule, the Court considers four factors: (1) bad faith; (2) undue delay; (3)

1    While the "good cause" standard "primarily considers the diligence

2 of the party seeking the amendment,[16] the Court may consider additional

3 factors in making its good cause determination, including, but not limited

4
 to, whether prejudice would result to the party opposing amendment.
5
6 *Coleman, supra* 232 F.3d at 1295; *see also, Herring v. Veterans Admin.*, 76

7 F.3d 386 (9th Cir. 1996).   For example, the Ninth Circuit has taken the view

8 that "a need to reopen discovery and therefore delay the proceedings

9 supports a district court's finding of prejudice from a delayed motion to

10 amend the complaint." *Lockheed Martin Corp. v. Network Solutions, Inc.*,

11
 194 F.3d 980, 986 (9th Cir. 1999).   Likewise, when amendment of the
12
13 pleadings would be futile, good cause exists for denying the motion. *Cf.*

14 *Langley v. United States*, 182 F. Supp.2d 996, 1000 (D. Haw. 2002) .

15

16

17 prejudice to the opposing parties; and (4) futility.  *E.g., DCD Programs, Ltd. v. Leighton*,
18 833 F.2d 183, 186 (9th Cir.1987).  Where a scheduling order has been entered and the
 proposed amendment would violate a cutoff date, Plaintiffs must first make a showing of
19 good faith under Rule 16(b) before the Court analyzes the motion under Rule 15(a).
 *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir.1992); *Deghand v.*
20 *Wal-Mart Stores, Inc.*, 904 F.Supp. 1218, 1221 (D.Kan.1995) ("Because the plaintiff
 sought leave to amend her complaint after the deadline established in the pretrial
21 scheduling order, Rule 16 of the Federal Rules of Civil Procedure is the plaintiff's first
 hurdle."). " 'If [the court] considered only Rule 15(a) without regard to Rule 16(b), [it]
22 would render scheduling orders meaningless and effectively would read Rule 16(b) and
 its good cause requirement out of the Federal Rules of Civil Procedure.' " *Jackson v.*
23 *Laureate, Inc.*, 186 F.R.D. 605, 607 (E.D.Cal.1999).

16 *Coleman*, 232 F.3d at 1294.

Page 13 of 23

## B. UNDUE PREJUDICE TO MR. KIM AND KSK CORP. WOULD RESULT, WERE PLAINTIFFS PERMITTED TO AMEND THEIR COMPLAINT NOW

Undisputed facts establish the existence of undue prejudice, were Plaintiffs granted leave to amend their complaint now.

It is undisputed that this motion has been filed some six months after the deadline for amending pleadings established in this Court's Case Management Scheduling Order, long after the close of discovery, and one month prior to trial. Given the departure of Mrs. Park from the Commonwealth and the inability to depose her, this case has progressed to the stage where there will be plain and real prejudice to Mr. Kim and KSK, were they to be added as party defendants. *See Conroy Datsun Ltd. v. Nissan Motor Corp. in U.S.A.*, 506 F.Supp. 1051, 1054 (N.D. Ill. 1980) (When the amendment to the complaint brings entirely new and separate claims, adds new parties, or at least entails more than an alternative claim or change in allegations of the complaint, and when the amendment would require expensive and time-consuming new discovery, a motion for leave to amend should be denied since prejudice to defendant outweighs the right to have the case tried on the merits).

## B.  BECAUSE PLAINTIFFS' CLAIM OF SUCCESSOR LIABILITY FAILS ON THE MERITS, THE MOTION TO AMEND IS FUTILE

While the doctrine of successorship liability has been applied to FLSA liability, a finding of successorship involves a two-step inquiry.  *See Steinbach v. Hubbard*, 51 F.3d 843, 845 (9th Cir. 1995).  First, the Court must find the new business retains common aspects of the prior business sufficient to allow the legal conclusion of 'successorship.' *Id.*[17]  Second, the Court must conclude the successor knew of the violations at the time it purchased the business. *Id*.

### 1.  Business Continuity

Courts consider a number of factors in reaching a determination of successorship under the first prong of the inquiry:  whether (a) there has been a substantial continuity of the same business operation; (b) the new employer uses the same plant; (c) the same or substantially the same work force is employed; (d) the same jobs exist under the same working conditions; (e) same supervisors are employed; (f) the same machinery, equipment, and methods of production are used; and (g) the same product is

---

[17]  In determining whether successor liability exists under the mere continuation theory in an asset purchase of a bankrupt corporation, the test is "not the continuation of the business operation, but rather the continuation of the *corporate entity*.  An indication that the corporate entity has been continued is a common identity of stock, directors, and stockholders and the existence of only one corporation at the completion of the transfer." *Glentel, Inc. v. Wireless Ventures, LLC*, 362 F.Supp.2d 992, 1001 (N.D.Ind.,2005).