manufactured or the same service [is] offered. *See NLRB v. Jeffries Lithograph Co.*, 752 F.2d 459, 463-464 (9th Cir. 1985).

Where, as here, the acquisition or transfer comes about because of a foreclosure on a security interest, the court also looks at the common identity of the officers, directors and stockholders in the two companies, and sufficiency of consideration running to the seller corporation in light of the assets sold. *See Stoumbos v. Kilimnik*, 988 F.2d 949, 962 (9th Cir. 1993), citing *Cashar v. Redford*, 28 Wash.App. 394, 624 P.2d 194, 196 (1981).

Contrary to Plaintiffs' assertions, these factors do not establish KSK Corporation as a successor. First, KSK does not stand in the same shoes as a business purchaser, having succeeded to the equipment and facilities simply as a result of Jung Jin's default under the promissory note.

Neither KSK nor Mr. Kim were the controlling force in Jung Jin; there was a sufficient security interest that gave rise to the asset acquisition; and the assets were acquired for adequate consideration. *See* Declaration of Kim Sun Eun, attached hereto as Exhibit "A". *See also, Kemper v. Saline Lectronics*, 366 F.Supp.2d 550 (N.D. Ohio 2005) (successor corporation is not liable for predecessor's liabilities when: (1) there is no express or implied assumption of liability; (2) the transaction is not a consolidation or merger; (3) where the transaction was not fraudulent; (4) where the

acquisition is made in good faith or where the transfer was for consideration; or (5) where the transferee corporation was not a mere continuation or reincarnation of the old corporation).

Second, while KSK does use the same physical location and machinery to operate a similar business, KSK did not retain the entire Jung Jin Corp. workforce; there are none of the same shareholders, officers or directors; nor are the same supervisors employed. Third, there is no question of unpaid wages or overtime as to those employees KSK Corp. took over. However, none of these employees had unpaid wage or overtime claims, and the claimant-Plaintiffs had long since transferred to other employers. Fourth, there is no question as to whether the new operation appeared identical to the former employees of Jung Jin. Mr. Kim and his wife immediately changed the name of the laundromat and poker establishment, and they began working in the new business as supervisors themselves. The mere fact that KSK did not transfer the utility service to its own name is hardly probative of whether KSK is a successor corporation.

**2. Notice**

The second step of the Court's inquiry is whether the purported successor knew of the violations *at the time it purchased the business.* Although Plaintiffs contend that KSK and Kim Ki Sung had notice as to

unpaid wage liability as early as August of 2005, the facts indicate otherwise.

As an initial matter, this case is not an acquisition case, and there is no evidence that any wage claims existed at the time that KSK Corp. and Mr. and Mrs. Kim took their security interest in Jung Jin's assets, back in December of 2004. Prior to completing the transfer of property in January of 2006, moreover, KSK and Mr. Kim learned that certain employees of Asia Enterprises and Jung Jun were angry and concerned over the closing and the loss of work. Exhibit "B" at ¶¶ 14-15. KSK, through its manager Mr. Kim, also learned from the newspaper that certain employees had filed a complaint against the companies. *Id.* Prior to taking over the companies, however, Mr. Kim was not at all certain about the reasons for the employee complaints, nor did he have any concrete evidence that any of the employees had not been paid their wages. *Id.* No worker ever came to Mr. Kim to complain about money or wages owing. No Jung Jin Corporation or Asia Enterprises employee taken over by or transferred to KSK Corp. was owed money. *Id.; see also* Exhibit "A" at ¶ 9. Mr. Kim's testimony is that he believed that the employees were dissatisfied because there was no work for the company in the future. Exhibit "B" at ¶ 14.

Prior to transferring the assets of Jung Jin, moreover, defendant Kim

Page 18 of 23

Hang Kwon told Mr. Kim that all of his employees had been paid their salaries. Exhibit "B" at ¶ 15. Kim Hang Kwon never disclosed to Mr. Kim that obligations for unpaid wages remained outstanding, or that any employees had not been paid for their work. *Id.*

No court or administrative body, moreover, had made a determination that wages were owed, either at the time that the promissory note was executed or at the time that KSK Corp. took possession of Jung Jin's assets. On these facts, there is simply no basis to conclude that KSK had notice of Jung Jin's wage problems so as to impose payment liability.

### C. AMENDING THE COMPLAINT TO ADD MR. KIM AS A DEFENDANT WOULD BE EQUALLY FUTILE, GIVEN THE ABSENCE OF ANY PROOF ESTABLISHING HIM AS THE ALTER EGO OF KSK CORPORATION

On the basis of incomplete "facts" gleaned from a critically defective and procedurally flawed deposition, Plaintiffs claim that adding Kim Ki Sung is necessary because Kim Ki Sung is the alter ego of KSK. Nothing could be further from the truth.

As an initial matter, the Court should only "pierce the corporate veil" and hold Mr. Kim liable only where the following two conditions are met: "(1) there is such a unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased, and (2) an

adherence to the fiction of the separate existence of the corporation would sanction a fraud or promote injustice." *SEC v. Hickey,* 322 F.3d 1123, 1128 (9th Cir.2003) (citations and quotation marks omitted). No such evidence exists in this case.

First, Plaintiffs have produced no facts establishing that the separateness between Mr. Kim and KSK has ceased. Kim Ki Sung is not a shareholder of KSK Corporation. Nor is he an officer or director of that company. Exhibit "A" at ¶ 2. While Mr. Kim serves as manager of the company, Plaintiffs have no evidence showing that Kim Ki Sung has co-mingled his assets with that of KSK; that Kim Ki Sung uses KSK's assets as his own; that Kim Ki Sung uses KSK as a mere shell, instrumentality or conduit for a his own private business dealings; that Kim Ki Sung has used KSK, at any time, to procure labor, services or merchandise for his own personal use or for the use of any other person or entity; that KSK has diverted corporate funds for Kim Ki Sung's personal use; or that KSK assets have been used for anything other than legitimate business purposes.

There is likewise no evidence that Kim Ki Sung uses KSK to avoid performance of his personal obligations or responsibilities; that he uses KSK as a shield against personal liability; or that he uses KSK as a subterfuge for illegal transactions. Plaintiffs cannot point to any evidence

establishing that Kim Ki Sung has stripped KSK of its corporate assets; that he has appropriated KSK property for his own individual purposes; or that he has used corporate funds to satisfy his individual obligations. Plaintiffs do not even allege that KSK conducts its business as Kim Ki Sung; that Kim Ki Sung conducts his business as KSK, or that Kim Ki Sung has taken advantage of the corporation or otherwise abused it in any way.

Likewise, Plaintiffs have failed to provide a shred of evidence establishing that Kim Ki Sung holds himself out to be personally liable for the debts of KSK. There is no indication that KSK is inadequately capitalized; that it has no corporate assets, or that it was intentionally or otherwise undercapitalized. Further, Plaintiffs have failed to produce a shred of evidence establishing that KSK is being conducted to perpetrate a fraud on creditors, that KSK concealed or misrepresented to anyone the identities of its owners and managers, or that it concealed any of its business activities. Plaintiffs have likewise produced no evidence that Mr. Kim's management of KSK is not in accord with its shareholder and director policies.

Finally, Plaintiffs have not produced a shred of evidence establishing that KSK fails to observe corporate formalities or file corporate reports– in fact, the evidence is to the contrary. Plaintiffs have not shown that KSK

does not hold corporate meetings; nor that KSK fails to keep corporate records. There is no evidence even hinting that KSK cannot meet its business or financial obligations. To the contrary, all of the evidence produced by Plaintiffs confirms that KSK is a thriving CNMI corporation. See Dep. Tr., *passim*. Accordingly, it is not appropriate to pierce the corporate veil and hold Mr. Kim liable for all of KSK's actions.

# CONCLUSION

It remains important to reiterate the concerns regarding Plaintiffs' statements to Mr. Kim at the deposition: that they had no claims against the intended defendants herein. They are now bound to those representations by their counsel.

Further, With the departure of Mrs. Park from the Commonwealth and Kim Hang Kwon's ostensible lack of funds, Plaintiffs would have this court add KSK and Mr. Kim as party defendants to provide a source for collection of their wage claims.

Neither KSK nor Mr. Kim incurred the wage obligation. Neither KSK nor Mr. Kim knew of the liability when funds were loaned to Jung Jin to permit it to continue in operation. Since KSK was simply a creditor of Defendants that managed to offset obligations against secured assets, there

is no basis for requiring KSK to pay the wages of employees it never hired and whose obligations it never assumed.

Based on the foregoing, no good cause exists to permit the untimely amendment. Plaintiffs' motion to amend their complaint to add KSK Corporation and Mr. Kim as party defendants should be denied.

Respectfully submitted this 22nd day of May, 2006.

_____
ROBERT T. TORRES
Attorney for KSK Corporation, Mrs. Kim Sung Eun and Mr. Kim Ki Sung