| | |
|---|---|
| 1 | Robert Tenorio Torres |
| | Attorney at Law |
| 2 | P.O. Box 503758 |
| | Saipan, MP 96950 |
| 3 | Tel: (670) 234-7859 |
| 4 | Attorney for Kim Sung Eun, Kim Ki Sung and KSK Corporation |

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| LI YING HUA, LI ZHENG ZHE, and XU JING JI, | Case No. CV 05-00019 |
| **Plaintiffs,** | DECLARATION OF KIM SUNG EUN IN SUPPORT OF SPECIAL APPEARANCE OF KSK CORPORATION AND KIM KI SUNG TO OBJECT TO MOTION TO AMEND VERIFIED COMPLAINT |
| vs. | |
| JUNG JIN CORP., a CNMI corporation, ASIA ENTERPRISES, INC., a CNMI corporation, PARK HWA SUN, KIM HANG KWON, KSK CORPORATION, a CNMI corporation, and KIM KI SUNG, | Date: _____ |
| | Time: _____ |
| | Judge: Hon. Alex R. Munson |
| **Defendants.** | |

Village of Chalan Kiya, City of Saipan    }
                                          } ss.
Commonwealth of the Northern Mariana Islands  }

I, **KIM SUNG EUN**, do hereby declare the following:

1.  I am a citizen of the Republic of South Korea and a resident of Saipan, CNMI. I am over the age of 18 and have never been convicted of a felony. I make this declaration from my personal knowledge, and if called

**EXHIBIT "A"**

to testify, could and would do so on the basis of the facts set forth herein.

2.    I am the President of KSK Corporation, a corporation organized under the laws of the Commonwealth of the Northern Mariana Islands to operate several poker game rooms, and most recently, a laundromat. My mother, Kim Ok Ja, and I own all of the shares of KSK Corporation. My mother and I serve as the officers and directors of the company as well. My husband, Kim Ki Sung, serves as KSK's manager. He runs the day to day operations of the various establishments owned by KSK.

3.    I have been acquainted with Defendant Kim Hang Kwon and his wife, Defendant Park Hua Sun for many years. Park Hua Sun is the owner of Jung Jin Corporation, while her husband Kim Hang Kwon owns Asia Enterprises, Inc. Together, they operated and owned the Welcome Laundry in the village of Chalan Kanoa, Saipan, as well as the adjoining poker establishment.

4.    At no time did I or KSK Corporation perform work for or operate Jung Jin corporation. At no time did I have any role in the management of that company or own any shares in the company. Nor did I ever serve as an officer or director of Jung Jin corporation. Neither Jung Jin Corporation, Asia Enterprises, Mrs. Park, nor Kim Hang Kwon own, nor

have they ever owned, any interest in KSK Corporation. Neither Mrs. Park nor Kim Hang Kwon have ever been employed by KSK Corporation, nor have they ever played any part in the management or operation of the company.

5. When Jung Jin Corporation began to experience financial difficulties, my husband agreed to make Mrs. Park and Jung Jin Corporation a loan. Mrs. Park and her company borrowed $100,000 in December 2004 for a term of one year, secured by the assets of Welcome Poker Arcade and Welcome Laundry. Mrs. Park agreed that if the loan could not be repaid by the end of the term, then KSK Corporation would take over the assets of Welcome Poker and Welcome Laundry.

6. Even after attempting to sell the business, Mrs. Park could not repay the loan. As a result, KSK Corporation took over the operation of the laundromat and poker arcade in early 2006. Four Jung Jin employees transferred to KSK when Welcome Laundry ceased doing business. One Jugn Jin employee, Zhang Mei Hua, stayed on to work at the poker arcade. Three other Jung Jin employees, Blandina S. Aban, Elizabeth P. Australia, and Renita V. Obra (who obtained a temporary work authorization) stayed on to work at the laundromat as well.

7. After KSK Corporation took over the assets and lease of

Welcome Poker, we changed the name to Shany Two Poker. A name change was also made on the poker machine licenses, and they are now licensed to KSK Corporation. My husband and I supervise the running of the poker arcade and the laundry.

8. Following the transfer of the laundry's machines, we changed the name to Welcome Laundry to Shany Two. The lease for the property has also transferred to KSK Corporation. None of the shareholders, officers, or directors of Jung Jin or Asia Enterprises are involved in the operation of KSK, Shany Laundry, or Shany Two Poker.

9. All of the employees who transferred to KSK Corporation were paid their wages by Jung Jin Corporation. None of these employees filed a wage complaint.

10. At no time did I or KSK corporation work for or operate Asia Enterprises. At no time did I have any role in the management of the company or own any shares in that company. Nor did I ever serve as an officer or director of Asia Enterprises.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge on Saipan, CNMI.

1     Signed this 22 day of May, 2006

2

3                                                                        Kim Sun Eun

4

5   TRANSLATOR'S CERTIFICATION:

6   I hereby certify that I am fluent in the Korean language and competent to translate from English to Korean and Korean to English. I accurately

7   translated the foregoing English declaration to Ms. Kim Sun Eun and she verified the English statements as truthful, accurate, and correct.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Robert Tenorio Torres
Attorney at Law
P.O. Box 503758
Saipan, MP 96950
Tel: (670) 234-7859

Attorney for Kim Sung Eun, Kim Ki Sung and KSK Corporation

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| LI YING HUA, LI ZHENG ZHE, and XU JING JI,<br><br>Plaintiffs,<br><br>vs.<br><br>JUNG JIN CORP., a CNMI corporation, ASIA ENTERPRISES, INC., a CNMI corporation, PARK HWA SUN, KIM HANG KWON, KSK CORPORATION, a CNMI corporation, and KIM KI SUNG,<br><br>Defendants. | Case No. CV 05-00019<br><br>DECLARATION OF KIM KI SUNG IN SUPPORT OF SPECIAL APPEARANCE OF KSK CORPORATION AND KIM KI SUNG TO OBJECT TO MOTION TO AMEND VERIFIED COMPLAINT<br><br>Date: _____<br>Time: _____<br>Judge: Hon. Alex R. Munson |

Village of Chalan Kiya, City of Saipan         }
                                               } ss.
Commonwealth of the Northern Mariana Islands   }

I, **KIM KI SUNG**, do hereby declare the following:

1. I am a citizen of the Republic of South Korea and a resident of Saipan, CNMI. I am over the age of 18 and have never been convicted of a felony. I make this declaration from my personal knowledge, and if called

EXHIBIT "B"

1. to testify, could and would do so on the basis of the facts set forth herein.

2. I am the manager of KSK Corporation, a corporation organized under the laws of the Commonwealth of the Northern Mariana Islands to operate several poker parlors and most recently, a laundromat. I am not an officer, director, or shareholder of KSK Corporation. In my capacity as manager, however, I run the operations of the business, the shares of which are owned by my wife and her mother.

3. I have been acquainted with Defendant Kim Hang Kwon and his wife, Defendant Park Hua Sun for many years. Kim Hang Kwon has been personal friend whom I knew well in Korea. I have known him for more than twenty years.

4. When I arrived in the CNMI, I learned that Kim Hang Kwon and Mrs. Park operated a poker establishment known as Welcome Poker. I also learned that they operated a laundry nearby known as Welcome Laundry.

5. At no time did I work for or operate Jung Jin Corporation. At no time did I have any role in the management of the company or own any shares in the company. Nor did I ever serve as an officer or director of that company.

6. At no time did I work for or operate Asia Enterprises. At no

1  time did I have any role in the management of the company or own any
2  shares in the company. Nor did I ever serve as an officer or director of that
3  company.

4      7.    At the end of 2004, Kim Hang Kwon asked me to invest in a
5  poker parlor that was about to open. He complained that he was in trouble
6  because he could not meet his obligations. To assist him, I arranged for the
7  use of my credit card to pay for his poker machine license fees for two
8  quarters. The business lasted for several months, and then it closed. Mr.
9  Kim owed me $24,000 for license fees advanced as well as $2,000 interest,
10 totaling $26,000.

11     8.    At the end of 2004, Mr. Kim confided in me that his business
12 was doing badly. When he approached me for a loan at the end of 2004, I
13 agreed to help him and Mrs. Park with their financial difficulties.

14     9.    In December of 2004, I loaned Mrs. Park and her company
15 $100,000. She agreed to repay the loan to KSK Corporation within one
16 year, or by December 1, 2005. To secure the obligation, Mrs. Park offered
17 Welcome's poker machines and Welcome's laundry equipment as
18 collateral. Mrs. Park agreed that if she could not make the payment, she
19 would turn over the poker machines, along with the equipment in the
20 laundromat, and would not bring any legal action to protest or dispute her

obligation.

10. All in all, the couple owed me $126,000 for loans and other advances made at the close.

11. Mrs. Park continued to experience business problems. In November of 2005, I learned that she and Mr. Kim were trying to sell their business to repay my loans. Mr. Kim and Mrs. Park made known their intent to sell, and even advertised in Korean weekly newspaper for a buyer.

12. Mrs. Park and Mr. Kim told me that they could not repay the money. They proposed to transfer their businesses to me to satisfy the loans.

13. To cancel $26,000 of their outstanding obligation, Mrs. Park and Jung Jin Corporation agreed to transfer their title and interest in their poker machines to KSK corporation, effective January 1, 2006. To satisfy the remaining $100,000 in outstanding loans, Mr. Park and Jung Jin proposed to transfer all of their right, title, and interest in the 55 laundry machines operated through Welcome Laundry, effective January 1, 2006. In conjunction with the transfer of the poker and laundry equipment, effective December 30, 2005, Mrs. Park and Jung Jin Corporation subleased the premises, then occupied by the poker and laundry, to my wife and her company for the remaining four years of the outstanding lease.

Some, but not all, of Welcome's employees, transferred to KSK after the equipment transfer.

14. Prior to completing the transfer of property, I learned that certain employees of Asia Enterprises and Jung Jin Corporation were angry and concerned over the closing and the loss of work. I also learned from the newspaper that the employees had filed a complaint against the companies. Prior to taking over the companies, I did not know the reasons for the employee complaints or that any of the employees had not been paid their wages. No worker ever came to me to complain about money or wages owing. No Jung Jin Corporation or Asia Enterprises employee taken over by KSK was owed unpaid overtime or other wages. I believed that the employees were dissatisfied because there was no work.

15. Prior to transferring the assets of Jung Jin Corporation, Kim Hang Kwon told me that the employees had all been paid their salaries, and never disclosed to me that they had not been paid for their work. I believed that the companies were closing down for lack of business.

16. In February of 2006, someone delivered a subpoena for my wife to appear and bring documents to the office of Mark B. Hanson. The document commanded her to appear and produce the documents on March 3, 2006 at 4:00 p.m.

17. Because my wife was off-island, I showed up with the documents at Mr. Hanson's office. My knowledge of the English language is extremely limited. I did not know that I could refuse to appear, or that I did not have to answer any questions. I did not know that I could have an attorney accompany me.

18. I did not believe that I would need an attorney prior to answering any questions. Plaintiff's lawyer had a translator on the premises, and Plaintiff's lawyer repeatedly assured me that he was not interested in collecting any money from me. Plaintiff's lawyer said on several occasions that his clients were not making any claims against me. Had Plaintiffs' lawyer told me that Plaintiffs were seeking to collect money from me, or that there were claims being made against me, I would not have responded to any questions without first talking with my attorney. I would not have released to Plaintiffs any of the documents I brought.

19. I was never provided a copy of the deposition transcript to review and sign. I do not know whether Plaintiff's lawyer understood my responses to his questions or whether he took down my responses accurately.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Signed this 22 day of May, 2006

_____
Kim Ki Sung

TRANSLATOR'S CERTIFICATION:

I hereby certify that I am fluent in the Korean language and competent to translate from English to Korean and Korean to English. I accurately translated the foregoing English declaration to Ms. Kim Sun Eun and she verified the English statements as truthful, accurate, and correct.

_____



ANNUAL CORPORATION REPORT

Filing Fee: $50.00 / Make Check Payable to: CNMI TREASURER
One Original and Two Copies

2006 FEB -7 AM 10: 35

FILING: THE INITIAL REPORT MUST BE FILED WITHIN 60 DAYS OF INCORPORATION.
ANNUAL REPORT MUST BE FILED ON OR BEFORE MARCH 1ST OF EACH YEAR.

FILE WITH:  REGISTRAR OF CORPORATIONS
Department of Commerce
2nd Floor, Joeten Dandan Building Room 27
Caller Box 10007
Saipan, MP 96950

INITIAL REPORT:            REPORT FOR THE YEAR   2005
CHECK ONE    (xx) Domestic Corporation    ( ) Foreign Corporation

Name, Mailing Address & Telephone No. of Corporation:    (Attach map showing location if address is only a P. O. Box)
KSK Corporation, Inc.
PO Box 502926 CK,
Saipan, MP 96950
Telephone Number:  670-287-5077

Name, Mailing Address & Telephone No. of Registered Agent:   (Attach Map showing location if address is only a P. O. Box)
Chong M. Won
PO Box 505833 CK,
Saipan, MP 96950
Telephone Number:  670-234-5000

LIST OF DIRECTORS:

| Name | Nationality | Address |
|---|---|---|
| Kim, Sung Eun | Korean | PO Box 502926 CK, Saipan, MP 96950 |
| Kim, Ok Ja | Korean | PO Box 502926 CK, Saipan, MP 96950 |

LIST OF OFFICERS:

| Name | Position | Nationality | Address |
|---|---|---|---|
| Kim, Sung Eun | President | Korean | Same as above |
| Kim, Ok Ja | V-President/Treasurer | Korean | Same as above |
| Ayuyu, Anthony Cruz | Secretary | U.S. | PO Box 504391, Saipan, MP 96950 |

DESCRIPTION OF BUSINESS ACTIVITIES - List all lines of business:
Amusement:poker , Retail Store, & Laundromat

STOCK ISSUED AND OUTSTANDING:

| Number of Shares | Class of Shares | Amount Paid for Shares |
|---|---|---|
| 200,000 shares | Common Stock | $ 20.00 per share |

| NAME OF SHAREHOLDERS | IMMIGRATION STATUS | NATIONALITY | NUMBER OF SHARES HELD |
|---|---|---|---|
| Kim, Sung Eun | | Korean | 180,000 shares |
| Kim, Ok Ja | | Korean | 20,000 shares |

Date 2/6/06

Signature: _____

KIM, SUNG EUN - PRESIDENT
PRINT NAME & TITLE OF PERSON SIGNING
(Must be Director or Officer of the Corporation.)

**EXHIBIT "C"**