1    MARK B. HANSON, ESQ.
     First Floor, Macaranas Building
2    Beach Road, Garapan
     PMB 738 P.O. Box 10,000
3    Saipan, Mariana Islands 96950
     Telephone:    (670) 233-8600
4    Facsimile:    (670) 233-5262

5    Attorney for Plaintiffs

6

7                    IN THE UNITED STATES DISTRICT COURT
                                FOR THE
8                      NORTHERN MARIANA ISLANDS

9    LI YING HUA, LI ZHENG ZHE and XU JING JI, )   CASE NO. CV 05-0019
                                               )
10                   Plaintiffs,               )
                                               )
11            vs.                              )   PLAINTIFFS' OPPOSITION TO
                                               )   DEFENDANTS' MOTION TO
12   JUNG JIN CORPORATION, a CNMI corporation,)   STRIKE OR TO DISMISS THE FIRST
     ASIA ENTERPRISES, INC., a CNMI corporation,)  AMENDED COMPLAINT
13   PARK HWA SUN and KIM HANG KWON,           )
                                               )   Date:  June 19, 2006
14                   Defendants.               )   Time:  1:00 p.m.
     _____ )   Judge: Hon. Alex R. Munson, Chief Judge
15

16        COMES NOW the Plaintiffs, by and through their attorney, with the following opposition

17   to Defendants' motion to strike or to dismiss Plaintiffs' First Amended Verified Complaint.[1]

18                                        FACTS

19        On June 22, 2005, Plaintiffs filed their Verified Complaint for violations of the Fair Labor

20   Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA"), and supplemental state law claims.  Initially, there

21   were four defendants: Jung Jin Corporation ("JUNG JIN"), Asia Enterprises, Inc. ("ASIA"), Park Hwa

22   Sun ("Mrs. PARK") and Kim Hang Kwon ("Mr. KIM") (also collectively referred to herein as "Initial

23   Defendants").

24   _____

25        [1] The motion includes defendants Kim Hang Kwon, KSK Corporation and Kim Ki Sung. The
     Court entered the default of Jung Jin Corporation and Asia Enterprises, Inc. on May 12, 2006; those
26   entity defendants are not a party to the motion.  Defendant Park Hwa Sun has not joined in the
     motion and is not a party thereto.
27

F I L E D
Clerk
District Court

JUN - 8 2006

For The Northern Mariana Islands
By_____
(Deputy Clerk)

1    On January 1, 2006 defendants effected the transfer of their operating businesses to KSK

2    Corp. *See* Excerpt from Deposition of Kim Ki Sung at page 35, lines 14 to 23; Exhibits D through

3    I.

4    Thereafter, Defendant Park Hwa Sun departed the Commonwealth for South Korea with no

5    plans of returning to Saipan. *See* Excerpt from Deposition of Kim Hang Kwon, page 8, lines 15 to

6    18; Declaration of Stephen J. Nutting in Support of Motion to Withdraw, ¶ 3("Defendant Park Hwa

7    Sun both personally and as the sole representative and contact person for the corporate defendant

8    Jung Jin Corporation, has left the Commonwealth and is unavailable to assist the attorney in the

9    preparation and defense of the case.").

10    On January 27, 2006, at the time and date noticed for the deposition of defendant Jung Jin

11    Corp. ("JUNG JIN"), no one appeared to testify. *See* Declaration of Mark B. Hanson ("Hanson

12    Decl."), ¶ 22.

13    On February 1, 2006, a subpoena was issued for the deposition of Kim Sung Eun, the

14    president of KSK Corp. as shown in documents on file with the Commonwealth government.

15    On March 3, 2006, at the time, date and place indicated in the subpoena to Kim Sung Eun,

16    Mr. Kim Ki Sung produced copies of documents, some of which are provided herewith as exhibits.

17    On March 9, 2006, at the time, date and place indicated in the subpoena to Kim Sung Eun,

18    Mr. Kim Ki Sung appeared to testify on her behalf. *See* Kim Ki Sung Depo., page 5, lines 3 to 9. Mr.

19    Kim Ki Sung volunteered to have his own deposition taken, he was sworn in, and thereafter was taken

20    the deposition of Kim Ki Sung. *Id.*, page 3, lines 21 to 23; page 5, lines 7 to 9.

21    In his deposition, Kim Ki Sung testified to, among other things, that:

22    1.    In a prior porker arcade partnership with defendant Kim Hang Kwon, in the

23    name of defendant Asia Enterprises, Inc. ("ASIA"), Kim Ki Sung had paid, or caused to be paid, Kim

24    Hang Kwon's "share" of the poker machine license fees for two quarters totaling $24,000.00. Kim

25    Hang Kwon owed Kim Ki Sung $26,000.00 for such payments — the original payments plus an

26

27

Page 2 of 15

1  additional $2,000.00 for interest.  Kim Ki Sung Depo., page 34, lines 1 to 17.

2          2.    On about December 1, 2004, Kim Ki Sung loaned Park Hwa Sun $100,000.00

3  in cash.  To memorialize the loan, Kim Ki Sung prepared and had Park Hwa Sun execute the

4  promissory note.  *Id.*

5          3.    In about August 2005, Kim Ki Sung learned that the plaintiffs in this case had

6  filed a lawsuit alleging that defendant Park Hwa Sun and Kim Hang Kwon had failed to pay all of the

7  wages they were due.  Kim Ki Sung Depo., page 19,  lines 2 to 23; page 20, lines 1 to 13.

8          4.    In about January 2006, the defendants agreed that Kim Ki Sung should "take

9  over" defendants' laundry business and poker businesses in exchange for the outstanding debts.  *Id.*,

10  page35 lines 3  to 23; Page 36 lines 1 to 23; page 46 Lines 12 to 14 Page 47 Lines 1 to 9..

11          5.    Defendant Kim Ki Sung agreed and prepared the documents he believed were

12  necessary to accomplish the transfer, including a Bill of Sale.  *Id.*; Exhibits D and I.

13          6.    As of January 1, 2006, all of the assets of defendants' Welcome Poker,

14  Welcome Landry and Welcome Market were purportedly transferred to KSK Corp. in exchange for

15  the alleged $26,000.00 debt of Kim Hang Kwon and the alleged $100,000.00 debt of Park Hwa Sun

16  and/or their alter ego companies defendants ASIA and JUNG JIN.  *Id.*, page 46, lines 12 to 23; page

17  47, lines 1 to 10; page 37, lines 13 to 21.

18          7.    KSK Corp. is and acronym for Ki Sung Kim, the deponent.  *Id.*, page 14  lines

19  17  to 20.

20          8.    Mr. Kim Ki Sung changed the name of Welcome Laundry and Welcome Poker

21  to Shany Landry and Shany Two Poker and now operates what was known as Welcome Market as

22  part of what is now know as Shany Laundry.  *Id.*, page 38  lines 14 to 19.

23          9.    In addition to taking over the leases of the premises of the businesses in the

24  name of KSK Corp., Kim Ki Sung transferred all of the employees of defendants to the employ of

25  KSK Corp. (with the exception of two of the employees that were working in Welcome Poker), and

26

27

he caused the transfer of the licenses for the poker machines of Welcome Poker to KSK Corp. *Id.*, page 38, lines 20 to 23; page 39, lines 1 to 6; page 50, lines 19 to 23.

        10.    As of the date of his deposition, Kim Ki Sung had yet to transfer the utility service for Welcome Poker, Welcome Laundry and Welcome Market into the name of KSK Corp., but he stated that he pays the utility bills when they come due although he has no idea in who's name the utility accounts are currently held. *Id.*, page 51, lines 3 to 11.

On February 3, 2006, Stephen J. Nutting, attorney for the Initial Defendants, moved to withdraw as counsel for the Initial Defendants because they were not paying him and because Mrs. PARK had left the Commonwealth and was unavailable to assist him in defending the case. *See* Motion to Withdraw, ¶¶ 1 and 3. On March 3, 2006, the Court granted Mr. Nutting's Motion to Withdraw.

Based on the above facts, among others, on April 21, 2006, Plaintiffs filed a Motion to Amend Verified Complaint seeking leave of this Court to add KSK Corp. and Kim Ki Sung. On May 12, 2006, the Court granted Plaintiffs' Motion to Amend, and on May 18, 2006, Plaintiffs filed their First Amended Verified Complaint for Violations of the Fair Labor Standards Act and Supplemental State Law Claims ("First Amended Complaint"). Therein, among other claims, Plaintiffs advance claims against KSK Corp. and against Kim Ki Sung, jointly and severally, for successor liability under the Fair labor Standards Act, 29 U.S.C. §§ 201 *et seq.* (the "FLSA").

Subsequent to both the Order of the Court granting Plaintiffs leave to amend, and the filing by Plaintiffs of the First Amended Complaint, on May 22, 2006, KSK Corp. and Kim Ki Sung filed an objection to Plaintiffs' Motion to Amend. In an order dated May 23, 2006, the Court construed the objection as a motion to strike or to dismiss Plaintiffs' First Amended Complaint.

Apparently, on or about June 5, 2006, Mr. KIM and ASIA filed a motion to join in KSK Corp. and Kim Ki Sung's motion to strike or to dismiss. The same day, the Court granted said defendants' motion. The following day, June 6, 2006, the Court amended its June 5, 2006 order, making clear

Page 4 of 15

1  that the Court had already entered ASIA's default on May 12, 2006 and denied ASIA's joinder in

2  defendants' motion to strike or to dismiss. To the undersigned's knowledge, Mr. KIM has not stated

3  his basis for the remedy of dismissal of the claims in Plaintiffs' First Amended Complaint, or any of

4  them, against him.

5                                         ARGUMENT

6  A.    STANDARD FOR MOTIONS TO STRIKE.

7         Under Fed. R. Civ. P. 12(f) the Court may strike from a complaint "any redundant,

8  immaterial, impertinent, or scandalous matter."

9            Both because striking a portion of a pleading is a drastic remedy and because
10           it often is sought by the movant simply as a dilatory or harassing tactic, numerous
             judicial decisions make it clear that motions under Rule 12(f) are viewed with disfavor
11           by the federal court and are infrequently granted. Thus, in order to succeed on a Rule
             12(f) motion to strike surplus matter from an answer, the federal courts have
12           established a standard under which it must be shown that the allegations being
             challenged are so unrelated to the plaintiff's claims as to be unworthy of any
13           consideration as a defense and that their presence in the pleading throughout the
             proceeding will be prejudicial to the moving party. If the district court determines
14           that certain references in a pleading are prejudicial, only those references and not the
             entire paragraphs containing them should be stricken.

15  5C C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE: CIVIL 3d § 1380 (citations omitted)

16  (emphasis added).

17           The district court possesses considerable discretion in disposing of a Rule 12(f)
18           motion to strike redundant, impertinent, immaterial, or scandalous matter. However,
             because federal judges have made it clear, in numerous opinions they have rendered
19           in many substantive contexts, that Rule 12(f) motions to strike on any of these
             grounds are not favored, often being considered purely cosmetic or "time wasters,"
20           there appears to be general judicial agreement, as reflected in the extensive case law
             on the subject, that they should be denied unless the challenged allegations have no
21           possible relation or logical connection to the subject matter of the controversy and
             may cause some form of significant prejudice to one or more of the parties to the
22           action.

23           Thus, it is not surprising that a motion to strike frequently has been denied
24           when the court believes that no prejudice could result from the challenged allegations,
             even though the offending matter literally is within one or more of the categories set
25           forth in Rule 12(f). This has been true, for example, if the pleadings will be withheld
             from the jury or if the jury is carefully instructed as to the weight to be given the
26           pleadings. The Rule 12(f) motion to strike allegedly offensive matter also will be
             denied if the allegations might serve to achieve a better understanding of the

27

                                        Page 5 of 15

1
2
3
4

> plaintiff's claim for relief or perform some other useful purpose in promoting the just and efficient disposition of the litigation.

5C C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE: CIVIL 3d § 1382 (citations omitted) (emphasis added).

5

B.    THERE IS NO BASIS UPON WHICH TO STRIKE ANY ALLEGATIONS IN PLAINTIFFS' VERIFIED AMENDED COMPLAINT.

6
7
8
9
10
11
12
13

There is, simply, no basis presented by defendants upon which to strike any, much less all, of Plaintiffs' First Amended Complaint.    Certainly, Defendants' protestations about the facts surrounding Kim Ki Sung's deposition are a red herring.    The deposition was voluntary.    The translator was neutral.    Kim Ki Sung showed up for a noticed deposition for which a subpoena was properly issued – granted it was for the deposition of his wife, what he purports is the true "owner" of KSK Corp., but he showed up for on her behalf.    He had also shown up, purportedly for his wife, *several days prior to her scheduled deposition* to provide the subpoenaed documents on the day they were demanded, not on the day of his deposition as he suggests several times in his moving papers.

14
15
16
17
18
19
20
21
22
23
24
25
26

Though it has no import to the issues involved in the present motions, as construed by the Court, Kim Ki Sung also wants this Court to believe that he has not had an opportunity to review the record and object: again, nothing could be further from the truth.    A notice was sent to Kim Ki Sung on March 31, 2006 informing him that the transcript of his deposition was complete and available for review and copying at his request. *See* Declaration of Counsel dated June 8, 2006.    At no time has Kim Ki Sung requested a copy of the transcript of his deposition, nor has he requested a copy of the *video taped deposition*, nor has he requested a copy of the concurrently made digital recording of his deposition.    Further, Kim Ki Sung's counsel was informed, shortly after his first appearance in this matter, that the full, certified transcript of the proceedings, the digital voice recording of the proceedings from which the transcript was made, and the video recording of the proceedings were all available to Mr. Kim Ki Sung and his counsel upon request.    Kim Ki Sung's counsel declined to make such a request and, to this date, has yet to make such a request to obtain

27

Page 6 of 15

1   the full record (including the audio and video recordings) of Kim Ki Sung's deposition.

2         Notwithstanding the fact that none of the facts described in defendants' Objection, even if

3   true, would constitute a basis upon which to strike anything, KSK Corp. and Kim Ki Sung have no

4   legal basis upon which to strike any or all of Plaintiffs' First Amended Complaint, nor have they

5   presented any basis.  For that reason, defendants' motion should be denied.

6   C.       STANDARD FOR MOTION TO DISMISS.

7         For purposes of a Fed. R. Civ. P. 12(b)(6) motion to dismiss, review is limited to the contents

8   of the complaint.  *See Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002).

9   All allegations of material fact are taken as true and construed in the light most favorable to the non-

10  moving party.  *See American Family Ass'n, Inc. v. City and County of San Francisco*, 277 F.3d 918 (9th

11  Cir. 2002).  A complaint should not be dismissed unless it appears beyond doubt that the plaintiff

12  can prove no set of facts in support of the claim that would entitle the plaintiff to relief.  *See Van*

13  *Buskirk*, 284 F.3d at 980.

14
15                    [T]he complaint, and other relief-claiming pleadings need not state
                      with precision all elements that give rise to a legal basis for recovery as
16                    long as fair notice of the nature of the action is provided.  However, the
                      complaint must contain either direct allegations on every material
17                    point necessary to sustain a recovery on any legal theory, even though
                      it may not be the theory suggested or intended by the pleader, or
18                    contain allegations from which an inference fairly may be drawn that
                      evidence on these material points will be introduced at trial.

19  5 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2d § 1216 (1990) (citations

20  omitted).

21  D.       PLAINTIFF'S FIRST AMENDED COMPLAINT IS WELL PLED.

22        Plaintiff's Complaint meets the notice pleading requirements of Fed. R. Civ. P. 8(a) and is

23  not subject to dismissal for failure to state a claim upon which relief can be granted.  Plaintiff's

24  Complaint is not deficient.  Defendants' motion, construed by the Court as a motion to dismiss

25  pursuant to Fed. R. Civ. P. 12(b)(6), must be denied.

26        Paragraphs 13 and 14, 18 and 19, and 76 through 94 contain the allegations of joint successor

27
                                        Page 7 of  15

liability of KSK Corporation and Kim Ki Sung. They are not merely conclusory. They state an appropriate claim for relief against both KSK Corp. and Kim Ki Sung, the two of which are actually one and the same.

KSK Corp. and Kim Ki Sung, in their motion, suggest that Plaintiffs failed to *establish* several facts relative to Plaintiffs' claims for KSK Corp.'s successor liability and that Kim Ki Sung and KSK Corp. are actually one and the same. Whether Plaintiffs' have "established" facts is not at issue here. Plaintiffs have pled facts sufficient to put Kim Ki Sung and KSK Corp. on notice of the claims against them; Plaintiffs' have pled facts sufficient to state causes of action against both KSK Corp. and Kim Ki Sung for joint and several successor liability; Defendants' motion to dismiss should be denied.

1.    **Successor Liability Under the FLSA:**

In the seminal case of *Steinbach v. Hubbard*, 51 F.3d 843, 845 (9th Cir. 1995), the Ninth Circuit Court of appeals held that there is successor liability for violations of the FLSA.

> The FLSA was passed to protect workers' standards of living through the regulation of working conditions. 29 U.S.C. § 202. That fundamental purpose is as fully deserving of protection as the labor peace, anti-discrimination, and worker security policies underlying the NLRA, Title VII, 42 U.S.C. § 1981, ERISA, and MPPAA. The analysis set forth in the cases extending potential liability under these statutes justifies application of the doctrine here as well. Consequently, we conclude that successorship liability exists under the FLSA.

*Steinbach v. Hubbard*, 51 F.3d at 845.

After establishing that successor liability exists under the FLSA, the Appellate Court went on to espouse the standard for successor liability:

> [S]uccessor liability can attach when 1) the subsequent employer was a bona fide successor and 2) the subsequent employer had notice of the potential liability. []. Whether an employer qualifies as a bona fide successor will hinge principally on the degree of business continuity between the successor and predecessor. []. The Ninth Circuit has fleshed out this test when dealing with other employee individual rights statutes by adding a third consideration: the extent to which the predecessor is able to provide adequate relief directly. [].

*Id.* at 846 (citations omitted).

> Business continuity is established by weighing (1) the similarity of business operations; (2) use of the same physical facilities; (3) use of the same workforce; (4)

existence of the same jobs under the same working conditions;  (5) presence of the
same supervisors;  (6) use of the same methods of production;  and (7) production of
similar products and/or services.  *See NLRB v. Jeffries Lithograph Co.*, 752 F.2d 459,
463-64 (9th Cir.1985).

*Herrera v. Singh*, 118 F. Supp. 2d 1120, 1123 (E.D. Wash. 2000) (applying successor liability to the
Agricultural Workers Protection Act, citing *Steinbach v. Hubbard*).

In one case, a court in the Ninth Circuit held that: "A subsequent employer is a successor

employer if it hires most of its employees from the previous employer's work force and conducts

essentially the same business as its predecessor without a fundamental change in working

conditions." *Grimm v. Healthmont, Inc.*, 2002 WL 31549095 (D. Or. 2002) (citing *Trustees for*

*Alaska Laborers-Construction Industry Health & Sec. Fund v. Ferrell*, 812 F.2d 512 (9th Cir.1987) (an

individual member of a joint venture who continued to operate the same business with the same

employees and equipment after the joint venture ceased operations was a successor employer for

purposes of ERISA liability)). *See also Chicago Truck Drivers, Helpers and Warehouse Workers Union*

*(Independent) Pension Fund v. Tasemkin, Inc.*, 59 F.3d 48, 51 (7th Cir. 1995) (reversing the lower

court's dismissal and allowing successor liability claim to proceed despite prior bankruptcy discharge

of predecessor, stating:  "Here, those facts include the apparent nature of the acquisition of Old

Tasemkin by New Tasemkin--which clearly had the effect, intended or no, of frustrating unsecured

creditors while resurrecting virtually the identical enterprise.").

To the extent defendant cites cases regarding general successor liability that apply standards

different from those articulated by the Ninth Circuit in FLSA and other employment law cases cited

above, where the Court has taken additional steps to ensure particular acts' "broad remedial

measures," such cases are inapposite.

2.    **KSK Corp. Is Successor to the Liability of the Initial Defendants:**

Here, KSK Corp. is a bonafide successor under the meaning of the FLSA.  Kim Ki Sung on

behalf of KSK Corp. transferred the employees of JUNG JIN to the employ of KSK Corp.  Kim Ki

Sung Depo., page 50, lines 19 to 23; page 51, lines 1 to 2.  JUNG JIN and ASIA have transferred all

Page 9 of  15

of their interests in laundry machines and other laundry assets, and the poker machines they operated in Welcome Poker, to KSK Corp. Kim Ki Sung Depo., Exhibits D and I.  KSK has subleased the physical property where the businesses were located from JUNG JIN.  Kim Ki Sung Depo., Exhibit H.  KSK continues to use those items and is still in the same physical location as the previous owners. *Id*.  KSK's business is running the laundrymat and poker parlor.  Kim Ki Sung Depo., page 22, lines 11 to 12.

Further, as early as August 2005, KSK Corp. and Kim Ki Sung had notice of the potential liability in taking over the businesses of ASIA and JUNG JIN.  Kim Ki Sung Depo., page 18, line 7 to 21, line 8 (Kim first heard about this lawsuit in the newspaper and other third parties shortly after it was filed); page 59, lines 5 to 8 (Kim stating that defendants mentioned the labor complaint and said they should just swap assets for the alleged outstanding debt).

In short, KSK Corp. and Kim Ki Sung conduct essentially the same business as its predecessors (the named defendants herein) without a fundamental change in working conditions. That, together with their prior knowledge of Plaintiffs' claims in this lawsuit, support this Court finding that KSK Corp. and Kim Ki Sung are successors to the liability of the Initial Defendants in this matter.

There is no merit to Defendants' argument that the nature of the transaction(s) by which a successor comes to own and operate a business is determinative. *See, e.g., Stoumbos v. Kilimnik*, 988 F.2d 949, 961 (9th Cir. 1993) (cited by defendants) (Court of Appeals reversing bankruptcy court holding, among other things, that successor liability may apply where predecessor sells assets "or otherwise transfers assets." *** "The mere fact that the transfer of assets involved foreclosure on a security interest will not insulate a successor corporation from liability where other facts point to continuation." *Id*. at 962.); *Eagle Pacific Insurance Co. v. Christensen Motor Yacht*, 135 Wash.2d 894, 901, 959 P.2d 1051, 1055 (1998) ("Liability may be imposed regardless of the exact form of the transfer of assets between the corporations." citing *Stoumbos v. Kilimnik*.); *Glentel, Inc. v. Wireless*

*Ventures, LLC*, 362 F. Supp. 2d 992, 1000 (N.D. Ind. 2005) (also cited by defendants) (court found that successor liability is not precluded just because it was a surrender of collateral to a creditor with a perfected UCC security interest).  It should be noted that none of the cases cited by defendants that are discussed above apply the tests articulated by the Ninth Circuit that apply to FLSA and other employment law cases; those cases deal with judgment creditors and successor liability generally, outside the context and special considerations of the broad remedial measures of federal employment laws.

Defendants' wholly unsupported argument that a successor must have "concrete evidence that any employees had not been paid their wages" (see Objection at 18) also holds no weight.  The proper test, as articulated by the Ninth Circuit Court of Appeals in *Steinbach v. Hubbard*, 51 F.3d 843, 845 (9th Cir. 1995) is whether "the subsequent employer had notice of the potential liability," not, as defendants argue, whether the successor knew every detail of the claims asserted prior to his succession.  "The principle reason for the notice requirement is to ensure fairness by guaranteeing that a successor had an opportunity to protect against liability by negotiating a lower price or indemnity clause." *Steinbach v. Hubbard*, 51 F.3d 843, 847 (9th Cir. 1995) (citing *Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 185, 94 S.Ct. 414, 425-26, 38 L. Ed.2d 388 (1973)).

Here, Kim Ki Sung admittedly had knowledge of this particular lawsuit against the individuals and entities from whom he was receiving their operating business.  Even a cursory due diligence review by Kim Ki Sung would have enlightened him of "the concrete evidence" he claims he lacked before he took over the businesses that are liable to Plaintiffs.  Kim Ki Sung and KSK Corp. had the requisite notice that this suit was pending; they are liable successors.

Defendants' wholly unsupported argument that the corporate Initial Defendants in this case must have been dissolved before KSK and Kim Ki Sung can be liable as successors is inapposite.  The "dissolution" of a corporation is not, in and of itself, an indicator of its willingness or ability to pay its debts.  *See*, for example, Title 4, § 4605 of the Commonwealth Code (Effects of Dissolution).

Page 11 of 15

The proper inquiry is of the type employed by the court in *Herrera v. Singh*, 118 F. Supp. 2d 1120, 1123 (E.D. Wash. 2000). There, the court there examined the successor defendant's claim that its predecessor had sufficient assets to satisfy a judgment and, therefore, it should not be liable as a successor and denied the same holding the successor liable. *Id.* at 1124. If was a factual inquiry. *Id.*

In short, all of defendants' arguments against successor liability are factual arguments. None of defendants' arguments provide any legal basis to dismiss them from the First Amended Complaint. Plaintiffs' have stated a valid cause of action against KSK Corp. and Kim Ki Sung for successor liability; defendants' motion to dismiss should be denied.

3.    **Kim Ki Sung and KSK Corp. Are One and the Same:**

For purposes of defendants' motion, Plaintiffs' accept defendants' recitation of the law as it relates to defendants' unity of ownership and identity. *See* Objection at 19 (citing SEC v. Hickey, 322 F.3d 1123, 1128 (9th Cir. 2003) applying alter ego law of the State of California). Although the facts of *SEC v. Hickey*, particularly the control, influence and deliberateness the *Hickey* court found, have substantial import in this case, Plaintiffs submit that they do not have to prove or establish any facts to survive defendants' objection to the First Amended Complaint. Plaintiffs have stated a valid cause of action against Kim Ki Sung as being one and the same as KSK Corp., both being the successor to FLSA liability of the Initial Defendants.

In any case, by his own admission, Kim Ki Sung's business is KSK Corporation. Kim Ki Sung Depo., page 14, lines 10 to 20. Kim Ki Sung incorporated KSK Corp. in the CNMI in about February 2003. *Id.* page 14, lines 21 to 23; page 15, lines 1 to 4. KSK Corp., by its corporate documents, purports to have two shareholders, Kim Sung Eun and Kim Ok Ja. Id. Kim Ki Sung Depo.; Exhibit J. Kim Sung Eun is Kim Ki Sung's wife. Kim Ki Sung Depo., page 16, lines 12 to 15. Kim Ok Ja is Kim Ki Sung's mother-in-law. *Id.*, page 16, lines 20 to 23.

Although Kim Ki Sung is not listed as a shareholder or an officer of KSK Corp., he refers to

Page 12 of 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

the corporation as his own.  *See, e.g.*, Kim Ki Sung Depo., pages 13, line 19 to 14, line 23 (Kim opened his own poker parlor under the name Fun and Win with a corporation he formed named KSK Corporation which stands for Ki Sung Kim); page 21, line 13 to 22, line 23 (Kim has a company named KSK Corporation); page 24, line 22 to 25, line 9 (Kim wondering why "his" corporation and "his" business is being deposed); page 26, lines 4 to 8 (Kim denying any relationship of "his" corporation to defendant Kim Hang Kwon's corporation insisting that his loan was personal to Kim Hang Kwon, not a loan between their corporations); page 63, line 16 to 65, line 18 (Kim describing how he, his wife and KSK are all really one, and how he collects and uses money indiscriminately).

   Additionally, Kim Ki Sung has personally given and received property to and from the defendants here, but he now claims that the assets he swapped for the debt owed to him are owned by "his" corporation – KSK Corp.  *See, e.g.*, Kim Ki Sung Depo., Exhibits D and E.[2]

   As one example of defendants' disingenuousness, incredibly, defendants argue in their motion, among other things, that "Plaintiffs have not produced *a shred of evidence* showing that Kim Ki Sung has co-mingled his assets with that of KSK."  Objection at 9, ¶ 6 (emphasis added).  The

_____

   [2]  For example, the document that transferred poker machines from ASIA to KSK Corp. is entitled a bill of sale.  Kim Ki Sung Depo., Exhibit D.  There was not a transfer of money for the machines, but rather the machines were transferred in "repayment" of a $26,000.00 "debt" allegedly owed by defendant Kim Hang Kwon, personally, as a "business partner" of Kim Ki Sung, personally.  Kim Ki Sung Depo. page 26, lines 18 to 23; page27, lines 2 to15.

   On the same day, Park Hwa Sun executed a bill of sale for transfer to KSK Corp. of JUNG JIN's laundry machines.  Kim Ki Sung Depo., Exhibit I.  Again, no money exchanged hands – this transfer also was a swap for an alleged prior debt of Kim Hang Kwon and Park Hwa Sun to Kim Ki Sung personally.  Kim Ki Sung Depo., pages 50-51.

   In both instances whereby KSK Corp. came to "own" and operate all or most of defendants businesses, the transactions were swaps for alleged debts (allegedly) owed personally to Kim Ki Sung.

three paragraphs that precede that, however, and subsequent argument on page 20-21 of the Objection, show exactly how off the mark Kim Ki Sung is. *See* Objection at 9, ¶ 3 (defendants claim that Kim Ki Sung used his personal funds for Asia's benefit); ¶ 4 (defendants claim that Kim Ki Sung loaned Kim Hang Kwon $100,000); ¶ 5 (defendants allege that Kim Ki Sung is not a shareholder, nor an officer or director of KSK Corp.). Yet Kim Ki Sung cannot dispute that he purports to have caused *KSK Corp.* to acquire the assets of the other defendants in exchange for these supposed personal debts of Kim Ki Sung. *See, e.g.*, Kim Ki Sung Decl., ¶ 13. Another example Kim Ki Sung's untenable position is contained in his Declaration at ¶ 9 (emphasis added): "In December of 2004, *I* loaned Mrs. Park and her company $100,000. She agreed to repay the loan *to KSK Corporation* within one year, or by December 1, 2005."

In any case, as stated above, the standard applicable here is not whether Plaintiffs' have established or proved a case against Kim Ki Sung, the question is whether Plaintiffs have stated a case in their First Amended Complaint. The Court's answer to that should be in the affirmative. Defendants' motion should be denied.

CONCLUSION

Defendants' motion to dismiss is without merit. It should be denied. Defendant Kim Hang Kwon has provided no basis for relief; his motion should also be denied.

Page 14 of 15

1    DATED this 8th day of June, 2006.

2

3                                                    MARK B. HANSON
                                                     First Floor, Macaranas Building
4                                                    Beach Road, Garapan
                                                     PMB 738, P.O. Box 10,000
5                                                    Saipan, Mariana Islands 96950

6

7                                                    Attorney for Plaintiffs

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27