**Robert Tenorio Torres**
**Attorney at Law**
P.O. Box 503758
Saipan, MP 96950
Tel: (670) 234-7859

Attorney for Kim Ki Sung and KSK Corporation

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| LI YING HUA, LI ZHENG ZHE, and XU JING JI,<br><br>Plaintiffs,<br><br>vs.<br><br>JUNG JIN CORP., a CNMI corporation, ASIA ENTERPRISES, INC., a CNMI corporation, PARK HWA SUN, KIM HANG KWON, KSK CORPORATION, a CNMI corporation, and KIM KI SUNG,<br><br>Defendants. | Case No. CV 05-00019<br><br>**REPLY BRIEF OF KSK CORPORATION AND KIM KI SUNG IN SUPPORT OF MOTION TO STRIKE OR DISMISS VERIFIED COMPLAINT**<br><br>Date: June 19, 2006<br>Time: 1:00 p.m.<br>Judge: Hon. Alex R. Munson |

## INTRODUCTION

In their Opposition, Plaintiffs present a patchwork of scenarios that, in their view, transform a simple secured transaction into a legal obligation for wages owed to the Plaintiffs. Contrary to Plaintiffs' tortured reading of *Steinbach*, however, this case does not fit the mold of successor liability. *Steinbach* cautions that even when a subsequent employer actually hires the

same employees, operates out of the same office, provides the same general services, keeps the same operational supervisor, and uses the same or similar equipment, successor liability does not necessarily follow. The syllogism is inapplicable in this case.

Material and undisputed facts demonstrate that the aggrieved employees were long gone before KSK took possession of its collateral and began operating a new poker arcade and laundry. These same facts likewise demonstrate that no employee who transferred to KSK came with the baggage of unpaid wages, and that there was no clear notice of any outstanding wage claims. Where the protection of bona fide credit transactions and the bailout of struggling companies number among the policies at issue for the common law application of the rule, *Steinbach* teaches that KSK should not qualify as a successor for purposes of liability under FLSA. There are likewise no facts to support for Plaintiffs' frivolous allegations against Kim Ki Sung.

**UNREFUTED FACTS**

In their Opposition, Plaintiffs admit or fail to controvert virtually any of the material facts set forth in Mr. Kim's Motion. These unrefuted facts establish that other than as a passive investor in a short term business venture with Defendant Kim Hang Kwon that dissolved after a few unprofitable

1  months,[1] Kim Ki Sung's relationship to Kim Hang Kwon and the remaining

2  defendants in this case is that of creditor-debtor. Kim Ki Sung Decl. at ¶¶ 7-

3  10; Dep. Tr. at 26: 4-8, 20-23.  They further illustrate a simple secured loan

4  transaction in which Welcome's poker machines and laundry equipment

5  served as collateral.  Kim Ki Sung Decl. at ¶ 9.  By December 2005,

6  Defendants owed KSK $126,000.  Kim Ki Sung Decl. at ¶¶ 7-10.  When Mrs.

7

8  Park and Kim Hang Kwon were unable to find a buyer for the business or

9  repay their loans, they transferred the poker machines and laundry equipment

10  to KSK Corp., effective January 2006.  *Id.* at ¶¶ 12-13.

11  Effective December 30, 2005, Mrs. Park and Jung Jin Corporation

12  subleased the premises, then occupied by Welcome Poker and Laundry, to

13  Kim Sung Eun and her company, KSK Corp., for the remaining four years of

14  the outstanding lease. Kim Ki Sung Decl. at ¶ 13.  KSK Corporation

15

16  commenced operating a laundry and poker facility under the name of Shany

17  Two Poker and Laundry, and transferred the license to operate the poker

18  machines into KSK's name.  *Id.; see also* Kim Dep. at 38-39.  Although

19  Plaintiffs filed their Verified Complaint to collect unpaid wages from

20  Defendant Jung Jin Corp. on June 22, 2005, none of the Plaintiffs in this

21

22

23  [1] See Declaration of Kim Ki Sung ("Kim Ki Sung Decl."), attached as Exhibit "B" to Notice of Limited Special Appearance of Counsel to Object to Motion to Amend Verified Complaint (the "Objection") at ¶¶ 7-10.

**Robert Tenorio Torres**
Attorney at Law
P.O. Box 503758 - Saipan MP 96950
(670) 234-7859

lawsuit provided notice to Mr. Kim or KSK of their wage claims. Although in or about August of 2005, Kim Ki Sung learned from the SAIPAN TRIBUNE that an employee of Jung Jin Corporation had filed a lawsuit alleging inappropriate sexual conduct, sexual harassment, and unpaid wages, prior to the actual transfer of KSK assets, Kim Hang Kwon told Kim Ki Sung that Jung Jin employees had been paid all of their wages. Kim Ki Sung Decl. at ¶ 15. No Plaintiff, moreover, ever worked for KSK.

## ARGUMENT

### A. LEGAL STANDARD GOVERNING THIS MOTION

Kim Ki Sung and KSK do not dispute Plaintiffs' recitation of the legal standard governing a motion to dismiss and a motion to strike set forth on pages 5 and 6 of their Opposition, or that, as a general rule, the Court will not consider evidence or documents beyond the complaint in the context of a Rule 12(b)(6) Motion to Dismiss. *See Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir.1990) (amended decision).

Where, however, both parties incorporate into their briefs extrinsic evidence and matters outside the complaint, the court may convert the motion to a motion for summary judgment. *See, e.g., San Pedro Hotel Co., Inc. v. City of L.A.*, 159 F.3d 470, 477 (9th Cir.1998) (when matters outside the complaint are considered by the court on a motion to dismiss, the motion

should be treated as one for summary judgment).

When a party is represented by counsel, moreover, formal notice to treat the matter as one for summary judgment is largely unnecessary, since a "represented party who submits matters outside the pleadings to the judge and invites consideration of them has notice that the judge may use them to decide a motion originally noted as a motion to dismiss, requiring its transformation to a motion for summary judgment." *Grove v. Mead School Dist. No. 354*, 753 F.2d 1528, 1532-33 (9th Cir.1985). Considering these factors and Plaintiffs' opportunity to question Mr. Kim about his relationship to KSK without interference or interruption, it is entirely appropriate to treat this matter as one for summary judgment on the issues of successorship and alter ego.

### B.  KSK IS NOT A SUCCESSOR CORPORATION

Neither party disputes the test for successor liability in an asset purchase case or the test for successor liability articulated by the Ninth Circuit under the FLSA. *See Steinbach v. Hubbard*, 51 F.3d 843, 845 (9th Cir. 1995).[2]

The problem with the Opposition is that it applies only two of the three

---

[2] First, the Court must find the new business retains common aspects of the prior business sufficient to allow the legal conclusion of 'successorship.' 51 F.3d at 845-847. Second, the Court must conclude the successor knew of the violations at the time it *purchased* the business. *Id.* Finally, and in every case, the court balances the interests of the affected parties against the policies served by the statute, and give due credence to the facts of each case. *Id.*

*Steinbach* criteria . Under *Steinbach,* there is no *per se* rule in determining successor liability. 51 F.3d at 847. Even when the company at issue hires the same employees as the company owing wage claims, operates out of the same office, provides the same general services, retains the same operational supervisor, and uses the same or similar equipment, the Ninth Circuit declined to impose successorship liability under FLSA, given the interests of the affected parties as well as the policies supporting free transfer of capital. *Id.*

No different an outcome is called for in this case. Unrefuted facts confirm the absence of any known wage claims when the security interest was created. These same facts reflect reassurances from the Defendants that all employees had been fully paid. Contrary to the "typical" successorship case where a purchaser has ample opportunity to negotiate a lower price for a business acquisition so as to accommodate the unpaid wages of acquired employees, no such opportunity presented itself in this secured credit transaction. No plaintiff-employees with wage claims ever transferred to KSK. While Mr. Kim may have read something about a wage claim in the newspaper, the truth is that KSK was in little better position to protect itself than were the former employees. In this secured transaction, there was no opportunity to protect against liability by, for example, negotiating a lower price or indemnity clause. *See Steinbach,* 51 F.3d at 847. What was the

significant fact? That there was a default; that the debtor did not and could not pay the debt. Upon default, the asset transfer occurred. As with the analysis in *Steinbach,* to impute successor liability would be inappropriate as to a creditor who did nothing except to minimize his losses from a loan of over $100,000. That is not fair.

According to Plaintiffs, KSK had two choices: (1) abandoning $126,000 of hard-earned money or (2) taking the collateral upon the penalty of satisfying someone else's wage claim. *Steinbach*, however, presents a third alternative: to permit the transfer of assets to a bona fide creditor who provides financial assistance to the struggling company. 51 F.3d at 846( citing *Musikiwamba v. ESSI, Inc.,* 760 F.2d 740. 50-51 (7th Cir. 1985)); *see also, NLRB v. Burns Int'l Security Servs., Inc.,* 406 U.S. 272, 287-88, 92 S.Ct. 1571, 1582, 32 L.Ed.2d 61 (1972) (recognizing public interest in free transfer of struggling companies as consideration weighing against successorship liability). The court noted that while these concerns did, not alone suffice to bar successorship liability, they did provide reason to consider transfers, such as the one involved, in a different light. 51 F.3d at 847.

Distressed companies like Jung Jin do not have an easy time finding suitors, and Jung Jin was unable to do so. A capital infusion or other financial assistance such as that extended by Mr. Kim permitted Jung Jin to remedy its

cash flow problems and become, for at least some time, a viable concern that could remain in business. Imposing automatic successorship liability on a creditor who advances assistance to a distressed company would undermine these benefits to the company, and would likewise do no service and would perhaps further harm the employees who work there. Why? Because the creditor who takes over to discharge the debt would protect himself against any further liability as to those continuing employees by paying them. That is a good policy which flows from *Steinbach*. That is what Mr. Kim has done. Consequently, in this case, as in *Steinbach,* the interests of the parties well as the policies underlying FLSA and supporting free transfer of capital, weigh in favor of excluding KSK as a successor.

     This is not a case where employees who are owed wages are forced to work for essentially the same employer. KSK, moreover, stood in the same shoes as the plaintiffs. No policy would be served by preferring plaintiffs' claim over that of other creditors who loaned money to the troubled company and secured their loans. On balance, no successorship liability should be imposed in this case.

**C.  THERE IS NO PROOF ESTABLISHING KIM KI SUNG AS THE ALTER EGO OF KSK**

KSK is a company owned by Mr. Kim's wife and mother and for whom

he works as a general manager. Mr. Kim's decision to direct the asset acquisition to KSK instead of himself thus makes good sense. Aside from one ubiquitous reference to "same same" (same name?) in the deposition transcript (Tr. 64), Plaintiffs cannot point to any facts showing the requisite unity of interest and ownership central to an alter ego claim. There are, likewise, no facts even hinting that maintaining the separateness of the corporation would sanction a fraud or promote injustice.

Plaintiffs had ample opportunity to question Mr. Kim about his relationship to KSK. The result appears in the Deposition Excerpts. Based on these results, it would be manifestly unjust to require Mr. Kim to go to the expense of defending a lawsuit when there is no evidence calling for his personal liability. The allegations should be struck, in light of the absence of any evidence pointing to Mr. Kim's abuse of KSK.

## CONCLUSION

Plaintiffs took advantage of Mr. Kim's willingness to provide documents on behalf of his wife to induce him to testify. To obtain his cooperation, moreover, Plaintiffs' counsel expressly represented unequivocally that his clients were not "making claims that [Mr. Kim' owe[d] them wages,"[3] and that they were only interested in collecting their unpaid

---

[3] Dep. Tr. at 89-19.

wages from Kim Hang Kwon and Park Hwa. Dep. Tr. at 18-19. Even after taking the deposition, moreover, Plaintiffs ignored what they discovered: that like Plaintiffs, KSK was a simply a creditor looking to get paid. Why should Mr. Kim worry? He has paid the transferred employees. He has protected his investment against further losses. As to Plaintiffs who were not paid their wages, their remedies are against the other defendants, not KSK or Mr. Kim. Neither KSK nor Mr. Kim incurred the wage obligation. Neither KSK nor Mr. Kim knew of the liability when funds were loaned to Jung Jin to permit it to continue in operation. Since KSK was simply a creditor that managed to offset obligations against secured assets, it would be grossly unfair to require it to pay the wages of employees it never hired and whose obligations it never assumed.

Since no material facts are disputed, this court should decline to impose successorship liability upon KSK. There is no basis, moreover, for holding Mr. Kim responsible for any of the Defendants' obligations. Dismissal of the Complaint, Striking of the Claims, or Summary Judgment is appropriate in favor of KSK and Mr. Kim.

Respectfully submitted this 15th day of June, 2006.

_____/s/_____
ROBERT T. TORRES, ESQ., F-0197
Attorney for KSK Corporation and Kim Ki Sung