1    MARK B. HANSON, ESQ.
     First Floor, Macaranas Building
2    Beach Road, Garapan
     PMB 738 P.O. Box 10,000
3    Saipan, Mariana Islands 96950
     Telephone:    (670) 233-8600
4    Facsimile:    (670) 233-5262

5    Attorney for Plaintiffs

6
                   IN THE UNITED STATES DISTRICT COURT
7                             FOR THE
                    NORTHERN MARIANA ISLANDS
8
     LI YING HUA, LI ZHENG ZHE and XU JING JI, )   CASE NO. CV 05-0019
9                                              )
                        Plaintiffs,            )
10                                             )
                   vs.                         )
11                                             )
     JUNG JIN CORPORATION, a CNMI corporation, )
12   ASIA ENTERPRISES, INC., a CNMI corporation,)
     PARK HWA SUN and KIM HANG KWON,           )
13                                             )   Date:      August 10, 2006
                        Defendants.            )   Time:      9:00 a.m.
14   ──────────────────────────────────────    )   Judge:     Hon. Alex R. Munson

15

16   ────────────────────────────────────────────────────

17

18        MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR

19                      SUMMARY JUDGMENT

20   ────────────────────────────────────────────────────

21

22

23

24

25

26

27

TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STANDARD FOR SUMMARY JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.   PLAINTIFFS' CLAIMS FOR UNPAID WAGES. . . . . . . . . . . . . . . . . . . . . . . . . . . 4

  A.  *Fair Labor Standards Act Overtime Claims:* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

  B.  *Failure of Employer to Maintain Time Records Shifts Heavy Burden to Employer:* . . . . . 4

  C.  *Liquidated Damages under § 216 of the FLSA:* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

II.  PLAINTIFFS' CLAIMS FOR BREACH OF CONTRACT. . . . . . . . . . . . . . . . . . . . . . 10

  A.  *Breach of Contract:* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

  B.  *Statutory Liquidated Damages for Breach of Contract:* . . . . . . . . . . . . . . . . . . . . . . 11

III.    PLAINTIFFS' DAMAGES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

IV.  DEFENDANTS' JOINT AND SEVERAL LIABILITY. . . . . . . . . . . . . . . . . . . . . . . 13

  A.  *Joint Employer Liability:* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

  B.  *Enterprise Liability Under the FLSA:* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

  C.  *Alter Ego Liability:* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

APPENDIX 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

1    TABLE OF AUTHORITIES

2    <u>Cases</u>:

3    *Alvarez v. IBP, Inc.*, 339 F.3d 894 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

4    *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255,

5        106 S. Ct. 2505, 2513, 91 L. Ed. 2d 202 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

6    *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 66 S.Ct. 1187,

7        90 L.Ed. 1515 (1946) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

8    *Balint v. Carson City*, 180 F.3d 1047 (9th Cir. 1999) *(en banc)* . . . . . . . . . . . . . . . . . . . . . . . . 2

9    *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 66 S.Ct. 574 (1946) . . . . . . . . . . . . . . . 6

10   *Bonnette v. California Health and Welfare Agency*, 704 F. 2d 1465 (9th Cir. 1983) . . . . . 12,14

11   *Bratt v. City of Los Angeles*, 912 F. 2d 1066 (9th Cir. 1990), *cert. denied*,

12       498 U.S. 1086, 111 S. Ct. 962, 112 L. Ed. 2d 1049 (1991) . . . . . . . . . . . . . . . . . . . . . 9-10

13   *Brennan v. Arnheim & Neely, Inc.*, 410 U.S. 512, 93 S.Ct. 1138,

14       35 L. Ed. 2d 463 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

15   *Brock v. Seto*, 790 F. 2d 1446 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

16   *Brock v. Shirk*, 833 F. 2d 1326 (9th Cir. 1987) (per curiam),

17       *vacated on other grounds* 488 U.S. 806, 109 S.Ct. 38, 102 L. Ed. 2d 18 (1988) . . . . . . . . 9

18   *Bureerong v. Uvawas*, 922 F. Supp. 1450 (C.D. Cal. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

19   *Castillo v. Givens*, 704 F. 2d 181 (5th Cir. 1983), *cert. denied*,

20       464 U.S. 850, 104 S.Ct. 160, 78 L. Ed. 2d 147 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . 14

21   *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 3548, 91 L.Ed. 2d 265 (1986) . . . . . . . . . 2

22   *Chao v. A-One Medical Services, Inc.*, 346 F.3d 908 (9th Cir. 2003) . . . . . . . . . . . . . . . 8-9, 17

23   *Cox v. Brookshire Grocery Co.*, 919 F. 2d 354 (5th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . 10

24   *Dole v. Elliott Travel & Tours, Inc.*, 942 F. 2d 962 (6th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . 8

25   *Donovan v. Grim Hotel Co.*, 747 F. 2d 966 (5th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . 115

26   *Donovan v. Sabine Irrigation Co., Inc.*, 695 F. 2d 190 (5th Cir. 1983),

27

*cert. denied*, 463 U.S. 1207 (1983) ........................................... 15

*Donovan v. Sureway Cleaners*, 656 F. 2d 1368 (9th Cir. 1981) ....................... 14

*Eastman Kodak Co. of New York v. Southern Photo Materials Co.*,

   273 U.S. 359, 47 S.Ct. 400, 405, 71 L. Ed. 684 (1927) ........................... 6

*Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) ..............

*Economic Dev. Loan Fund v. Pangelinan*, 2 CR 451 (D.N.M.I. App. Div. 1986) ...........

*E.E.O.C. v. First Citizens Bank of Billings*, 758 F. 2d 397 (9th Cir. 1985),

   *cert. denied*, 474 U.S. 902 (1985), *overruled in part on other grounds*,

   *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988) ......................... 8

*Elwell v. Univ. Hosps. Home Care Servs.*, 276 F.3d 832 (6th Cir. 2002) ................. 9

*Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 116 S.Ct. 2211,

   135 L. Ed. 2d 659 (1996) ............................................... 11 n.1

*Goldberg v. Whitaker House Cooperative*, 366 U.S. 28, 81 S.Ct. 933,

   6 L. Ed. 2d 100 (1961) ................................................... 12

*Hale v. State of Arizona*, 993 F.2d 1387 (9th Cir. 1993), *cert. denied*,

   510 U.S. 946, 114 S.Ct. 386, 126 L. Ed. 2d 335 (1993) ......................... 14

*Herman v. RSR Security Services*, 172 F.3d 132 (2nd Cir. 1999) ..................... 4, 8

*Hodgson v. Wheaton Glass Co.*, 446 F. 2d 527 (3rd Cir. 1971) ..........................

*In re Larry's Apartment, L.L.C.*, 249 F.3d 832 (9th Cir. 2001) ........................

*Laffey v. Northwest Airlines, Inc.*, 567 F. 2d 429 (D.C. Cir. 1976),

   *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed. 2d 792 (1978) ................. 9

*Marshall v. Brunner*, 668 F. 2d 748 (3rd Cir. 1982) ............................. 9-10

*Marshall v. Coach House Restaurant, Inc.*, 457 F. Supp. 946 (S.D.N.Y. 1978) ........... 4

*Martin v. Deiriggi*, 985 F. 2d 129 (4th Cir. 1992) .....................................

*McLaughlin v. Ho Fat Seto*, 850 F. 2d 586 (9th Cir. 1988) ........................... 6

*Meade v. Cedarapids, Inc.*, 164 F.3d 1218 (9th Cir. 1999) ........................... 2

-iii-

*Nationwide Mutual Ins. Co. v. Darden*, 503 U.S. 318,

    112 S.Ct. 1344, 117 L. Ed. 2d 581 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572,

    62 S.Ct. 1216, 86 L.Ed. 1682 (1942) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Palmer v. Connecticut Railway & Lighting Co.*, 311 U.S. 544,

    61 S.Ct. 379, 85 L.Ed. 336 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Real v. Driscoll Strawberry Associates*, 603 F. 2d 748 (9th Cir. 1979) . . . . . . . . . . . . . . . . . . .

*Reich v. Circle C Investments, Inc.*, 998 F. 2d 324 (5th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . .

*Reich v. Japan Enterprises, Inc.*, 91 F.3d 154 (9th Cir. 1996) (Unpublished) . . . . 14-15, 17-18

*Reich v. Southern New England Telecommunications Corp.*,

    121 F.3d 58 (2nd Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Rutherford Food Corp. v. McComb*, 331 U.S. 722,

    67 S.Ct. 1473, 91 L. Ed. 1772 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-13

*Samson v. Apollo Res., Inc.*, 242 F.3d 629 (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Story Parchment Co. v. Paterson Parchment Co.*, 282 U.S. 555,

    51 S.Ct. 248, 75 L.Ed. 544 (1931) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Thiebes v. Wal-Mart Stores, Inc.*, 2004 WL 1688544 (D. Or. 2004) . . . . . . . . . . . . . . . . . . . . 7

*United Enterprises, Inc. v. King*, 4 N.M.I. 304 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19-20

Statutes:

    Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4-12, 17

    Title 3 Commonwealth Code § 4447(d) (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    Title 7 Commonwealth Code C.M.C. § 3401 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . 11 n.1

Rules:

    Fed. R. Civ. P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

-iv-

Regulations:

    29 C.F.R. § 516. 2(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    29 C.F.R. Part 779, Subpart C . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Other:

    Covenant to Establish a Commonwealth of the Northern Mariana Islands

        in Political Union with the United States of America, Article V, §502(a)(2) . . . . . . . . .

    Sen. Rep. No. 145, 87th Cong., 1st Sess., *reprinted in* 1961 U.S.C.C.A.N. 1620, 1659) . . . . 4

    Restatement (Second) of Contracts § 235(2) (1981) . . . . . . . . . . . . . . . . . . . . . . . . . 11

INTRODUCTION

The evidence submitted in support of this Motion for Summary Judgment shows that Defendants do not dispute that Plaintiffs were not properly paid for all of the hours they worked for the various Defendants. Defendants admit that Plaintiffs Li Ying Hua and Xu Jing Ji worked 12 hours per day 7 days per week the entire time they were employed by Defendants, and they admit that they were only paid $700.00 per month, less deductions for various items. Defendants claim (in an interrogatory response) that Plaintiff Li Zheng Zhe worked the same – 12 hours per day 7 days per week – but acknowledge Mr. Li was paid $900.00 to $950.00 per month based on an agreement that Mr. Li would work 15 hours per day, 7 days per week strongly suggesting that Defendants paid Mr. Li more than the two other Plaintiffs because he worked more hours. Mr. Li submits testimony that he did, indeed, work 15 hours per day.

Notwithstanding these admissions, Defendants also admit that none of the defendants have time records that would show Plaintiffs' time in and time out each day. Defendant Kim Hang Kwon, in the deposition testimony of Asia Enterprises, Inc., admitted that all of the "paychecks" issued to Plaintiffs were bogus – they were endorsed back to Defendants and all of the Plaintiffs were paid an amount different than that stated in the "paychecks" and for an amount of time greater than that reflected in the "paychecks."

In short, the only thing that Defendants have refused to admit throughout this litigation is that Defendants were actually one enterprise — Jung Jin Corp., owned and managed by Kim Hang Kwon and Park Hwa Sun, husband and wife, and Asia Enterprises, Inc., owned and managed by Kim Hang Kwon and Park Hwa Sun, husband and wife, and Kim and Park themselves, were actually one interconnected, operating employer enterprise. Various theories of joint liability hold both the corporate entity defendants and the individual defendants in this case jointly and severally liable for the claims of Plaintiffs, including but not limited to joint employer liability under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), enterprise liability under the FLSA, and alter ego theory – that all Defendants were all the alter ego of their inseparable owners, Kim and Park.

-1-

1   Accordingly, the calculations for hours worked and regular and overtime wages owed are very

2   straight forward and are provided for the Court in tables attached to the Declaration of Counsel for

3   Plaintiffs submitted to the Court on April 21, 2006.  The declaration testimony of Plaintiffs, in

4   addition to other evidence provided, supports the figures provided in the tables of damages, including

5   the deductions taken by Defendants from Plaintiffs wages, and the remaining evidence submitted

6   by Plaintiffs in support of this Motion shows, beyond a doubt, that Jung Jin, Asia, Park and Kim were

7   all one, single enterprise – one single employer — and that they should be held jointly and severally

8   liable to Plaintiffs for the damages Defendants readily admit.

9                          STANDARD FOR SUMMARY JUDGMENT

10   Summary judgment pursuant to Fed. R. Civ. P. 56(c) is appropriate when the pleadings,

11   depositions, answers to interrogatories, and admissions on file, together with affidavits, show that

12   there is no genuine issues as to any material fact and that the moving party is entitled to a judgment

13   as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 3548, 91 L.Ed. 2d 265 (1986).

14   The burden of establishing the nonexistence of a genuine issue is on the party moving for summary

15   judgement and thus, with regard to the counterclaims at issue in this motion, the burden rests upon

16   CNMI Travel.  *Id.*

17   In evaluating the merits of a summary judgment motion, "the evidence of the non-movant

18   is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson v. Liberty*

19   *Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513, 91 L. Ed. 2d 202 (1986) (citation omitted).

20   Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences

21   from the facts are jury functions, not those of a judge.  *Id.*  The court must not weigh the evidence

22   or determine the truth of the matter, but only determine whether there is a genuine issue for trial.

23   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249;  *Balint v. Carson City*, 180 F.3d 1047, 1054 (9th Cir.

24   1999)(*en banc*).

25   Finally, where a material factual issue exists for trial, summary judgment inappropriate and

26   should be denied.  *Meade v. Cedarapids, Inc.*, 164 F.3d 1218, 1221(9th Cir. 1999).  In other words,

27                                                    -2-

1  if there is sufficient evidence which enable reasonable jurors to differ, summary judgment should be

2  denied. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249-250.

3                                                      FACTS

4          The facts of this case are detailed in great length in Plaintiffs' Proposed Findings of

5  Uncontroverted Fact submitted herewith which, in turn, is supported with citations to substantial

6  evidence obtained in this matter and by the admissions of Defendants.

7          In summary, each plaintiff worked for the Defendants starting at various times and ending

8  shortly before this case was filed in 2005. Defendants paid each plaintiff a fixed monthly salary and

9  each plaintiff worked a fixed period of time — from 12 to 15 hours per day — seven days a week for

10  the entire term of their employment with Defendants. Based on the hours worked by Plaintiffs,

11  Plaintiffs' fixed monthly salary fell far short of the actual pay that Defendants were legally obligated

12  to pay, and that Plaintiffs were legally entitled to receive.

13          Plaintiff Li Ying Hua is owed$23,815. 16, plus an equal amount as liquidated damages, for a

14  total of $47,662.52.

15          Plaintiff Xu Jing Ji is owed$19,428.64, plus an equal amount as liquidated damages, for a total

16  of $38,857. 28.

17          Li Zheng Zhe is owed at least $40,886.50, plus an equal amount as liquidated damages, for

18  a total of $81,773.00.

19          Because Defendants operated their business as one, integrated enterprise without distinctions

20  between ownership, control and operation, and because each of Park and Kim, admittedly, acted

21  directly and indirectly in the interest of the other defendants with respect to each Plaintiff, each of

22  the defendants is jointly and severally liable to Plaintiffs for the total amount of their unpaid wages,

23  including re-compensation for deductions taken, illegally, from their wages, for liquidated damages,

24  for costs and for attorneys' fees. The total amount of Plaintiffs' recoverable damages before costs and

25  attorneys' fees is $168,292.80.

26

27                                                      -3-

1     ARGUMENT

2  I.     PLAINTIFFS' CLAIMS FOR UNPAID WAGES.

3         A.     *Fair Labor Standards Act Overtime Claims:*

4              The enforcement provisions of the FLSA (29 U.S.C. § 216 and 217) serve
   several equally important Congressional purposes. First, the provisions are designed
5  to "secur[e] to employees restitution of statutorily mandated wages." *Marshall v.
   Coach House Restaurant, Inc.*, 457 F. Supp. 946, 951 (S.D.N.Y. 1978). Thus, the
6  FLSA ensures that individual employees will be compensated within the dictates of
   federal law. Second, the enforcement sections ensure that violators are "deprived of
7  the use of unlawfully withheld compensation ..., thereby 'protect(ing) complying
   employers from the unfair wage competition of the noncomplying employers.'"
8  *Marshall*, 457 F. Supp. at 952 (quoting *Hodgson v. Wheaton Glass Co.*, 446 F. 2d 527,
   535 (3rd Cir. 1971) and Sen. Rep. No. 145, 87th Cong., 1st Sess., *reprinted in* 1961
9  U.S.C.C.A.N. 1620, 1659). Third, the enforcement provisions serve to deter future
   violations of the FLSA.
10
   *Bureerong v. Uvawas*, 922 F. Supp. 1450, 1464 (C.D. Cal. 1996).
11
12        The FLSA applies to Commonwealth employers through the Covenant to Establish a

13 Commonwealth of the Northern Mariana Islands in Political Union with the United States of

14 America, Article V, §502(a)(2).

15        Section 207 of the FLSA prohibits businesses from employing workers "engaged in commerce

16 or in the production of goods for commerce" for more than forty hours per week unless the employer

17 pays the worker at one and one-half times his or her regular rate for the hours in excess of forty hours.

   *See* 29 U.S.C. § 207.
18
19        In the Commonwealth, any covered employer who violates the provisions of § 207 of the

20 FLSA is liable to the employee or employees affected in the amount of their unpaid overtime

   compensation and in an additional equal amount as liquidated damages. 29 U.S.C. §§ 216(b).
21
22        B.     *Failure of Employer to Maintain Time Records Shifts Heavy Burden to Employer:*

23        Defendants admit that they have no records which accurately reflect the actual number of

24 hours Plaintiffs worked for Defendants or any of them. *See* Proposed Findings of Uncontroverted

25 Fact, ¶ 86.a. (admitted by Defendants in answers to interrogatories).

26        The FLSA requires employers to keep accurate records of employee hours worked. *See* 29

27                                                   -4-

U.S.C. § 211(c) ("Every employer ... shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him...."); 29 C.F.R. § 516. 2(a) ("Every employer shall maintain and preserve payroll or other records containing the following information:  (7) Hours worked each workday and total hours worked each workweek."); 29 C.F.R. § 516.6(a) ("Each employer required to maintain records under this part shall preserve ... (1) ... all basic time and earning cards or sheet on which are entered the daily starting and stopping time of individual employees ... or the amounts of work accomplished by individual employees on a daily, weekly, or pay period basis.").

Addressing the relative burdens of proving FLSA damages, the United States Supreme Court in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686- 88, 66 S.Ct. 1187, 1192-93, 90 L.Ed. 1515 (1946) stated (with emphasis added):

> An employee who brings suit under § 16(b) of the Act for unpaid minimum wages or unpaid overtime compensation, together with liquidated damages, has the burden of proving that he performed work for which he was not properly compensated. The remedial nature of this statute and the great public policy which it embodies, however, militate against making that burden an impossible hurdle for the employee. Due regard must be given to the fact that it is the employer who has the duty under § 11(c) of the Act to keep proper records of wages, hours and other conditions and practices of employment and who is in position to know and to produce the most probative facts concerning the nature and amount of work performed. Employees seldom keep such records themselves; even if they do, the records may be and frequently are untrustworthy. It is in this setting that a proper and fair standard must be erected for the employee to meet in carrying out his burden of proof.
>
> When the employer has kept proper and accurate records the employee may easily discharge his burden by securing the production of those records. But where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes a more difficult problem arises. The solution, however, is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work. *Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty*; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the Fair Labor Standards Act. In such a situation we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to

-5-

negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate. [].

The employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with the requirements of s 11 (c) of the Act. And even where the lack of accurate records grows out of a bona fide mistake as to whether certain activities or non-activities constitute work, the employer, having received the benefits of such work, cannot object to the payment for the work on the most accurate basis possible under the circumstances. Nor is such a result to be condemned by the rule that precludes the recovery of uncertain and speculative damages. That rule applies only to situations where the fact of damage is itself uncertain. But here we are assuming that the employee has proved that he has performed work and has not been paid in accordance with the statute. The damage is therefore certain. The uncertainty lies only in the amount of damages arising from the statutory violation by the employer. In such a case 'it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts.' *Story Parchment Co. v. Paterson Parchment Co.*, 282 U.S. 555, 563, 51 S.Ct. 248, 250, 75 L.Ed. 544. It is enough under these circumstances if there is a basis for a reasonable inference as to the extent of the damages. *Eastman Kodak Co. of New York v. Southern Photo Materials Co.*, 273 U.S. 359, 377--379, 47 S.Ct. 400, 404, 405, 71 L.Ed. 684; *Palmer v. Connecticut Railway & Lighting Co.*, 311 U.S. 544, 560, 561, 61 S.Ct. 379, 384, 385, 85 L.Ed. 336; *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 263--266, 66 S.Ct. 574, 579, 580.

In *McLaughlin v. Ho Fat Seto*, 850 F. 2d 586, 589 (9th Cir. 1988) the employer challenged the lower court's finding of unpaid overtime for twenty-eight employees where only five of employees testified at trial. The Ninth Circuit, citing the employer's burden under *Anderson v. Mt. Clemens Pottery* upheld the decision, stating among other things: "The testimony of the Secretary's five employee witnesses, while inconsistent in terms of exact days and hours of overtime worked, established "as a matter of just and reasonable inference,"[] that all of the employees regularly worked over eight hours on weekdays and over six hours on many Saturdays."

In *Brock v. Seto*, 790 F. 2d 1446, 1448 (9th Cir. 1986) the lower court dismissed FLSA back wage claims because it found the plaintiffs' evidence of hours worked "too speculative and unspecific." The Ninth Circuit reversed citing *Anderson v. Mt. Clemens Pottery*: "Mt. Clemens Pottery leaves no doubt that an award of back wages will not be barred for imprecision where it arises from the employer's failure to keep records as required by the FLSA."

-6-

*See also Thiebes v. Wal-Mart Stores, Inc.*, 2004 WL 1688544 at *2-3 (D. Or. July 26, 2004) citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946) (employee NOT required to first prevail on a claim for a record keeping violation).  Also in that case, the Oregon District Court held that <u>even though Wal-Mart provided detailed time records for all of the periods worked by the numerous plaintiffs in that case</u>, plaintiffs' fairly speculative estimates of time they worked <u>off-the clock</u> (claims that were, necessarily, not reflected in the time records) should go to the jury with an instruction that plaintiffs were allowed to prove their time by "just and reasonable inference."

  C. *Liquidated Damages under § 216 of the FLSA:*

Liquidated damage awards are made in accordance with 29 U.S.C. § 216(b) of the FLSA, which reads:

> Any employer who violates the provisions of section 206 or section 207 of this Title shall be liable to the employee or employees affected in the amount of their unpaid ... wages ... and an additional equal amount as liquidated damages.

While § 216(b) is mandatory, it is modified by 29 U.S.C. § 260, which states in pertinent part:

> [I]f the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938 ... the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this Title.

Liquidated damages are not a penalty exacted by the law, but rather compensation to the employee occasioned by the delay in receiving wages due caused by the employer's violation of the FLSA. *See Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 583-84, 62 S.Ct. 1216, 86 L.Ed. 1682 (1942).

A recent decision of the Ninth Circuit in *Chao v. A-One Medical Services, Inc.* also addressed the issue of liquidated damages:

> An employer who violates the overtime law is liable not only for the unpaid overtime compensation but also "in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).  "These liquidated damages represent compensation, and not a penalty.  Double damages are the norm, single damages the exception."

1    *Local 246 Util. Workers Union v. S. Cal. Edison Co.*, 83 F.3d 292, 297 (9th Cir. 1996)
2    (citations and internal quotation marks omitted).

3    *Chao v. A-One Medical Services, Inc.*, 346 F.3d 908, 919-20 (9th Cir. 2003). *See also E.E.O.C. v. First*
4    *Citizens Bank of Billings*, 758 F. 2d 397, 403 (9th Cir. 1985), *cert. denied*, 474 U.S. 902 (1985),
5    *overruled in part on other grounds*, *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988)
6    ("Liquidated damages are compensatory, not punitive in nature.  []  They compensate employees
7    for losses they might suffer by reason of not receiving their lawful wages.").

8        "Courts have the discretion to deny an award of liquidated damages if the employer shows
9    that it acted in subjective 'good faith' and had objectively 'reasonable grounds' for believing that its
10   conduct did not violate the FLSA. 29 U.S.C. § 260." *Chao v. A-One Medical Services, Inc.*, 346 F.3d
11   at 920.

12       "To establish good faith, the employer must take active steps to ascertain the dictates of the
13   FLSA and then act to comply with them." *Herman v. RSR Security Services*, 172 F.3d 132, 142 (2nd
14   Cir. 1999) citing *Reich v. Southern New England Telecommunications Corp.*, 121 F.3d 58, 71 (2nd Cir.
15   1997).

16       And in *Alvarez v. IBP, Inc.*, 339 F.3d 894, 910 (9th Cir. 2003), decided the same year the court
17   stated:

18
19           To satisfy § 260, a FLSA-liable employer bears the "difficult" burden of
         proving both subjective good faith and objective reasonableness, "with double
20       damages being the norm and single damages the exception." *Herman*, 172 F.3d at 142
         (citing *Reich v. S. New Eng. Telecomm. Corp.*, 121 F.3d 58, 71 (2nd Cir. 1997)); *see also*
21       *Dole v. Elliott Travel & Tours*, 942 F. 2d 962, 968 (6th Cir. 1991). Where the employer
         "fails to carry that burden," we have noted, "liquidated damages are mandatory."
22       *Local 246*, 83 F.3d at 29 (citations omitted).
             IBP "failed to take the steps necessary to ensure [its] [ ] practices complied
23       with [FLSA]." *Herman*, 172 F.3d at 142.  Mistaking ex post explanation and
         justification for the necessary affirmative "steps" to ensure compliance, IBP offers no
24       evidence to show that it *actively endeavored to ensure such compliance*.

25   *Alvarez v. IBP, Inc.*, 339 F.3d 894, 910 (9th Cir. 2003) (emphasis added).  *See also E.E.O.C. v. First*
26   *Citizens Bank of Billings*, 758 F. 2d 397, 403 (9th Cir. 1985) (consider § 260 application under Equal

27                                                   -8-

1    Pay Act: "Good faith is an honest intention to ascertain what the Equal Pay Act requires and to act

2    in accordance with it. *Laffey v. Northwest Airlines, Inc.*, 567 F. 2d 429, 464 (D.C. Cir. 1976), *cert.*

3    *denied*, 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed. 2d 792 (1978). First Citizens' evidence of good faith

4    is limited to bald assertions that the officers thought that they were in compliance with the Act. The

5    evidence put forward by First Citizens to show good faith is insufficient to warrant a claim of abuse

6    of discretion.")

7
8    > Even if we were to ignore our finding of willfulness, there are not sufficient facts to
     > support a finding of good faith on the part of the Appellants. If, for example, the
     > Appellants had secured some objective authority, or at the very least sought advice,
9    > on the legality of treating A-One and Alternative as separate employers for the purpose
     > of calculating overtime, we would have a different case. *See, e.g., Elwell v. Univ.*
10   > *Hosps. Home Care Servs.*, 276 F.3d 832, 841 (6th Cir. 2002) ("Nor has [the defendant]
     > suggested that it was relying on the expertise or opinion of any other person or entity
11   > with knowledge of the FLSA regulations, including its attorney or the Department of
     > Labor."); *Samson v. Apollo Res., Inc.*, 242 F.3d 629, 641 (5th Cir. 2001) (approving a
     > finding of good faith where the employer consulted with the Department of Labor.)
12   > Black's reckless belief that formal separation of the two entities would justify
     > nonpayment of overtime wages is legally insufficient as a good faith defense.
13   *Chao v. A-One Medical Services, Inc.*, 346 F.3d at 920.

14
15       In *Bratt v. City of Los Angeles*, 912 F. 2d 1066, 1071-72 (9th Cir. 1990), *cert. denied*, 498 U.S.

16   1086, 111 S. Ct. 962, 112 L. Ed. 2d 1049 (1991) the Ninth Circuit upheld lower court decision

17   denying liquidated damages because it found that employer acted in good faith and its interpretation

18   of FLSA and USDOL Regulations, although erroneous, was not unreasonable. The case dealt with

19   the employer's mischaracterization of "administrative employees" under an exemption to FLSA.

20       The statutory requirement of good faith and reasonable grounds establishes a test with both

21   subjective and objective components. *Brock v. Shirk*, 833 F. 2d 1326, 1330 (9th Cir. 1987) (per

22   curiam), *vacated on other grounds* 488 U.S. 806, 109 S.Ct. 38, 102 L. Ed. 2d 18 (1988); *see Marshall*

23   *v. Brunner*, 668 F. 2d 748, 753 (3rd Cir. 1982); *Laffey v. Northwest Airlines, Inc.*, 567 F.2d 429, 463-66

24   (D.C. Cir. 1976), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1281, 55 L. Ed. 2d 792 (1978). "To satisfy the

25   subjective 'good faith' component, the [County was] obligated to prove that [it] had 'an honest

26   intention to ascertain what [the FLSA] requires and to act in accordance with it.'" *Shirk*, 833 F. 2d

27                                          -9-

at 1330 (quoting *First Citizens Bank*, 758 F. 2d at 403); *accord Brunner*, 668 F. 2d at 753; *Laffey*, 567 F. 2d at 464. "The additional requirement that the employer have reasonable grounds for believing that his conduct complies with the Act imposes an objective standard by which to judge the employer's behavior." *Bratt v. City of Los Angeles*, 912 F. 2d at 1072 (quoting *Brunner*, 668 F. 2d at 753).[1]

Finally, "[Even] [a] finding that the employer did not act willfully does not preclude an award of liquidated damages." *Cox v. Brookshire Grocery Co.*, 919 F. 2d 354, 356 (5th Cir. 1990)(citation omitted).

Here, Defendants admitted that they are covered employers. *See* Proposed Findings of Uncontroverted Fact, ¶¶ 6-13. In any case, sufficient uncontroverted fact existed to find that Defendants are employers subject to the overtime requirements of the FLSA. *Id.* ¶¶ 14-16 and 90-105 among other facts, generally. At all times during their employment with Defendants, Plaintiffs were non-exempt, employees entitled to the protections of the FLSA. *Id.* ¶ 13. For the most part, Defendants have admitted the hours Plaintiffs worked and the pay Plaintiffs received. Clarified by the testimony of Plaintiffs themselves regarding hours, days off (if any), deductions and other issues affecting the calculation of wages, Plaintiff submit that the proper calculation of overtime wages and liquidated damages they are due is the amount discussed in Section III. Plaintiffs respectfully request judgment against Defendants in such amount and an award of costs and attorneys' fees.

II.    PLAINTIFFS' CLAIMS FOR BREACH OF CONTRACT.

To the extent any of Plaintiffs' claims fall outside the purview of the FLSA, Plaintiffs are entitled to recover from Defendants their unpaid wages, including overtime compensation and re-compensation for illegal deductions taken from their wages, due to Defendants breaches of their respective employment contracts.

---

[1] It is important to note that the employer, County of Los Angeles in *Bratt*, actually looked into the matter and, because of ambiguity in the law, reasonably interpreted statute and regulations as providing an exemption. *Bratt v. City of Los Angeles*, 912 F. 2d at 1072-73.

A.    *Breach of Contract:*

When performance of a duty under a contract is due, any nonperformance is a breach. RESTATEMENT (SECOND) OF CONTRACTS § 235(2) (1981).[2]  The failure to pay amounts due for wages under a contract is a breach of contract.  *Id.*  Deductions from wages due in contravention of the express terms of the employment contracts was also a material breach.  *Id.*

Here, Defendants admit that they had valid and binding employment contracts with each of the Plaintiffs not due to expire until January 2006.  Proposed Findings of Uncontroverted Fact. Verified Answer to Plaintiffs' original Verified Complaint, ¶ 6.  Defendants also admit, as they must, that they failed to pay Plaintiffs in accord with their employment contracts.  *See, e.g.*, Verified Answer to Plaintiffs' Verified Complaint, ¶ 6; Proposed Findings of Uncontroverted Fact, ¶¶ 26-28, 49-51, 79-75.  Defendants are in breach and are liable to Plaintiffs, jointly and severally, for the benefit Plaintiffs would have received had Defendants properly performed.

B.    *Statutory Liquidated Damages for Breach of Contract:*

In any action taken directly by or on behalf of a nonresident worker, notwithstanding any other remedies that may apply the worker that prevails in such action shall recover unpaid wages and overtime compensation, an additional equal amount as liquidated damages, and court costs. In all cases the court shall, as part of the judgment, render a finding as to the merits of the action. The filing of an action which is determined by the court to be unfounded or without merit shall be considered a material breach of contract and shall prevent reentry into the Commonwealth by the nonresident worker in the event the nonresident worker attempts reentry into the Commonwealth within five years from the date of the court's decision. Any employer who violates the provisions of this chapter or breaches an employment contract with a nonresident worker, in addition to any other damages

---

[2]  "It is well established that "[u]nder the Erie doctrine [*Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)], federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427, 116 S.Ct. 2211, 2219, 135 L. Ed. 2d 659 (1996)." *In re Larry's Apartment, L.L.C.*, 249 F.3d 832, 837 (9th Cir. 2001).

"In all proceedings, the rules of the common law, as expressed in the restatements of the law approved by the American Law Institute and, to the extent not so expressed as generally understood and applied in the United States, shall be the rules of decision in the courts of the Commonwealth, in the absence of written law or local customary law to the contrary; provided, that no person shall be subject to criminal prosecution except under the written law of the Commonwealth." 7 C.M.C. § 3401 (2000).

1
2
which may be awarded the nonresident worker by the court, shall be awarded reasonable attorney fees. However, attorney fees shall not be recoverable against the Commonwealth.

3
4
3 C.M.C. § 4447(d) (2000).

5
6
7
8
9
10
11
12
As discussed above, Defendants do not genuinely dispute the amount of hours worked by Plaintiffs, and the amount of pay they received for their work. Defendants also cannot dispute that they failed to perform in accord with their contracts with Plaintiffs and, therefore, are in breach of said contracts. The rate of pay in the contracts of each plaintiff is the same as the CNMI Minimum Wage, and the overtime calculation is also the same. Deductions are also treated equally under a breach of contract theory. Accordingly, for Defendants breach of Plaintiffs' respective employment contracts, Plaintiffs are entitled to a judgment in the amount discussed in Section III, which includes statutory liquidated damages, and an award of costs and attorneys' fees.

13
III.    PLAINTIFFS' DAMAGES:

14
15
Under both the FSLA and for their breach of contract claims, Plaintiffs are entitled to the following damages as a matter of law:

16
17
1. Their respective claims for wages, including overtime premiums due, for all hours worked less wage payments received free and clear;

18
19
20
21
22
2. Their respective claims for their for Defendants' breach of Plaintiffs' employment contracts, including damages for unpaid wages at the contractual rate, prospective contract wages, the return of illegal deductions, liquidated damages, costs and reasonable attorney's fees, where applicable;

23
3. Their respective claims for liquidated damages under the FLSA; and

24
4. Their claim for a reasonable attorney's fees and costs of this action under the FLSA.

25
26
These damages are detailed and calculated in Exhibit "A" to the Declaration of Counsel for Plaintiffs filed with the Court on April 21, 2006, in the declarations of the Plaintiffs filed with the

27
-12-

Court on April 21, 2006, in the Proposed Findings of Uncontroverted Fact, in Defendants'
interrogatory responses, in the deposition testimony of Kim Hang Kwon and of Cindy Yu and in the
various other admissions by Defendants including those made in their Anser to Plaintiffs' original
Verified Complaint in this matter.  The amount of damages due to the plaintiff Lin Ying Hua is
$47,662.52, Plaintiff Xu Jing Ji in the amount of $38,857. 28 and Plaintiff Li Zheng Zhi in the
amount of $81,773.00 for a total amount of the judgement for $168,292.80.  This figure is exclusive
of the reasonable attorneys' fee and costs of this action.

IV.  DEFENDANTS' JOINT AND SEVERAL LIABILITY.

    A.  *Joint Employer Liability*:

    "The Supreme Court has instructed that courts are to interpret the term 'employ' in the
FLSA expansively." *Hale v. State of Arizona*, 993 F. 2d 1387, 1393 (9th Cir. 1993), *cert. denied*, 510
U.S. 946, 114 S.Ct. 386, 126 L. Ed. 2d 335 (1993) (citing *Nationwide Mutual Ins. Co. v. Darden*, 503
U.S. 318, 326-27, 112 S.Ct. 1344, 1350, 117 L. Ed. 2d 581 (1992)).  The definition has "striking
breadth" and "stretches the meaning of 'employee' to cover some parties who might not qualify as
such under a strict application of traditional agency law principles." *Nationwide*, 503 U.S. at 326, 112
S.Ct. at 1350;  *see also Rutherford Food Corp. v. McComb*, 331 U.S. 722, 728, 67 S.Ct. 1473, 1475,
91 L. Ed. 1772 (1947) ("The definition of 'employ' is broad.");  *Bonnette v. California Health and
Welfare Agency*, 704 F. 2d 1465, 1469 (9th Cir. 1983) (the concept of employment "is to be given an
expansive interpretation in order to effectuate the FLSA's broad remedial purposes.");*Real v. Driscoll
Strawberry Associates*, 603 F. 2d 748, 753 (9th Cir. 1979) (citing same principle).

    In light of this broad interpretation, the Supreme Court has commanded that the question
of "whether there is an employment relationship under the FLSA is tested by 'economic reality'
rather than 'technical concepts.'" *Hale*, 993 F. 2d at 1393 (quoting *Goldberg v. Whitaker House
Cooperative*, 366 U.S. 28, 33, 81 S.Ct. 933, 936-37, 6 L. Ed. 2d 100 (1961)).  A court must "consider
the totality of the circumstances of the relationship [.]" *Hale*, 993 F. 2d at 1394 (citing *Bonnette*, 704

-13-

F. 2d at 1470); *see also Real*, 603 F. 2d at 754 (quoting *Rutherford*, 331 U.S. at 730, 67 S.Ct. at 1477) (the determination "depends 'upon the circumstances of the whole activity.'"). Accordingly, "[e]conomic realities, not contractual labels, determine employment status for the remedial purposes of the FLSA." *Real*, 603 F. 2d at 754.

The Ninth Circuit has identified several factors to guide the analysis, such as "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Bonnette*, 704 F. 2d at 1470; *see also Donovan v. Sureway Cleaners*, 656 F. 2d 1368, 1370 (9th Cir. 1981) (also discussing whether the workers' service is "an integral part of the alleged employer's business."). These factors "provide a useful framework for analysis," but are neither exclusive nor conclusive. *Id.* "[T]hey are not etched in stone and will not be blindly applied." *Id.*; *see also Hale*, 993 F. 2d at 1394 (citing same language). A court must not "focus[ ] on selected and isolated control factors ... [and] lose[ ] sight of the circumstances of the whole activity." *Castillo v. Givens*, 704 F. 2d 181, 190 (5th Cir. 1983), *cert. denied*, 464 U.S. 850, 104 S.Ct. 160, 78 L. Ed. 2d 147 (1983). Indeed, courts have found employment relationships "even though the defendant-employer had no control over certain aspects of the relationship." *Castillo*, 704 F. 2d at 190.

Importantly, there may be more than one "employer." *See* 29 C.F.R. § 791. 2:

(a) A single individual may stand in the relation of an employee to two or more employers at the same time under the Fair Labor Standards Act of 1938, since there is nothing in the act which prevents an individual employed by one employer from also entering into an employment relationship with a different employer. A determination of whether the employment by the employers is to be considered joint employment or separate and distinct employment for purposes of the act depends upon all the facts in the particular case. If all the relevant facts establish that two or more employers are acting entirely independently of each other and are completely disassociated with respect to the employment of a particular employee, who during the same workweek performs work for more than one employer, each employer may disregard all work performed by the employee for the other employer (or employers) in determining his own responsibilities under the Act. On the other hand, if the facts establish that the employee is employed jointly by two or more employers, i.e., that employment by one employer is not completely disassociated from employment by

-14-

the other employer(s), all of the employee's work for all of the joint employers during the workweek is considered as one employment for purposes of the Act. In this event, all joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the act, including the overtime provisions, with respect to the entire employment for the particular workweek. In discharging the joint obligation each employer may, of course, take credit toward minimum wage and overtime requirements for all payments made to the employee by the other joint employer or employers.

(b) Where the employee performs work which simultaneously benefits two or more employers, or works for two or more employers at different times during the workweek, a joint employment relationship generally will be considered to exist in situations such as:

> (1) Where there is an arrangement between the employers to share the employee's services, as, for example, to interchange employees; or

> (2) Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee;

> (3) Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.

(Citations omitted).

In *Reich v. Japan Enterprises Corp.*, 91 F.3d 154 (9th Cir. 1996) (unpublished), this Court was upheld in a decision where the Ninth Circuit Court of Appeals stated:

> An employer "includes any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). To be an employer, the person is not necessarily required to have an ownership interest or control of day-to-day operations. *See Reich v. Circle C Investments, Inc.*, 998 F. 2d 324, 329 (5th Cir. 1993). "The remedial purposes of the FLSA require the courts to define 'employer' more broadly than the term would be interpreted in traditional common law applications.'" *Dole v. Elliott Travel & Tours, Inc.*, 942 F. 2d 962, 965 (6th Cir. 1991) (citation omitted).

In *Japan Enterprises*, the Court had found, and the Court of Appeals upheld, that a corporate officer with a substantial ownership interest and was directly involved in decisions affecting the employees is personally liable under the FLSA. *See Japan Enterprises*, 91 F.3d 154, citing *Donovan*

-15-

v. Agnew, 712 F. 2d 1509, 1511 (1ˢᵗ Cir. 1983) and *Dole v. Elliott Travel & Tours, Inc.*, 942 F. 2d 962, 965 (6ᵗʰ Cir. 1991);  *Donovan v. Grim Hotel Co.*, 747 F. 2d 966, 971 (5ᵗʰ Cir. 1984).  The Court of Appeals also found that a separate individual – the general manager – was personally liable: "He was in charge of the employees at the club and managed the day-to-day operations.  He represented JEC as a corporate agent.   He regularly traveled to the Philippines to recruit employees and he signed their employment contracts.   The fact that Sawada does not have an ownership interest in JEC is not determinative."  *See Japan Enterprises*, 91 F.3d 154, citing *Donovan v. Sabine Irrigation Co., Inc.*, 695 F. 2d 190, 195 (5ᵗʰ Cir.), *cert. denied*, 463 U.S. 1207 (1983).

Here, the two corporations, Asia and Jung Jin, and their two owners, Kim and Park, are (or were) practically, factually and legally interchangeable.  As detailed in the Proposed Findings of Uncontroverted Fact submitted herewith, among other things:  Defendants Kim Hang Kwon and Park Hwa Sun were both officers, directors and shareholders of Asia and Jung Jin; both exercised dominance and control over the affairs of the two corporations; both worked together towards one common business purpose; both used corporate assets as their own and failed to distinguish between their own personal income, assets and obligations and those of the two corporate defendants, respectively.

Most importantly, Defendants admit (and the evidence is overwhelming), that the individual defendants acted, directly and indirectly, in the interest of the corporate defendants with respect to Plaintiff employees.   Both Park and Kim signed employment related documents for both corporations.  Both Park and Kim were responsible for the day to day work of Plaintiffs.  Both Park and Kim were responsible for fixing Plaintiffs salary and other conditions of employment and for paying Plaintiffs.

Asia, Jung Jin, Kim and Park are joint employers for purposes of liability for Plaintiffs' wages.

*B.  Enterprise Liability Under the FLSA:*

The FLSA minimum wage and overtime provisions apply to employees of an "enterprise"

-16-

1   engaged in interstate commerce. *See* 29 U.S.C. § 203(r). Defendants are a single, covered enterprise

2   within the meaning and applicability of § 3(s) of the FLSA.

3       Section 3(s) of the FLSA provides in relevant part:

4           "Enterprise engaged in commerce or in the production of goods for commerce"

5       means an enterprise that–

6       (A)(i) has employees engaged in commerce or in the production of goods for

7       commerce, or that has employees handling, selling, or otherwise working on goods or
        materials that have been moved in or produced for commerce by any person; and

8       (ii) is an enterprise whose annual gross volume of sales made or business done is not
        less than $500,000 (exclusive of excise taxes at the retail level that are separately

9       stated).

10  29 U.S.C. § 203(s).

11

12      Whether companies constitute an enterprise is a three-part test: they must (1) perform

13  related activities;  (2) under unified operations or common control; (3) for a common business

14  purpose. *Reich v. Japan Enterprises, Inc.*, 91 F.3d 154 (9th Cir. 1996) (unpublished) (citing *Martin

15  v. Deiriggi*, 985 F. 2d 129, 133 (4th Cir. 1992)). *See also Chao v.* A-*One Medical Services, Inc.*, 346

16  F.3d 908, 914-15 (9th Cir. 2003) (upholding summary judgment for the Secretary of Labor despite

17  arguments by defendants/appellants stating:  "If these three elements-related activities, unified

18  operation or common control and common business purpose-are present, different organizational

19  units are grouped together for the purpose of determining FLSA coverage." citing *Brennan v.

20  Arnheim & Neely, Inc.*, 410 U.S. 512, 518, 93 S.Ct. 1138, 35 L. Ed. 2d 463 (1973)).

21      In addition to the instructions in *Japan Enterprises* and A-*One Medical Services*, the

22  regulations promulgated by the Department of Labor under the FLSA (29 C.F.R. Part 779, Subpart

23  C) are highly instructive with regard to enterprise liability of employers.  Indeed, they seem to have

24  been drafted to address, among other situations, the exact situation presented in this case.  Plaintiffs

25  have attached excerpts from the C.F.R. as Appendix 1 hereto for the Court's convenience.

26      The cases cited by Plaintiffs above, and the FLSA Regulations provided herewith, illustrate

27                                          -17-

1   that the Defendants in this case, by joint ownership, joint control, and joint operations, all for a joint

2   business purpose, among various other facts presented in Plaintiffs' Proposed Findings of

3   Uncontroverted Fact, were acting as one, single business enterprise and are liable to all Plaintiffs

4   notwithstanding their position that Plaintiffs were employed by one entity or another at various

5   times, and notwithstanding Defendants' position that the individual defendants were not part of the

6   enterprise that constituted their businesses. *See, e.g.*, Defendants' Verified Answer to Plaintiffs

7   original Verified Complaint, ¶ 6 (defendants admit that they, separately, are each an enterprise

8   engage in commerce or the production of goods for commerce, but denying that they were joint

9   employers or that the individual defendants are liable for the acts of the corporations, or that all of

10  the defendants are jointly and severally liable for Plaintiffs' damages).

11          The fact is that Defendants, individual and corporate, were engaged in one business enterprise

12  that was inseparable from them personally (their personal income and expenses) and from the artifice

13  of corporate limited liability that Defendants now try to use as a shield (a shell) while they play the

14  shell game with "their assets" without acknowledging that, based on the facts adduced and presented

15  to the Court, it is and will always remain utterly impossible to say from what source what particular

16  funds were used from any of the four Defendants or their alleged creditors to purchase assets or to

17  support their businesses that generated revenues from which they purchased assets.

18          Table 1 attached to Plaintiffs' Proposed Findings of Uncontroverted Fact shows that

19  Defendants' enterprise had gross revenues in excess of $500,000.00 from at least 2002 through at

20  least 2004 — the last date for which Defendants have provided tax and/or other revenue information.

21  *Id.*, ¶¶ 14-16. Defendants admit that they are each an "enterprise" for purposes of the FLSA (*Id.*, ¶¶

22  10-11) and the evidence presented in Plaintiffs' Proposed Findings of Uncontroverted Fact leaves no

23  doubt that Defendants, jointly and severally, are liable for Plaintiffs' FLSA damages as an enterprise

24  engaged in commerce. *See, e.g.*, *Reich v. Japan Enterprises, Inc.*, 91 F.3d 154 (9th Cir. 1996)

25  (Unpublished) (finding enterprise liability on appeal from this Court).

26

27                                          -18-

C. *Alter Ego Liability:*

The Commonwealth Supreme Court in *United Enterprises, Inc. v. King*, stated:

> Generally, a corporation and its shareholders are deemed "separate entities and, consequently, share holders are not liable to third persons for corporate debts beyond their investment in stock of the corporation." *Economic Dev. Loan Fund v. Pangelinan*, 2 CR 451, 457-58 (D.N.M.I. App. Div. 1986). Where, however, shareholders treat the corporation not as a "separate entity but instead as an instrument to conduct their own personal business," the corporation and the shareholder are deemed one entity under the alter ego doctrine, and the court may "pierce the corporate veil" for purposes of liability. *Id.*, 2 CR at 458.

* * *

> Whether a corporation and a shareholder may be deemed one for purposes of liability under the alter ego doctrine requires a two-part examination. First, the court must look at several factors to determine whether the corporation and shareholder are indeed acting as one. *Pangelinan*, 2 CR at 458. Among these commonly examined are:

> [U]ndercapitalization, failure to observe corporate formalities, nonpayment of dividends, siphoning of corporate funds by dominant stockholders, nonfunctioning of other officers or directors, absence of corporate records, use of the corporation as a facade for the operations of the dominant stockholders, and use of the corporate entity in promoting injustice or fraud.

*Id.*

Other relevant factors considered by courts may include:

> 1. Whether the individual is in a position of control or authority over the entity;
>
> 2. Whether the individual controls the entity's actions without need to consult others;
>
> 3. Whether the individual uses the entity to shield himself from personal liability;
>
> 4. Whether the individual uses the business entity for his or her own financial benefit;
>
> 5. Whether the individual mingles his own affairs in the affairs of the business entity; [and]
>
> 6. Whether the individual uses the business entity to assume his own debts, or the debts of another, or whether the individual uses his own funds to pay the business entity's debts. * * *

-19-

1

2

3

4

   Only when the court has determined that a corporation and shareholder are identical will it then proceed to determine whether it will "pierce the corporate veil" for purposes of liability. To do so, the court must apply a two-part test. First, "[w]hether the interests of the dominant stockholders are so intertwined with those of the corporation that separate entities no longer exist, and[, second] [w]hether injustice or fraud would result if the fiction of separate entities was upheld." *Pangelinan*, 2 CR at 458.

5

6

7

8

Here, a review of the factors articulated by the Commonwealth Supreme Court in *United Enterprises* leaves little doubt that the two-prong test is met. Some of the facts identified in the Proposed Finding of Uncontroverted Fact that support such a finding include:

9

10

11

12

13

14

15

  • Undercapitalization: Park and Kim claim to have substantial debts related to the operations of Asia and Jung Jin which resulted in their "transferring" Jung Jin assets in exchange for debt relief leaving both corporations, Asia and Jung Jin, admittedly defunct. Proposed Findings of Uncontroverted Fact ¶¶ 116.h.-j, m, p, q. Defendants' attorney earlier withdrew from this lawsuit because Park had left for Korea with no intention of returning and the corporate entities and Kim had no money to pay his fees. Affidavit of Stephen J. Nutting in Support of Motion to Withdraw filed February 3, 2006, ¶¶ 4-5.

16

17

18

19

20

21

22

  • Failure to observe corporate formalities and nonfunctioning officers and directors: Kim has no idea about he functioning at the board level of either Asia or Jung Jin even though he is a shareholder, officer and director. Park handled everything at that level for the corporations and for Kim. Proposed Findings of Uncontroverted Fact ¶¶ 114, 117. Cindy Yu, another officer and director of Asia took her instructions from Park. *Id.*, ¶ 114. Asia and Jung Jin annual corporation reports indicate officers and directors for Jung Jin that have no participation whatsoever in the management of the corporate defendant. *Id.*, Exhibit A.

23

24

25

26

  • Nonpayment of dividends: Neither Asia nor Jung Jin's corporate income tax returns reflect any declaration of dividends. *See* Exhibits to Cindy Yu Depo. Trans. Park income tax returns do not reflect the receipt of dividends from any source. Proposed Findings of Uncontroverted Fact, Exhibit E.

27

• Siphoning of corporate funds: The evidence as identified in the Proposed Findings of Uncontroverted Fact in replete with information that corporate funds (neither Kim nor Park claim to have made more than $12,000.00 per year – combined) were used to both support Kim and Park on a daily basis and for the purchase of substantial assets that they claim as personal assets, including the Susupe residence and their vehicles. *Id.*, ¶¶ 114-117.

• Absence of corporate records:  Proposed Findings of Uncontroverted Fact, ¶¶ 115-116.

• Use of corporation as a facade for operations: *Id.*, 106-118.

• Use of the corporate entity to promote injustice or fraud:  Just one example – Kim and Park "transferred" the employment of plaintiffs Li Zheng Zhe and Xu Jing Ji to Asia knowing that it was defunct and intended to close it down.  Proposed Findings of Uncontroverted Fact, ¶ 118.

• Park and Kim in positions of control: Proposed Findings of Uncontroverted Fact, generally.

• Park and Kim attempting to shield themselves from personal liability:  Proposed Findings of Uncontroverted Fact, ¶¶ 114-118.

• Park and Kim using business entity for own financial benefit:  Proposed Findings of Uncontroverted Fact, ¶¶ 114-118.

• Park and Kim co-mingling personal and business affairs:  Proposed Findings of Uncontroverted Fact, ¶¶ 114-118.

• Park and Kim co-mingling of debts: Proposed Findings of Uncontroverted Fact, ¶¶ 114-118.

Defendants here meet every one of the numerous listed criteria cited by the Commonwealth Supreme Court as indicative of an alter ego relationship.  The corporate entities should be disregarded and all four Defendants should be considered one for purposes of liability to Plaintiffs here.

-21-

CONCLUSION

For the above-state reasons, and as presented in Plaintiffs' Proposed Findings of Uncontroverted Fact, there is no genuine issue of material fact here and Plaintiffs have shown that they are entitled to judgment as a matter of law on their claims against Defendants as stated in their First Amended Verified Complaint.  Accordingly, Plaintiffs respectfully request a judgment against Jung Jin Corporation, Asia Enterprises, Inc., Park Hwa Sun and Kim Hang Kwon in the amount of $168,292.80, an award of reasonable attorneys' fees and costs of this action, and that all Defendants be held jointly and severally liable for these amounts together with post judgment interest at the legal rate.

Respectfully submitted this 14th day of July, 2006.


/s/ Mark B. Hanson

MARK B. HANSON

First Floor, Macaranas Building
Beach Road, Garapan
PMB 738, P.O. Box 10,000
Saipan, MP 96950
Telephone:    (670) 233-8600
Facsimile:    (670) 233-5262

Attorney for Plaintiffs

-22-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

Appendix 1

# EXCERPTS FROM FLSA REGULATIONS,
## 29 C.F.R. Part 779, Subpart C.

• 29 C.F.R. 779.202.  Basic concepts of definition. (in part):

    Under the definition, the "enterprise" consists of "the related activities performed * * * for a common business purpose." All of the activities comprising the enterprise must be "related."  Activities serving a single business purpose may be related, although different, but other activities which are not related are not included in the enterprise.  The definition makes clear that the enterprise includes all such related activities which are performed through "unified operation" or "common control." This is true even if they are performed by more than one person, or in more than one establishment, or by more than one corporate or other organizational unit. Specifically included, as a part of the enterprise, are departments of an establishment operated through leasing arrangements.

• 29 C.F.R. 779.203.  Distinction between "enterprise," "establishment," and "employer." (in part):

    The enterprise may consist of a single establishment (see Sec. 779.204(a)) which may be operated by one or more employers; or it may be composed of a number of establishments which may be operated by one or more employers (see Sec. 779.204(b)).

• 29 C.F.R. 779.215.  General scope of terms.  (in part):

    (a) Under the definition related activities performed for a common business purpose will be a part of the enterprise when they are performed either through "unified operation" or "common control." It should be noted that these conditions are stated in the alternative. Thus if it is established that the described activities are performed through "common control," it is unnecessary to show that they are also performed through "unified operation," although frequently both conditions may exist.

    (b) Under the definition the terms "unified operation" and "common control" refer to the performance of the "related activities."  They do not refer to the ownership of the activities. Although ownership may be a significant factor in determining control (see Sec. 779.222), the related activities will be a part of the enterprise even if they are not under common ownership, so long as they are performed for a common business purpose through unified operation or common control. Further, under the definition the terms "unified operation" and "common control" refer to the performance only of the particular related activities and not to other activities which may be performed by the various persons, corporations, or other business organizations, comprising the enterprise. Thus where two or more individual or business organizations perform certain of their activities through unified operation or common control, these activities will be part of a single enterprise, assuming of

course they are related activities performed for a common business purpose. Finally, the definition in section 3(r) makes clear that the described activities may be performed through unified operation or common control "in one or more establishments or by one or more corporate or other organizational units."

• 29 C.F.R. 779.217.  "Unified operation" defined.

Webster defines the word "unify" to mean "to cause to be one; to make into a unit; to unite."  The pertinent definition of "operation" is a method or way of operating, working or functioning.  Since the term "unified operation" has reference to the method of performing the related activities, it means combining, uniting, or organizing their performance so that they are in effect a single business unit or an organized business system which is an economic unit directed to the accomplishment of a common business purpose.  The term "unified operation" thus includes a business which may consist of separate segments but which is conducted or operated as a unit or as a single business for a common business purpose.

• 29 C.F.R. 779.218.  Methods to accomplish "unified operation."

There are many instances where several establishments, persons, corporations, or other business organizations, join together to perform some or all of their activities as a unified business or business system.  They may accomplish such unification through agreements, franchises, grants, leases, or other arrangements which have the effect of aligning or integrating the activities of one company with the activities of others so that they constitute a single business or unified business system.  Whether in any particular case the activities are performed through "unified operation" and have the effect of creating a single enterprise, will depend upon all the facts, including the manner in which the activities are performed, the agreements and arrangements which govern their performance, and the other relationships between the parties, considered in the light of the statutory provision and the legislative intent. (*cf. Wirtz v. Wornom's Pharmacy* (E.D. Va.), 18 WH Cases 289, 365; 57 Labor Cases 32,006, 32,030.).

• 29 C.F.R. 779.221 "Common control" defined.

Under the definition the "enterprise" includes all related activities performed through "common control" for a common business purpose. The word "control" may be defined as the act of fact of controlling; power or authority to control; directing or restraining domination.  "Control" thus includes the power or authority to control. In relation to the performance of the described activities, the "control," referred to in the definition in section 3(r) includes the power to direct, restrict, regulate, govern, or administer the performance of the activities.  "Common" control includes the sharing of control and it is not limited to sole control or complete control by one person or corporation. "Common" control therefore exists where the performance of the described activities are controlled by one person or by a number of persons, corporations, or other organizational units acting together.  This is clearly supported by the definition which specifically includes in the "enterprise" all such activities whether performed by "one or more corporate or other organizational units."  The

meaning of "common control" is discussed comprehensively in part 776 of this chapter.

• 29 C.F.R. 779.222.  Ownership as factor.

As pointed out in Sec. 779.215 "unified operation" and "common control" do not refer to the ownership of the described activities but only to their performance. It is clear, however, that ownership may be an important factor in determining whether the activities are performed through "unified operation or common control." Thus common control may exist where there is common ownership.  Where the right to control, one of the prerogatives of ownership, exists, there may be sufficient "control" to meet the requirements of the statute.  Ownership, or sufficient ownership to exercise control, will be regarded as sufficient to meet the requirement of "common control."  Where there is such ownership, it is immaterial that some segments of the related activities may operate on a semiautonomous basis, superficially free of actual control, so long as the power to exercise control exists through such ownership. (*See Wirtz v. Barnes Grocer Co.*, 398 F. 2d 718 (C.A. 8).)  For example, a parent corporation may operate a chain of retail or service establishments which, for business reasons, may be divided into several geographic units. These units may have certain autonomy as to purchasing, marketing, labor relations, and other matters. They may be separately incorporated, and each unit may maintain its own records, including records of its profits or losses. All the units together, in such a case, will constitute a single enterprise with the parent corporation. They would constitute a single business organization under the "common control" of the parent corporation so long as they are related activities performed for a common business purpose.  The common ownership in such cases provides the power to exercise the "control" referred to in the definition. It is clear from the Act and the legislative history that the Congress did not intend that such a chain organization should escape the effects of the law with respect to any segment of its business merely by separately incorporating or otherwise dividing the related activities performed for a common business purpose.

• 29 C.F.R. 779.223.  Control where ownership vested in individual or single organization.

Ownership, sufficient to exercise "control," of course, exists where total ownership is vested in a single person, family unit, partnership, corporation, or other single business organization.  Ownership sufficient to exercise "control" exist also where there is more than 50 percent ownership of voting stock. (*See West v. Wal-Mart*, 264 F. Supp. 168 (W.D. Ark.).)  But "control" may exist with much more limited ownership, and, in certain cases exists in the absence of any ownership.  The mere ownership of stock in a corporation does not by itself establish the existence of the "control" referred to in the definition.  The question whether the ownership in a particular case includes the right to exercise the requisite "control" will necessarily depend upon all the facts in the light of the statutory provisions.