1  MARK B. HANSON, ESQ.
   Second Floor, Macaranas Building
2  Beach Road, Garapan
   PMB 738 P.O. Box 10,000
3  Saipan, Mariana Islands 96950
   Telephone:    (670) 233-8600
4  Facsimile:    (670) 233-5262

5  Attorney for Plaintiffs

6

7              IN THE UNITED STATES DISTRICT COURT
                          FOR THE
8                NORTHERN MARIANA ISLANDS

9  LI YING HUA, LI ZHENG ZHE and XU JING JI, )   CASE NO. CV 05-0019
                                             )
10               Plaintiffs,                 )
                                             )
11        vs.                                )   APPLICATION FOR AN ORDER IN
                                             )        AID OF JUDGMENT
12  JUNG JIN CORPORATION, a CNMI corporation,)
    ASIA ENTERPRISES, INC., a CNMI corporation,)
13  PARK HWA SUN and KIM HANG KWON,          )
                                             )   Date:
14               Defendants.                 )   Time:
                                             )   Judge: Hon. Alex R. Munson, Chief Judge
15

16        Plaintiffs, by and through their undersigned attorney of record, hereby file, this Application

17  for an Order in Aid of Judgment pursuant to Fed. R. Civ. P. 69(a) and Title 7, Sections 4205 of the

18  Commonwealth Code (2000).

                                        INTRODUCTION
19

20        On June 23, 2005, Plaintiffs filed their initial Verified Complaint against the defendants in

21  this matter.  Declaration of Mark B. Hanson ("Hanson Decl."), ¶ 3.

22        After initial discovery efforts, Plaintiffs began discussing with Defendants' attorney the

23  depositions of all the defendants, including Park Hwa Sun who's deposition was scheduled for

24  January 27, 2006.  Hanson Decl., ¶ 4.

25        On January 1, 2006 Defendants effected the transfer of their operating businesses to KSK

26  Corp.  See Excerpt from Deposition of Kim Ki Sung at page 35, lines 14 to 23; Exhibits D through

27

I.

Shortly thereafter, Defendants entered into a bogus mortgage and bogus promissory notes which placed liens on their vehicles and their Susupe land and residence in favor of Kim Pil Sun Kitami who's deposition was later taken and it was determined that no documentary evidence exists to establish that any loans were actually made to Defendants by Kim Pil Sun Kitami.  *See*, *e.g.*, Transcript of Deposition of Kim Pil Sun Kitami on file with the Court; Hanson Decl., ¶ 6.

On January 24, 2006, the day set for the deposition of defendant Jung Jin Corporation (Park's corporation), Plaintiffs learned from defendant Kim and his attorney, Stephen J. Nutting, that Park had departed the Commonwealth one or two days prior for South Korea with no plans of returning to Saipan.  *See* Excerpt from Deposition of Kim Hang Kwon, page 8, lines 15 to 18; Declaration of Stephen J. Nutting in Support of Motion to Withdraw, ¶ 3.

On January 27, 2006, Park failed to appear at her own, duly noticed deposition though defendant Kim did appear for defendant Asia Enterprises, Inc.'s deposition and his own depositions. Hanson Decl., ¶ 8.

On May 18, 2006, having obtained leave of court, Plaintiffs filed a First Amended Verified Complaint naming two successors — Kim Ki Sung and KSK Corporation — to the liability of the four original defendants.  *Id.*, ¶ 9.  A subsequent motion by the two new defendants led to the Court's dismissal, without prejudice, of Plaintiffs' claims of FLSA successor liability against those defendants with the Court apparently deciding that the claims were premature.  *See* June 20, 2006 Order Dismissing Complaint, Without Prejudice, as to Defendants Kim Ki Sung and KSK Corporation (as clarified by a June 21, 2006 Order).

On August 24, 2006, judgment was entered by this Court for Plaintiffs in the above-captioned case and against all of the above-named Defendants, jointly and severally, in the amount of $209,798.55, plus post-judgment interest at the applicable rate.  The time to move to alter or amend the judgment and the time to appeal the judgment have expired and the judgment is final.  The

Page 2 of 13

1  judgment, in total, remains unsatisfied.  With interest to the date of the filing of this Application,

2  the total outstanding balance of the amount owed by Defendants, jointly and severally, to Plaintiffs

3  is $212,583.00,[1] plus subsequently accrued interest and the costs of collection (the "Judgment

4  Amount").

5      After the final judgment against the current defendants in this matter, Plaintiffs hired a

6  private investigator in attempts to ascertain information on the whereabouts of defendants' assets

7  in the Commonwealth including the existence of any "hidden" interests defendants, or any of them,

8  may have in other existing and newly formed Commonwealth businesses, partnerships and

9  corporations.  Hanson Decl., ¶ 15.

10      Thereafter, on November 9, 2006, Plaintiffs' filed, *ex parte*, their first application for a post-

11  judgment writ of execution under Commonwealth law attempting to collect the Judgment Amount

12  hoping that Mr. Kim, the only individual defendant remaining the in the Commonwealth, would not

13  hide or dispose of his assets and flee the Commonwealth before the assets could be seized by the

14  United States Marshall.

15      On November 14, 2006, the Court denied Plaintiffs' writ of execution because, among other

16  reason, it believed the motion to be premature.  *See* Order Denying Without Prejudice Plaintiffs'

17  Motion for Writ of Execution.

18      The same day, as had already been planned by Plaintiffs, Plaintiffs' counsel issued a subpoena

19  for the deposition of defendant Kim Hang Kwon, among several other subpoenas directed at various

20  Commonwealth banks and government agencies.  Hanson Decl., ¶ 18.  The subpoena set Kim Hang

21  Kwon's deposition for November 22, 2006 and it was personally served on Kim Hang Kwon the

22  following day, November 15, 2006, at his Susupe residence by process server Rainaldo Agulto.  See

23  Return of Service e-filed November 17, 2006.

24      On about November 19, 2006, three days before the date scheduled for his deposition,

25

26  _____

    [1] Currently $29.31 per day from the date of entry of the judgment compounded annually.

27

1  without contacting Plaintiffs' counsel to discuss his going off-island or requesting to reschedule the

2  deposition, defendant Kim Hang Kwon departed the Commonwealth for South Korea.  Hanson

3  Decl., ¶ 20.

4      Now, with all of the individual defendants/corporate principals either gone from the

5  Commonwealth or dismissed, without prejudice, from the case, Plaintiffs' only ability to collect on

6  any of their judgment through assets left by the Park Hwa Sun, Kim Hang Kwon, Jung Jin

7  Corporation and Asia Enterprises, Inc. in the Commonwealth is by a duly noticed hearing or hearings

8  on an order or orders in aid of judgment, which will necessarily include a writ or writs of execution

9  in light of the fact that the defendants are no longer in the Commonwealth to respond to questioning

10  as to their assets and/or to comply with turn over orders.

11      Accordingly, Plaintiffs are, hereby, applying to the Court for such relief and provide the

12  following memorandum to show the authority by which this Court can grant such relief and to

13  alleviate any of the Court's remaining concerns over Commonwealth collection procedures.

14  A.  LEVY, EXECUTION AND ORDERS IN AID OF JUDGMENT UNDER
       COMMONWEALTH LAW.

15

16      In its Order Denying Without Prejudice Plaintiffs' Motion for Writ of Execution of

17  November 14, 2006, while recognizing that a judgment debtor examination is not a prerequisite to

18  the issuance of writ of execution, the Court nevertheless stated its concern that Plaintiffs had not

19  sought an examination of the "judgment debtor"  — in this case, actually four joint and several

20  judgment debtors.  While procedures in furtherance of execution on property and procedures in aid

21  of judgment are not mutually exclusive, the two are separate and distinct procedures under

22  Commonwealth law of which a judgment creditor can avail to attempt to collect a debt in the

23  Commonwealth.[2]

24      As previously briefed for the Court, execution proceedings are governed by 7 CMC §§ 4203-

25

26      [2] Such dual procedures are not unique to the Commonwealth.  *See*, *e.g.*, *In re Burns*, 291 B.R.
    846, 854-855 (9th Cir. BAP 2003).

27

4204 (2000).  Proceedings in aid of judgment, on the other hand, are governed by 7 CMC §§ 4205-4209, which provide that in pertinent part that upon application by either party, the Court "shall hold a hearing on the question of the debtor's ability to pay and determine the fastest manner in which the debtor can reasonably pay a judgment based on the finding." 7 CMC § 4205.  The proceedings amount to a another trial. *See* 7 CMC § 4206(a). The resulting order in aid of judgment "may provide for the transfer of particular assets at a price determined by the Court, or for a sale of particular assets and payment of the net proceeds to the creditor, or for payments, in specified installments on particular dates or at specified intervals, or for any other method of payment which the court deems just." 7 CMC § 4206(b).

Importantly, after an application for an order in aid of judgment has been filed, "no writ of execution may be issued thereon except under an order in aid of judgment as provided in this chapter, or by special order of the court for cause shown," and if a writ of execution is outstanding, a judgment debtor may request a stay of execution.

Further, under execution procedures and those involved in orders in aid of judgment provided by Commonwealth law, the burden is squarely on the judgment debtor, timely, to identify property and to claim statutory exemptions.

Here, it was in Plaintiffs' initial interest to avail themselves of the execution procedures provided by 7 CMC §§ 4203-4204 so as to effectively collect assets of the Defendants/Judgment Debtors before they had an opportunity to transfer or hide the remaining assets in *locations* about which Plaintiffs were aware and depart the Commonwealth.  Any proceedings in aid of judgment, including the suggestion by the Court to call the Judgment Debtors into court for examination (if possible), would have indicated to the Judgment Debtors that collection efforts had begun in earnest and the game would be on — again.  Further, with one of the defendants, Park Hwa Sun having

already fled the jurisdiction to avoid a deposition (after it was properly noticed),[3] such proceedings in aid of judgment would have yielded at the most only one of the judgment debtors for questioning. Further, because the course of the litigation to date suggested that Defendants would continue to sell, transfer without consideration, or have more bogus liens placed on their assets in order to frustrate Plaintiffs' collection efforts, Plaintiffs' intent was to avail themselves of statutory *execution procedures* before resulting to judgment debtor examinations, turn over orders and other procedures in aid of judgment.

However, on about Sunday, November 19, 2006, after receiving notice by subpoena that his deposition would taken on Wednesday, November 22, 2006, defendant Kim Hang Kwon, the other individual defendant/corporate principal, left the Commonwealth. Hanson Decl., ¶ 20. Apparently, he went to South Korea. *Id.* In view of both of the individual defendants'/corporate defendants principals' flight to South Korea to avoid further proceedings in this matter, Plaintiffs' best course of action is to notice an application for and to obtain an order in aid of judgment securing so much of Defendants' property in the Commonwealth as is available to satisfy the judgment against Defendants, jointly and severally. Thereafter, Plaintiffs intend to avail themselves of proceedings against Defendants' successors to their operating business assets, proceedings that the Court previously determined were premature at the time they were initially brought. *See* June 20, 2006 Order Dismissing Complaint, Without Prejudice, as to Defendants Kim Ki Sung and KSK Corporation (as clarified by a June 21, 2006 Order).

B.    UNDER COMMONWEALTH LAW, THE BURDEN OF IDENTIFYING PROPERTY TO SATISFY A JUDGMENT IS PROPERLY PLACED WITH THE JUDGMENT DEBTOR, NOT THE PLAINTIFF/JUDGMENT CREDITOR ATTEMPTING TO COLLECT ON A VALID JUDGMENT.

Plaintiffs are (and always have been) actively attempting to determine the whereabouts of

---

[3] A scenario that earlier led, at least in part, to Defendants' counsels' withdraw from their representation. Affidavit of Stephen J. Nutting in Support of Motion to Withdraw filed February 3, 2006, ¶¶ 4-5 (Park had left for Korea with no intention of returning and the corporate entities and Kim had no money to pay his fees).

assets of Defendants going so far as to hire a private detective to provide surveillance and other investigative services. *See* Hanson Decl., ¶ 15. Plaintiffs have served a substantial number of subpoenas both in January of this year and most recently about two weeks ago. *Id.*

Despite the concerns expressed by the Court, Plaintiffs are not seeking to identify the location of assets of Defendants by writ of execution. For the most part, Plaintiffs generally know the nature and whereabouts of Defendants' assets, assuming they have not already attempted to fraudulently transfer their remaining assets. What Plaintiffs are asking of the Court is that it grant the issuance of a writs of execution and other orders in aid of judgment to allow the levy (lien), seizure and sale of property of Defendants at identifiable locations in the Commonwealth — asset locations now known or in the future identified by Plaintiffs through continuing investigation and discovery efforts.[4]

Indeed, the Commonwealth's execution statute and statues governing orders in aid of judgment themselves make clear that identification of specific assets for execution is not required. When the statute authorizes the executing officer of the writ to "take into his or her possession property of the person against whom the execution is issued, not exempt from execution, sufficient in his or her opinion to cover the amount of the execution," it necessarily follows that such judgment of the executing officer as to the property to be seized and it relative value will be made as the property is being identified by the executing officer during service of the writ. Nothing in the statute requires a pre-writ idenfication of property by the party seeking the writ. See 7 CMC § 4204. That

---

[4] For example, Plaintiffs also have served subpoenas on several CNMI banks in an effort to locate additional accounts belonging to the judgment debtors, albeit not pursuant to the statutes cited by the Court as those statutes do not apply to non-government persons and do not apply in litigation where the judgment debtor is a party in any case. *See* 12 U.S.C. § 3401 *et seq.* and particularly § 3413(e). All though Plaintiffs are hopeful that such discovery will reveal additional funds upon which to execute, Plaintiffs have information that Defendants have already removed all funds from their old bank accounts. Given the Defendants' knowledge of Plaintiffs' subpoena power, it is also highly unlikely that Defendants would attempt to frustrate collection efforts by hiding money in CNMI bank accounts. What is much more likely is that Defendants, who admittedly deal mostly in cash (see depositions transcripts), are hiding cash in tin cans under their bed (or in a safe) in the residence in Susupe, or, most likely, that Defendants took all of their cash and other valuables with them to South Korea when they fled — Mr. Kim most recently last week.

section also requires the executing officer to make a list of the property levied upon, *not* carry with him a list of property upon which to levy. *Id.*

Here, to the extent Plaintiffs do not know the exact character of all of Defendants' non-exempt assets subject to execution, the burden falls squarely on Defendants to identify *and exhibit* such assets or risk the necessary invasion of the Marshall to do the identification for them (assuming the Defendants do not pay the execution amount upon initial demand). The burden of asset identification does not fall on Plaintiffs (or the Marshall) in the first instance, either in execution proceedings or in aid in judgment proceedings as they are separately provided for by Commonwealth statute.

Under Commonwealth law, applicable in these circumstances by Fed. R. Civ. P. 69(a), its is the judgment debtors' burden to identify assets sufficient to meet the execution amount. Shifting of the burden to Plaintiffs will only frustrate Plaintiffs' ability to collect on the legal, final judgment against Defendants/judgment debtors.

C.    THE FOURTH AMENDMENT IS ONLY IMPLICATED IN *UNREASONABLE* SEARCHES AND SEIZURES AND THE PROCEDURES IN CIVIL PROCEEDINGS ARE NOT SUBJECT TO WARRANT REQUIREMENTS.

In its Order Denying Without Prejudice Plaintiffs' Motion for Writ of Execution of November 14, 2006, the Court also expressed concern that Plaintiffs' proposed Writ of Execution allowing the Marshall to seize unspecific assets within the residence of Defendants (two of which are alter ego corporations that actually paid to build the residence and its surroundings) may cause an infringement of Defendants/judgment debtors' Fourth Amendment rights to be free from unreasonable searches and seizures.

Initially, Plaintiffs would note that civil executions procedures do not implicate the warrant requirements of the Fourth Amendment as they apply to *government* searches and seizures associated with law enforcement actions. *See Murray's Lessee et al. v. Hoboken Land and Improvement Co.*, 59 U.S. 272 (1855) the holding of which was described by the First Circuit this way:

1

2      In Murray's Lessee, the challenged action was a levy for the satisfaction
       of a debt owed to the government. The Court stated that the Fourth
3      Amendment did not apply "to civil proceedings for the recovery of
       debts." Id. at 285. There was no question, however, of the existence of
       the debt satisfied by the seizure:  the executive order to seize the
4      debtor's property constituted "conclusive evidence of the facts recited
       in it, and of the authority to make the levy."  Id.

5   United States v. One 1975 Pontiac Lemans, Vehicle I.D. No. 2F37M56101227, 621 F.2d 444, 453 (1st

6   Cir. 1980).

7       Further, a ruling of this Court that a judgment debtor could avoid execution on assets,

8   including all kinds of cash and valuables, would not only cause a substantial injustice to Plaintiffs

9   here, it would ignore Commonwealth statute and create an exemption from execution not provided

10  by law.  Execution in collection of debts is similar to the collection and disposition of non-exemption

11  assets by a bankruptcy trustee.  The debtor is allowed certain exemptions from execution and the

12  remaining assets are subject to seizure and sale to pay creditors notwithstanding that some or most

13  of those assets may be harbored by the debtor in their house.

14      The first stage in the statutory execution proposed by Plaintiffs is a demand by the Marshall

15  on the judgment debtors to pay the judgment with interest and costs.  The second step is for the

16  Marshall to allow the judgment debtor to claim exemptions and identify non-exempt property for

17  execution sufficient, in the Marshall's opinion, to cover the execution amount.  At any time during

18  this process, the judgment debtor can come into Court and argue that the execution should not go

19  forward.

20      Only after the judgment debtor has been provided this opportunities would the Marshall, if

21  the judgment debtor fails to comply, be authorized to identify and seize property of the judgment

22  debtors, including property within judgment debtors' residence in Susupe, Saipan — the likely

23  location of all of judgment debtors' assets of any value.  Plaintiffs submit that it is therefore,

24  imminently "objectively reasonable" to authorize the search and seizure of such residence for assets

25  of value which such *reasonable* search and seizure could not be in violation of Defendants/judgment

26  debtors Fourth Amendment rights.  Of course, this objective reasonableness applies equally to the

27

Page 9 of  13

locations other than Defendants' Susupe residence where Defendants may have assets, though the privacy interest of Defendants are markedly diminished if non-existent altogether.

D.    PLAINTIFFS AND THEIR ATTORNEY WILL TAKE ON AS MUCH OF THE BURDEN OF LEVY AND EXECUTION AS THE COURT WILL ALLOW.

In its Order Denying Without Prejudice Plaintiffs' Motion for Writ of Execution of November 14, 2006, the Court also expressed concern that the Marshall would be saddled with responsibilities beyond his office.  In light of the fees and commissions that will be due to the Marshall after an execution sale by statute, Plaintiffs respectfully submit that such is not the case.  The Marshall is also statutorily empowered to command assistance in the service of the writ which includes requiring the assistance from the party for whom the writ is issued.  Plaintiffs' proposed Writ was not an attempted loading of Plaintiffs' obligations on the Marshall as the Court suggests; rather the writ of execution first proposed by Plaintiffs' tracked, as closely as possible, the actual language of the statute and, from what Plaintiffs were able to learn through research on the subject, the enforcement of similar statutes in other jurisdictions.

In any case, it has always been the intention of Plaintiffs to assist the Marshall in any way possible with the execution of any writ issued by this Court.  Plaintiffs are requesting writs of execution as part of the proceedings in aid of judgment initiated hereby.  Accordingly, Plaintiffs submit that in any writ issued by the Court in aid of judgment against Defendants, Plaintiffs' counsel will be responsible for a substantial portion of the notice, transportation, storage, advertising, auctioning, accounting and reporting of the execution proceedings to whatever extent the Court deems necessary and appropriate under Commonwealth and federal law.  Plaintiffs stand ready to do any other thing this Court deems necessary to collect Plaintiffs' judgment now amounting to over $212,000.00 with accrued interest to date before Defendants dissipate their remaining assets in the Commonwealth having already fled to South Korea.

E.    PROPERTY TO BE SEIZED, LEVIED AND SOLD:

Consistent with Commonwealth Statutes and the Court's authority under Fed. R. Civ. P.

69(a) and its authority to enforce its judgments, Plaintiffs request the following

(1) That the Court issue forthwith an order commanding defendants to appear at a hearing on this application for an order in aid of judgment with such order to be served on all defendants via certified mail at their last know addresses in the Commonwealth;

(2) That the Court hold the hearing on an order in aid of judgment at its earliest convenience (a motion to shorten time for hearing this Application is submitted concurrently herewith);

(3) That the Court Order the sale, at public auction, of Defendants' leasehold interest in Lot No. 056 H 14, a part of Lot No. 056 H 03, a 3,627 square meter parcel of improved property located in Susupe, Saipan, CNMI;

(4) That the Court issue a writ or writs of execution providing:

(a) That the Marshall, with the assistance of Plaintiffs' counsel, send notice of the writ via certified mail to Defendants at their last known address with a demand for full payment of the judgment amount, with costs of execution, accrued interest, and additional attorneys' fees and costs of collection or exhibition of property sufficient, in the sole opinion of the Marshall, to cover such amount;

(b) That if Defendants:

(i) fail to pay the judgment amount with interest and costs due the Marshall within one (1) week of the mailing of the demands to Defendants; and

(ii) fail to *exhibit* sufficient property upon which the Marshall may execute within such period of time; then

(iii) the Court authorizes the Marshall to "make the selection" and "take into his or her possession property of the person against whom the execution is issued, not exempt from execution, sufficient in his or her opinion to cover the amount of the execution."

Plaintiffs further request that the levy attach to any and all non-exempt property located in the residence of Defendants in Susupe, Saipan, CNMI (Lot No. 056 H 14, a part of Lot No. 056 H

03) and that the Marshall be authorized to enter the residence and the areas surrounding Defendants' residence at a reasonable hour to locate, seize and remove any non-exempt property to fulfill its execution and return under the Writ.

By way of a description of the property of Defendants which Plaintiffs can (presently) identify with more particularity, Plaintiff intend to direct the Marshall to the following non-exempt property:

1.    2005 Toyota Tacoma, License Plate No. ACF873, VIN# 5TENX22N35Z025455;

2.    2003 Kia Sorento, License Plate No. ABR529, VIN# KNDJC733235161240;

3.    All money, if any, held in Bank Account # 0032-020933 at Bank of Hawaii, Saipan Branch in the name of Jung Jin Corporation;

4.    All money, if any, held in Bank Account # 0032-016294 at Bank of Hawaii, Saipan Branch in the name of Asia Enterprises, Inc..

Further, Plaintiffs intend to direct the Marshall to the following locations of Defendants' businesses where the Marshall can seize all poker machines (defendants at one time were operating at least 29 machines in the locations with another 15 licensed machines somewhere else) and other items and cash in said businesses:

5.    J's Poker located on Texas Road in Susupe, Saipan, CNMI;

6.    Sun's Poker located near the Mount Carmel Cemetery in Susupe, Saipan, CNMI.

Plaintiffs also intend to direct the Marshall to a large, separated storage facility on the 3,672 square meter tract of Susupe land on which Defendants residence is located which, Plaintiffs were told in depositions, contains poker machines (not in use) and other personal property of Defendants.

CONCLUSION

Accordingly, for the reasons and pursuant to the authority stated above, Plaintiffs respectfully request that this Court hold a hearing and issue orders in aid of judgment, including a writ or writs of execution authorizing and appointing as the Executing Officer the United States Marshall Service, and ordering the Executing Officer to seize, levy and sell at public auction, pursuant to Title 7,

1  Sections 4203-4210 of the Commonwealth Code, all real property and non-exempt personal property

2  of the Defendants, or any of them, in the total amount of $212,583.00, plus $29.31 per day from the

3  date of this filing, plus any additional costs awarded by the Court for post-judgment collection

4  efforts, plus the costs and expenses incurred in connection with the levy and with the execution sale.

5

6       Respectfully submitted this 28th day of November, 2006.

7

8                                    /s/ Mark B. Hanson

9                                         MARK B. HANSON

10                                   Second Floor, Macaranas Building
                                     Beach Road, Garapan
11                                   PMB 738 P.O. Box 10,000
                                     Saipan, Mariana Islands 96950
12                                   Telephone:    (670) 233-8600
                                     Facsimile:    (670) 233-5262
13
                                     Attorney for Plaintiffs
14

15

16

17

18

19

20

21

22

23

24

25

26

27

Page 13 of  13