Deborah L. Covington
Assistant Attorney General
OFFICE OF THE ATTORNEY GENERAL
Civil Division – Capitol Hill
2nd Floor Administration Bldg.
Caller Box 10007, Saipan, MP 96950
Telephone: (670) 664-2341
Facsimile: (670) 664-2349
Attorney for CNMI Division of Revenue and Taxation

IN THE UNITED STATES DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS

| | |
|---|---|
| LI YING HUA, LI ZHENG ZHE and XU JING JI, | Civil Action No. CV 05-00019 |
| Plaintiffs, | |
| v. | **REPLY AND OPPOSITION TO MOTION TO COMPEL** |
| JUNG JIN CORP., ASIA ENTERPRISES, INC., PARK HUA SUN and KIM HANG KWON, | Date: December 21, 2006<br>Time: 9:00 am<br>Judge: Hon. Alex R. Munson, Chief Judge |
| Defendants. | |

Plaintiff has served a Subpoena upon non-party Division of Revenue and Taxation seeking certain information from four party-defendants and five non-parties.[1] The underlying cause of action involves both alleged violations of the Fair Labor Standards Act as well as supplemental state law claims. *See* Verified Complaint For Violations of the Fair Labor Standards Act and Supplemental State Law Claims, filed January 25, 2005.

Fed. R. Civ. P. 45 allows a Court to quash or modify a subpoena if it "requires disclosure of privileged or other protected matter and no exception or waiver applies" [Fed.

R. Civ. P. 45(c)(3)(A)(iii)], or if it subjects a person to undue burden [Fed. R. Civ. P. 45(c)(3)(A)(iv)].

A. Disclosure of Privileged or Other Protected Matter

Issues regarding privilege are govern by Fed. R. Evid. 501. This rule provides:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

Fed. R. Evid. 501.

As Plaintiff's Verified Complaint indicates, the instant lawsuit involves state claims. Because of the presence of a state law claim, the privilege asserted "shall be determined in accordance with State law." Fed. R. Evid. 501.

Furthermore, with respect to the privilege of a person, government, or State, the Supreme Court has stated that Rule 501 "manifested an affirmative intention not to freeze the law of privilege" and that "[i]ts purpose rather was to 'provide the courts with the flexibility to develop rules of privilege on a case-by-case basis.'" *Trammel v. United States*, 445 U.S. 40, 47, 100 S.Ct. 906, 911, 63 L.Ed.2d 186 (1980).

---

[1] The non-parties include KSK Corporation; Kim Ki Sung; Kim Hyung Pil; Kim Pil Sun Kitami; and Seung-Hee Cindy Yu. Kim Ki Sung and KSK Corporation were brought in as Defendants, however, on June 20, 2006, this Court dismissed the Complaint against them and labeled the charges as "premature".

To the extent this Court declines to apply the state law of privilege, it should consider whether the protected matter asserted by the Division of Revenue and Taxation is protected "by the principles of the common law as they may have been interpreted by the courts of the United States in the light of reason and experience." Fed. R. Evid. 501. As explained in *Hansen v. Allen Memorial Hospital,* 141 F.R.D. 115, 122 (S.D. Iowa 1992):

> Just because this court concludes it is not required to apply the state law of privilege, however, does not mean "that federal courts should not consider the law of the state in which the case arises in determining whether a privilege should be recognized as a matter of federal law." [*Memorial Hospital for McHenry County v.*] *Shadur,* 664 F.2d [1058 (7th Cir. 1982] at 1061; [*Moorhead v.*] *Lane,* 125 F.R.D. [680 (C.D. Ill. 1989)] at 682. This is true because "[a] strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy." *Shadur,* 664 F.2d at 1061; *United States v. King,* 73 F.R.D. 103, 105 (E.D.N.Y.1976); *Lane,* 125 F.R.D. at 682-83. Thus, when a "state holds out the expectation of protection to its citizens, they should not be disappointed by a mechanical and unnecessary application of the federal rule." *Lane,* 125 F.R.D. at 683; *Shadur,* 664 F.2d at 1061 (quoting *Lora v. Board of Educ.,* 74 F.R.D. 565 (E.D.N.Y.1977)).

The *Hansen* Court recognized that privileges exclude potentially relevant evidence, are not favored and, where recognized, must be narrowly construed. However, it found that "the federal court should 'weigh the need for truth against the importance of the relationship or policy sought to be furthered by the privilege, and the likelihood that recognition of the privilege will in fact protect that relationship in the factual setting of the case.'" *Id.* (citations omitted).

In this case, the policy reasons behind the confidentiality provision outweigh the need for disclosure of the requested information. The licensing requirements for poker

machines require that the applicant provide confidential financial information, as well as identity documents, police clearances, tax documents and other sensitive information. Full disclosure of all necessary information is needed to determine whether the applicant is qualified to receive a license.

While the tax code currently protects tax return and return information from disclosure in an effort to promote full compliance with the tax laws, no such protection is extended, under the tax code, to information submitted in connection with poker licensing. The Division of Revenue and Taxation determined that in order to obtain full disclosure of all necessary information, it would be necessary to protect the documents submitted in the same manner as tax return and return information is protected. The need to protect such information from disclosure in an effort to obtain full compliance with the regulatory scheme outweighs Plaintiffs' need to obtain information in an attempt to collect on a judgment. This is even more so when Plaintiff seeks information on five persons/corporations who are not even named as Defendants and who are not responsible for paying the judgment.

In addition to discussing the balancing test outlined above, the *Hansen* Court also recognized, but did not use Wigmore's four part test for recognition of a testimonial privilege. The Wigmore test is as follows:

> (1) The communications must originate in a *confidence* that they will not be disclosed; (2) This element of *confidentiality must be essential* to the full and satisfactory maintenance of the relation between the parties; (3) The *relation* must be one which in the opinion of the community ought to be sedulously *fostered;* and (4) The *injury* that would inure to the relation by the disclosure of the communications must be *greater than the benefit* thereby gained for the correct disposal of litigation. Only if these four conditions are present should a privilege be

recognized. *See, e.g., Finch,* 638 F.2d at 1344; *Garner v. Wolfinbarger,* 430 F.2d 1093, 1100 (5th Cir.1970), *cert. denied sub. nom., Garner v. First American Life Ins. Co.,* 401 U.S. 974, 91 S.Ct. 1191, 28 L.Ed.2d 323 (1971) *(quoting 8 J. Wigmore, Evidence, § 2285 at 527 (McNaughton rev. 1961)); In re Production of Records to Grand Jury,* 618 F.Supp. 440, 443 (D.Mass.1985).
*Hansen* at 122.

In this particular case, the communications made by the poker licensees originated in confidence that they would not be disclosed. The Divison's validly promulgated regulation was in force at the time the licensees provided their information and the licensee has every right to expect that the Division of Revenue and Taxation will adhere to a regulation promulgated by it and keep such information confidential.[2]

Secondly, as previously discussed applicants submit confidential financial, passport, police clearances outlining any criminal history, and other personal information to the Division in connection with the license application. The applicant has every expectation that such sensitive information will remain confidential in the same manner as its tax return and return information is kept, due to the regulations prohibiting disclosure.

Furthermore, the licensing of poker machines generates substantial revenue to the government in terms of fees and taxes, thus significantly benefiting the community with the revenues collected. The confidential relationship is necessary to the full and satisfactory maintenance of the relation between the parties much like the confidential relationship between taxpayers and the government, which is done to promote voluntary compliance with the tax laws. That is, an applicant may decide not pursue a license if it knows its

---

[2] Regulations are presumed to be valid, and therefore review is deferential to the agency. *Nat'l Ass'n of Home Builders v. Norton,* 340 F.3d 835, 841 (9th Cir.2003).

financial, and other personal information submitted in connection with the application will be revealed to the public. Should an applicant decide not to pursue a license, this would result in decreased revenues to the government coffers and may result in an increase of taxes to the public to make up for any shortfall in revenue collection. As such, the public has an interest in expecting that the Division will maintain the confidentiality of the applicant's information in accordance with its regulations.

Finally, as discussed above, tax returns and return information, as defined in the tax code, are protected from disclosure under both the tax code and the Open Government Act.[3] The license fees imposed on poker license applicants are significant in amount and raise revenue. While the license fees are still technically a fee, they are nevertheless akin to a tax in many respects.[4] As such, it is proper to protect the information submitted in connection with this licensing activity in the same manner as tax return and return information are protected by law.

Plaintiff argues that the Open Government Act allows discovery of such material. While that is questionable, the fact is, Plaintiff's request was not made via the Open Government Act. Rather, it was made via subpoena. Any argument that the Open Government Act would allow disclosure is immaterial.

---

[3] "A public policy against unnecessary public disclosure arises from the need, if the tax laws are to function properly, to encourage taxpayers to file complete and accurate returns." *Premium Service Corp. v. Sperry & Hutchinson* Co., 511 F.2d 225, 229 (9th Cir. 1975).

[4] In general, a tax is used to raise revenue and is levied for the general benefit of residents. Fees, on the other hand confer special benefits on fee payers "in a manner not shared by those not paying the fee." See *Volusia County v. Aberdeen at Ormond Beach, L.P.*, 760 So.2d 126, 135 (Fla. 2000). However, in this case, the CNMI taxpayers/residents also receive a general benefit by the substantial fees levied on the licensee, in that the need for an increase in taxes on the residents are reduced due to the revenue collected by the fees.

B. Undue Burden

In determining whether a person is subject to undue burden, the Advisory Committee has commented that Rule 45(c)(3) is to track the standards found in Fed. R. Civ. P. 26(c). *See* Commentary to Fed. R. Civ. P. 45. Whether a burdensome subpoena is reasonable "must be determined according to the facts of the case," such as the party's need for the documents and the nature and importance of the litigation. *Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 407 (D.C. Cir. 1984). Thus, relevance plays an important part in determining whether the requested information should be disclosed.

Plaintiff is attempting to collect on a judgment rendered against two individuals and two corporations. It has requested that the Division produce records of "any and all poker license fees paid" by the individuals and corporations listed in the subpoena. What relevance does proof of license fee payments play in connection with attempts to collect on a judgment? Will Plaintiff seek to obtain a refund of these license fees from the government in order to collect on its judgment? Is Plaintiff seeking credit card numbers so it can "charge" the judgment to Defendant's credit cards? Plaintiff has failed to show the relevance in needing this information and as such, the burden of complying with the subpoena outweighs the need for such information given that such information is irrelevant.

Plaintiff also seeks copies of all documents submitted in support of a license. Again, Plaintiff fails to show how required documentation such as photographs of machines, criminal histories and other documentation submitted in connection with the licensing of poker machines are relevant to collection on a judgment. If Plaintiffs seeks the location of the business for seizure of any property, that information was already provided

to them from the subpoena issued to the Business License Section. Moreover, Jung Jin Corporation's poker licenses expired in January 2006, March 2006 and April 2006 while Asia Enterprise, Inc.'s poker license expired on December 2005. The Division of Revenue and Taxation doe not keep track of the location of unlicensed machines as it is mandated to keep track of only licensed machines.[5]

Additionally, as previously indicated, Plaintiffs seeks information not only on four Defendants, but five individuals and corporation that are not parties to the lawsuit. Plaintiff has not shown the need for documents sought with respect to the five non-parties and the burden of producing such records is greater than the need. Courts have suppressed subpoenas which requested information from non-parties based upon the need for such documents did not outweigh the burden of producing such records. *See Premium Service Corp. v. Sperry & Hutchinson* Co., 511 F.2d 225 (9th Cir. 1975). For this reason, the subpoena must be quashed.

D. Privacy Concerns under the CNMI Constitution

Plaintiff relies upon *Rollins v. Barlow*, 188 F. Supp. 2d 660 (S.D. W.Va. 2002) as authority for proposition that individual privacy concerns do not amount to a privilege. That may be true in West Virginia, but the CNMI Constitutional right to privacy must prevail. As indicated, Plaintiff seeks personal information from nonparties as well as parties. This may include credit card numbers, criminal records, copies of passport information and other personal information. Given the prevalence of identity theft, it is

---

[5] That is not to say the Division sits idly by and does nothing when it finds an unlicensed machine in

proper under the CNMI Constitution to protect such information from disclosure. The CNMI has a right to assert this concern given the fact that it could face civil liability should such personal information fall into the hands of an unscrupulous person due to the CNMI Government's disclosure.

Furthermore, while Plaintiff asserts that N.M.I. Const., Art. I, §10 applies only to individuals within the jurisdiction, the Division of Revenue and Taxation has no information showing that such individuals are not longer in the CNMI. As such, it is entitled to rely upon the Constitutional provision which protects an individual's right to privacy.

E. Plaintiff's Motion to Compel

Plaintiff has filed a Motion to Compel in this matter. The Motion to Compel must be denied, as it has not been noticed for hearing in accordance with the Court Rules, nor has a Motion to Shorten Time been served.

Secondly, as explained above, the Division of Revenue and Taxation has enacted regulations which prohibit disclosure of the requested information. As such, the Division is entitled to rely upon those regulations and must defend its regulations unless and until a Court determines they are invalid. The Division should not be compelled to disclose privileged or other protected matter in violation of its regulations.

Conclusion

---

operation. The Division enforces its regulations regarding seizure of unlicensed machines found to be in operation and has seized several unlicensed machines.

The CNMI's regulation prohibits disclosure of the information requested. Given the strong policy of comity between state and federal sovereignties this Court must recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy. In this case there is not cost to federal substantive and procedural policy in recognizing the CNMI's regulation prohibiting disclosure.

Furthermore, the subpoena requests information about nonparties, in which the burden of producing such information outweighs the relevancy of information about nonparties. Finally, Plaintiff seeks information that is protected by the CNMI Constitution. The CNMI should not be asked to disregard the Constitution in order assist the Plaintiff in collecting a judgment. The subpoena must be quashed and the motion to compel must be denied.

Respectfully submitted this 14th day of December, 2006.

OFFICE OF THE ATTORNEY GENERAL

By: _____
DEBORAH L. COVINGTON, Bar No. F0218
CNMI Assistant Attorney General

Attorney for CNMI Division of Revenue and Tax