FILE NO. 06-059

'06 JAN 13 P2:10

13 / 99

COPY

NOTICE

ANY PARTY NAMED IN THIS MORTGAGE IS ENTITLED, UPON HIS REQUEST (AND AT HIS COST), TO A TRANSLATION OF THIS MORTGAGE IN THE PRINCIPAL LANGUAGE OF THE MARIANA ISLANDS; HOWEVER, THE ENGLISH DOCUMENT SHALL BE THE SOLE OPERATIVE VERSION. ERRORS IN TRANSLATION SHALL NOT AFFECT THE LEGAL RELATIONSHIP BETWEEN THE PARTIES UNLESS IT IS FIRST PROVED THAT THE ERROR WAS WILLFULLY OR RECKLESSLY CAUSED BY THE PARTY TO BE CHARGED.

THIS MORTGAGE IS A BINDING LEGAL INSTRUMENT AND IT IS RECOMMENDED THAT THE MORTGAGOR HAVE THIS MORTGAGE REVIEWED BY HIS ATTORNEY.

**MORTGAGE**

THIS MORTGAGE is made this 12th day of January 2006, by and between Kim, Hang Kwon and spouse Park, Hwa Sun, hereinafter both referred to as "Mortgagor", whose Post Office address is P.O. Box 503448 Saipan, MP 96950-3448; and Pil Sun Kim Kitami, hereinafter referred to as "Mortgagee", whose Post Office address is P.O. Box 502879, Saipan, Mariana Islands 96950-2879. (It is distinctly understood and agreed that the word "mortgagor" as herein used, is intended to and does include the masculine, feminine and neuter genders and the singular and plural number).

EXHIBIT 'A'

WITNESSETH: This Mortgage secures Mortgagor's debt to Mortgagee in the principal sum of THREE HUNDRED AND FIFTY THOUSAND UNITED STATES DOLLARS (US$350,000.00) plus interest thereon, all according to the terms of a Promissory Note of even date, executed by Mortgagor made payable to the Mortgagee, which Note is attached hereto and incorporated herein by this reference. All payments shall be paid to Mortgagee, unless changed in writing by Mortgagee, in the manner provided below.

The Mortgagor, in consideration of the premises and the aforesaid indebtedness, and for the purposes hereinafter set forth, has irrevocably mortgaged, granted, bargained, conveyed, and confirmed, and does by these presents irrevocably mortgage, grant, bargain, convey and confirm unto the said Mortgagee, its successors and assigns, all of Mortgagor's right, title, and interest in and to the following described real property:

> Lot No. 056 H 14, a part of Lot 056 H 03, which contains an area of 3,627 square meters, more or less, as more particularly described on Exhibit A to the Amended Lease of Real Property, filed with the Office of Commonwealth Recorder on January 16, 2003, as File No. 03-115, book 12, page 3, the said lot being part of the Original Lot No. 056 H 01, containing an area of 13,565 square meters, more or less, as shown on DLS Check No. 056 H 00, filed with the Commonwealth Recorder's Office as File No. 95-2026 on August 14, 1995,

TOGETHER with all of the improvements, tenements, hereditaments, appurtenances, and easements used in connection therewith, all water and water rights (whether riparian, appropriative or otherwise, and whether or not appurtenant) used in connection therewith, thereupon or thereto appertaining, and the rents, issues, and profits thereof, and all of Mortgagor's right title and interest in the Lease of Real Property dated

January 12, 2001, from Rosa Taman Maliti of Saipan, CNMI, to Kim, Hang Kwon, recorded on January 15, 2001with the Office of Commonwealth Recorder as File No. 01-087, book 11, page 3, as amended by the Amended Lease Of Real Property, dated January 15, 2003, and filed with the Office of Commonwealth Recorder on January 16, 2003, as File No. 03-115, book 12, page 3;

And all of Mortgagor's interest in one 2003 Kia, identified by a Certificate of Ownership, which is attached to the Promissory Note.

FOR THE PURPOSES OF SECURING (1) Payment of the principal sum set forth above, and any interest thereon, according to the terms of said Promissory Note made by Mortgagor, payable to the order of the Mortgagee and extensions or renewals thereof; (2) payment of any and all obligations and liabilities whatsoever, whether primary, secondary, direct, and indirect, fixed or contingent which are now due or may hereafter become due from Mortgagor (or any of them or any successor in interest to Mortgagor or any of them), whether created directly or acquired by assignment; (3) performance of each agreement of Mortgagor herein contained; and (4) payment of all sums to be made by Mortgagor pursuant to the terms hereof.

WARRANTS: Mortgagor warrants that Mortgagor is lawfully seized in a leasehold estate of and in all and singular the above granted and described premises, pursuant to that certain Lease of Real Property dated January 12, 2001, from Rosa Taman Maliti of Saipan, CNMI, to Kim, Hang Kwon, recorded on January 15, 2001with the Office of

Commonwealth Recorder as File No. 01-087, book 11, page 3, as amended by the Amended Lease Of Real Property, dated January 15, 2003, and filed with the Office of Commonwealth Recorder on January 16, 2003, as File No. 03-115, book 12, page 3, that the same are free, clear, discharged and unencumbered of and from all former and other grants, titles, charges, estates, judgments, taxes, assessments and encumbrances, of what nature or kind whatsoever; that the said lease is in full force and effect; and that neither party is in breach or default thereof.

TO PROTECT THE PROPERTY AND SECURITY GRANTED BY THIS MORTGAGE, MORTGAGOR AGREES:

1. To properly care for and keep said property and the buildings and improvements situated thereon in good condition and repair; to underpin and support, when necessary, any building or improvement situated thereon, and otherwise to protect and preserve the same; not to remove or demolish any building or improvement situated thereon without the prior written approval of the Mortgagee; to complete or restore promptly and in good and workmanlike manner, any building or improvement which may be constructed, damaged or destroyed thereon, and pay in full all costs as incurred therefore; not to commit or permit waste of the property; to comply with all laws, covenants, conditions or restrictions affecting the property; to provide and maintain fire (and if required by Mortgagee, typhoon, earthquake and other) insurance satisfactory to and with loss payable solely to Mortgagee and

to deliver all policies to Mortgagee, which delivery shall constitute assignment to Mortgage of all return premiums;

        2.    To appear in and defend, without cost to Mortgagee, any action or proceeding purporting to affect the security hereunder, or the rights or powers of Mortgagee and, when required by Mortgagee, to commence and maintain any action or proceeding necessary to protect such security and such rights and powers; and should Mortgagee elect to appear in, defend or commence and maintain any such action or proceedings (including any proceeding under any law relating to insolvency or bankruptcy), to pay all costs and expenses, including attorney fees;

        3.    To pay before delinquency, all rents, taxes, assessments and charges affecting the property; to pay when due all encumbrances, charges and liens affecting or purporting to affect the title to said property; and to pay all costs, fees and expenses of this Mortgage. At the request of Mortgagee, Mortgagor will monthly pay to Mortgagee an amount equal to one-twelfth (1/12) of the annual cost of taxes and assessments on the property together with an amount equal to the estimated net fire, earthquake and typhoon and other required insurance premiums divided by the number of months between the date of computation and the date of payment of said insurance premium; said accumulated funds will be released to Mortgagor for payment of taxes, assessments and insurance premiums, or may be so directly applied by Mortgagee, if Mortgagee so elects.

4. Should Mortgagor fail to make any payment or do any act as herein provided, or should the warranty of title be breached, the Mortgagee may (but without obligation so to do, and without notice to or demand upon Mortgagor and without releasing Mortgagor from any obligation hereunder) make or do the same, and may pay, purchase, contest or compromise any encumbrance, charge, or lien, which in its judgment appears to affect said property; and in exercising any such powers, incur any liability and expend whatever amounts in its reasonable discretion it may deem necessary therefore. All sums so incurred or expended by Mortgagee shall be secured hereby and, upon written notice thereof (or without demand), shall be immediately due and payable by Mortgagor; provided, however, that at the option of Mortgagee such sums may be added to the principal balance of any indebtedness hereby secured and, to the extent allowed by law, shall bear the same interest as such indebtedness and be payable ratably over the remaining term hereof.

5. Mortgagee may enter upon the property at any reasonable time during the existence of this Mortgage with the purpose of inspection or accomplishment of any of the purposes hereof, with permission of the mortgagor which permission will not unreasonably be withheld.

IT IS MUTUALLY AGREED THAT:

1. Should the property or any part thereon be taken or damaged by reason of any public improvements or condemnation proceeding, or damaged by fire, typhoon or

earthquake, or in any other manner, Mortgagee shall be entitled at its option, to commence, appear in and prosecute in its own name, any action or proceedings, or to make any compromise or settlement, in connection with such taking or damage, and to obtain all compensation, awards, and other relief therefore. All such compensation, awards, damages, right to action and proceeds, including the proceeds of any policies of insurance affecting said property, are hereby assigned to Mortgagee, who may release any money so received by it, or apply the same on any indebtedness secured hereby. Mortgagor agrees to execute such further assignments of any compensation, award, damages and rights of action and proceeds as Mortgagee may require. The Mortgagee may enter upon the property at any time during the existence of this Mortgage with the purpose of inspection or accomplishment of any of the purposes hereof.

  2. By accepting payment of any sum hereby secured after its due date or after the service of any notice of default, Mortgagee shall not waive its rights to require prompt payment when due of all other sums so secured or to declare default for failure so to pay or to proceed with any remedy available to Mortgagor hereunder or as given by law. If the Mortgagee holds any additional security for any obligations secured hereby, it may enforce the sale thereof at its option, either before, contemporaneously with, or after the sale is made hereunder, and on any default of Mortgagor, Mortgagee may, at its option, offset against any indebtedness owing by it to Mortgagor, the whole or any part of the indebtedness secured hereby. Waiver of a right granted to Mortgagee hereunder as to one transaction or



occurrence shall not be deemed to be a waiver of the right as to any subsequent transaction or occurrence.

3. In the event any one or more of the provisions contained in this Mortgage shall for any reason be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provisions of this Mortgage, but this Mortgage shall be construed as if said provision had never been contained herein.

4. Without affecting the liability of any person, including Mortgagor, for the payment of any indebtedness secured hereby, or the lien of this Mortgage on the remainder of the property for the full amount of any indebtedness unpaid, Mortgagee is respectively empowered as follows: Mortgagee may from time to time and without notice (a) release any person liable for the payment of any of the indebtedness, (b) extend the time or otherwise alter the terms of the payment of any of the indebtedness, (c) accept additional security therefore of any kind, and (d) alter, substitute or release part of or all of any property securing the indebtedness; Mortgagee may, at any time and from time to time, (a) consent to the making of any map or plat of the property, (b) join with mortgagor in granting any easement or creating any restriction thereon, (c) join with Mortgagor in any subordination or other agreement affecting this Mortgage or the lien or charge thereof, and (d) reconvey, without any warranty, all or any part of the property.



5. Upon payment in full of all sums secured hereby, and performance of all obligations of the Mortgagor hereunder, the Mortgagee shall release the interest vested in it hereby and record a release of mortgage in the office of the Commonwealth Recorder.

6. If default be made in the payment when due of any part or installment of principal or interest of the note or notes specifically referred to above or in the payment of any other indebtedness secured hereby or in the event Mortgagor or any successor in interest to Mortgagor in the property sells, rents, conveys, alienates, assigns or transfers said property, or any part thereof, or any interest therein, or becomes divested of his title or any interest therein in any manner or way, whether voluntary or involuntary, or upon default by Mortgagor in the performance of any agreement hereunder, then Mortgagee shall have the right, at its option, to exercise any and/or all rights available to Mortgagee hereunder and/or as given to Mortgagee by law including the right of Mortgagee (without limitation) at its option, to serve upon Mortgagor written notice of default, specifying the nature of the default of Mortgagor, and if said default is not cured within thirty (30) days from the date of service of notice then Mortgagee, at its option and without limitation, may (but shall not be required to) declare said note or notes and any other indebtedness or obligations secured hereby, irrespective of the maturity dates specified in any note or written agreement evidencing the same, immediately due and payable and thereupon commence proceedings to foreclose this Mortgage and/or exercise such other rights and remedies as may be available to Mortgagee hereunder and/or as given by law. In the event of a foreclosure suit and foreclosure sale, the



proceeds of sale shall be applied first to costs of sale, next to costs (including but not limited to reasonable attorneys` fees actually incurred) adjudged by any court to be due, and then to all other debts and obligations secured hereby. In the event that the proceeds of such sale are not sufficient to pay the amounts due secured hereby together with the costs of such sale, the Mortgagor agrees hereby to pay the deficient amount upon demand and any court may give a decree against the Mortgagor for any such balance due.

7. Upon the occurrence of any event of default hereunder and shall such default be cured prior to the filing of any judicial action for foreclosure, Mortgagor agrees to pay to Mortgagee reasonable attorneys` fees actually incurred not to exceed those allowable under applicable law. In case of suit being commenced for foreclosure of this Mortgage, whether said suit be brought to decree or not, Mortgagor agrees to pay to the Mortgagee reasonable attorney's fees actually incurred in an amount as may be filed by the Court, and also such further sums if any as the Mortgagee shall have incurred in realizing on the security interest granted hereunder, including but not limited to sums paid for procuring an abstract of or for search of the title to said premises subsequent to the execution of this Mortgage. In such suit or foreclosure the Plaintiff therein shall be entitled, without notice, to the appointment of a receiver to collect and receive the rents, issues and profits of the mortgaged premises and to perform such acts as are imposed upon the Mortgagor by the terms hereof. The Mortgagor agrees to voluntarily surrender possession of the premises to the Mortgagee or any purchaser upon demand.



8. Mortgagor hereby gives to and confers upon Mortgagee the right, power and authority during the continuance of this Mortgage to collect the rents, issues and profits of said property and of any personal property located thereon with or without taking possession of the property affected hereby, and hereby absolutely and unconditionally assigns all such rents, issues and profits to Mortgagee; provided, however, that Mortgagee hereby consents for Mortgagor to collect and retain such rents, issues and profits as they accrue and become payable if Mortgagor is not, at such time, in default with respect to payment of any indebtedness secured hereby or in the performance of any agreement hereunder.

9. Upon any default with respect to payment of any indebtedness secured hereby or in the performance of any agreement hereunder, Mortgagee may, at any time and regardless of whether or not any suit for foreclosure is filed, without notice, either in person, by an agent or by a receiver to be appointed by a Court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of said property or any part thereof, and in its own name sue for or otherwise collect all rents, issues and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorneys' fees, to any indebtedness secured hereby, and in such order as Mortgagee may determine (subject to any applicable law); also perform such acts of repair, cultivation, irrigation or protection, as may be necessary or proper to conserve the value of the property; also sell its interest hereunder or lease the same or any part thereof for such consideration, rental, term, and upon such conditions as its

judgment may dictate; also prepare for harvest, remove, and sell any crops that any be growing upon the premises, and apply the proceeds thereof upon the indebtedness secured hereby. The entering upon and taking possession of said property, and collection of such rents, issues and profits, and the applications thereof as aforesaid, shall not waive or cure any default or notice of default hereunder, or invalidate any act done pursuant to such notice. Mortgagee shall have the right to apply to any court of competent jurisdiction for any order for specific performance enforcing Mortgagee's right of possession hereunder. The entry of Mortgagee into possession shall not affect the nature of its interest hereunder and shall not enlarge the interest of Mortgagee hereunder nor impair the legal estate of the Mortgagor. Mortgagee shall not, by taking possession of the mortgaged premises, be considered in any manner as holding any estate in the property mortgaged hereunder other than an estate which Mortgagee may lawfully hold, and Mortgagee's interest so long as it holds possession of the property shall be only that of a Mortgagee in possession, which right of possession is hereby expressly granted from Mortgagor to Mortgagee. Mortgagee's right of possession hereunder shall extend until satisfaction of all debts and obligations secured hereby, unless sooner terminated by Mortgagee. No delay in exercising its right to enter shall be deemed to be a waiver by Mortgagee of its right. Mortgagee may transfer to any third party the right to Mortgagee to occupy the mortgaged premises as Mortgagee in possession and upon such transfer the transferee of such right shall be substituted in place of the Mortgagee with the same rights and obligations. The rights of possession given to Mortgagee hereunder shall be



considered separate and distinct rights and remedies for all purposes and Mortgagee may exercise such rights of possession without the institution of foreclosure proceedings, but the exercise of such rights of possession shall not constitute a waiver by Mortgagee of its rights to foreclosure.

10. Mortgagor also assigns to Mortgagee as further security for the performance of the obligations secured hereby, all prepaid rents and all monies which may have been or may hereafter be deposited with said Mortgagor by any lessee of the premises herein described, to secure the payment of any rent, and upon default in the performance of any of the provisions hereof, agrees to deliver such rents and deposits to the Mortgagee.

11. The pleading of any statute of limitation as a defense to any and all obligations secured by this Mortgagee is hereby waived to the full extent permissible by law.

12. Mortgagor further agrees that Mortgagee may from time to time and for periods not exceeding one year, in behalf of the Mortgagor, renew or extend any promissory note secured hereby, and said renewal or extension shall be conclusively deemed to have been made when endorsed on said promissory note or notes by the Mortgagee on behalf of the Mortgagor.

13. Except as noted on the records of the Office of Commonwealth Recorder, Mortgagor has not executed, and will not execute any mortgage covering the mortgaged premises or any of it, except in favor of Mortgagee.

14. In the event any existing mortgage law applicable to the Commonwealth of the Northern Mariana Islands is amended or replaced, in whole or in part, or in the event legislation authorizing other land security devices of any similar or dissimilar nature is enacted or becomes effective within the Commonwealth, Mortgagor agrees in consideration hereof that this Mortgage and all obligations hereunder, at the sole option of Mortgagee, may be amended to conform to such new law or other security instrument pursuant to such new legislation, and Mortgagor agrees, upon demand by Mortgagee, to execute such additional and further documentation as may be necessary to accomplish such conversion and to substitute any new security device for this Mortgage. This Mortgage shall be interpreted in accordance with and be subject to the laws of the Commonwealth of the Northern Mariana Islands.

15. The name and post office address of Mortgagor's personal representative for service of notice in the event that Mortgagor cannot after diligent search, be found within the Northern Mariana Islands, are as follows:

P.O. Box __________
Saipan, MP 96950

16. This Mortgage shall inure to and bind the heirs, devisees, legal representatives, successors and assigns of the parties hereto. All obligations of each Mortgagor hereunder are joint and several. The rights and remedies granted hereunder or by



law shall not be exclusive but shall be concurrent and cumulative. In the event any translation shall be made of this Mortgage, the English version as set forth herein shall be the sole operative version. Mortgagor shall be solely responsible for accuracy and completeness of any translation requested by him and Mortgagor shall have the right to designate his own translator. No error or omission or variance in any translation shall affect or vary the rights and obligations of the parties as set forth in the original English version hereof.

IN WITNESS WHEREOF, the Mortgagor has hereunto executed this Mortgage, the date and year above-written

MORTGAGOR:

KIM, HANG KWON

PARK, HWA SUN

MORTGAGEE:

PIL SUN KIM KITAMI

COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS: ss.

On January 12, 2006, before me, a Notary Public in and for the Commonwealth of the Northern Mariana Islands, came KIM, HANG KWON and PARK, HWA SUN, to me known by government issued identification to be the identical persons who executed the above and the foregoing MORTGAGE and who acknowledged the execution of the same.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my Official Seal the day and year first above-written.

COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS NOTARY PUBLIC MARIA RITA A. MARAVILLA IN AND FOR THE ISLANDS

NOTARY PUBLIC

Maria Rita A. Maravilla
NOTARY PUBLIC
IN AND FOR THE COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS
My Commission expires: 08-26-2007

COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS: ss.

On January 12, 2006, before me, a Notary Public in and for the Commonwealth of the Northern Mariana Islands, came PIL SUN KIM KITAMI, to me known by government issued identification to be the identical person who executed the above and the foregoing MORTGAGE and who acknowledged the execution of the same.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my Official Seal the day and year first above-written.

COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS NOTARY PUBLIC MARIA RITA A. MARAVILLA IN AND FOR THE ISLANDS

NOTARY PUBLIC

Maria Rita A. Maravilla
NOTARY PUBLIC
IN AND FOR THE COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS
My Commission expires: 08-26-2007

# PROMISSORY NOTE

**THREE HUNDRED FIFTY THOUSAND AND 00/100 U.S. DOLLARS ($350,000.00)**

Executed this 12th day of January 2006

Saipan, MP 96950

**Kim, Hang Kwon and Park, Hwa Sun** ("Borrower"), for value received, hereby promise to pay to the order of **Pil Sun Kim Kitami** ("Lender"), the principal sum of THREE HUNDRED FIFTY THOUSAND AND 00/100 U.S. DOLLARS ($350,000.00) in lawful money of the United States, together with interest on the principal sum hereof at the rate as provided herein.

Interest on the principal sum of this Note shall be computed and be payable at the rate of TW0 PERCENT (2%) per month, pro rated for a partial month.

This Note shall be paid as follows:

1. All principal and interest due under this Note shall be due on December 31, 2006. There is no prepayment penalty, and time is of the absolute essence. There is no grace period.

2. All payments made by Borrower to the Lender shall be applied first to accrued interest and then to principal in inverse order of maturity.

Repayment of principal and interest due under this Note is secured by a Mortgage given by Borrower and covering Lot No. 056 H 14 (a part of Lot 056 H 03), which contains an area of 3,627 square meters, more or less, situated in Saipan, Northern Marianas, and a lien interest in one 2003 Kia motor vehicle, identified by a copy of the Certificate of Ownership, attached hereto.

In the event of the happening of any one or more of the following events, any one of which shall constitute an event of default, to wit:

1. The non-payment of any installment of principal or interest hereunder when due;

2. The failure to observe or perform any term, covenant, condition, provision or agreement contained herein and/or in any instrument given to secure payment of this Note;

3. The breach by Borrower of any warranty or representation made by Borrower herein and/or in any instrument given to secure payment of this Note;

      4.      The failure in business, insolvency, dissolution or termination of the existence of the Borrower or the death, incompetency, failure in business, insolvency, dissolution or termination of the existence of any guarantor of this Note (except to the extent any guaranty agreement may specify otherwise);

      5.      any voluntary filing of a petition in bankruptcy under the federal bankruptcy laws by the Borrower or any guarantor of this Note, or an entry of an order for relief in the case of an involuntary petition filed under the federal bankruptcy laws against the Borrower or any guarantor of this Note, or the commencement of any proceeding under any other federal laws or laws of the Commonwealth of the Northern Mariana Islands relating to the relief of debtors being commenced for the relief or readjustment of any indebtedness of the Borrower or any guarantor of this Note, either through reorganization, composition, extension or otherwise;

      6.      The making by the Borrower or any guarantor of this Note of an assignment for the benefit of creditors;

      7.      Any seizure, vesting or intervention by or under authority of a government by which the management of the Borrower or any guarantor of this Note is displaced or its authority in the conduct of its business is curtailed;

      8.      Any application for or the appointment of a receiver, trustee or custodian of any property of the Borrower or any guarantor of this Note;

      9.      If any financial statement or other information or report provided by the Borrower to the Lender was incorrect, false, untrue or misleading in any material respect when given; or

      10.      If any levy, assessment, attachment, seizure, involuntary lien, or involuntary encumbrance, for any cause or reason whatsoever, shall be made upon all or any material part of the property of any of the Borrower;

      11.      If the Borrower or any guarantor of the Note has failed to pay his or her debts as they become due;

      12.      If the real property or personal property described hereinabove and in the mortgage which secures payment of this Note, or any part thereof, or any interest therein, is sold, assigned, conveyed, subleased, transferred or disposed of by Borrower or Borrower's assigns and successors.

      Then, or any time after the happening of any such event of default, this Note and/or any note(s) or other obligation(s) which may be taken in renewal or extension of all or any part of the indebtedness evidenced thereby, and all other obligations of Borrower to Lender, shall at the option of the Lender, immediately be due and payable, without demand or notice to the Borrower. The Borrower agrees to pay all costs of collection and reasonable attorneys' fees incurred by the Lender in enforcing this Note and any security interest upon the occurrence of any event of default, whether or not suit is brought and whether or not any judgment is obtained in any such suit.



The Borrower and all other parties who may be liable hereof, whether as principal, guarantor or otherwise, hereby jointly and severally waive presentment for payment, demand, notice of dishonor and protest of this Note and all other notices in connection with the delivery, acceptance, performance, default or enforcement of this Note; and to the extent allowable by law waive the benefit of any statute of limitations with respect to any action to enforce, or otherwise related to, this Note; and waive suretyship defenses generally including, without limitation, extensions of time, release of security and other indulgences which may be granted by the holder of this Note to any party liable hereof and authorize the holder of this Note without notice or further consent to grant extensions of time in the payment of all monies payable under this Note, to waive compliance with the terms of this Note and to release all or any part of any property which secures this Note.

This Note shall be deemed to have been made under and shall be governed by the laws of the Commonwealth of the Northern Mariana Islands in all respects, including matters of construction, validity and performance, and none of its terms or provisions may be waived, altered, modified or amended except as the Lender may consent thereto in writing.

The Lender shall not by act of omission or commission be deemed to waive any of its right or remedies hereunder; a waiver of one event shall not be construed as continuing or as a bar to, or waiver of, such right or remedy on a subsequent event.

In the event any term or provision of this Note is declared for any reason to be invalid, unenforceable or illegal, such invalidity, unenforceability or illegality shall not affect the remaining provisions hereof, and this Note shall be construed as if such unenforceable, invalid and illegal provision had not been contained herein.

**BORROWER:**

______________________________
**Kim, Hang Kwon**

DATED: January 12, 2006

______________________________
**Park, Hwa Sun**

DATED: January 12, 2006

183238

# CERTIFICATE OF OWNERSHIP

Government of the Northern Mariana Islands
Department of Public Safety
Bureau of Motor Vehicle

LOG NUMBER

| LICENSE PLATE NUMBER | ISSUE DATE | YEAR | MAKE | MODEL | BODY STYLE | COLOR | WEIGHT |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

| VEHICLE IDENTIFICATION NUMBER (VIN) / BODY SERIAL NUMBER | ENGINE SERIAL NUMBER | CYLINDER | CAPACITY |
|---|---|---|---|
| | | | |

OTHER IDENTIFYING CHARACTERISTICS

| REGISTERED OWNER - 1 | REGISTERED OWNER - 2 (if any) | | |
|---|---|---|---|
| ADDRESS | CITY | STATE | ZIP CODE |
| LIEN HOLDER | SIGNATURE OF COMMISSIONER OF PUBLIC SAFETY / DESIGNEE<br>[signature] Edward A. Flores | | |

**ENDORSEMENTS FOR TRANSFER OF OWNERSHIP - READ CAREFULLY** - The registered owner as shown on this Certificate releases interest by signing line 1. The legal owner releases interest by signing line 2. If one person is both legal and registered owner, sign both lines. Purchaser, if dealer, must follow instructions on lines 3 and 4. Purchaser, if not dealer, must follow instructions on lines 5, 6, 7 and 8 and give date of purchase. Line 9 indicate lienholder or legal owner. All signatures must be in ink:

| | | | |
|---|---|---|---|
| PART A<br>Release of Ownership of Interest<br>DATE OF RELEASE | 1. Signature of REGISTERED OWNER, releasing interest in vehicle<br>[signature]<br>2. Signature of LEGAL OWNER, releasing vehicle<br>[signature] | PART C<br>Application for Transfer of Registration to ~~Purchaser~~ Lien Holder | 5. Print or type name of ~~PURCHASER~~ Lien holder<br>Pil Sun Kim Kitami<br>6. Written signature of ~~PURCHASER~~ Lienholder. Must correspond w/ line 5.<br>[signature] |
| PART B<br>Endorsement by Dealer(s) Acquiring Vehicle Through Trade or Purchase | 3. Name of DEALER and countersignature of person signing for dealer<br>Dlr. No.<br>4. Second DEALER and countersignature of person signing for dealer<br>Dlr. No. | Date of Purchase | 7. Street Address City State<br>8. Is vehicle garaged in an incorporated city<br>yes or no If yes, name city |
| Immediately after legal owner releases interest, or alter any other change in ownership or interest, this Certificate together with the issued Registration Card must be presented to Department of Public Safety, Bureau of Motor Vehicle for transfer. **This intended transfer is incomplete and not valid until new Certificate has been issued.** | | PART D<br>Lienholder or Legal Owner. | 9. Name of LIENHOLDER or LEGAL OWNER<br>Pil Sun Kim Kitami<br>10. Street Address City State<br>P.O. Box 502879, Saipan MP |

OWNER'S COPY

Rev. (08/97)