1  MARK B. HANSON, ESQ.
   Second Floor, Macaranas Building
2  Beach Road, Garapan
   PMB 738 P.O. Box 10,000
3  Saipan, Mariana Islands 96950
   Telephone:    (670) 233-8600
4  Facsimile:    (670) 233-5262
   E-mail: markbhanson@gmail.com
5
   Attorney for Plaintiffs
6

7              IN THE UNITED STATES DISTRICT COURT
                        FOR THE
8              NORTHERN MARIANA ISLANDS
9
   LI YING HUA, LI ZHENG ZHE and XU JING JI, )   CASE NO. CV 05-0019
10                                            )
                    Plaintiffs,               )
11                                            )
          vs.                                 )   MOTION TO REOPEN JUDGMENT;
12                                            )   SECOND MOTION TO AMEND
   JUNG JIN CORPORATION, a CNMI corporation,  )   VERIFIED COMPLAINT
13 ASIA ENTERPRISES, INC., a CNMI corporation,)
   PARK HWA SUN and KIM HANG KWON,            )
14                                            )
                    Defendants.               )
15                                            )   Date:  Thursday, September 20, 2007
                                              )   Time:  9:00 a.m.
16 _____)   Judge: Hon. Alex R. Munson, Chief Judge

17                          **MOTION**

18        COMES NOW the Plaintiffs, by and through their attorney, with:

19        (1) a motion pursuant to Fed. R. Civ. P. 60(b)(2) or 60(b)(6) to reopen the Judgment of this

20 Court entered on August 24, 2006 in order to allow Plaintiff to amend the Second Amended Verified

21 Complaint in this matter and to amend the Judgment in this matter to include post-judgment

22 attorney's fees incurred to date; and

23        (2) a motion pursuant to Fed. R. Civ. P. 15(a) and L.R. 15.1 to amend the Second Amended

24 Verified Complaint in this case to add two parties — successors in interest to the Defendants'

25 businesses.

26

27

These motions are supported by the pleadings and records in this matter, by the declaration submitted herewith and by the following Memorandum in Support hereof.  For the reasons stated below, Plaintiffs respectfully request that the Court grant Plaintiffs leave to amend the Verified Complaint to add KSK Corp. and Kim Ki Sung as party defendants in this matter.

**MEMORANDUM IN SUPPORT OF MOTION**

For the reasons discussed below, KSK Corp., a CNMI corporation, and Kim Ki Sung, the principal and alter ego of KSK Corp., are liable to Plaintiffs for Plaintiffs' labor claims stated in their Verified Complaint as successors to the interests of the corporate and individual defendants in this case.  Alternatively, the original defendants in this matter fraudulently transferred all of their operating assets in Saipan to KSK and Kim Ki Sung which fraudulent transfer should be set-aside and the property now in the hands of KSK and Kim Ki Sung placed back within the reach of Plaintiffs.

A.      FACTS AND PROCEDURAL HISTORY:

1.  Plaintiffs filed their Verified Complaint in this matter on June 22, 2005 against the four original defendants ("Judgment Debtors") to the action.  See Doc. # 1.

2.  On January 1, 2006 the Judgment Debtors effected the transfer of their operating businesses to a company called KSK Corporation, a corporation licensed under and doing business in the Commonwealth of the Northern Mariana Islands.  *See* Deposition of Kim Ki Sung ("KSK Depo.") at page 35,  lines 14  to 23; Exhibits D through I (Doc. # 70).

3.  KSK Corporation is controlled by Kim Ki Sung the husband of the record owner and president of the corporation.  *See* KSK Dep., generally.

4.  After the sale by the Judgment Debtors of all or substantial all of their business assets in the Commonwealth to KSK Corporation, Defendant Park Hwa Sun departed the Commonwealth for South Korea with no plans of returning to Saipan.  *See* Deposition of Kim Hang Kwon, page 8, lines 15 to 18; Declaration of Stephen J. Nutting in Support of Motion to Withdraw, ¶ 3 ("Defendant Park Hwa Sun both personally and as the sole representative and contact person for the corporate

Page 2 of  15

defendant Jung Jin Corporation, has left the Commonwealth and is unavailable to assist the attorney in the preparation and defense of the case.").

5.  On January 27, 2006, at the time and date noticed for the deposition of defendant Jung Jin Corp. ("JUNG JIN"), no one appeared to testify.

6.  On February 1, 2006, a subpoena was issued for the deposition of Kim Sung Eun, the person listed as "president" of KSK Corp. as shown in documents on file with the Commonwealth government.

7.  On March 9, 2006, at the time, date and place indicated in the subpoena to Kim Sung Eun, Mr. Kim Ki Sung produced copies of documents, some of which are provided herewith as exhibits.

8.  On March 3, 2006, the Court granted the motion of defendants' attorney, Stephen J. Nutting, to withdraw in the case.  *See* Motion, Declaration and Order, Doc. ## 24, 25and 32.

9.  On March 9, 2006, at the time, date and place indicated in the subpoena to Kim Sung Eun, Mr. Kim Ki Sung appeared to testify on her behalf.  *See* KSK Depo., page 5, lines 3 to 9.  Mr. Kim Ki Sung volunteered to have his own deposition taken, he was sworn in, and thereafter was taken the deposition of Kim Ki Sung.  *Id.*, page 3, lines 21 to 23; page 5, lines 7 to 9.

10.  In his deposition, Kim Ki Sung testified, among other things, that:

a.    In a prior porker arcade partnership with defendant Kim Hang Kwon, in the name of defendant Asia Enterprises, Inc. ("ASIA"), Kim Ki Sung had paid, or caused to be paid, Kim Hang Kwon's "share" of the poker machine license fees for two quarters totaling $24,000.00.   Kim Hang Kwon owed Kim Ki Sung $26,000.00 for such payments — the original payments plus an additional $2,000.00 for interest.   KSK Depo., page 34, lines 1 to 17.

b.    On about December 1, 2004, Kim Ki Sung loaned Park Hwa Sun $100,000.00 in cash.  To memorialize the loan, Kim Ki Sung prepared and had Park Hwa Sun execute the

1    promissory note which is Exhibit E to the KSK Depo.  *Id*.

2    c.    In about August 2005, Kim Ki Sung learned that the plaintiffs in this case had filed

3    a lawsuit alleging that defendant Park Hwa Sun and Kim Hang Kwon had failed to pay

4    all of the wages they were due.  KSK Depo., page 19, lines 2 to 23; page 20, lines 1 to

5    13.

6    d.    In about January 2006, the defendants agreed that Kim Ki Sung should "take over"

7    defendants' laundry business and poker businesses "in exchange for" the outstanding

8    debts.  *Id*., page 35 lines 3 to 23; Page 36 lines 1 to 23; page 46 Lines 12 to 14 Page 47

9    Lines 1 to 9.

10   e.    Defendant Kim Ki Sung agreed and prepared the documents he believed were

11   necessary to accomplish the transfer, including a Bill of Sale.  *Id*.; Exhibits D and I.

12   As of January 1, 2006, all of the assets of defendants' Welcome Poker, Welcome

13   Landry and Welcome Market were purportedly transferred to KSK Corp. in exchange

14   for the alleged $26,000.00 debt of Kim Hang Kwon and the alleged $100,000.00 debt

15   of Park Hwa Sun and/or their alter ego companies defendants ASIA and JUNG JIN.

16   *Id*., page 46, lines 12 to 23; page 47, lines 1 to 10; page 37, lines 13 to 21.

17   f.    KSK Corp. is and acronym for Ki Sung Kim, the deponent.  *Id*., page 14 lines 17 to

18   20.

19   g.    Mr. Kim Ki Sung changed the name of Welcome Laundry and Welcome Poker to

20   Shany Landry and Shany Two Poker and now operates what was known as Welcome

21   Market as part of what is now know as Shany Laundry.  *Id*., page 38 lines 14 to 19.

22   h.    In addition to "taking over" the leases of the premises of the businesses in the name

23   of KSK Corp., Kim Ki Sung transferred all of the employees of defendants to the

24   employ of KSK Corp. (with the exception of two of the employees that were working

25   in Welcome Poker), and he caused the transfer of the licenses for the poker machines

26   

27

1    of Welcome Poker to KSK Corp. *Id.*, page 38, lines 20 to 23; page 39, lines 1 to 6;

2    page 50, lines 19 to 23.

3    i.    As of the date of his deposition, Kim Ki Sung had yet to transfer the utility service for

4    Welcome Poker, Welcome Laundry and Welcome Market into the name of KSK

5    Corp., but he stated that he pays the utility bills when they come due although he has

6    no idea in who's name the utility accounts are currently held. *Id.*, page 51, lines 3 to

7    11.

8    11.   Further, unknown to Plaintiffs until recently, on about January 17, 2006, shortly after

9    receiving all of the operating assets of the original defendants "in exchange for" an alleged $100,000

10   cash loan to defendant Park Hwa Sun, KSK Corp. itself obtained a loan commitment letter from

11   Bank of the Federated States of Micronesia ("FSM Bank"). Decl. of Counsel at ¶ 3. On January 26,

12   2006, KSK Corp. signed a promissory note and various security documents in favor of the FSM Bank

13   for a $100,000.00. *Id.* at ¶ 6. It is Plaintiffs' belief that said loan from the FSM Bank was actually to

14   pay the purchase price for the assets transferred by the original four defendants to KSK and Kim Ki

15   Sung. *Id.* at ¶ 7-9.

16   12.   On April 21, 2006, Plaintiffs moved, *inter alia*, to amend their Verified Complaint to

17   include two additional defendants — KSK Corp. and Kim Ki Sung — as successors to the FLSA

18   liability of the four original defendants. Doc. # 33.

19   13.   On May 12, 2006, the Court issued an Order granting, *inter alia*, Plaintiffs motion to

20   amend to add KSK Corp. and Kim Ki Sung as party defendants. Doc. # 43.

21   14.   Thereafter, Plaintiffs filed a First Amended Complain and, on May 18, 2006, KSK

22   Corporation and Kim Ki Sung were served with a summons and a copy of the First Amended

23   Complaint. *See* FAC, Doc. # 45; Returns of Service, Doc. ## 46 & 47.

24   15.   On May 22, 2006, KSK Corporation and Kim Ki Sung filed a "special appearance" in the

25   case objecting to the motion of Plaintiffs to amend their Verified Complaint to add the parties as

26

27

1  defendants to the case. *See* Doc. # 49.

2      16. Over Plaintiffs' objection, on June 20, 2006, the Court granted KSK's and Kim Ki Sung's

3  motion to dismiss them from the case. *See* Order, Doc. # 63.

4      17. In its dismissal of KSK and Kim Ki Sung from the action, *without prejudice*, the Court

5  found that:

6          Although the record here is more complete than for many
    motions at ths stage in the proceedings, the court concludes that it

7      does not yet have sufficient information before it to justify the addition
    of Kim Ki Sung and KSK Corporation as defendants. In particular,

8      there is not enough information about Ms. Park Hwa Sun's
    whereabouts, *pro se* defendant Kim Hang Kwon's potential liability for

9      full payment of the alleged unpaid wages, and "the extent to which the
    predecessor is able to provide adequately relief directly."[sic] [].

10     Finally, the court has not yet had the benefit of hearing testimony so
    as to be able to observe the demeanor of the various parties, which will

11     aid it greatly in this fact-intensive process.

12         Accordingly, the first amended complaint is dismissed, without
    prejudice to being re-filed.

13

14 Order, Doc. # 63 at 4-5 (citation omitted).

15     18. On August 14, 2006, the Court granted Plaintiffs' motion for summary judgment against

16 the four original defendants finding for Plaintiffs on all of their claims. Doc. # 87.

17     19. On August 24, 2006, a Judgment was issued for Plaintiffs in the total amount of

18 $209,798.55. Doc. # 93.

19     20. Thereafter, Plaintiffs initiated proceedings before the Court to collect the Judgment. *See*

20 Decl. of Counsel at ¶ 12. *See also* Doc. ## 95-167.

21     21. On May 25, 2007, after extensive collection proceedings, the Court issued an Order

22 approving the distribution of the proceeds, after costs and fees, of the various collection efforts of

23 Plaintiffs against the original four defendants which proceeds represents most if not all of the assets

24 currently within the reach of Plaintiffs. *Id*. at ¶ 13.

25     22. The total amount of the unsatisfied portion of the Judgment against the Judgment

26 Debtors as of the date of this filing is $163,853.31. Decl. of Counsel at ¶ 15.

27

B.    STANDARD FOR MOTIONS TO AMEND AFTER JUDGMENT HAS BEEN RENDERED:

WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE states:

> Most courts faced with [a motion to amend after a judgment has been rendered] have held that once a judgment is entered the filing of an amendment cannot be allowed until the judgment is set aside or vacated under Rule 59 or Rule 60. []. The party may move to alter or amend the judgment within ten days after its entry under Rule 59(e) or, if the motion is made after that ten day period has expired, it must be made under the provisions in Rule 60(b) for relief from a judgment or order. This approach appears sound. * * * A judgment generally will be set aside only to accommodate some new matter that could not have been asserted during the trial, which means that relief will not be available in many instances in which leave to amend would be granted in the prejudgment situation.
> * * *
> Although Rule 60(b) gives the court authority to set aside the judgment, the question whether an amendment then should be allowed is governed by Rule 15(a). []. As a practical matter, the motions under the two rules will be made simultaneously and decided together, [] since it usually would be a needless formality for the court to grant the motion to reopen the judgment only to deny the motion for leave to amend.

6 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE (SECOND) § 1489 (2006 update).

The Ninth Circuit, citing *inter alia* Wright & Miller, adopted this approach in *Lindauer v. Rogers*, 91 F.3d 1355, 1357 (9th Cir. 1996).

As cited above, motions by a plaintiff to reopen a case after a judgment has been rendered in the plaintiff's favor are considered, in this circumstance, under Rule 60(b). Here, the applicable subsections thereof would be Rule 60(b)(2) (newly discovered evidence) or, alternatively, the Rule 60(b)(6) "catch-all" "any other reason justifying relief from the operation of the judgment." Rule 60(b) goes on to state that the motion for relief (here to reopen the case), must be made within a reasonable time and, for Rule 60(b)(2) motions, no more than one year after the judgment.

Rule 60(b)(2) provides for relief from judgment where there is "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)." In the Ninth Circuit, the criteria for reopening a case on this basis of newly discovered evidence are (1) the evidence must be "newly discovered," and not in the moving party's possession at the time of trial, *Engelhard Indus., Inc. v. Research Instrumental Corp.*, 324 F.2d 347, 352 (9th Cir.

1963), *cert. denied*, 377 U.S. 923 (1964); (2) the moving party must have exercised reasonable

diligence prior to the time of trial to discover the evidence, *id.*, and (3) "the newly discovered

evidence must be of such magnitude that production of it earlier would have been likely to change

the disposition of the case." *Coastal Transfer Co. v. Toyota Motor Sales*, *U.S.A.*, 833 F.2d 208, 211

(9th Cir. 1987).

Here, as indicated by the Court's June 20, 2006 Order (Doc. # 63) granting KSK Corp.'s and

Kim Ki Sung's motion to dismiss them from the case, the "evidence" necessary to bring the two

parties into the case would necessarily come only after (1) the liability of the four original defendants

was determined and (2) the collectibility (or lack thereof) of the Judgment from the original

defendants was determined, e.g., "the extent to which the predecessor is able to provide adequately

relief directly," exclusive of the business assets transferred by the judgment debtors to the successors.

*See* June 20, 2006 Order (quoting *Steinbach v. Hubbard*, 51 F.3d 843, 846 (9th Cir. 1995)). *See also*

Plaintiffs' discussion of successor liability below.

It is axiomatic that Plaintiff could not bring this motion to add KSK Corp. and Kim Ki Sung

as party defendants until *after* it had obtained a judgment against the original four defendants (which

they did) and then exhausted all reasonable collection efforts against the judgment debtor

defendants (which they have).[1]  Rule 60(b) relief is necessary and appropriate.

In this case, the request to reopen and to amend is to add party defendants as successors in

interest to the original defendants/judgment debtors and, accordingly, as successors to the liability

of the original four defendants to Plaintiffs.  Further, the parties Plaintiffs' propose to add to this case

---

[1]  To be clear, it is *not* Plaintiffs' argument that their finding loan documents at the Commonwealth Recorder's Office constitutes sufficient "newly discovered evidence," by itself, to warrant Rule 60(b)(2) relief.  The dispositive "new evidence" is the Judgment against the original four defendants and the patent insufficiency of the remaining assets of the original four defendants to satisfy the Judgment with accrued interest.  The fraud highlighted by the newly discovered FSM Bank loan documents goes more to Plaintiffs' alternative argument that the transaction should be voided as a fraudulent conveyance thought it does certainly have some import in a Rule 60(b)(2) determination.

Page 8 of  15

1  were the benefactors and are presently in possession of fraudulently conveyed property of the original

2  defendants.  This motion, brought and granted once already in this case, is brought again and is

3  timely given the prior court's rulings on the propriety of adding the parties at an early stage of this

4  litigation.  The liability of the original defendants to the action has been judged and the status of the

5  collectibility of the original defendants' judgment by Plaintiffs is now know.  An amendment here

6  to add KSK Corp. and Kim Ki Sung is necessary and warranted to provide Plaintiffs' full relief.

7  C.    **SUCCESSOR LIABILITY UNDER THE FLSA:**

8        As articulated in Plaintiffs' first motion to amend that led to the addition, albeit temporarily,

9  of KSK Corp. and Kim Ki Sung to this action as successors, the seminal case of *Steinbach v. Hubbard*,

10  51 F.3d 843, 845 (9th Cir. 1995), and its progeny hold that there is successor liability for violations

11  of the Fair labor Standards Act, 29 U.S.C. §§ 201 *et seq.* (the "FLSA").

12        The FLSA was passed to protect workers' standards of living through the
13  regulation of working conditions.  29 U.S.C. § 202.  That fundamental purpose is as
   fully deserving of protection as the labor peace, anti-discrimination, and worker
14  security policies underlying the NLRA, Title VII, 42 U.S.C. § 1981, ERISA, and
   MPPAA.  The analysis set forth in the cases extending potential liability under these
15  statutes justifies application of the doctrine here as well.  Consequently, we conclude
   that successorship liability exists under the FLSA.

16  *Steinbach v. Hubbard*, 51 F.3d at 845.

17        After establishing that successor liability exists under the FLSA, the *Steinbach* Court went

18  on to espouse the standard for successor liability:

19        [S]uccessor liability can attach when 1) the subsequent employer was a bona fide
20  successor and 2) the subsequent employer had notice of the potential liability.  [].
   Whether an employer qualifies as a bona fide successor will hinge principally on the
21  degree of business continuity between the successor and predecessor. [].  The Ninth
   Circuit has fleshed out this test when dealing with other employee individual rights
22  statutes by adding a third consideration:  the extent to which the predecessor is able
   to provide adequate relief directly. [].

23  *Id.* at 846 (citations omitted).

24        Business continuity is established by weighing (1) the similarity of business
25  operations;  (2) use of the same physical facilities;  (3) use of the same workforce; (4)
   existence of the same jobs under the same working conditions;  (5) presence of the
26  same supervisors;  (6) use of the same methods of production;  and (7) production of

27
                                Page 9 of  15

1

similar products and/or services. *See NLRB v. Jeffries Lithograph Co.*, 752 F.2d 459, 463-64 (9th Cir.1985).

2

3

*Herrera v. Singh*, 118 F. Supp. 2d 1120, 1123 (E.D. Wash. 2000) (applying successor liability to the Agricultural Workers Protection Act, citing *Steinbach v. Hubbard*).

4

5

In one case, a court in the Ninth Circuit held that: "A subsequent employer is a successor

6

employer if it hires most of its employees from the previous employer's work force and conducts

7

essentially the same business as its predecessor without a fundamental change in working

8

conditions." *Grimm v. Healthmont, Inc.*, 2002 WL 31549095 (D. Or. 2002) (citing *Trustees for*

9

*Alaska Laborers-Construction Industry Health & Sec. Fund v. Ferrell*, 812 F.2d 512 (9th Cir.1987) (an

10

individual member of a joint venture who continued to operate the same business with the same

11

employees and equipment after the joint venture ceased operations was a successor employer for

12

purposes of ERISA liability)). *See also Chicago Truck Drivers, Helpers and Warehouse Workers Union*

13

*(Independent) Pension Fund v. Tasemkin, Inc.*, 59 F.3d 48, 51 (7th Cir. 1995) (reversing the lower

14

court's dismissal and allowing successor liability claim to proceed despite prior bankruptcy discharge

15

of predecessor, stating: "Here, those facts include the apparent nature of the acquisition of Old

16

Tasemkin by New Tasemkin--which clearly had the effect, intended or no, of frustrating unsecured

17

creditors while resurrecting virtually the identical enterprise.").

18

**D.     KSK CORP. IS SUCCESSOR TO THE LIABILITY OF DEFENDANTS:**

19

KSK Corp. is a bonafide successor under the meaning of the FLSA.  Kim Ki Sung on behalf

20

of KSK Corp. transferred the employees of JUNG JIN to the employ of KSK Corp.  KSK Depo., page

21

50, lines 19 to 23; page 51, lines 1 to 2.  JUNG JIN and ASIA have transferred all of their interests in

22

laundry machines and other laundry assets, and the poker machines they operated in Welcome Poker,

23

to KSK Corp. KSK Depo., Exhibits D and I.  KSK has subleased the physical property where the

24

businesses were located from JUNG JIN.  KSK Depo., Exhibit H.  KSK continues to use those items

25

and is still in the same physical location as the previous owners. *Id.*  KSK's business is running the

26

laundrymat and poker parlor.  KSK Depo., page 22, lines 11 to 12.

27

1   Further, as early as August 2005, KSK Corp. and Kim Ki Sung had notice of the potential

2   liability in taking over the businesses of ASIA and JUNG JIN. KSK Depo., page 18, line 7 to 21, line

3   8 (Kim first heard about this lawsuit in the newspaper and other third parties shortly after it was

4   filed); page 59, lines 5 to 8 (Kim stating that defendants mentioned the labor complaint and said they

5   should just swap assets for the alleged outstanding debt).

6   In short, KSK Corp. and Kim Ki Sung conduct essentially the same business as its

7   predecessors (the named defendants herein) without a fundamental change in working conditions.

8   That, together with their prior knowledge of Plaintiffs' claims in this lawsuit, support this Court

9   finding that KSK Corp. is a successor to the liability of the defendants in this matter. The Court

10  should allow Plaintiffs leave to amend their Verified Complaint under Fed. R. Civ. P. 15(a) and Local

11  Rule 15.1 to include KSK Corp. as a named defendant in this action.

12  **E.    KIM KI SUNG IS THE ALTER EGO OF KSK CORPORATION**

13  To determine whether the corporate veil should be pierced, three factors are of primary

14  importance: (1) the degree to which the shareholders respected the separate identity of the

15  corporation; (2) the degree to which injustice to the litigants would result were the corporate identity

16  recognized; and (3) the fraudulent intent of the incorporators. *Seymour v. Hull & Moreland*

17  *Engineering, Inc.*, 605 F.2d 1105, 1111 (9th Cir. 1979). The *Seymour* test has been consistently applied

18  in this Circuit. *See, e.g., Audit Servs., Inc. v. Rolfson*, 641 F.2d 757, 764 (9th Cir. 1981); *Operating*

19  *Eng's Pension Trust v. Reed*, 726 F.2d 513, 515 (9th Cir. 1984).

20  By his own admission, Kim Ki Sung's business is KSK Corporation. KSK Depo., page 14, lines

21
22  10 to 20. Kim Ki Sung incorporated KSK Corp. in the CNMI in about February 2003. *Id.* page 14,

23  lines 21 to 23; page 15, lines 1 to 4. KSK Corp., by its corporate documents, purports to have two

24  shareholders, Kim Sung Eun and Kim Ok Ja. Id. KSK Depo.; Exhibit J. Kim Sung Eun is Kim Ki

25
26  Sung's wife. KSK Depo., page 16, lines 12 to 15. Kim Ok Ja is Kim Ki Sung's mother-in-law. *Id.*,

27

page 16, lines 20 to 23.

Although Kim Ki Sung is not listed as a shareholder or an officer of KSK Corp., he refers to the corporation as his own. *See, e.g.*, KSK Depo., pages 13, line 19 to 14, line 23 (Kim opened his own poker parlor under the name Fun and Win with a corporation he formed named KSK Corporation which stands for Ki Sung Kim); page 21, line 13 to 22, line 23 (Kim has a company named KSK Corporation); page 24, line 22 to 25, line 9 (Kim wondering why "his" corporation and "his" business is being deposed); page 26, lines 4 to 8 (Kim denying any relationship of "his" corporation to defendant Kim Hang Kwon's corporation insisting that his loan was personal to Kim Hang Kwon, not a loan between their corporations); page 63, line 16 to 65, line 18 (Kim describing how he, his wife and KSK are all really one, and how he collects and uses money indiscriminately).

Additionally, Kim Ki Sung has personally given and received property to and from the defendants here, but he now claims that the assets he swapped for the debt owed to him are owned by "his" corporation – KSK Corp. *See, e.g.*, KSK Depo., Exhibits D and E.[2]

Further, Kim Ki Sung is a guarantor and has provided his interest in land in the

---

[2] For example, the document that transferred poker machines from ASIA to KSK Corp. is entitled a bill of sale. KSK Depo., Exhibit D. There was not a transfer of money for the machines, but rather the machines were transferred in "repayment" of a $26,000.00 "debt" allegedly owed by defendant Kim Hang Quan, personally, as a "business partner" of Kim Ki Sung, personally. KSK Depo. page 26, lines 18 to 23; page 27, lines 2 to 15.

On the same day, Park Hwa Sun executed a bill of sale for transfer to KSK Corp. of JUNG JIN's laundry machines. KSK Depo., Exhibit I. Again, no money exchanged hands – this transfer also was a swap for an alleged prior debt of Kim Hang Kwon and Park Hwa Sun to Kim Ki Sung personally. KSK Depo., pages 50-51.

In both instances whereby KSK Corp. came to "own" and operate all or most of defendants businesses, the transactions were swaps for alleged debts (allegedly) owed personally to Kim Ki Sung.

Page 12 of 15

Commonwealth as security for a loan from the FSM Bank to KSK Corp. Decl. of Counsel at ¶ 7.

Based upon the above alleged facts, this Court must allow the Plaintiffs to amend their complaint under Fed. R. Civ. P. 15(a) and Local Rule 15.1 to include Kim Ki Sung as a named defendant in this action — as a successor in interest to the liability of the defendants herein.

**F.    THE TRANSFER OF PROPERTY CONVEYED BY THE ORIGINAL DEFENDANTS TO KSK CORPORATION IS VOIDABLE AS A FRAUDULENT CONVEYANCE.**

Notwithstanding that KSK Corporation and Kim Ki Sung as its alter ego are successors to the liability of the original defendants to Plaintiffs for the outstanding Judgment obtained against the original defendants, the transfer of all of the operating assets of the four original defendants to KSK Corporation for an alleged outstanding debt was a fraudulent conveyance. The transaction should be voided by this Court and the property brought back within the reach of Plaintiffs as judgment creditors.

At this stage, the Court should allow Plaintiffs to amend their complaint to include a claim against KSK Corporation and Kim Ki Sung for the fraudulent conveyance of all of the original defendants operating assets in the Commonwealth. Although many of the facts supporting a fraudulent conveyance theory of recovery are already known, further discovery after the reopening of this case and an amendment to the complaint should lead to further evidence in support of Plaintiffs' contentions. Though not specifically pertinent to Plaintiffs' present motions, for the Court's and the parties' reference, the law of fraudulent conveyances applicable in the Commonwealth was briefed at length in Plaintiffs' Memorandum filed in this case on January 15, 2007 (Doc. # 140) with regard to fraudulent conveyances by the Judgment Debtors to another third

1  party — Kim Pil Sun Kitami

2                                        **CONCLUSION**

3
4          Despite the fact that this motion comes almost one year after the Judgment in this matter

5  against the original four defendants, the facts and circumstances of this case warrant the Court's

6  reopening of the case and the granting of leave to file a second amended complaint to add KSK Corp.

7
8  and its alter ego, Mr. Kim Ki Sung, as party defendants — successors to the liability of the defendants

9  to Plaintiffs in this matter or, alternatively, as the parties in receipt and possession of fraudulently

10  conveyed property.   Wherefore, Plaintiffs respectfully request that the Court reopen the case

11
12  pursuant to Fed. R. Civ. P. 60(b)(2) or 60(b)(6) and the grant leave to Plaintiffs to further amend

13  their complaint for the purposes stated herein.

14

15          Respectfully submitted this 23rd day of August, 2007.

16

17                                               /s/ Mark B. Hanson

18  _____

19                                                     MARK B. HANSON

20                                               Second Floor, Macaranas Building
                                                 Beach Road, Garapan
21                                               PMB 738, P.O. Box 10,000
                                                 Saipan, MP 96950
22                                               Telephone:     (670) 233-8600
23                                               Facsimile:     (670) 233-5262
                                                 E-mail: markbhanson@gmail.com
24
25                                               Attorney for Plaintiffs

26

27

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing will be deposited in the United States Post Office, first class mail, postage prepaid, addressed to the following:

Jung Jin Corporation
P.O. Box 503428
Saipan, MP 96950
(670) 235-4321

Park Hwa Sun
P.O. Box 503428
Saipan, MP 96950
(670) 235-4321

Asia Enterprises Inc.
P.O. Box 503448
Saipan, MP 96950
(670) 235-4321

Kim Hang Kwon
P.O. Box 503448
Saipan, MP 96950
(670) 235-4321

I further certify that the following were served with a copy of the foregoing via the Court's electronic case filing system and via e-mail:

Robert T. Torres
LAW OFFICE OF ROBERT TENORIO TORRES
P.O. Box 503758
Saipan, Mariana Islands 96950
E-mail:       rttlaw@pticom.com

August 23, 2007
DATED: _____

/s/ Mark B. Hanson
_____

MARK B. HANSON

Page 15 of  15