Law Office of G. Anthony Long
P.O. Box 504970, Beach Road
San Jose, Saipan, MP 96950
Telephone: (670) 235-5802
Facsimile: (670) 235-4801

Attorney for Mr. Kim Ki Sung and KSK Corporation

IN THE UNITED STATES DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS

| | |
|---|---|
| LI YING HUA, LI ZHENG ZHE, and XU JING JI,<br><br>Plaintiffs,<br><br>vs.<br><br>JUNG JIN CORP., a CNMI corporation, ASIA ENTERPRISES, INC., a CNMI corporation, PARK HWA SUN, KIM HANG KWON, KSK CORPORATION, a CNMI corporation, and KIM KI SUNG,<br><br>Defendants. | Case No. CV 05-00019<br><br>OPPOSITION OF KSK CORPORATION AND KIM KI SUNG TO MOTION TO REOPEN JUDGMENT; SECOND MOTION TO AMEND VERIFIED COMPLAINT<br><br>Date: Thursday, October 4, 2007<br>Time: 9:00 a.m.<br>Judge: Hon. Alex R. Munson, |

## INTRODUCTION

More than two years after the original complaint was filed and nearly one year to the day that judgment was rendered, Plaintiffs are yet again trying to bring a motion to add KSK and Kim Ki sung as parties to this now closed litigation. The substantive facts have not changed since this Court made its prior ruling finding that Plaintiffs' could not amend their pleadings to add KSK and Kim Ki Sung. See Document # 63. Nothing significant in this now closed lawsuit has changed enough to justify the

amendment. Furthermore, the motion is untimely and prejudicial. The instant motion to amend is aimed to give Plaintiffs another bite at the apple. The motion to set aside the judgment in order to add additional parties post judgement should, therefore, be denied.

## FACTUAL BACKGROUND

The factual background is as follows:

1. KSK Corporation is CNMI Corporation..

2. Kim Ki Sung is not a shareholder of KSK Corporation. Nor is he an officer or director of that company. He is the manager of KSK and is responsible for the management of its day to day operations.

3. Kim Ki Sung has lent money to the defendants on a few occasions. He loaned Kim Hang Kwon $100,000 so that Jung Jin Corporation ("Jung Jin"), the business owned by defendants Kim Hang Kwon and Park Hwa Sun (Mrs. Park), could continue to operate.

4. As security for the loan, Mrs. Park used Welcome's poker machines and laundry equipment as collateral. Mrs. Park agreed that if she could not make the payment, she would turn over the poker machines, along with the equipment in the laundromat, to KSK Corporation.

5. In or around December of 2005, Mrs. Park and Kim Hang Kwon told Mr. Kim that they could not repay the loans. To satisfy their debt, they transferred the poker machines and laundry equipment to KSK Corp., effective January 2006.

6. On or about December 30, 2005, Mrs. Park and Jung Jin Corporation subleased the premises, then occupied by Welcome Poker and Laundry, to Kim Sung Eun and her company, KSK Corp., for the remaining four years of the outstanding lease.

7. KSK Corporation began operating a laundry and poker facility under the name of Shany Two Poker and Laundry, and transferred the license to operate the poker machines into KSK's name.

8. Some, but not all, of Welcome's employees, transferred to KSK after the equipment transfer. None of the employees transferring to KSK, however, claimed unpaid wages.

9. Plaintiffs filed their Verified Complaint to collect unpaid wages from Defendant Jung Jin Corp. on June 22, 2005.

10. None of the Plaintiffs in this lawsuit ever worked for KSK.

11. No Plaintiff informed Kim Ki Sung or KSK Corporation of the filing.

12 No Plaintiff ever informed Kim Ki Sung or KSK Corporation of any wage claim.

13 Neither Kim Ki Sung nor KSK Corporation were served with a copy of the complaint.

14. Neither KSK nor Kim Ki Sung ever promised to pay Plaintiffs' wages.

15. In or about August of 2005, Kim Ki Sung learned from the Saipan Tribune that an employee of Jung Jin Corporation had filed a lawsuit alleging inappropriate sexual conduct, sexual harassment, and unpaid wages.

16. Prior to the actual transfer of KSK assets, Kim Hang Kwon told Kim Ki Sung that Jung Jin employees had been paid all of their wages.

17. At his deposition, Mr. Kim testified that KSK Corporation was his wife's corporation.

18. None of the shareholders, officers, and directors of KSK interlock with those of Jung Jin Corporation.

19. Plaintiffs offer no evidence that Kim Ki Sung has co-mingled his assets with that of KSK; that KSK has diverted corporate funds for Kim Ki Sung's personal use; or that KSK assets have been used for anything other than legitimate business purposes.

20. Plaintiffs have failed to produce evidence that Kim Ki Sung uses KSK assets as his own.

21. Plaintiffs have failed to provide evidence establishing that Kim Ki Sung holds himself out to be personally liable for the debts of KSK.

22. Plaintiffs have not established that KSK is not adequately capitalized; that it has no corporate assets, or that it was intentionally or otherwise undercapitalized.

23.. There is nothing in the record that shows Kim Ki Sung uses KSK as a mere shell, instrumentality or conduit for his own private business dealings.

24. There is no evidence establishing that KSK concealed or misrepresented to anyone the identities of its owners and managers, or that it concealed any of its business activities. Plaintiffs have likewise produced no evidence that Mr. Kim's management of KSK is not in accord with its shareholder and director policies.

25. Nothing in the record establishes that Kim Ki Sung has used KSK, at any time, to procure labor, services or merchandise for his own personal use or for the use of any other person or entity.

26. Plaintiffs have not shown evidence establishing that KSK fails to observe corporate formalities or file corporate reports; that KSK does not hold corporate meetings; or that KSK fails to keep corporate records.

27.     Plaintiffs have not produced evidence establishing that Kim Ki Sung has stripped KSK of its corporate assets; that he has appropriated KSK property for his own individual purposes; that he has used corporate funds to satisfy his individual obligations; or that he has agreed to assume personal responsibility for KSK's obligations.

28.     Plaintiffs have not shown evidence establishing that KSK cannot meet its business or financial obligations.

30.     Plaintiff have failed to produce any evidence that KSK conducts its business as Kim Ki Sung; that Kim Ki Sung conducts his business as KSK, or that Kim Ki Sung has taken advantage of the corporation or otherwise abused it in any way.

## ARGUMENT

### A. Plaintiff's Reliance on Rule 60(b) Is Misplaced

Plaintiffs assert that the correct mechanism to bring this motion before the court is Rule 60(b) in conjunction with Rule 15(a).  They rely on the premise set forth in *Lindauer v. Rogers*, 91 F.3d 1355, 1357 (9th Cir. 1996), that although leave to amend a pleading in federal court may be granted after the entry of judgment, once final judgment has been entered, an amendment will generally not be permitted unless the judgment has been reopened or vacated pursuant to FRCP 59(e) or FRCP60(b).

However, *Lindauer* merely sets forth the requirements to set aside a judgment when the plaintiff is not a prevailing party.  The 7th circuit has found that the Rule 60(b) equitable vehicle [plaintiff] has chosen here, states that "the court *may relieve a party* or a party's legal representative from a final judgment, order, or proceeding for the following reasons ...." Fed.R.Civ.P. 60(b) (emphasis supplied); see *Toole v. Baxter Healthcare*

*Corp.*, 235 F.3d 1307, 1316-17 (11th Cir.2000) (explaining the "sound discretion" the district court may exercise in reviewing Rule 60(b) motions). The court goes on to explain that to "relieve" a party is "to ease of imposition, burden, wrong, or oppression, by a judicial or legislative interposition." *Id* at 1340 citing Webster's Third New International Dictionary 1918 (1993).   Rule 60(b) bestows the district court the discretion to utilize equitable powers to relieve a burden placed upon the defendant, in such a case, by injunction or declaratory judgment.  The equitable purpose of Rule 60(b) cannot be to "relieve" a party from her own lawsuit in which she had prevailed.  *Id*.  at 1340.

**B. Assuming That 60(b) Is the Proper Mechanism, Plaintiffs' Claims Fail under Either  60(b)(2) or 60(b)(6)**

Plaintiffs first seek relief under Rule 60(b)(2) or in the alternative they argue that the court should set aside the judgment under Rule 60(b)(6) the "catch-all" provision. Rule 60(b)(2) allows judgement to be relieved when the moving party finds newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b) and 60(b)(6) allows the parties to allege any other reason justifying relief from the operation of the judgment. Rule 60(b) goes on to state that motion shall be made within a reasonable time, and for a reason under (b)(2), not more than one year after the judgment, order, or proceeding was entered or taken. Fed.R.Civ.P. 60(b)

In order to establish a sufficient showing under 60(b)(2) Plaintiffs must show that evidence newly discovered and not in the moving parties possession at the time of trial, *Engelhard Indus., Inc v. Research Instrumental Corp.*, 324 F.2d 347, 352 (9th Cir.1963) cert denied, 377 U.S. 923 (1964); that they must have exercised due diligence to discover

the new evidence prior to the time of trial, *id.,* and finally that the newly discovered evidence must be of such magnitude that production of it earlier would have been likely to change the disposition of the case. *Coastal Transfer Co. V. Toyota Motor Sales, USA*, 833 F. 2d 208 (9th Cir. 1987). Just as in the case law cited by Plaintiffs, their arguments fall short here.

Plaintiffs claim that the Judgment against the original defendants, the lack of those defendant's ability to pay, and a loan document for KSK that was on file with the Commonwealth Recorder's Office is "newly discovered" for the purposes of this motion. As to the Judgement against the original defendants to this action, Plaintiffs had already received a default order as to the two corporate defendants as early as May 12, 2006. Additionally in February of 2006, Plaintiffs knew that Defendant Park Hwa Sun had left the Commonwealth with no plans of returning to Saipan. Plaintiffs had done extensive discovery during the pendency of the case and knew the financial situation of each defendant. They can not come now and claim that a default judgment in their favor with inability to collect from defendants absent from the Commonwealth is "newly discovered evidence" with in the scope of the rule.

As to the loan documents for KSK that Plaintiffs claim to have just now obtained, it is well settled that a party may not "discover" evidence already in its possession. Evidence available from public records at the time of trial is treated as if it were in the moving parties possession. It is never considered to be "newly discovered." *Scutieri v. Paige* 808 F2d 785 (11th Cir. 1987) See also *Gov't Financial Services v. Peyton Place*, 62 F. 3d 767. The loan documents were and are public records.

Because Plaintiffs have already tried to assert a theory for relief under 60(b)(2)

they are precluded from attempting under 60(b)(6).  See.  *VanLeeuwen v. Farm Credit Admin.*, D.C.Or.1984, 600 F.Supp. 1161 (Relief under 60(b)(6) providing for relief from judgment for "any other reason" can be obtained only for reasons other than five listed in prior subsections of the rule).

**D. Plaintiffs' Motion to Amend Should Be Denied as Untimely and Prejudicial**

Although Plaintiffs claim that the appropriate Rule to guide this Court is rule 15(a), the proper rule may instead be Rule 21.  Rule 21 governs the addition of new defendants and, in deciding whether to allow joinder under that Rule, the court is guided by "the same standard of liberality afforded to motions to amend pleadings under Rule 15." *Soler v. G & U, Inc.*, 86 F.R.D. 524, 527-28 (S.D.N.Y.1980) (internal quotation and citation omitted); see *Clarke v. Fonix Corp.*, 98 Civ. 6116(RPP), 1999 WL 105031, at 6 (S.D.N.Y. Mar. 1, 1999) ("Although Rule 21, and not Rule 15(a) normally governs the addition of new parties to an action, the same standard of liberality applies under either Rule.") (internal quotation and citation omitted), aff'd, 199 F .3d 1321 (2d Cir.1999); *Sheldon v. PHH Corp.*, No. 96 Civ. 1666(LAK), 1997 WL 91280, at 3 (S.D.N.Y. Mar. 4, 1997) ("While plaintiffs' motion [to add a new defendant] properly is considered under Rule 21 rather than Rule 15, nothing material turns on this distinction.... To the extent the limited case law under Rule 21 permits a conclusion, the standard under that rule is the same as under Rule 15."), aff'd, 135 F.3d 848 (2d Cir.1998).

Even though the court can construe motions to amend liberally, it does have the discretion to deny such motion when it is not timely made, or when it would prejudice a party.  See *Cabrera v. Municipality of Bayamon,*, 622 F.2d 4 (1st Cir. Puerto Rico 1980). (Court has discretion to refuse attempt to join a new party at late stage of litigation when

liability has been determined and court is trying to enforce final relief for the plaintiffs). See also *Hews Co., LLC v. Barnaby* Slip Copy, 2007 WL 2033402 D.N.H.,2007.

Furthermore adding KSK and Kim Ki Sung as party defendants one year post judgement would cause undue prejudice.  See *Conroy Datsun Ltd. V. Nissan Motor Corp, in USA.*, 506 F.Supp. 1051, 1054 (N.D. Ill. 1980) (When the amendment to the complaint brings entirely new and separate claims, adds new parties, or at least entails more than an alternative claim or change in allegations of the complaint, and when the amendment would require expensive and time-consuming new discovery, a motion for leave to amend should be denied since prejudice to defendant outweighs the right to have the case tried on the merits).

### D.  Plaintiffs' Claim of Successor Liability Fails

While the doctrine of successorship liability has been applied to FLSA liability, a finding of successorship involves a two-step inquiry.  *See Steinbach v. Hubbard*, 51 F.3d 843, 845 (9th Cir. 1995).  First, the Court must find the new business retains common aspects of the prior business sufficient to allow the legal conclusion of 'successorship.' *Id.*[1] Second, the Court must conclude the successor knew of the violations at the time it purchased the business. *Id*.  Plaintiffs motion relies heavily on his analysis of *Steinbach* to urge this Court to find successor liability, and although *Steinbach* defines the test for imposing successor liability the court in *Steinbach* declined to impose successorship

---

[1] In determining whether successor liability exists under the mere continuation theory in an asset purchase of a bankrupt corporation, the test is "not the continuation of the business operation, but rather the continuation of the *corporate entity*.  An indication that the corporate entity has been continued is a common identity of stock, directors, and stockholders and the existence of only one corporation at the completion of the transfer." *Glentel, Inc. v. Wireless Ventures, LLC*, 362 F.Supp.2d 992, 1001 (N.D.Ind.,2005).

liability.  No different outcome is called for in this case.

Courts consider a number of factors in reaching a determination of successorship under the first prong of the inquiry:  whether (a) there has been a substantial continuity of the same business operation; (b) the new employer uses the same plant; ( c) the same or substantially the same work force is employed; (d) the same jobs exist under the same working conditions; (e) the same supervisors are employed; (f) the same machinery, equipment, and methods of production are used; and (g) the same product is manufactured or the same service [is] offered.  See *NLRB v. Jeffries Lithograph Co.*, 752 F.2d 459, 463-464 (9th Cir. 1985).

Where, as here, the acquisition or transfer comes about because of a foreclosure on a security interest, the court also looks at the common identity of the officers, directors and stockholders in the two companies, and sufficiency of consideration running to the seller corporation in light of the assets sold.  See *Stoumbos v. Kilimnik*, 988 F.2d 949, 962 (9th Cir. 1993), citing *Cashar v. Redford*, 28 Wash.App. 394, 624 P.2d 194, 196 (1981).

Contrary to Plaintiffs' assertions, these factors do not establish KSK Corporation as a successor.  First, KSK does not stand in the same shoes as a business purchaser, having succeeded to the equipment and facilities simply as a result of Jung Jin's default under the promissory note.

Neither KSK nor Mr. Kim were the controlling force in Jung Jin; there was a sufficient security interest that gave rise to the asset acquisition; and the assets were acquired for adequate consideration.  See also, *Kemper v. Saline Lectronics*, 366 F.Supp.2d 550 (N.D. Ohio 2005) (successor corporation is not liable for predecessor's liabilities when: (1) there is no express or implied assumption of liability; (2) the

transaction is not a consolidation or merger; (3) where the transaction was not fraudulent; (4) where the acquisition is made in good faith or where the transfer was for consideration; or (5) where the transferee corporation was not a mere continuation or reincarnation of the old corporation).

Second, while KSK does use the same physical location and machinery to operate a similar business, KSK did not retain the entire Jung Jin Corp. workforce; there are none of the same shareholders, officers or directors; nor are the same supervisors employed. Third, there is no question of unpaid wages or overtime as to those employees KSK Corp. took over. However, none of these employees had unpaid wage or overtime claims, and the claimant-Plaintiffs had long since transferred to other employers. Fourth, there is no question as to whether the new operation appeared identical to the former employees of Jung Jin. Mr. Kim and his wife immediately changed the name of the laundromat and poker establishment, and they began working in the new business as supervisors themselves. The mere fact that KSK did not transfer the utility service to its own name is hardly probative of whether KSK is a successor corporation.

The second step of the Court's inquiry is whether the purported successor knew of the violations *at the time it purchased the business*. Although Plaintiffs contend that KSK and Kim Ki Sung had notice as to unpaid wage liability as early as August of 2005, the facts indicate otherwise.

This case is not an acquisition case, and there is no evidence that any wage claims existed at the time that KSK Corp. and Mr. and Mrs. Kim took their security interest in Jung Jin's assets, back in December of 2004. Prior to completing the transfer of property in January of 2006, moreover, KSK and Mr. Kim learned that certain employees of Asia

Enterprises and Jung Jun were angry and concerned over the closing and the loss of work. KSK, through its manager Mr. Kim, also learned from the newspaper that certain employees had filed a complaint against the companies.  Mr. Kim was not at all certain about the reasons for the employee complaints, nor did he have any concrete evidence that any of the employees had not been paid their wages.  No worker ever came to Mr. Kim to complain about money or wages owing.  No Jung Jin Corporation or Asia Enterprises employee that transferred to KSK Corp. was owed money.  Mr. Kim's testimony is that he believed that the employees were dissatisfied because there was no work for the company in the future

Prior to transferring the assets of Jung Jin, moreover, defendant Kim Hang Kwon told Mr. Kim that all of his employees had been paid their salaries.  Kim Hang Kwon never disclosed to Mr. Kim that obligations for unpaid wages remained outstanding, or that any employees had not been paid for their work.

No court or administrative body, had made a determination that wages were owed, either at the time that the promissory note was executed or at the time that KSK Corp. took possession of Jung Jin's assets.  On these facts, there is simply no basis to conclude that KSK had notice of Jung Jin's wage problems so as to impose payment liability.

**D.  Given the Absence of Any Proof Establishing Kim Ki Sung as The Alter Ego of KSK Corporation, Relief for Plaintiff Should be Denied** .

Plaintiffs again attempt to claim that adding Kim Ki Sung is necessary because Kim Ki Sung is the alter ego of KSK.   Plaintiffs yet again have failed to show that here.  As with the other claims of this motion, there is nothing new for plaintiff's to claim in support of their motion that they didn't have access to in the previous motion before this

court.

The Court should only "pierce the corporate veil" and hold Mr. Kim liable only where the following two conditions are met: "(1) there is such a unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased, and (2) an adherence to the fiction of the separate existence of the corporation would sanction a fraud or promote injustice." *SEC v. Hickey,* 322 F.3d 1123, 1128 (9th Cir.2003) (citations and quotation marks omitted). No such evidence exists in this case.

First, Plaintiffs have produced no facts establishing that the separateness between Mr. Kim and KSK has ceased. Kim Ki Sung is not a shareholder of KSK Corporation. Nor is he an officer or director of that company. While Mr. Kim serves as manager of the company, Plaintiffs have no evidence showing that Kim Ki Sung has co-mingled his assets with that of KSK; that Kim Ki Sung uses KSK's assets as his own; that Kim Ki Sung uses KSK as a mere shell, instrumentality or conduit for a his own private business dealings; that Kim Ki Sung has used KSK, at any time, to procure labor, services or merchandise for his own personal use or for the use of any other person or entity; that KSK has diverted corporate funds for Kim Ki Sung's personal use; or that KSK assets have been used for anything other than legitimate business purposes.

Likewise, there is no evidence that Kim Ki Sung uses KSK to avoid performance of his personal obligations or responsibilities; that he uses KSK as a shield against personal liability; or that he uses KSK as a front for illegal transactions. Plaintiffs cannot point to any evidence establishing that Kim Ki Sung has stripped KSK of its corporate assets; that he has appropriated KSK property for his own individual purposes; or that he has used corporate funds to satisfy his individual obligations. Plaintiffs do not even allege

that KSK conducts its business as Kim Ki Sung; that Kim Ki Sung conducts his business as KSK, or that Kim Ki Sung has taken advantage of the corporation or otherwise abused it in any way.

Plaintiffs have tried to claim that Kim Ki Sung holds himself out to be personally liable for the debts of KSK. However, there is no indication that KSK is inadequately capitalized; that it has no corporate assets, or that it was intentionally or otherwise undercapitalized. Further, Plaintiffs have failed to produce a shred of evidence establishing that KSK is being conducted to perpetrate a fraud on creditors, that KSK concealed or misrepresented to anyone the identities of its owners and managers, or that it concealed any of its business activities. Plaintiffs have produced no evidence that Mr. Kim's management of KSK is not in accord with its shareholder and director policies.

Plaintiffs suggest that because Kim Ki Sung and his wife used personal property to secure a loan for KSK corporation that act warrants piercing the veil. If a loan is sought in the name of a corporation, banks will require that the assets are sufficient to collateralize the loan. It is not uncommon for a bank to require the loan to be guaranteed with personal assets. The fact that Mr. Kim has secured a corporate loan with personal property is nothing out of the ordinary and is not sufficient to pierce the veil. See *Rogel v. Dubrinsky*, 2006 WL 2726941 (E.D.Mich 2006) (When the [corporate entity] sought a line of credit, Comerica Bank recognizing that Plaintiff and Defendants were otherwise shielded from liability, required personal guarantees. Under these facts none of the factors for peircing the corporate veil is present.)

Finally, Plaintiffs have not shown that KSK fails to observe corporate formalities or file corporate reports– in fact, the evidence is to the contrary. Plaintiffs have not shown

that KSK does not hold corporate meetings; nor that KSK fails to keep corporate records. There is no evidence even hinting that KSK cannot meet its business or financial obligations. The mere allegation that a businesses loan is evidence of fraud falls woefully short of that which is required to pierce the veil.

To the contrary, all of the evidence produced by Plaintiffs confirms that KSK is a thriving CNMI corporation. It is not appropriate to pierce the corporate veil and hold Mr. Kim liable for all of KSK's actions.

## CONCLUSION

With the departure of Mrs. Park from the Commonwealth and Kim Hang Kwon's lack of funds, Plaintiffs are urging the court to add deep pockets, that do not have any liability to Plaintiffs, in an attempt to collect on the judgement. However, based on the foregoing, no good cause exists to set aside the judgment in favor of the Plaintiffs' and allow them to amend their complaint post judgment to add KSK Corporation and Mr. Kim as party defendants.

Respectfully submitted this 20th day of September, 2007.

_____/s/ _____

By: Kelley M Butcher
Attorneys for KSK Corporation and Mr. Kim Ki Sung