MARK B. HANSON, ESQ.
Second Floor, Macaranas Building
Beach Road, Garapan
PMB 738 P.O. Box 10,000
Saipan, Mariana Islands 96950
Telephone:    (670) 233-8600
Facsimile:    (670) 233-5262
E-mail:    mark@saipanlaw.com

Attorney for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
### FOR THE
### NORTHERN MARIANA ISLANDS

| | |
|---|---|
| LI YING HUA, LI ZHENG ZHE and XU JING JI, ) | CASE NO. CV 05-00019 |
| Plaintiffs, ) | |
| vs. ) | |
| JUNG JIN CORPORATION, a CNMI corporation,) ASIA ENTERPRISES, INC., a CNMI corporation,) PARK HWA SUN, KIM HANG KWON, KSK CORPORATION, a CNMI corporation and KIM KI SUNG, ) ) ) ) | SECOND AMENDED VERIFIED COMPLAINT FOR VIOLATIONS OF THE FAIR LABOR STANDARDS ACT AND SUPPLEMENTAL STATE LAW CLAIMS |
| Defendants. ) | |

COMES NOW, Plaintiffs LI YING HUA, LI ZHENG ZHE and XU JING JI with the following Verified Complaint against JUNG JIN CORPORATION, ASIA ENTERPRISES, INC., PARK HWA SUN, KIM HANG KWON, KSK CORPORATION and KIM KI SUNG as follows:

## JURISDICTION

1.    The Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), applies to this matter through the Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America, Article V, §502(a)(2).

2.    This Court has jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1337(a) (proceedings arising under any Act of Congress

1    regulating commerce).

2    3.    This Court also has jurisdiction under the FLSA, 29 U.S.C. § 216(b), to adjudicate

3    Plaintiffs' claims.

4    4.    This Court has jurisdiction over Plaintiffs' non-FLSA claims pursuant to 28 U.S.C. §

5    1367(a) (supplemental jurisdiction).

6    5.    Venue is properly placed in this Court as at all relevant times Plaintiffs were employees

7    of DEFENDANTS doing business in Saipan, Commonwealth of the Northern Mariana Islands

8    ("CNMI").

9    PARTIES

10    6.    Plaintiff Li Ying Hua ("Ms. Li"), Entry Permit Number 164717, is a citizen of the

11    People's Republic of China currently residing in Saipan, CNMI.

12    7.    Plaintiff Li Zheng Zhe ("Mr. Li"), Entry Permit Number 132618, is a citizen of the

13    People's Republic of China currently residing in Saipan, CNMI.

14    8.    Plaintiff Xu Jing Ji ("Ms. Xu"), Entry Permit Number 191082, is a citizen of the People's

15    Republic of China currently residing in Saipan, CNMI.

16    9.    Upon information and belief, Defendant Jung Jin Corporation ("JUNG JIN"), P.O. Box

17    503428, Saipan, MP 96950, is a corporation formed under the laws of the CNMI with its principal

18    place of business in Saipan, CNMI.

19    10.    Upon information and belief, Defendant Asia Enterprises Inc. ("ASIA ENTERPRISES"),

20    P.O. Box 503448, Saipan, MP 96950, is a corporation formed under the laws of the CNMI with its

21    principal place of business in Saipan, CNMI.

22    11.    Upon information and belief, Defendant Park Hwa Sun ("PARK"), P.O. Box 503428,

23    Saipan, MP 96950, is a citizen of the Republic of South Korea formerly residing in Saipan, CNMI,

24    but now residing in South Korea.

25    12.    Upon information and belief, Defendant Kim Hang Kwon ("KIM"), P.O. Box 503428,

26

27

1 | Saipan, MP 96950, is a citizen of the Republic of South Korea currently residing in Saipan, CNMI.

2 | 13.  Upon information and belief, Defendant KSK Corporation ("KSK CORP."), PMB 234,

3 | P.O. Box 10,001, Saipan, MP 96950, is a corporation formed under the laws of the CNMI with its

4 | principal place of business in Saipan, CNMI.

5 | 14.  Upon information and belief, Defendant Kim Ki Sung ("KSK-KIM"), PMB 234, P.O. Box

6 | 10,001, Saipan, MP 96950, is a citizen of the Republic of South Korea currently residing in Saipan,

7 | CNMI.

8 | 15.  Upon information and belief, PARK and KIM are the principals of JUNG JIN and ASIA

9 | ENTERPRISES, and, at all times relevant hereto, they were acting directly and/or indirectly in the

10 | interest of JUNG JIN and ASIA ENTERPRISES in relation to Plaintiffs.

11 | 16.  Upon information and belief, at all times relevant hereto, Defendants JUNG JIN and

12 | ASIA ENTERPRISES were either joint employers of Plaintiffs, successors in interest to either one

13 | or the other and/or the alter egos of PARK and KIM.

14 | 17.  It is expressly alleged herein that JUNG JIN, ASIA ENTERPRISES, PARK and KIM

15 | (collectively referred to hereinafter as "DEFENDANTS") are all jointly and severally liable for the

16 | Plaintiffs' claims, and all of them, herein.

17 | 18.  Upon information and belief, KSK-KIM is the principal of KSK, and, at all times relevant

18 | hereto, he was acting directly and/or indirectly in the interest of KSK CORP., is a general agent of

19 | KSK CORP., and is, in fact, the alter ego of KSK CORP. and vice versa.

20 | 19.  It is expressly alleged herein that KSK CORP. and KSK-KIM (collectively referred to

21 | hereinafter as "KSK") are successors to some or all of the interests of DEFENDANTS and the

22 | liability of DEFENDANTS for the claims of Plaintiffs herein, and are jointly and severally liable for

23 | all FLSA damages awarded to Plaintiffs, including all costs and reasonable attorney's fees of this

24 | action.

25 | FACTS

26 |

27 |

20.  Plaintiff Mr. LI began his employment with DEFENDANTS in about May 2002 pursuant to a valid and binding contract between Mr. LI and DEFENDANTS approved by the CNMI Department of Labor.  Mr. LI's employment contract was renewed by the parties in 2003, 2004 and 2005 and the most recent contract renewal term was not due to expire until on or about January 24, 2006. DEFENDANTS terminated Mr. LI's contract and his employment, without cause and without prior written notice, on about April 25, 2005.

21.  Plaintiff Ms. XU began her employment with DEFENDANTS in about December 2003 pursuant to a valid and binding contract between Ms. XU and DEFENDANTS approved by the CNMI Department of Labor. Ms. XU's employment contract was renewed by the parties in 2004 and 2005 and the most recent contract renewal term was not due to expire until on or about January 24, 2006.  DEFENDANTS terminated Ms. XU's contract and her employment, without cause and without prior written notice, on about April 25, 2005.

22.  Plaintiff Ms. LI began her employment with DEFENDANTS in about April 2003 during a pending labor case and, thereafter, continued her employment with DEFENDANTS pursuant to a valid and binding contract between Ms. LI and DEFENDANTS approved by the CNMI Department of Labor.  Ms. LI's employment contract was renewed by the parties in 2005 and the most recent contract renewal term was not due to expire until on or about January 14, 2006. Ms. LI was constructively terminated by DEFENDANTS due to numerous actions by DEFENDANTS that made her continued employment with DEFENDANTS intolerable and untenable.

23.  The series of one-year employment contracts and employment contract renewals identified above, by and between each plaintiff and DEFENDANTS, collectively comprise each plaintiff's respective "Employment Contract" as the term is used herein and as the term relates to the claims and allegations contained herein.

24.  At no time during the term of their employment with DEFENDANTS were any of the Plaintiffs provided with a copy of their respective Employment Contracts or any part thereof.

25. At all times relevant to this action, Plaintiffs, and each of them, were employees of DEFENDANTS within the meaning of § 203(e)(1) of the FLSA and § 9212(e) of the Commonwealth Minimum Wage and Hour Act, 4 C.M.C. §§ 9211 *et seq.* (2000) ("MWHA").

26. At all times relevant to this action, DEFENDANTS were employers of Plaintiffs, and each of them, within the meaning of § 203(d) of the FLSA and § 9212(f) of the MWHA.

27. At all times relevant to this action, Plaintiffs were employed by DEFENDANTS within the meaning of § 203(g) of the FLSA and § 9212(d) of the MWHA.

28. At all times relevant to this action, Plaintiffs were employed by DEFENDANTS in Saipan, Commonwealth of the Northern Mariana Islands.

29. At all times relevant to this action, DEFENDANTS were an enterprise within the meaning of § 203(r)(1) of the FLSA.

30. At all times relevant to this action, DEFENDANTS were an enterprise engaged in commerce or in the production of goods for commerce within the meaning of § 203(s)(1) of the FLSA.

31. At all times relevant to this action, Plaintiffs, as employees of DEFENDANTS, were engaged in commerce within the meaning of § 207(a)(1) of the FLSA.

32. Plaintiffs, and each of them, worked more than forty (40) hours per week for DEFENDANTS during one or more weeks that Plaintiffs were employed by DEFENDANTS.

33. At all times while employed by DEFENDANTS, Plaintiffs were employed, and actually performing work, in a job category or categories that are not exempt from the provisions of the FLSA and/or the MWHA.

34. DEFENDANTS failed to pay Plaintiffs the applicable minimum wage for all hours Plaintiffs worked for DEFENDANTS as required by § 9221(a)(2) of the MWHA, and, upon information and belief, by Plaintiffs' respective Employment Contracts.

35. DEFENDANTS failed to pay Plaintiffs the applicable overtime premium for hours

worked by Plaintiffs for DEFENDANTS in excess of forty (40) hours in each work week as required by § 207(a) of the FLSA, by § 9222 of the MWHA, and, upon information and belief, by Plaintiffs' respective Employment Contract.

36.  DEFENDANTS failed to maintain full and accurate records of the hours actually worked by Plaintiffs as required by § 215(a)(5) of the FLSA and § 9232(a) of the MWHA.

37.  Throughout her term of employment with DEFENDANTS, Plaintiff Ms. LI was provided housing by DEFENDANTS at a cost to Ms. LI of $150.00 per month which was deducted by DEFENDANTS from her salary.

38.  Throughout their term of employment with DEFENDANTS, Plaintiffs Mr. LI and Ms. XU were provided housing by DEFENDANTS at a cost to them of $150.00 per month which was deducted by DEFENDANTS from their salary.

39.  On several occasions, DEFENDANTS would deduct various amounts from Plaintiffs' salary for, among other things, labor contract processing fees and cash register shortages.

40.  All said deductions taken from Plaintiffs' wages are in violation of § 4434(c) of the Commonwealth Nonresident Workers Act, 3 C.M.C. §§ 4411 *et seq.* (2000).

41.  Said deductions taken from Plaintiffs' wages also decreased Plaintiffs' minimum hourly wage below that required by the MWHA and, upon information and belief, Plaintiffs' respective Employment Contracts.

42.  Said deductions taken from Plaintiffs' wages also decreased the overtime premium to which Plaintiffs are entitled under the FLSA, the MWHA and, upon information and belief, Plaintiffs' respective Employment Contract.

43.  All of the actions and omissions alleged above were undertaken by DEFENDANTS either directly or through their agent or agents.

44.  All of the actions and omissions alleged above were willful within the meaning of § 9243 of the MWHA, and with regard to the applicability of the statute of limitations on FLSA claims and

claims pursuant to the Commonwealth Nonresident Workers Act, 3 C.M.C. §§ 4411 *et seq.* (2000).

### FIRST CAUSE OF ACTION
(FLSA Violation - Unpaid Overtime Compensation)

45.  Plaintiffs incorporate the paragraphs above as if fully set forth herein.

46.  DEFENDANTS have violated the provisions of § 207(a) of the FLSA by failing to pay Plaintiffs overtime compensation in the amount of one and one-half times their regular pay rate for all of the hours worked by Plaintiffs in excess of forty (40) hours in each work week.

47.  Plaintiffs are entitled to payment of unpaid overtime compensation from DEFENDANTS, jointly and severally, calculated based on a pay rate of $3.05 per hour as adjusted by the regular rate provisions of § 207(e) of the FLSA, and an additional equal amount as liquidated damages.

48.  Plaintiffs are also entitled to costs of the action and reasonable attorney's fees pursuant to § 216(b) of the FLSA.

### SECOND CAUSE OF ACTION
(MWHA Violation - Unpaid Minimum Wage)

49.  Plaintiffs incorporate the paragraphs above as if fully set forth herein.

50.  DEFENDANTS violated the provisions of § 9221(a)(2) of the MWHA by failing to pay Plaintiffs a minimum wage of $3.05 per hour for all of the hours worked by Plaintiffs each work week.

51.  Plaintiffs are entitled to payment of unpaid minimum wages from DEFENDANTS and an additional equal amount as liquidated damages for DEFENDANTS' willful violation.

52.  Plaintiffs are also entitled to costs of the action and reasonable attorney's fees pursuant to § 9244(b) of the MWHA.

### THIRD CAUSE OF ACTION
(MWHA Violation - Unpaid Overtime Compensation)

53.  Plaintiffs incorporate the paragraphs above as if fully set forth herein.

54.  DEFENDANTS violated the provisions of § 9222 of the MWHA by failing to pay

1  Plaintiffs overtime compensation in the amount of one and one-half times their regular pay rate for

2  all of the hours worked by Plaintiffs in excess of forty (40) hours in each work week.

3      55.  Plaintiffs are entitled to payment of unpaid overtime compensation from

4  DEFENDANTS, jointly and severally, calculated based on a pay rate of $3.05 per hour as adjusted

5  by the regular rate provisions of § 207(e) of the FLSA, and an additional equal amount as liquidated

6  damages for DEFENDANTS' willful violation.

7      56.  Plaintiffs are also entitled to costs of the action and reasonable attorney's fees pursuant

8  to § 9244(b) of the MWHA.

9                              FOURTH CAUSE OF ACTION
                                  (Breach of Contract)
10

11      57.  Plaintiffs incorporate the paragraphs above as if fully set forth herein.

12      58.  At all times relevant to this action, Plaintiffs, and each of them, had valid and binding

13  Employment Contracts with DEFENDANTS.

14      59.  Plaintiffs' Employment Contracts with DEFENDANTS were not due to expire until

15  January 2006.

16      60.  Upon information and belief, one of the terms of Plaintiffs' respective Employment

17  Contracts with DEFENDANTS is that Defendant pay Plaintiff $3.05 per hour.

18      61.  Upon information and belief, another of the each Plaintiffs' respective Employment

19  Contract's terms was that DEFENDANTS pay Plaintiffs one and one-half times their regular rate

20  as overtime compensation for hours worked in excess of forty (40) hours each week of her

21  employment.

22      62.  Upon information and belief, pursuant to Plaintiffs' respective Employment Contracts,

23  said overtime compensation was to be paid by check in bi-weekly intervals.

24      63.  Upon information and belief, also pursuant to the Employment Contracts,

25  DEFENDANTS were prohibited from deducting from Plaintiffs' wages amounts other than those

26  specifically set forth in the Employment Contract.

27

1    64.  Upon information and belief, Plaintiffs' Employment Contracts were terminable only for

2    cause with the contractually required notice to Plaintiffs.

3    65.  By failing and refusing to pay Plaintiffs their contractual minimum wage of $3.05 per

4    hour, by failing and refusing to pay Plaintiffs overtime compensation for all of the hours Plaintiffs

5    worked in excess of forty (40) hours in each week of their employment, by failing and refusing to pay

6    such amounts by check in bi-weekly intervals, and by making deductions from Plaintiffs' salary in

7    contravention of the terms of the contract and the NWA, DEFENDANTS materially breached each

8    plaintiff's respective Employment Contract.

9    66.  Additionally, DEFENDANTS dismissed from their employ Plaintiffs Mr. LI and Ms. XU

10   without cause and without the contractually required written notice and, among various other illegal

11   actions, Defendant KIM's sexual harassment of Ms. LI, at the very least, amounted to a constructive

12   termination, all of which constitute material breaches of Plaintiffs' respective Employment

13   Contracts.

14   67.  Because of DEFENDANTS' material breach of the Employment Contracts, Plaintiffs,

15   and each of them, are entitled to expectation damages, incidental and consequential damages, an

16   equal amount for liquidated damages, and costs and reasonable attorney's fees.

17                              FIFTH CAUSE OF ACTION
18                                (Illegal Deductions)

19   68.  Plaintiffs incorporate the paragraphs above as if fully set forth herein.

20   69.  Throughout the term of Plaintiffs' employment with DEFENDANTS, DEFENDANTS

21   regularly deducted amounts from Plaintiffs' wages for, among other things, housing provided by

22   DEFENDANTS, labor contract processing fees and cash register shortages.

23   70.  Upon information and belief, said deductions from Plaintiffs' wages were not expressly

24   provided for in Plaintiffs' Employment Contracts.

25   71.  Said deductions from Plaintiffs' wages were also for amounts for which DEFENDANTS,

26   not Plaintiffs, were responsible.

27

72.  Said deductions from Plaintiffs' wages were illegal deductions in that they violate the provisions of 3 C.M.C. § 4434(c).

73.  Said deductions from Plaintiffs' wages were also illegal deductions in that they reduced Plaintiffs' hourly wage rate below the minimum wage mandated by 4 C.M.C. § 9221(a)(2) and Plaintiffs' overtime premium below that mandated by § 207(a) of the FLSA.

74.  Plaintiffs are entitled to reimbursement from DEFENDANTS, jointly and severally, for all illegal deductions from Plaintiffs' wages, and an additional equal amount as liquidated damages.

75.  Plaintiffs are also entitled to costs of the action and reasonable attorney's fees pursuant to § 9244(b) of the MWHA and 3 C.M.C. § 4447(d).

### SIXTH CAUSE OF ACTION
#### (FLSA Successor Liability)

76.  Plaintiffs incorporate the paragraphs above as if fully set forth herein.

77.  On January 1, 2006, DEFENDANTS effected the transfer of their operating businesses to KSK.

78.  Thereafter, Defendant PARK departed the Commonwealth for South Korea with no plans of returning to Saipan.

79.  On February 1, 2006, a subpoena was issued for the deposition of Kim Sung Eun, the purported president of KSK CORP. as shown in documents on file with the Commonwealth government.

80.  On March 9, 2006, at the time, date and place indicated in the subpoena to Kim Sung Eun, KSK-KIM produced copies of documents responsive to the subpoena.

81.  On March 9, 2006, at the time, date and place indicated in the subpoena to Kim Sung Eun, KSK-KIM appeared to testify on her behalf.

82.  In about August 2005, KSK-KIM learned that Plaintiffs had filed a lawsuit alleging that defendants PARK and KIM had failed to pay all of the wages they were due.

83.  In about January 2006, the DEFENDANTS agreed that KSK-KIM should "take over"

1    DEFENDANTS' laundry business and poker businesses in exchange for the "outstanding debts."

2       84.  Defendant KSK-KIM agreed and prepared the documents he believed were necessary to

3    accomplish the transfer, including a Bill of Sale.

4       85.  As of January 1, 2006, all of the assets of DEFENDANTS' Welcome Poker, Welcome

5    Landry and Welcome Market were purportedly transferred to KSK CORP. in exchange for the alleged

6    $26,000.00 debt of KIM and the alleged $100,000.00 debt of PARK and/or their alter ego companies

7    defendants ASIA and JUNG JIN.

8       86.  KSK CORP. is an acronym for Ki Sung Kim, KSK-KIM.

9       87.  KSK changed the name of Welcome Laundry and Welcome Poker to Shany Landry and

10   Shany Two Poker and now purports to operate what was known as Welcome Market as part of what

11   is now know as Shany Laundry.  As of May 2006, however, KSK has yet to change some or all of the

12   signs that indicate that the name of the businesses have changed.  Some or all of the signs at the

13   purportedly transferred businesses still reflect the names Welcome Laundry and Welcome Poker.

14      88.  In addition to taking over the leases of the premises of the businesses in the name of KSK

15   CORP., KSK purportedly transferred all of the employees of defendants to the employ of KSK

16   CORP. (with the exception of two of the employees that were working in Welcome Poker), and KSK

17   purportedly caused the transfer of the licenses for the poker machines of Welcome Poker to KSK

18   CORP.

19      89.  As of the date of KSK-KIM's deposition, KSK had yet to transfer the utility service for

20   Welcome Poker, Welcome Laundry and Welcome Market into the name of KSK CORP., but KSK-

21   KIM stated that KSK pays the utility bills when they come due although KSK-KIM has no idea in

22   who's name the utility accounts are currently held.

23      90.  In the Ninth Circuit, there is successor liability for violations of the FLSA.

24      91.  Although the transfers from DEFENDANTS to KSK could be avoided as fraudulent

25   transfers, for purposes of Plaintiffs' successor liability allegations herein, KSK is a bona fide successor

26

27

1   to the business interests of DEFENDANTS who are liable to Plaintiffs under the FLSA.

2        92.  Prior to their acquisition of the operating business interests of DEFENDANTS, KSK had

3   knowledge of Plaintiffs' wage and hour claims against DEFENDANTS herein.

4        93.  DEFENDANTS have shown that they are or will be unable to provide adequate relief

5   directly for the FLSA damages of Plaintiffs, particularly in light of the fact that DEFENDANTS have

6   purportedly transferred all or substantially all of their operating business assets to KSK.

7        94.  KSK's acts of conducting essentially the same business of DEFENDANTS without a

8   fundamental change in operating conditions, together with their prior knowledge of Plaintiffs' claims

9   in this lawsuit, among other facts alleged herein, makes KSK, jointly and severally, a successor to the

10  FLSA liability of the DEFENDANTS in this matter.

11                    SEVENTH CAUSE OF ACTION
                         (Fraudulent Transfer)
12

13       95.  Plaintiffs incorporate the paragraphs above as if fully set forth herein.

14       96.  On January 1, 2006, DEFENDANTS effected the transfer of their operating businesses

15  to KSK.

16       97.  Such transfer of the operating assets of DEFENDANTS' businesses to KSK were made

17  and done by DEFENDANTS and KSK with the intent to hinder, delay and defraud DEFENDANTS'

18  creditors, including Plaintiffs herein.

19       98.  Further, the fraudulent transfer of the assets has made it so that Plaintiffs have been

20  prevented from recovering over $163,853.31 of the judgment, with interest, that Plaintiffs obtained

21  against the DEFENDANTS.

22       99.  As the collusive transferee, KSK and Kim Ki Sung as its alter ego are jointly and severally

23  liable to Plaintiffs for the amount of the fraudulently transferred assets.

24       PRAYER FOR RELIEF:

25       Accordingly, Plaintiffs pray for the following relief:

26       A.  That DEFENDANTS, jointly and severally, pay Plaintiffs the applicable minimum wage

27

                              Page 12 of 14

1    for all hours worked by Plaintiffs for DEFENDANTS;

2        B.   That DEFENDANTS, jointly and severally, pay Plaintiffs the applicable overtime

3    premium for all hours worked by Plaintiffs for DEFENDANTS in excess of forty (40) hours in each

4    work week;

5        C.   That DEFENDANTS, jointly and severally, pay Plaintiffs expectation, incidental and

6    consequential damages for DEFENDANTS' material breach of the Employment Contracts;

7        D.   That DEFENDANTS, jointly and severally, repay Plaintiffs for all deductions from

8    Plaintiffs' salary not authorized by the Employment Contract, Commonwealth and federal law;

9        E.   That DEFENDANTS, jointly and severally, pay Plaintiffs an equal amount as liquidated

10   damages;

11       F.   That DEFENDANTS, jointly and severally, pay Plaintiffs reasonable attorney's fees and

12   costs of this action.

13       G.   That KSK CORP. and KSK-KIM, jointly and severally, pay Plaintiffs' FLSA damages

14   awarded herein, including  costs and reasonable attorney's fees of this action.

15       H.   That KSK CORP. and KSK-KIM, jointly and severally, pay Plaintiffs' the value of the

16   assets they received in the fraudulent transfer by DEFENDANTS of their operating assets in Saipan,

17   and an of costs of this action.

18

19       Submitted this 11th day of October, 2007.

20

21

22       MARK B. HANSON

23       Second Floor, Macaranas Building
         Beach Road, Garapan
24       PMB 738, P.O. Box 10,000
         Saipan, Mariana Islands 96950
25       E-mail:      mark@saipanlaw.com

26       Attorney for Plaintiffs

27

1

VERIFICATION OF COMPLAINT

2    I, LI YING HUA, hereby certify that the forgoing complaint has been translated to me from

3    English into Mandarin Chinese and that I have read and understood the allegations and claims made

4    herein and that I consent to be a party plaintiff herein.  I further certify that the factual statements

5    made herein are true and correct to the best of my knowledge and belief and that I verified the

6    accuracy of the above Complaint this 11th day of October, 2007.

7

8                                        _Li Ying Hua_____
9                                        LI YING HUA
                                         Plaintiff

10   I, LI ZHENG ZHE, hereby certify that the forgoing complaint has been translated to me from

11   English into Mandarin Chinese and that I have read and understood the allegations and claims made

12   herein and that I consent to be a party plaintiff herein.  I further certify that the factual statements

13   made herein are true and correct to the best of my knowledge and belief and that I verified the

14   accuracy of the above Complaint this 11th day of October, 2007.

15

16                                       _LI ZHENG ZHE_____
17                                       LI ZHENG ZHE
                                         Plaintiff

18   I, XU JING JI, hereby certify that the forgoing complaint has been translated to me from

19   English into Mandarin Chinese and that I have read and understood the allegations and claims made

20   herein and that I consent to be a party plaintiff herein.  I further certify that the factual statements

21   made herein are true and correct to the best of my knowledge and belief and that I verified the

22   accuracy of the above Complaint this 11th day of October, 2007.

23

24                                       _Xu, Jing Ji_____
25                                       XU JING JI
                                         Plaintiff

26

27