# Exhibits



## ANNUAL CORPORATION REPORT

COPY

```
.... ..... .. Make Check Payable to  CNMI TREASURER
...... and Two Copies
```

.... THE INITIAL REPORT MUST BE FILED WITHIN 60 DAYS OF INCORPORATION.
ANNUAL REPORT MUST BE FILED ON OR BEFORE MARCH 1ST OF EACH YEAR.

```
...      REGISTRAR OF CORPORATIONS
         Department of Commerce
         2nd Floor, Joeten Dandan Building Room 27
         Caller Box 10007
         Saipan MP 96950
```

F I L E D
at the
OFFICE of the ATTORNEY GENERAL
DATE: _2-06-08_
TIME: _11:30_   AM/PM
BY: _Rewly_
REGISTRAR OF CORPORATIONS
Commonwealth of the
Northern Mariana Island

.. .. ....        REPORT FOR THE YEAR   2006
.. .. . XX. Domestic Corporation  ( ) Foreign Corporation

---

.... Mailing Address & Telephone No. of Corporation:     (Attach map showing location if address is only a P. O. Box
KSK CORPORATION
PO BOX 502926 CK
SAIPAN, MP 96950

Telephone Number:   670-287-5077

.... Mailing Address & Telephone No. of Registered Agent:     (Attach Map showing location if address is only a P. O. Box
CHONG M. WON
PO BOX 505833 CK
SAIPAN, MP 96950

Telephone Number:   670-234-5000

.. DIRECTORS

| Name | Nationality | Address |
|---|---|---|
| KIM, SUNG EUN | KOREAN | PO BOX 502926 CK SAIPAN, MP 96950 |
| KIM, OK JA | KOREAN | PO BOX 502926 CK SAIPAN, MP 96950 |

.. OFFICERS

| Name | Position | Nationality | Address |
|---|---|---|---|
| KIM, SUNG EUN | PRESIDENT | KOREAN | SAME AS ABOVE |
| KIM, OK JA | V.-PRES./Treasurer | KOREAN | SAME AS ABOVE |
| AYUYU, ANTHONY CRUZ | SECRETARY | U.S. | PO BOX 504391 SAIPAN, MP 96950 |

.. PTION OF BUSINESS ACTIVITIES - List all lines of business.
AMUSEMENT:POKER, RETAIL STORE & LAUNDROMAT

.. ISSUED AND OUTSTANDING.

| Number of Shares | Class of Shares | Amount Paid for Share |
|---|---|---|
| 200,000 shares | Common Stock | $ 20.00 per share |

| .. SHAREHOLDERS | IMMIGRATION STATUS | NATIONALITY | NUMBER OF SHARES HELD |
|---|---|---|---|
| KIM, SUNG EUN | | KOREAN | 180,000 shares |
| KIM, OK JA | | KOREAN | 20,000 shares |

Signature.

11/31/07

**KIM, SUNG EUN - PRESIDENT**
PRINT NAME & TITLE OF PERSON SIGNING
(Must be Director or Officer of the Corporation.)

★★★★
BFSI

BANK OF F.S.M.

**CONFIDENTIAL FINANCIAL STATEMENT**

Kim, Ki Sung/Kim Sung Eun

Gentlemen:

For the purpose of obtaining credit from you (Bank) from time to time, I submit to you the following statement of my financial condition on 09.30.05

19___

I will notify you in writing of any material unfavorable change in my financial condition. In the absence of such notice, you may consider this a continuing statement and substantially correct. If I apply for further credit, this statement shall have the same force and effect as if delivered as an original statement of my financial condition at the time I request such further credit. You are authorized to verify with other persons any information at any time furnished by me to you. This financial statement and any other information furnished to you shall be your property. You are authorized to answer questions about your credit experience with me.

| ASSETS *(omit cents)* | | | LIABILITIES *(omit cents)* | | | |
|---|---|---|---|---|---|---|
| CASH ON HAND | 25 | 000 00 | NOTES PAYABLE TO YOU (BANK): | | | |
| CASH IN ACCOUNTS WITH YOU (BANK) | 5 | 000 00 | UNSECURED   Bank of Hawaii | 4 | 000 | 00 |
| CASH IN OTHER FINANCIAL INSTITUTIONS | | | SECURED | | | |
| ACCOUNTS RECEIVABLE | 35 | 000 00 | OTHER NOTES PAYABLE | | | |
| NOTES RECEIVABLE | | | MORTGAGES PAYABLE | | | |
| STOCKS AND BONDS | | | ACCOUNTS PAYABLE | | | |
| CASH SURRENDER VALUE OF LIFE INSUR. | | | LOANS ON INSURANCE POLICIES | | | |
| HOMESTEAD REAL ESTATE | | | TAXES OWING EXCEPT ON HOMESTEAD | | | |
| OTHER REAL ESTATE /land leased | 140 | 000 00 | OTHER LIABILITIES (itemize - use page 4 if needed) | | | |
| AUTOMOBILES AND EQUIPMENT kia sedona | 10 | 000 00 | | | | |
| OTHER ASSETS (itemize - use page 4 if needed) 2002 | | | | | | |
| vestment (ksk corp) | 180 | 000 00 | | | | |
| TOTAL ASSETS | 395 | 000 00 | TOTAL LIABILITIES | 4 | 000 | 00 |
| NET WORTH (Assets minus Liabilities) | | | | 391 | 000 | 00 |

**INCOME FOR LAST TAX YEAR**

I understand that alimony, child support, or separate maintenance income need not be revealed unless I wish to have them considered as a basis for repaying the credit requested.

| SALARY | | DIVIDENDS | | INCOME TAXES PAID LAST YEAR | |
|---|---|---|---|---|---|
| COMMISSIONS | | OTHER | | | |
| RENTALS | 33,600.00 | TOTAL ALL INCOME | $ 33,600.00 | | $ 3,360.00 |

I understand that the following questions 1 through 7 are addressed to me and I have answered them as appropriate.

- [ ] Yes [✓] No  1. Are any of the Assets held in trust, in an estate or in any other name or capacity?
- [ ] Yes [✓] No  2. Were any of the Assets (i) owned or claimed by your spouse before marriage or (ii) acquired by your spouse during marriage by gift or inheritance; or (iii) recovered for personal injuries sustained by your spouse during marriage?
- [ ] Yes [✓] No  3. Do any of the Assets in whole or in part consist of or were they purchased in whole or in part with, personal earnings of your spouse or revenue from property of your spouse of the kinds mentioned in the preceding item 2, or from proceeds of liquidation of any of the kinds mentioned in item 2?
- [ ] Yes [✓] No  4. Do any of your Assets, except real estate, secure any debts?
- [ ] Yes [✓] No  5. Are you obligated to pay the leases, notes or other debts of anyone else?
- [ ] Yes [✓] No  6. Are you a party to any suit or are there any unsatisfied judgements against you?
- [ ] Yes [✓] No  7. Have you been through bankruptcy or made an assignment for benefit of creditors?

I have explained fully on page 4 any "YES" answers to the foregoing questions 1 through 7. I [ ] have [ ] have not made a will. The executor is _____
I carry $ _____ of life insurance (including group) and the beneficiaries are _____

I HEREBY CERTIFY THAT ALL INFORMATION PROVIDED IN THIS FINANCIAL STATEMNT AND THE ATTACHED SCHEDULES IS TRUE AND CORRECT AT ABOVE DATE. I UNDERSTAND THAT MISREPRESENTING INFORMATION ON THIS FINANCIAL STATEMENT COULD RESULT IN DISAPPROVAL OF MY LOAN REQUEST.

WITNESS

KSK Doc # 224

### NO. 1 SCHEDULE OF NOTES RECEIVABLE

| ORIGINAL NOTE AMOUNT | DUE FROM | BALANCE OWING | PAYMENTS | MATURITY | COLLATERAL |
|---|---|---|---|---|---|
| N/A | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

### NO. 2 SCHEDULE OF NOTES PAYABLE

| ORIGINAL NOTE AMOUNT | DUE TO | BALANCE OWING | PAYMENTS | MATURITY | COLLATERAL |
|---|---|---|---|---|---|
| N/A | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

### NO. 3 SCHEDULE OF STOCKS AND BONDS OWNED

| NO. OF SHARES FACE VALUE (BONDS) | NAME OF ISSUING COMPANY | MARKET PER SHARE | MARKET VALUE | REGISTERED IN NAME OF | PLEDGED (YES OR NO) |
|---|---|---|---|---|---|
| N/A | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | TOTAL | | |

### STYLE, NUMBER AND BANK OF YOUR CHECKING AND SAVINGS ACCOUNTS

| PERSONAL (INCLUDING FAMILY) | BUSINESS |
|---|---|
| Bank of Hawaii – Checking | |
| First Hawaiian Bank | |
| | |
| | |
| | |

KSK Doc. # 225

★ ★ ★ ★
**BFSM**     *Bank of the Federated States of Micronesia*

January 17, 2006

Sung Eun Kim
President
KSK Corporation
PMB #234 Box 10001
Saipan, MP 96950

Dear Sung Eun Kim,

I am pleased to inform you that Bank of FSM ("Bank") has approved your business loan request as follows:

| | |
|---|---|
| Borrower: | KSK Corporation, Inc. |
| Lender: | Bank of FSM |
| Facility: | $100,000 Term Loan |
| Purpose: | Working Capital for wholesale of general merchandise and bakery shop. |
| Term: | 5-year term (full amortization). |
| Repayment: | Repaying $2,138 monthly (P&I). |
| Interest Rate: | U.S. Prime Rate + 3.00% (Variable). Initial rate at 10.25%, as of 1/17/06. |
| Loan Fee: | $1,000 or 1% of loan amount payable at loan closing. |

**Primary Source of Repayment:**
    Cash flow from amusement center (poker machine), commercial & residential rental, bakery, and wholesale of general merchandise.

**Secondary Source of Repayment:**
1. Refinance.
2. Liquidation of collateral.
3. Call on guarantors.

KSK Doc. # 229

Corporate Office
P.O. Box 98, Kolonia
Pohnpei, FM 96941

Member FDIC

Phone: (691) 320-2724
Fax: (691) 320-5359

January 17, 2006
KSK Corporation, Inc.
Commitment Letter
Page 2 of 3

**Collateral:**

    1.  Registered first leasehold mortgage over Lot 32-4-R1, as more particular described on Drawing/Cadastral Plat No. 2102/91, the original of which was recorded April 18, 1991 as Document No. 91-1922 at Commonwealth Recorder's, Saipan.

    2.  Security agreement interest on all business assets including poker machines, equipment, furniture & fixtures.

**Guarantors:**    Joint and several continuing guaranty of Sung Eun Kim, Sung Kim, and Ok Ja Kim.

**Insurance:**

    The Bank is to be provided with evidence that fire and extended coverage insurance on all Bank security shall be maintained at all times. The Borrower shall submit to the Bank a binder or certificate of insurance naming Bank of FSM as "Loss Payee".

**Legal Documentation & Expenses:**

- Borrower will pay for all expenses related to documenting this loan.

**Financial Reporting:**

- Borrower shall submit to Bank no later than ninety (90) days after end of its fiscal year, beginning December 31, 2005, and annually thereafter, a copy of the following:
  1. Company prepared financial statements, including balance sheet and income statement.
  2. Business gross revenue tax returns.
  3. Updated personal financial statements on Sung Eun Kim, Sung Kim, and Ok Ja Kim.

**Financial Covenant(s):**

- Minimum debt-service-coverage ratio of 1.25:1.00.
- Minimum tangible net worth of $150,000.

January 17, 2006
KSK Corporation, Inc.
Commitment Letter
Page 3 of 3

This letter evidences the commitment of Bank to extend financing exclusively to Borrower, and Borrower's commitment to accept said financing. This letter does not set forth all terms and conditions of the credit facility offered herein. Rather, it is an outline, in summary format, of the major points of understanding that will form the basis of the final loan documentation. Bank of FSM shall not be obligated to or fund the loan unless and until all conditions of this commitment letter have been satisfied.

We trust that this facility will provide your company with the financing flexibility that you will need for your continued growth. Should you have any questions, please do not hesitate to let me know.

Please indicate your acceptance of the aforementioned terms and conditions by signing in the space provided below and returning the executed copy of this letter by the close of business on January 31, 2006.

Thank you for banking with Bank of the Federated States of Micronesia.

Sincerely,

Antonio John
Credit Administrator

Robert DeCourteney
President & CEO

## ACCEPTANCE AND AGREEMENT

The foregoing agreement with all its terms and conditions are hereby accepted this ___18th___ day of January 2006.

**Borrowers:**

By: _____
     Sung Eun Kim

By: _____
     Sung Kim          01/18/06

By: _____
     Ok Ja Kim

KSK Doc. # 231

FILE NO. 05-935

'05 MAR 28 P1:54

BOOK B PAGE 27

COHER T. 8

Recording Request by ASSIGNEE )
Kim, Ki Sung )
)
)
)
)
)

_____

(Space Above This Line Reserved For Recorder's Use Only)

## ASSIGNMENT OF LEASE

THIS ASSIGNMENT OF LEASES made this 28 day of March, 2005, by and between **JOU, DAE HYUN**, an individual residing on the island of Saipan, Commonwealth of the Northern Mariana Islands, hereinafter referred to as "Assignor," and **KIM, KI SUNG**, an individual residing on the island of Saipan, Commonwealth of the Northern Mariana Islands, hereinafter referred to as "Assignee."

### *WITNESSETH:*

IN CONSIDERATION of Two Hundred and Fifty Thousand United States Dollars (US$250,000.00), for receipt of which is hereby acknowledged by Assignor, Assignor hereby irrevocably ASSIGNS, GRANTS, CONVEYS, and CONFIRMS unto Assignee, his successors and assigns, the Ground Lease Agreement and the leasehold estate created thereunder for the entire term thereof and all of Assignor's right, title, estate, and interest in and with respect to the following described real property located in San Vicente, Saipan, Northern Mariana Islands:

Page 1 of 7

KSK Doc. # 234

## Lot No 32-4-R1

Lot No. 32-4-R1, formerly known as Lot No. 32-4 (Part of Lot No 32), containing 1,665 square meters, more or less, as shown on DLS No. 2120/85, Commonwealth Recorder's File No. 85-1833, as also described as Lot No. 32-4-R1 on DLS Check No. 2102/91, Drawing No. TA 7093/90, the original of which was recorded on March 18, 1991, as File No. 91-1922, Book No. 5, Page No. 27, at the Commonwealth Recorder's Office, Saipan and consisting of 1,665 square meters, more or less.  This area is marked in bold ink on the attached Exhibit "A."

SAID RIGHT, TITLE, ESTATE, AND INTEREST was provided to Assignor on July 22, 1991

in that certain document entitled "Lease of Real Property," executed by Assignor and Victoria

Cruz Ibarra on July 22, 1991 and recorded at the Commonwealth recorder's office on July 22,

1991 as File No. 91-3464, Book 5, Page No. 65.

TO HAVE AND TO HOLD, all and singular the premises, together with the improvements

thereon and the tenements, hereditaments, and appurtenances thereunto belonging, or in anyway

appertaining for the remaining term of the lease.

## TERMS AND CONDITIONS

### I.
### COVENANTS OF TITLE

Assignor covenants, warrants and agrees as follows:

1. No Encumbrances:  that at the time of this Assignment, Assignor is the only lessee, tenant, and leaseholder under each lease; each lease is free and clear of all encumbrances; Assignor has good and marketable title thereto;  and each lease is in full force and effect without amendment.

2. No Default:  The entire rental due to this date has been paid, and all covenants and

Page 2 of 7

KSK Doc. # 235

conditions of the leases on the part of Assignor to be observed and performed have been observed and performed up to and including the delivery of these presents, and there is no default of any thereof.

3. No Security Interests: The above described premises are free and clear of all mortgages, liens, or any other encumbrances whatsoever which may be prior in time or superior to the leases.

4. Full Authority: Assignor has full and unrestricted right, power, and authority to enter into this Assignment and to perform all the terms and covenants hereof. Assignor warrants that he is unmarried and that his former spouse holds absolutely no interest in the property to be conveyed. Assignor shall indemnify and defend, save, protect, and hold harmless Assignee, its assigns and tenants, from any lack of authority of Assignor to make this Assignment or any lack of authority for Assignor to enter into the lease or earlier assignment, and from all damages arising as a consequence thereof which are reasonably foreseeable.

5. Default: In the event of a breach of this section, Assignee shall have the option to rescind the Assignment and recover any damages that may result.

## II.
## ASSUMPTION OF LEASE OBLIGATIONS

The Assignee hereby accepts this assignment and agrees to assume all duties of the lessee under each of the leases.

## III.
## GENERAL PROVISIONS

1. Binding Effect: This agreement of Assignee and Assignor herein shall be binding on Assignee and Assignor and their respective legal representatives, heirs, successors and assigns.

Page 3 of 7

KSK Doc. # 236

2. Severability: This assignment embodies the entire agreement between the parties. If any provision herein is invalid, it shall be considered deleted from this assignment, and shall not invalidate the remaining provisions of this assignment.

3. Modification: This assignment is not subject to modification except in writing, signed by the parties to be charged thereunder.

4. Disputes: This assignment shall be interpreted and enforced under the laws of the Commonwealth of the Northern Mariana Islands. Both parties consent to jurisdiction and venue of any disputes regarding this assignment before the Commonwealth Superior Court on Saipan.

5. No Presumption Against Drafter: The parties hereto waive any claim or presumption which might otherwise exist against the drafter of this Agreement.

6. Effect of Assignment Each party acknowledges that no person or entity has made any oral or written representation on which it has relied in entering into this Assignment which is not included as a term of this Assignment. This Assignment is effective upon its execution by the parties, and shall bind and benefit the parties, and their successors and assigns.

7. Advice of Counsel and Translators. By execution of this Assignment, each party hereby certifies that it had the opportunity to seek advice of legal counsel and translators of its choice, and that it has sought the advice of counsel and translator, who have reviewed this Assignment and explained the effect thereof.

8. Attorney's Fees. In the event that any action is filed in relation to this Assignment, the non-prevailing party in the action shall pay to the prevailing party, in addition to all the sums that either party may be called on to pay, a reasonable sum for the prevailing party's attorneys' fees and costs.

9. CN... Constitution Controls:  It is the intent of the parties that this assignment transfers a lease which is not more than a 55 year lease.  Both parties recognize the restrictions imposed by A... ... of the Constitution of the Commonwealth of the Northern Mariana Islands when ... to persons not of Northern Marianas descent.  As the assignee is not of Northern Marianas descent, this document is to be construed in all events so that it does not transfer a per... ... or long term interest in real property to Lessee.

IN WI... SS WHEREOF, the parties have executed this Assignment on the date first above written.

**ASSIGNOR:**                                     **ASSIGNEE:**
**JOU, DAE ...**                                  **KIM, KI SUNG**


JOU, DAE ...    3/28/05                           KIM, KI SUNG    03/28/05

KSK Doc. # 238

## ACKNOWLEDGMENT

COMMONWE . . TH OF THE          )
NORTHERN ! . IANA ISLANDS    )
                                                           ) ss.
SAIPAN                                            )
_____    _____    )

        On this      .iy of March, 2005, before me, a Notary Public in and for the Commonwealth of

the Northern .:..iana Islands, personally appeared **JOU, DAE HYUN,** who presented to me

satisfactory evi...nce of identity in the form of two current documents, one issued by a government

with the indiv ..:'s photograph, signature and physical description, the other issued by an

institution, bus:...ss entity, the federal government or a state government with the person's signature

appearing on i. .howing the individual to be the person whose name is signed on the preceding or

attached docu:...:.n and who acknowledged to me that he signed the above quitclaim deed voluntarily

for its stated p : ..se. .

        IN WI . .SS WHEREOF, I have hereunto set my hand and affixed my official seal on the

date first above- written.

_____
NOTARY PUBLIC

MY COMM:     ON EXPIRES: JULY 12, 2006



IN AND FOR THE
NORTHERN MARI...
MY COMMISSI...
EXPIR...

Page 6 of 7

KSK Doc. # 239

## ACKNOWLEDGMENT

COMMONWEALTH OF THE          )
NORTHERN MARIANA ISLANDS     )
                             ) ss.
SAIPAN                       )
——————— — —— ————————        )

On the ___ day of March, 2005, before me, a Notary Public in and for the Commonwealth of

the Northern Mariana Islands, personally appeared **KIM, KI SUNG**, who presented to me

satisfactory evidence of identity in the form of two current documents, one issued by a government

with the individual's photograph, signature and physical description, the other issued by an

institution, business entity, the federal government or a state government with the person's signature

appearing on it, showing the individual to be the person whose name is signed on the preceding or

attached document and who acknowledged to me that he signed the above quitclaim deed voluntarily

for its stated purpose.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal on the

date first above-written.

_____
NOTARY PUBLIC

MY COMMISSION EXPIRES: July 12, 2006



Page 7 of 7

KSK Doc. # 240

FILE NO. 08-072
Date: 1/10/08 Time: 1:39
Book: 14 Page: 81
Commonwealth Recorder

1  FOR                          ]
2  RECORDATION                  ]
3  PURPOSES                     ]

(Right Top Corner-Space for CNMI Recorder's File Number)

COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS
SAIPAN, MARIANA ISLANDS

LEASE AGREEMENT

This LEASE AGREEMENT ["Lease Agreement"] is made and entered into by and between LUCY ANN TUDELA SABLAN, whose address is P.O. Box 500121, Saipan, MP 96950, hereinafter referred to as the "Lessor," and Kim, Ki Sung, whose address is P.O. Box 502926, Saipan, Commonwealth of the Northern Mariana Islands, 96950, hereinafter referred to as "Lessee."

WITNESSETH:

That for and in consideration of the mutual covenants and promises contained herein, and the mutual benefits to be derived therefrom, the Lessor and Lessee covenant and agree as follows:

Section 1.  GRANT OF PREMISE

The Lessor hereby leases to Lessee, and the Lessee hereby takes from the Lessor those certain real properties, all hereinafter referred to as the "Premises," located and situated in Chalan Kanoa, Saipan, Commonwealth of the Northern Mariana Islands, and are more particularly described below as:

(1)    Lot No. 015 H 27, containing an area of 457 square meters, more or less; and

(2)    Lot No. 015 H 28, containing an area of 318 square meters, more or less.

KSK Doc. # 478

## Section 2.  TERM OF LEASE

This Lease Agreement is for a term of fifty-five (55) years, commencing on _January 01_, 2008 and ending fifty-five (55) years thereafter on _January 01_, 2063, unless sooner terminated pursuant to the terms of said Lease Agreement herein-contained.

## Section 3.  RENTAL

The Lessee shall pay the Lessor an annual rent in the sum of $15,600.00, broken down as follows:

a.    $12,000.00 per year ($1,000 per month) for Lot No. 015 H 27 as above-described; and

b.    $3,600.00 per year ($300.00 per month) for Lot No. 015 H 28, as above-described.

The Lessee hereby agrees to pay to the Lessor said annual rental amount, including any increases to the same as set-forth herein, on or before the anniversary date of the foregoing Lease Agreement, the same being January 1st of each year hereinafter.    The Lessee further agrees to pay to the Lessor the amount of $15,600.00 upon the execution of this Lease Agreement, said amount representing the rental payment for the first (1st) year of this Lease Agreement.

Finally, the Lessee and the Lessor further agree that the foregoing annual rental amount shall be subject to a ten percent (10%) increase after each ten (10) year period during the term of this Lease Agreement, with the first increase to take place on January 1st, 2017.

## Section 4. SECURITY DEPOSIT

Lessee, in addition to the first month's rental payment to the Lessor, shall also pay to the Lessor at the execution of this Lease Agreement an additional amount of $5,200.00 to be held by Lessor, without interest, as a security deposit for the faithful performance of and compliance with all the terms, covenants, and conditions of this Lease Agreement by Lessee.  If at any time during the initial term of this Lease

1  Agreement, any amount of the annual rental herein mentioned shall be overdue and

2  unpaid, then Lessor may, at its option but shall not be required to appropriate and

3  apply said security deposit, in whole or in any portion thereof, to the payment of any

4  such overdue rental or other sum.  In the event of the failure of Lessee to keep and

5  perform all of the terms, covenants, and conditions of this Lease Agreement, as

6  required from Lessee,  then at the option of Lessor, Lessor may, after terminating this

7  Lease Agreement, appropriate and apply said security deposit, or so much amount of

8  the same as may be necessary to compensate Lessor for all loss or damage sustained

9  or suffered by Lessor due to such breach on the part of Lessee.  Should the entire

10 amount of the security deposit, or any portion thereof, be appropriated and applied

11 by Lessor for the payment of overdue rent or other sums due and payable to Lessor

12 by Lessee, as herein contemplated, then Lessee shall, upon the written demand by

13 Lessor, forthwith and without unreasonable delay remit to Lessor a sufficient sum in

14 cash to restore said security deposit to its original sum as herein indicated.  Should

15 Lessee fails to comply within five (5) days with said written demand from Lessor in

16 restoring said security deposit to its original amount, then, at the option of Lessor,

17 Lessor may terminate this Lease Agreement.

18     Finally, should Lessee fully and completely comply and perform all the terms,

19 covenants, and conditions of this Lease Agreement, then said security deposit shall

20 then be applied and credited as part of the annual rental payment then due from the

21 Lessee for the last year of this Lease Agreement, i.e., 2062.

22                    Section 5.  PURPOSE AND USE

23     Lessor hereby agrees that Lessee may use the premise for any legal purpose.

24                 Section 6.  UTILITIES AND OTHER CHARGES

25     Lessee shall assume and pay when due all charges for water, electricity, sewer,

26 telephone, and any and all other charges incurred by or imposed upon the Lessee in

27 the use, occupation or maintenance of the premise.

28                       Section 7.  TAXES

                    KSK Doc_# 480

1    Lessee agree to pay and discharge all taxes, assessments, duties, impositions

2  and burdens assessed, charged, or imposed upon the premises or any improvements

3  thereon. Lessee, however, shall not be required to pay any estate, gift, inheritance,

4  succession, franchise, income, or excess profits taxes other than property tax for the

5  premises or improvements thereon which may be payable by Lessor or Lessor' legal

6  representative, successors, or assigns, nor shall Lessee be required to pay any tax

7  that may become due on account of ownership of the properties.

8    Section 8. REPAIR AND MAINTENANCE

9    Lessee shall maintain the premises in good order, repair, and condition,

10  reasonable wear and tear excepted.

11    Section 9. IMPROVEMENTS

12    Lessee, at their own expense, may from time to time make any alterations,

13  additions and improvements in and to the Premises which they may deem necessary

14  or appropriate for their purposes, without notice to Lessor.

15    Section 10. LAND OWNERSHIP

16    Lessor hereby warrants and represents that she own the premise and has the

17  right to lease the same to the Lessee without consent or permission by any other

18  person. Lessor warrants that Lessee shall have peaceful and quiet use and enjoyment

19  of the premise without interference from Lessor or any person claiming ownership or

20  other interest therein.

21    Section 11. SUBLEASE/MORTGAGE

22    Lessee may mortgage or otherwise hypothecate, all or any portion of the

23  premises without the prior consent of Lessor, but Lessee shall not sublease, assign,

24  or sell all or any portion of the premise or her leasehold interest under this Lease

25  Agreement without the written consent of the Lessor.

26    Section 12. INDEMNITY

27    Lessor shall not be liable for liability or damage claims for injury to persons,

28  including Lessee and its agents or employees, or for property damage from any

KSK Doc. # 481

-4-

1  cause, related to Lessee' occupancy of the Premises during the term of this Lease

2  Agreement. Lessee hereby covenants and agrees to indemnify Lessor and save her

3  harmless from any and all liability, loss or other damage claims or obligations because

4  of or arising out of such injuries or losses, including but not limited to Lessee's use

5  and occupancy of the premise.

6                          SECTION 13.  DEFAULT AND REMEDIES

7          The following events shall be deemed to be events of default under this Lease

8  Agreement:

9      a.      If Lessee shall abandon the Premises;

10     b.      If Lessee shall default under any promissory note and/or mortgage

11              agreements;

12     c.      If Lessee shall fail to comply with any terms, provisions, or covenants

13              of this Lease Agreement, and shall not commence to remove or to cure

14              such failure within sixty (60) days from and after the date written notice

15              specifying such failure is delivered to Lessee, or having commenced to

16              remove or to cure such failure within said sixty (60) days, fails to

17              proceed with reasonable diligence; or

18     d.      If Lessee shall file for any bankruptcy proceedings under any laws.

19         Upon default on any of the above stated reasons, this Lease Agreement shall

20  be automatically terminated without the need for Lessor to seek cancellation or

21  termination of this Lease Agreement in any court proceedings.

22                          Section 14.  NOTICE; PAYMENTS

23         Any notice required or permitted under this Lease Agreement shall be in writing

24  and shall be deemed given when delivered in person or when deposited in the postal

25  service, first class postage prepaid, addressed to:

26              Lessee:        Kim, Ki Sung
                               P.O. Box 502926
27                             Saipan, MP  96950

28

                            KSK Doc. # 482

1    Lessor:    Lucy Ann Tudela Sablan
                P.O. Box 500121
2                Saipan, MP 96950

3   or at such other addresses as Lessee or Lessor may from time to time specify by

4   notice. Notice by telex, cablegram, or facsimile transmission shall constitute written

5   notice and shall be deemed given when received by the party to whom that notice is

6   given.

7                       Section 15. CONDEMNATION

8       In the event of condemnation in whole or in part of the premises, Lessor and

9   Lessee are to each seek their own remedy for their respective interest in the real

10  property and leasehold.

11                      Section 16. ATTORNEYS'S FEES

12      If any action at law or in equity shall be brought to recover any rent under this

13  Lease Agreement, or for or on account of any breach of, or to enforce or interpret

14  any of the covenants, terms, or conditions of this lease, or for the recovery of the

15  possession of the premise, the prevailing Party shall be entitled to recover from the

16  other party as part of the prevailing party's costs reasonable attorneys' fees, the

17  amount of which shall be fixed by the court and shall be made a part of any judgment

18  or decree rendered.

19                      Section 17. BINDING EFFECT

20      Each and every covenant, agreement, term, provision and condition herein

21  contained shall extend to and be binding upon the respective heirs, legal

22  representatives, successors, and assigns of the Parties hereto, and shall be deemed

23  and treated as covenants real running with the land during the term hereof, but no

24  change or division in the ownership of the premise, however accomplished, may

25  operate to enlarge the obligations or diminish the rights of the Lessee.

26                      Section 18. CONTROLLING LAWS

27      The foregoing Lease Agreement, in its entirety and any amendment thereof,

28  shall be construed and interpreted according to the laws of the Commonwealth of the

KSK Doc. # 483
-6-

1  Northern Mariana Islands.

2  Section 19.  ENTIRE AGREEMENT

3  This writing contains the entire agreement of the parties hereto with respect

4  to the subject matter hereof and may not be modified, altered, or changed in any

5  manner whatsoever, except by written agreement signed by the Parties.

6

7  IN WITNESS WHEREOF, the Parties have hereunto set their respective hands

8  the date and year first above written.

9

10  LESSOR:                                      LESSEE:

11

12

13  Lucy Ann Tudela Sablan                        Kim, Ki Sung

14

15  COMMONWEALTH OF THE NORTHERN              )
    MARIANA ISLANDS,                          )

16                                            )      ACKNOWLEDGMENT
    SAIPAN, MARIANA ISLANDS                   )

17                                            )

18  On this  19th  day of  DECEMBER  , 2007, before me the

19  undersigned Notary Public, personally appeared **LUCY ANN TUDELA SABLAN** and

20  KIM, SUNG EUN, both known to me to be the persons whose names are subscribed

21  to the foregoing Lease Agreement and both acknowledged to me that they executed

22  the same as their own free will, act and deed.

23  **IN WITNESS WHEREOF,** I have hereunto set my hand and affixed by official

24  seal on the date first above written.

25

26

27  OFFICIAL SEAL
    FABIAN DLG. TUDELA
    Notary Public

28  IN AND FOR THE COMMONWEALTH OF THE
    NORTHERN MARIANA ISLANDS
    MY COMMISSION
    EXPIRES:  May 22, 2008

KSK Doc. #.484

# EMPLOYMENT CONTRACT

This employment contract is entered into by and between ___KSK   Corporation___
of ___P.O. Box 502926, Saipan___, MP 96950
hereinafter referred to as the Employer, and ___KI SUNG KIM___ of
___272, Banghak Donbu-ku, Seoul, Korea___, hereinafter referred to as the Employee.

The Employer hereby employs the Employee and the Employee hereby accepts to be employed by the Employer to serve and perform the duties required of him/her in the job category provided below:

A. **DUTIES AND RESPONSIBILITIES:** The parties hereto agree that the Employee shall be employed only in the job category of ___Gen Manager___ and shall perform the following duties and responsibilities including training of resident workers:


Please see Attachment




B. **TERM:** The term of this Contract shall be for a period of ___two years(24 mos.)___ commencing upon the Employee's arrival in the Commonwealth of the Northern Mariana Islands ("CNMI") and ending on ___expiration of permit___ ///8//

C. **WORK DAYS AND HOURS:** The Employee's work days and hours shall be ___Monday___ to ___Sunday___, from ___flexible___ to ___flexible___, for a total of ___NLT 40___ hours per week. ___2 days off/week___, flexible day off

D. **COMPENSATION:** In consideration of the services to be performed by the employee, the Employer agrees to pay the Employee compensation in the amount of:
1. $ ___1,800.00___ per ___month___ and
2. $ ___X1.5___ per ___hour___ for overtime compensation payable by check in bi-weekly intervals.
3. Other compensation (bonuses, commissions, etc.); specify amount and method of calculation:
   ___n/a___


E. **DEDUCTIONS:** CNMI taxes and Social Security, if applicable, shall be withheld from the employee's salary each pay period. No other deductions from the Employee's compensation shall be made by the Employer unless specified herein and approved by the Chief of Labor or his authorized designee. Other deductions (set forth amount and purpose of deduction):



F. **PRINCIPAL PLACE OF WORK:** The Employee's principal place of employment shall be on ___Saipan___, CNMI. However, the employee may be required to perform his/her duties at the other senatorial districts within the CNMI depending on the nature of the Employer's business and upon the Employer's compliance with applicable labor policies and/or regulations.

G. **TRANSPORTATION:** The Employer shall be responsible for the payment of the Employee's return airplane ticket to his/her point of hire at the expiration or termination of the Employment Contract, regardless of the nature of termination.

H. **INSURANCE/MEDICAL EXPENSES:** The Employer shall be responsible and liable for the medical insurance or payment of all medical expenses of the Employee, including the cost of referral and evacuation of medical treatment outside of the CNMI and, in the event of Employee's death, the cost of embalming and transportation of the Employee's corpse back to his point of origin.

I. **NOTIFICATION OF NEXT-OF-KIN:** In the case of an emergency involving serious illness, accident or death of the Employee, the Employer shall immediately notify the Employee's next-of-kin whose name and address are as follows:

_____
_____
_____

**KSK Doc. # 530**

Attachment: Employment Contract  Letter A page 1
Duties & Responsibilities

# MANAGER, INDUSTRIAL ORGANIZATION

Click on this line to see Worker Traits for this Job
Click on this line to see Occupational Outlook

*D.O.T. 189.117-022*

Directs and coordinates activities of industrial organization to obtain optimum efficiency and economy of operations and maximize profits: Plans and develops organization policies and goals, and implements goals through subordinate administrative personnel. Coordinates activities of divisions or departments, such as operating, manufacturing, engineering, planning, sales, maintenance, or research and development, to effect operational efficiency and economy. Directs and coordinates promotion of products manufactured or services performed to develop new markets, increase share of market, and obtain competitive position in industry. Analyzes division or department budget requests to identify areas in which reductions can be made, and allocates operating budget. Confers with administrative personnel, and reviews activity, operating, and sales reports to determine changes in programs or operations required. Directs preparation of directives to division or department administrator outlining policy, program, or operations changes to be implemented. Promotes organization in industry, manufacturing or trade associations. Workers are usually identified according to industry in which employed, such as petroleum production or refining, iron and steel, electrical equipment; type of organization, such as air, rail, motor or water transportation; or type of product, such as paper, chemical, or plastics products.

GOE: 11.05.01   STRENGTH: L   GED: R5 M4 L5   SVP: 8   DLU: 86

J.  **BOARD, LODGING AND OTHERS:**
The Employer shall ensure that the following facilities are provided:

1.  /___/  Employer-provided housing at a charge of $_____ per month.

    /___/  Employer-provided housing free of charge.

    /_x_/  Employee self-arranged housing.
           (Attach statement or rental agreement.)

2.  /___/  _____ (number) meals per day at a charge of $_____ per month.

3.  /_x_/  Employee to provide own food.

4.  /___/  Free transportation to and from job site at employer designated
           pick-up points.

5.  /_x_/  Employee to provide transportation to and from job site.

6.  /___/  Allowance:

7.  /_x_/  Others:  Medical & workmen's compensation insurance
                    are employer provided

K.  **OTHER PROVISIONS:**  The following additional provisions apply to this Contract:
(Set forth or attach any work rules, living accommodation rules and standards for
Employee conduct. Every page of every attachment must be signed by Employee and
Employer.)

         n/a

L.  **TERMINATION:**  This Contract may only be terminated for cause by either party by
giving the other party __10__ days advance written notice and only after an
unsuccessful good faith attempt to settle any dispute has been made with the
Chief of Labor or his designee.

1.  In the event of termination for cause, the Employer shall pay the
    Employee's wages or salary for work or services performed or for work not
    performed when an employer refuses to allow the employee to continue
    working through the effective date of the termination and shall purchase
    a one-way ticket for the return of the Employee to his/her point of hire.

2.  Termination for cause may include any of the following:

    a.  __3X__ unauthorized absences and/or __3X__ unauthorized tardiness to
        work by the Employee;

    b.  Neglect, careless performance, non-performance or non-completion of
        assigned work by the Employee;

    c.  Conviction in the CNMI of any felony or two or more misdemeanors;

    d.  Abandoning of job or assigned duty by the employee;

    e.  Incompetence or misrepresentation of the qualifications, skills,
        physical or mental fitness to satisfactorily perform the duties for
        which the Employee was hired;

    f.  Extreme cruelty or abuse, physical or otherwise;

    g.  Unreasonable delays in the payment of the employee's wages or
        salary;

    h.  A breach of any provision of this Contract and not corrected within
        ten (10) days;

    i.  Cessation of business activities or bankruptcy;

    j.  Others (specify):

M.  **SETTLEMENT OF DISPUTE:**

    **Grievance and Good Faith Settlement**

    All grievances or disputes under this employment contract shall be subject to the
    following grievance procedure:

    1.  The employee shall communicate to his/her supervisor, or if there is no
        supervisor, then directly to the employer, any and all grievances or
        disputes he/she may have regarding his/her employment;

**KSK Doc. # 532**



COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS
# DEPARTMENT OF LABOR
## DIVISION OF LABOR
Second Floor Afetña Square Building, San Antonio, P.O. Box 10007, Saipan, MP 96950
Telephone no. (670) 236-0907 or 0911 Facsimile no. (670) 236-0992



DEAN O. TENORIO
Director

GIL M. SAN NICOLAS
Deputy Director

Dear Sir:

I declare under penalty of perjury that the statements below are

True and correct, to wit:

a. that , I __Ki Sung Kim_____ a __Korean____

and of legal age, will be employed by __KSK Corporation__

b. that, during my employment , I will stay and live:
_____ at the barracks designed by my employer.

___x_____ outside and not at the employer/ company's
barracks at my own expense.

_____ others specify: _____

c. that, this declaration is mine and was executed on my own
free will on the date stated above.

Furthermore, I say naught.

_____          _____
Ki Sung Kim                      Bun Sung Kim-President
EMPLOYEE                         EMPLOYER
(print and sign)                 ( print and sign)

SUBSCRIBED
t. _Young Kim_____ in _16th_ _Nov_
20 _08_ at Saipan, CNMI.

KSK Doc. # 533

_____
Notary Public

ELLA M. M. ESPIRITU
NOTARY PUBLIC
In and in behalf of the Northern
Mariana Islands
My commission expires: _11-10-86_

2.   If the supervisor is unable to resolve the matter immediately, the grievance or dispute shall be reduced to writing by the supervisor which shall state the section of the contract, law, or rules and regulations to have been violated.  Management shall have five working days to resolve the grievance, dispute or state in writing his/her reasons why there is no violation.

3.   If the grievance or dispute is not resolved in step 1 or 2 above, the employee may file a complaint with the Chief of Labor or his designee.

The employee and employer shall maintain the employment relationship during the pendency of any grievance or dispute unless the Chief of Labor, his authorized designee, or a hearing officer grant a temporary work authorization.

N.   **REMITTANCE/OTHER OBLIGATIONS:**  The Employee shall be responsible for remitting any money to his/her family and payment of any taxes as required by his/her government in his/her country of origin.

O.   **ENTIRE AGREEMENT:**  The foregoing terms and conditions constitute the sole, entire agreement of the parties herein and shall supersede any other agreement, either written, verbal, or otherwise.

**IN WITNESS WHEREOF**, the parties hereto affix their names on the date and space so specified.

DATE: 11-16-08 _____

Eun Sung Kim-President
EMPLOYER
(Print Name, Title and Sign)

DATE: 11-16-08 _____

Ki Sung Kim
EMPLOYEE
(Print Name and Sign)

Saipan _____, COMMONWEALTH
OF THE NORTHERN MARIANA ISLANDS
) ss: **ACKNOWLEDGEMENT**
)
)

On this 16th day of Nove,ber ____ 2005 , personally appeared before me Eun Sung Kim _____ and Ki Sung Kim _____, known to me to be the person(s) whose signature(s) is/are subscribed to the foregoing instrument and who acknowledged to me that he/she/they executed the same as a voluntary act for the purposes set forth therein.

**IN WITNESS WHEREOF**, I have hereunto set my hand and official seal on the day and year first written above.

_____ 11-10-06
P.O. Box 50.199 CK
Saipan, MP 96950
NOTARY PUBLIC

) ss: **ACKNOWLEDGEMENT**
)
)

On this _____ day of _____, _____ , personally appeared before me _____ and _____, known to me to be the person(s) whose signature(s) is/are subscribed to the foregoing instrument and who acknowledged to me that he/she/they executed the same as a voluntary act for the purposes set forth therein.

**IN WITNESS WHEREOF**, I have hereunto set my hand and official seal on the day and year first written above.

_____
NOTARY PUBLIC

DATE: 12/19/06

APPROVED BY: _____
DIRECTOR OF LABOR

# COPY          EMPLOYMENT CONTRACT

This employment contract is entered into by and between   GOLDEN BIRD Corp.
of P.O. Box 502926, Saipan, MP 96950
hereinafter referred to as the Employer, and   Ki Sung Kim
272, Bar.ghak-dong, Dobung-ku, Seoul, Korea      , hereinafter referred to as the Employee.

The Employer hereby employs the Employee and the Employee hereby accepts to be employed by the Employer to serve and perform the duties required of him/her in the job category provided below:

A.  **DUTIES AND RESPONSIBILITIES:**  The parties hereto agree that the Employee shall be employed only in the job category of   Manager Store   and shall perform the following duties and responsibilities including training of resident workers:

Please see attachment

B.  **TERM:**  The term of this Contract shall be for a period of   two (2) years (24mos.) commencing upon the Employee's arrival in the Commonwealth of the Northern Mariana Islands ("CNMI") and ending on   11/16/05   .

C.  **WORK DAYS AND HOURS:**  The Employee's work days and hours shall be Monday   to Friday   , from   9:00AM   to   6:00PM   , for a total of   NLT 40   hours per week.

D.  **COMPENSATION:**  In consideration of the services to be performed by the employee, the Employer agrees to pay the Employee compensation in the amount of:
1.   $ 1,800.00   per   month   and
2.   $ X1.5   per   hour   for overtime compensation payable by check in bi-weekly intervals.

3.   Other compensation (bonuses, commissions, etc.); specify amount and method of calculation:
     n/a

E.  **DEDUCTIONS:**  CNMI taxes and Social Security, if applicable, shall be withheld from the employee's salary each pay period.  No other deductions from the Employee's compensation shall be made by the Employer unless specified herein and approved by the Chief of Labor or his authorized designee. Other deductions (set forth amount and purpose of deduction):

all approved CNMI & Federal taxes

F.  **PRINCIPAL PLACE OF WORK:**  The Employee's principal place of employment shall be on   Saipan   , CNMI. However, the employee may be required to perform his/her duties at the other senatorial districts within the CNMI depending on the nature of the Employer's business and upon the Employer's compliance with applicable labor policies and/or regulations.

G.  **TRANSPORTATION:**  The Employer shall be responsible for the payment of the Employee's return airplane ticket to his/her point of hire at the expiration or termination of the Employment Contract, regardless of the nature of the termination.

H.  **INSURANCE/MEDICAL EXPENSES:**  The Employer shall be responsible and liable for the medical insurance or payment of all medical expenses of the Employee, including the cost of referral and evacuation of medical treatment outside of the CNMI and, in the event of Employee's death, the cost of embalming and transportation of the Employee's corpse back to his point of origin.

I.  **NOTIFICATION OF NEXT-OF-KIN:**  In the case of an emergency involving serious illness, accident or death of the Employee, the Employer shall immediately notify the Employee's next-of-kin whose name and address are as follows:

Eun Sung Kim-wife

same as above

KSK Doc. # 543

Form: L921014.1                                                                      Page 1 of 3

# MANAGER, RETAIL STORE

Click on this line to see Worker Traits for this Job
Click on this line to see Occupational Outlook

*D.O.T. 185.167-046*

Manages retail store engaged in selling specific line of merchandise, such as groceries, meat, liquor, apparel, jewelry, or furniture; related lines of merchandise, such as radios, televisions, or household appliances; or general line of merchandise, performing following duties personally or supervising employees performing duties: Plans and prepares work schedules and assigns employees to specific duties. Formulates pricing policies on merchandise according to requirements for profitability of store operations. Coordinates sales promotion activities and prepares, or directs workers preparing, merchandise displays and advertising copy. Supervises employees engaged in sales work, taking of inventories, reconciling cash with sales receipts, keeping operating records, or preparing daily record of transactions for ACCOUNTANT (profess & kin.) 160.162-018, or performs work of subordinates, as needed. Orders merchandise or prepares requisitions to replenish merchandise on hand. Ensures compliance of employees with established security, sales, and record keeping procedures and practices. May answer customer's complaints or inquiries. May lock and secure store. May interview, hire, and train employees. May be designated according to specific line of merchandise sold, such as women's apparel or furniture; related lines of merchandise, such as camera and photographic supplies, or gifts, novelties, and souvenirs; type of business, such as mail order establishment or auto supply house; or general line of merchandise, such as sporting goods, drugs and sundries, or variety store.

GOE: 11.11.05   STRENGTH: L   GED: R4 M4 L4   SVP: 7   DLU: 81

J.    **BOARD, LODGING AND OTHERS:**

The Employer shall ensure that the following facilities are provided:

1.    ☐    Employer-provided housing at a charge of $_____ per month.

      ☐    Employer-provided housing free of charge.

      ☒    Employee self-arranged housing.
            (Attach statement or rental agreement.)

2.    _____ (number) meals per day at a charge of $ _____ per month.

3.    ☒    Employee to provide own food.

4.    ☒    Free transportation to and from job site at employer designated
            pick-up points.

5.    ☐    Employee to provide transportation to and from job site.

6.    ☐    Allowance:

7.    ☒    Others: employer will provide the following:
                 1. Labor Surety Bond
                 2. Workmen's insurance coverage

K.    **OTHER PROVISIONS:**    The following additional provisions apply to this Contract: (Set forth or attach any work rules, living accommodation rules and standards for Employee conduct. Every page of every attachment must be signed by Employee and Employer.)

      n/a

L.    **TERMINATION:**   This Contract may only be terminated for cause by either party by giving the other party __30___ days advance written notice and only after an unsuccessful good faith  attempt to settle any dispute has been made with the Chief of Labor or his designee.

      1.    In the event of termination for cause, the Employer shall pay the Employee's wages or salary for work or services performed or for work not performed when an employer refuses to allow the employee to continue working through the effective date of the termination and shall purchase a one-way ticket for the return of the Employee to his/her point of hire.

      2.    Termination for cause may include any of the following:

            a. _3X___ unauthorized absences and/or___3X_____ unauthorized tardiness to work by the Employee;

            b. Neglect, careless performance, non-performance or non-completion of assigned work by the Employee;

            c. Conviction in the CNMI of any felony or two or more misdemeanors;

            d. Abandoning of job or assigned duty by the employee;

            e. Incompetence or misrepresentation of the qualifications, skills, physical or mental fitness to satisfactorily perform the duties for which the Employee was hired;

            f. Extreme cruelty or abuse, physical or otherwise;

            g. Unreasonable delays in the payment of the employee's wages or salary;

            h. A breach of any provision of this Contract and not corrected within ten (10) days;

            i. Cessation of business activities or bankruptcy;

            j. Others (specify):
                        n/a

M.    **SETTLEMENT OF DISPUTE:**

Grievance and Good Faith Settlement

All grievances or disputes under this employment contract shall be subject to the following grievance procedure:

      1.    The employee shall communicate to his/her supervisor, or if there is no supervisor, then directly to the employer, any and all grievances or disputes he/she may have regarding his/her employment;

**KSK Doc. # 545**

Director
Division of Labor
Dept. of Labor
Commonwealth of the Northern Mariana Islands
San Antonio
Saipan, MP 96950

RE:                                   **DECLARATION**

Dear Sir,

I declare under penalty of perjury that the statements below are true and correct, to wit:

a.    That, I,    Ki Sung Kim                    , a citizen of Korea and of legal age,
      will be employed by  GOLDEN BIRD CORPORATION.

b.    That, during my employment, I will stay and live outside and not at the
      employer's/company's barracks at my own expense.

c.    That, I, voluntarily and willfully self arrange my housing during my stay in the
      Island.

d.    That, this declaration was executed on my own free will.

Dated this  12  day of   November  , 2003.

Sincerely,

       Ki Sung Kim
      _____

**EMPLOYEE**

       ACKNOWLEDGEMENT

SUBSCRIBED and SWORN to before me
a NOTARY PUBLIC personally appeared
KI SUNG KIM
to the the      DECLARATION     instrument
and acknowledged the   HE   HIS
and voluntary act for the purpose contained.
IN WITNESS WHEREOF, I have hereunto set my hand
and official seal on the  2  day of Nov, 2005 written above.
                                        NOTARY PUBLIC

       NOTARY PUBLIC                My Commission expires on
                                    the 27th day of Jan. 2004

KSK Doc. # 546

2.    If the supervisor is unable to resolve the matter immediately, the grievance or dispute shall be reduced to writing by the supervisor which shall state the section of the contract, law, or rules and regulations to have been violated.   Management shall have five working days to resolve the grievance, dispute or state in writing his/her reasons why there is no violation.

3.    If the grievance or dispute is not resolved in step 1 or 2 above, the employee may file a complaint with the Chief of Labor or his designee.

The employee and employer shall maintain the employment relationship during the pendency of any grievance or dispute unless the Chief of Labor, his authorized designee, or a hearing officer grant a temporary work authorization.

N.    <u>REMITTANCE/OTHER OBLIGATIONS:</u>   The Employee shall be responsible for remitting any money to his/her family and payment of any taxes as required by his/her government in his/her country of origin.

O.    <u>ENTIRE AGREEMENT:</u>   The foregoing terms and conditions constitute the sole, entire agreement of the parties herein and shall supersede any other agreement, either written, verbal, or otherwise.

IN WITNESS WHEREOF, the parties hereto affix their names on the date and space so specified.

DATE: __11/12/'03__          Kyung Soo Lee-President

EMPLOYER
(Print Name, Title and Sign)

DATE: __11/12/'03__          Ki Sung Kim

EMPLOYEE
(Print Name and Sign)

__Saipan__ , COMMONWEALTH )
                                          ) ss:    ACKNOWLEDGEMENT
OF THE NOTHERN MARIANA ISLANDS )
                                          )

On this __12th__ day of __November 2003__ , 19 ___ , personally appeared before me __Kyung Soo Lee__ day ___ Ki Sung Kim__ , known to me to be the person(s) whose signature(s) is/are subscribed to the foregoing instrument and who acknowledged to me that he/she/they executed the same as a voluntary act for the purposes set forth therein.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal on the day and year first written above.

NOTARY PUBLIC

My Commission expires on
the 27th day of Jan. 2004

                                          )
                                          ) ss:    ACKNOWLEDGEMENT
                                          )
_____ )

On this _____ day of _____ , 19 ___ , personally appeared before me _____ and _____ , known to me to be the person(s) whose signature(s) is/are subscribed to the foregoing instrument and who acknowledged to me that he/she/they executed the same as a voluntary act for the purposes set forth therein.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal on the day and year first written above.

_____
NOTARY PUBLIC

DATE: __2/16/4__          APPROVED BY: _____
                                          CHIEF OF LABOR
                                          Mitch C. Aaron, Jr.
                                          Director's Designee

KSK Doc. # 547



Commonwealth of the Northern Mariana Islands
The Department of Labor and Immigration
# Authorization for Entry

This letter allows authorized entry into the Commonwealth of the Northern Mariana Islands for: **KI SUNG KIM.**



| KI SUNG KIM | | | |
|---|---|---|---|
| *Expires* | *Issue Date* | *Birthdate* | *Gender* |
| **11/16/2002** | **11/16/2001** | **12/26/1959** | **M** |
| *Employer* | **GOLDEN BIRD CORP** | | |
| *Occupation* | **STORE MANAGER** | | |
| *Class* | **706K** | *Citizenship* | **KOR** |
| *Wage Rate* | **$1,800.00** | *Wage Type* | **M** |

**You are hereby notified of the following requirements:**

1. Present this Authorization for Entry letter to an Immigration Officer immediately upon arrival at your designated port of entry into the Commonwealth of the Northern Mariana Islands.
2. You will be issued your Entry Permit upon completion of the Alien Registration requirements of the CNMI . You are required by law to retain the Entry Permit in your possession at all times.
3. Individuals must show original Health Clearance Certificate when picking up the Entry Permit...clinic receipt will not be accepted under any terms.
4. The Entry Permit, if issued for the purpose of employment, expires automatically upon termination of such employment and must be surrendered to your employer.
5. If the Entry Permit is issued for the purpose of employment, it is unlawful to engage in any other employment than with the employer listed on this permit.
6. You must enter the CNMI within 90 days of issuance of this "Authorization for Entry" letter if you are entering for the purpose of employment.

---
**CNMI DEPARTMENT OF PUBLIC HEALTH NOTIFICATION  OF MANDATORY PHYSICAL HEALTH EXAMINATION**

---

Commonwealth law requires you to get a physical examination and health screening tests. You must report to a CNMI licensed physician at a private clinic for an appointment within ten (10) days of entry in the CNMI. You must bring your Authorization For Entry, Temporary Admission Form, and one (1) passport size photo when you report for your examination.
*FAILURE TO REPORT FOR THIS EXAMINATION IS A VIOLATION OF LAW AND MAY BE GROUNDS FOR EXCLUSION AND OR DEPORTATION.*
Call the Division of Public Health at 664-4822-21, for further information.

# SAIPAN 194116

---

*Department of Labor and Immigration:*
Tel: (670) 664-2000
Fax: (670) 664-3153

| FOR OFFICIAL USE ONLY | |
|---|---|
| Flight No.: | Passport No.: |
| Arrival Date: | Agent: |
| Port of Entry: | *Revised 08.30.2001* |





KSK Doc. # 555

GOVERNMENT OF THE NORTHERN MARIANA ISLANDS
DEPARTMENT OF LABOR AND IMMIGRATION
and DIVISION OF LABOR
SAIPAN, MARIANA ISLANDS 96950

☐ NEW
☐ TRANSFER
  ○ Consensual Transfer No. _____
  ○ Administrative Order No. _____
  ○ Permit Expiration (Expiration Date)_____
☐ PARTICULAR PROJECT No. _____
☒ REPLACEMENT
  LIIDS No. _N-1068_ of NRW being replaced
  (Attach exit clearance of replaced NRW)

Bond No. TIUI# 9002

**NONRESIDENT WORKERS AFFIDAVIT**
**(Application for Labor Certificate and Immigration Entry Permit)**

Print legibly in ink or use typewriter. Use separate sheet if additional space is needed to fully answer questions. Affidavit must be submitted in original and one copy.

NAME: KI (First) SUNG (Middle) KIM (Last)

PERMANENT ADDRESS: (Number, Street, City, State/Province, Country)
272, Banghak-dong, Dobong-ku, Seoul, Korea

EMPLOYER: GOLDEN BIRD Corporation

ADDRESS: P.O. Box 502926 CK, Saipan, MP 96950

TELEPHONE: 235-3335    LOCATION OF BUSINESS: Susupe Village, Saipan

JOB CLASSIFICATION: MANAGER-STORE    BIRTHDATE (Month, Day, Year): 12/26/59    AGE: 42 yrs.

CITIZENSHIP: Korean    SEX: X Male / Female    MARITAL STATUS: Single / X Married    HEIGHT: 5,6"  WEIGHT: 130 lbs.

PASSPORT NO. GJ0255551    ISSUED BY: MFA&T, Korea    DATE ISSUED

DATE EXPIRED: 7/11/05    TYPE OF PASSPORT:

EDUCATION (Certificate or Diploma and official College transcript must be attached to this application for all education listed below)
Highest grade completed:  ☐ Elementary  ☐ High School  ☒ College  ☐ Other

| Name of School Attended | Field of Study | Dates Attended | | Certificate or Diploma Received |
| | | From | To | |
| Gun-kuk University | College | 1977 | 1981 | Diploma |
| | | | | |
| | | | | |

WORK EXPERIENCE (Attached notarized Certification of Employment which must be on company's original stationery or letterhead)
LIST ALL JOBS HELD BY YOU STARTING WITH YOUR MOST RECENT JOBS

Name of Employer: Baskin robbins    Type of Business:

Address: # 2 Store Mok-dong Korea 899-5 Sinjung-dong, Yangchun-ku, Seoul, Korea

Job Title: Manager Store    Dates of Employment: From 1/15/97 To 9/20/01    Work Days: Monday to Saturday    Work Hours: *:00AM to 8:00PM

Describe in detail the duties performed:
Manages retail store engaged in selling pastries and other grocery items or general merchandise. personally or supervising employees performing duties. Plans & prepare work schedule and assign employees to specific duties.

Name of Employer:    Type of Business:

Address:

Job Title:    Dates of Employment: From To    Work Days: to    Work Hours: to

Describe in detail the duties performed:

List Dependents:

| NAME | ADDRESS | AGE | RELATIONSHIP |
| Kim, Dong Soup | same as above | 13 | son |
| Kim, Seo HEE | | 9 | son |
| KIM, SUNG HYUN | KSK Doc. # 557 | | wife |

POLICE RECORD:

Have you ever been convicted of a crime (misdemeanor, felony or crime involving moral turpitude?)

_____ Yes __x__ No   (Attach original copy of police clearance issued by your government or jurisdiction where the crime was committed.)

HEALTH CERTIFICATE:

Do you now have or have you ever had an infection or communicable disease? _____ Yes __x__ No

Have you ever been under medication for any ailment for over a month? _____ Yes __x__ No

If yes, please explain: _____

I have been examined by a physician licensed to practice medicine in my country of origin on __10/6/01__ and a medical certificate is attached to this affidavit. I understand that I am required by Commonwealth law to have the certificate validated on a date not more than 30 days preceding my date of entry into the Commonwealth of the Northern Mariana Islands.

COMMONWEALTH ENTRY AND/OR EMPLOYMENT RECORD:

Have your ever been granted entry and/or a labor identification certificate (work permit) by the Office of Immigration and/or Department of Commerce & Labor of the Commonwealth of the Northern Mariana Islands? __x__ Yes _____ No

If yes, gives dates of entry, entry permit numbers, and date and numbers of all employment permits: _____

706 C

name and address of former employer(s): _____

## APPLICANT'S DECLARATION

I declare that I understand that this Affidavit is submitted for entry and employment only for the position stated herein and only with the employer named herein; and while under contract to that employer I am prohibited by law from working for or being employed by any other employer. I further understand that in keeping with the intent of the Nonresident Workers Act, my duties will include the training of resident workers whenever so directed by employer or the Chief of Labor or Chief of Employment Service of the Department of Commerce and Labor.

I further declare that I understand that a willful misstatement or omission of a material fact on this Affidavit shall be grounds for denial of or revocation of my entry permit and labor certificate or the imposition of civil and/or criminal penalties, or both. I understand that I may appeal a denial of entry permit to the Office of the Attorney General, Saipan, Commonwealth of the Northern Mariana Islands.

I authorize the Department of Commerce & Labor and Office of Immigration or its employees to verify any and all information contained herein or which may otherwise be required in connection with the issuance of the entry permit and labor identification certificate.

I declare under penalty of perjury that the foregoing is true and correct, that I have examined this Affidavit, supplements thereto and accompanying documents and that the information contained therein is true, correct and complete. I further declare under penalty of perjury that I possess the skill and qualifications to perform the job for which I am applying.

Ki Sung Kim
Signature                           Date 10/5/01

Subscribed and sworn to before me by _____ on this __5th__ day of __Oct__

_____ ,19___ at _____
                        City          Country

Subscribed and sworn to before me, a Notary Public, by Kyung Soo Lee this 12th day of October 2001 at Saipan, CNMI.

NOTARY PUBLIC

## RECRUITING AGENCY DECLARATION

I, Kyung Soo Lee                    President              Golden Bird Corp.
      NAME                             TITLE            RECRUITING AGENCY

CNMI Business License No. 808-0003-1   whose address is Susupe Village, Saipan declare under penalty of perjury that I have read the foregoing Affidavit and have examined the supplements and accompanying documents and that the information contained or presented thereon is true, correct, and complete to the best of my knowledge and belief.

My Commission expires on _____

Kyung Soo Lee
Signature                           Date 10/12/01

Subscribed and sworn to before me this __5th__ day of __Oct.__ 2001.

NOTARY PUBLIC

공증인가 법무법인 사랑

[제 42호 서식]

등부 2001 년 3686 호

인    증

위 비거주자근로증서 에
기재된
김 기성 은
본직의 면전에서 위 사서증서에
자기가 서명날인 한 것임을 자인
하였다.

2001 년 10 월 5 일
이 사무소에서 위 인증한다

공증인가 법무법인 사랑
서울특별시 강남구 논현동 242-31

공증담당 번호사

Registered No. 2001 – 3686

NOTARIAL CERTIFICATE

KI SUNG KIM

personally appeared before
me and admitted his(her)
subscription to the
attached

NONRESIDENT WORKERS AFFIDAVIT

This is hereby attested
on this  5 th day of Oct ,
2001    at this office

SARANG LAW & NOTARY OFFICE INC.
242-31 NonHyun-Dong, Kang Nam-Ku,
Seoul, Korea

(Signature of the Notary Public)
CHO SEON HWAN
This office has been authorized
by the minister of Justice, the
Republic of Korea, to act as
Notary Public since