Law Office of G. Anthony Long
P.O. Box 504970, Beach Road
San Jose, Saipan, MP 96950
Telephone: (670) 235-5802
Facsimile: (670) 235-4801

**Attorney for Mrs. Kim Sung Eun, Mr.  Kim Ki Sung
and KSK Corporation, A CNMI Corporation**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE
## NORTHERN MARIANA ISLANDS

| | |
|---|---|
| | **Case No. CV 05-00019** |
| **LI YING HUA, LI ZHENG ZHE, and XU JING JI,** | |
| **Plaintiffs,** | MEMORANDUM OPPOSING SUMMARY JUDGMENT |
| **vs.** | |
| **JUNG JIN CORP., a CNMI corporation, ASIA ENTERPRISES, INC., a CNMI corporation, PARK HWA SUN, KIM HANG KWON, KSK CORPORATION, a CNMI corporation, and KIM KI SUNG,** | Date: July 17, 2008 |
| **Defendants.** | Time: 9:00 a.m. |

## I.      STANDARD FOR SUMMARY JUDGMENT

The party moving for summary judgment bears the burden of showing the absence of any

genuine issue of material fact and entitlement to judgment as a matter of law. *Celotex*

*Corporation v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2348, 2552, 91 L. Ed.2d 265 (1986). If the

plaintiff moves for summary judgment, then the plaintiff must prove the undisputed facts

establish every element of the presented claim. *Id.* Consequently, where the evidence supporting

the summary judgment motion does not conclusively establish the absence of every genuine issue

of material fact, "summary judgment must be denied even if no opposing evidentiary matter is

presented". *Adickes v. Kress,* 398 U.S. 144, 160 n.22, 90 S. Ct. 1598, 1610 n.22 (1970).

If the moving party meets its burden, the non-movant must present probative evidence

showing the existence of a genuine issue of material fact. *T.W. Elec. Serv., Inc. v. Pac. Elec.*

*Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987); *Chung v. World Corporation*, 2005 WL

1459674 at 1 ( D.N.Mar.I. 2005). On those issues for which it bears the burden of proof, the

moving party must make a showing that no reasonable trier of fact could find other than for the

moving party. *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir.1986); *Chung ,* 2005 WL

1459674 at 1. If the moving party does not bear the burden of proof at trial, the initial burden of

showing that no genuine issue of material fact remains may be discharged by demonstrating the

absence of evidence to support the non-moving party's case. *Chung ,* 2005 WL 1459674 at 1. If

the moving party meets its burden, then the responding party must present specific facts showing

that a genuine material issue of fact exists. *Id.* A genuine material issue of fact is one that affects

the outcome of the litigation and requires a trial to resolve the parties' differing version of the

truth. *S. E. C. v. Seaboard Corporation*, 677 F.2d 1289, 1293 (9th Cir. 1982). It is insufficient

for the responding party to point to the mere allegations contained in the pleadings. Instead, it

must submit an affidavit or identify other admissible evidence of specific facts demonstrating

the existence of an actual issue for trial. *Chung,* 2005 WL 1459674 at 1.

Additionally, when deciding a summary judgment motion, all inferences to be drawn

from the underlying facts are viewed in a light most favorable to the non-moving party. *See*

*Balint v. Carson City,* 180 F.3d 1047, 1050 (9th Cir.1999)(en banc). Therefore, given a choice

between multiple inferences, the court must choose those inferences most favorable to the party

opposing the motion for summary judgment. *United States v. Diebold, Inc.,* 369 U.S. 654, 655,

82 S.Ct. 993, 994 (1962).  Moreover, undisputed facts do not always point unerringly to a single,

inevitable conclusion. *See United States  v. California Dept. of Corrections*, 1990 WL 145599 *

3 (E.D.Cal.,1990). Thus, when undisputed facts are capable of supporting conflicting yet

plausible inferences–inferences that are capable of leading a rational fact finder to different

outcomes in a litigated matter depending on which of them the fact finder draws–then the choice

between those inferences is not for the court on summary judgment. *See Sankovich v. Life*

*Insurance  Co. of North America,* 638 F.2d 136, 139 (9th Cir. 1981). In other words, when given a

choice between multiple inferences, the trial court must choose those inferences most favorable

to the party opposing summary judgment.


## II.     SUMMARY JUDGMENT ON THE ISSUE OF SUCCESSOR LIABILITY IS NOT PROPER

The 9th Circuit recognizes that successor liability exists under the FLSA. *Steinbach v.*

*Hubbard*, 51 F.3d 843 (9th Cir. 1995). In doing so, the circuit adopted the same basic standards

used in other employment contexts such as in cases under the national Labor Relations Act

("NLRA") *Id*. Accordingly, *Steinbach* noted that prior to imposition of successor liability it must

be established that 1) the subsequent employer was a bona fide successor 2) the subsequent

employer had notice of the potential liability, 3)  the extent to which the predecessor is able to

provide adequate relief directly and 4) equity and fairness justify imposition of successor

liability. *Id* at 845 - 846.  This criteria precludes entry of summary judgment.


A.    **PLAINTIFFS HAVE NOT SHOWN THAT KSK IS A BONA FIDE SUCCESSOR OR ALTERNATIVELY GENUINE ISSUES OF MATERIAL FACT PRECLUDE SUCH A FINDING**

1.    **THE FACTS DO NOT ESTABLISH BUSINESS CONTINUITY OR ALTERNATIVELY GENUINE ISSUES OF MATERIAL FACT PRECLUDE SUCH A DETERMINATION**

*Steinbach* holds that whether an employer qualifies as a bona fide successor hinges principally on the degree of business continuity between the successor and predecessor. 51 F.3d at 846. However, *Steinbach* mentions, but does not discuss the factors a court must consider in making such a determination for FLSA purposes. *See Id* . To this extent, it is appropriate to look to NLRA cases for guidance on this issue in as much as the successor liability doctrine derives from such cases. *See Id* at 845.

*NLRB v. Jarm Enters., Inc.,* 785 F.2d 195, 200-201 (7th Cir.1986), cited by *Steinbach,* notes that "[t]here is, and can never be, however, a formal definition of a successor. Factors can be identified, as the NLRB has done, but the determination in each case involves the facts and the labor policy at issue." 785 F.2d at 200. *Jarns* further notes that the NLRB has enunciated a non-exhaustive list of the factors relevant in determining successorship which includes consideration of whether "[a] there has been a substantial continuity of the same business operations; [b] the new employer uses the same plant; [c] the same or substantially the same work force is employed; [d] the same jobs exist under the same working conditions; [e] the same supervisors are employed; [f] the same machinery, equipment, and methods of production are used; and [g] the same product is manufactured or the same service [is] offered." *Id. See Sullivan*

*v. Dollar Tree*, 2008 WL 1730079, E.D.Wash. 2008). *Jarns* cautions, however, that a finding that there has been no significant change in the enterprise from an employee perspective does not necessarily translate into the new owner being a successor employer. *See Id* at n. 1.["A new employer, in other words, may be a successor for some purposes and not for others.]. As the 9th Circuit itself has explicitly noted, "[w]e emphasize that the liability of a successor **is not automatic**, but must be determined on a case by case basis." *Bates v. Pacific Maritime Association*, 744 F.2d 705, 709 (9th Cir. 1984). See Steinbach, 51 F.3d at 846 {Emphasis must be placed on the particular facts of each case].

This case is not one in which KSK acquired all of the assets of the prior employer. Here, KSK acquired only certain of the assets relating to two separate businesses, Welcome Poker, Welcome Laundry and Welcome Market. *See* Moving Memorandum at 8 - 9.  KSK changed the name of the businesses to Shanty II. *See* Moving Memorandum at 8 - 9.  Thus, for purposes of successor liability, the court must examine the plaintiffs relationship to the businesses of Welcome Poker, Welcome Laundry and Welcome Market. *See Rego v. ARC Water Treatment Co. of Pennsylvania*, 181 F.3d 396, 402 (3rd Cir. 1999). It is undisputed that plaintiffs Li Zheng Zhe and Xu Jing Ji never worked or performed any services for Welcome Poker, Welcome Laundry or Welcome Market. *See* Moving Memorandum at 7 - 8.  They worked or performed services for a separate and distinct business known as Daora Poker. *See* Moving Memorandum at 7 - 8. Plaintiffs do not establish that Li Ying Hua worked or performed services for  Welcome Poker, Welcome Laundry or Welcome Market. *See* Moving Memorandum at 1 - 9. They cannot make such a showing in light of Li Ying Hua's declaration. See Declaration of Counsel at Exhibit A ¶ 14. It is also noted that plaintiffs have not made any showing that Welcome Poker is

a continuation of Daora Poker. *See* Moving Memorandum at 1 - 15.

Furthermore, plaintiffs can not make the requisite showing that Shanty II poker is a continuation of Welcome Poker or any other business operated by plaintiffs employer.

Although many factors are considered in addressing the issue of a successor employer, a crucial factor considered concerns the same or substantially the same work force.. To this extent, Welcome Poker employed three employees prior to KSK taking possession of the assets and business. Deposition of Kim Ki Sung dated March 9, 2006 ("Kim Deposition") at 55 L. 19 - 56 L. 6. Of the three employees, only one transferred to KSK. *Id*. This is more than a minor reshuffling of employees as it means that two-thirds of Welcome Poker employees were not transferred to KSK. This suggests that Shanty II poker is not a continuation of Welcome Poker or any other business owned by plaintiffs' employer. *See Sullivan*, 2008 WL 1730079 at 6.

Given this facts, KSK is not a successor employer of plaintiffs. Alternatively, these facts establish a genuine issue of material fact as to whether KSK is a continuation of Daora Poker or any other business owned by the original defendants.


2.      **THE FACTS DO NOT ESTABLISH THAT KSK ACQUIRED SUBSTANTIALLY ALL OF THE BUSINESS ASSETS OF PLAINTIFFS EMPLOYER OR ALTERNATIVELY GENUINE ISSUES OF MATERIAL FACT PRECLUDE SUCH A DETERMINATION**

Prior to application of the successor employer doctrine, the alleged successor must first acquire substantially all of the business assets of the plaintiffs employer. *Fall River Dyeing & Finishing Corp. v. N.L.R.B.,* 482 U.S. 27, 43, 107 S.Ct. 2225, 2236 (1987)[ Successor liability determination requires that the Board focus on whether the new company has "acquired

substantial assets" of the predecessor employee.]; *Brzozowski v. Correctional Physician Services, Inc.*, 360 F.3d 173, 175 (3rd Cir. 2004)[Successor liability may be imposed when company acquires substantial portion of insolvent company's assets] *Schilling v. Interim Healthcare of Upper Ohio Valley, Inc.* 2008 WL 2355831 at 3, (S.D.Ohio,2008)[New company must acquire substantial assets of its predecessor]; *Board of Trustees of Sheet Metal Workers Local Union No. 137 Ins., Annuity and Apprenticeship Training Funds v. Silverstein*, 1995 WL 404873 at 3 (S.D.N.Y. 1995)[Court must focus on whether the new company has acquired substantial assets of its predecessor]. *See Musikiwamba v. ESSI, Inc.*, 760 F.2d 740, 745 (7th Cir. 1985)[Recognizing that *Golden State Bottling* applies successor liability when an employer acquires substantial assets of a predecessor].

In this case, plaintiffs do not point to any facts which demonstrate that the assets KSK took possession of were substantially all of the predecessors' assets. At best, plaintiffs seek to rely on statements by defendant Kim that KSK took possession of the Welcome Poker, Welcome Laundry and Welcome Market. *See* Moving Memorandum at 14 citing to Plaintiffs Proposed Findings of Fact ¶¶ 90, 109 - 113 and 116. The record shows, however, that plaintiffs actually seized and sold certain assets. *See* Final Report of Auction Proceedings, Docket Entry No. 165. Moreover, plaintiffs claim that the predecessor "fled" the jurisdiction with assets. Moving Memorandum at 9 ¶ yy.

Plaintiffs make no effort to show or otherwise demonstrate that the assets KSK took possession of constitutes substantially all of the predecessors' assets. For example, the facts how that KSK took possession of 13 poker machines. Kim Depo at Exhibit D. The record discloses that plaintiffs seized at least 37 poker machines plus other "poker related stuff" such as poker

machine parts, computer monitors, chairs, stands, baskets, ash trays and other miscellaneous items which sold for a combined cost of $2,000.00. See Declaration of Counsel at Exhibit B; Final Report of Auction Proceedings, Docket Entry No. 165.   Logic and reason strongly suggests that if 37 poker machines poler machine parts and various other items have a value of $2,000.00, then the 13 poker machines KSK received are insignificant and cannot be deemed to constitute substantially all of the predecessors' assets.

The same rationale exists with respect to the laundry mat and market inasmuch the record reveals plaintiffs seized and sold over 200 separate groupings of items which include two motor vehicles, a 2 year old truck and a 4 year old sedan as well as 3, 627 square meters of real property situated in Susupe, Saipan. *See* Final Report of Auction Proceedings, Docket Entry No. 165; Declaration of Counsel Exhibit C.

Furthermore, when KSK took possession of the "\welcome' assets in January, 2006, the original defendants still had at least two other 2 other poker parlors in operation. Declaration of Counsel at  Exhibit D ¶ 11[ Jung Jin had about 3 poker parlors remaining in operation in early - 2006..."]. This fact also suggests that the assets KSK took possession of were not substantially all or a substantial portion of the assets of the original defendants.

The record reveals that plaintiffs have not established that the assets obtained by KSK constituted substantially all or a substantial portion of the assets of the original defendants. Alternatively, a genuine issue of material facts exists as to whether the assets KSK obtained constitute substantially all or a substantial portion of the of the assets possessed by the original defendants.

**B.    PLAINTIFFS HAVE NOT SHOWN THAT KSK  POSSESSED THE REQUISITE NOTICE FOR IMPOSITION OF SUCCESSOR LIABILITY OR ALTERNATIVELY GENUINE ISSUES OF MATERIAL FACT PRECLUDE SUCH A DETERMINATION**

"The principle reason for the notice requirement is to ensure fairness by guaranteeing that a successor had an opportunity to protect against liability by negotiating a lower price or indemnity clause." *Steinbach*, 51 F.3d at 847. In this case, plaintiffs content, KSK possessed notice as Kim read about the case in the newspaper and others. Kim Depo at 18 p. 7 - 21 L. 8. Also, the original defendants mentioned a labor complaint but insisted that they just "follow what's in the promissory note." Kim Depo at 59 L. 5 - 8[1] t should be noted, however, that within the 9th Circuit, this may not constitute sufficient notice for successor liability under the FLSA.

In *Steinbach*, the alleged successor employer was informed of the pending FLSA suit during negotiations. 51 F.3d at 844. Specifically, the Circuit court noted that:

> During a September meeting, two Care vice presidents were informed of the pending FLSA suit, as well as Hubbard's opinion that it was meritless.

*Id*.  The Ninth Circuit held this notice was insufficient notice for purposes of imposing successor liability. *Id* at 847. The same rationale applies in this case.

Moreover, plaintiffs notice argument is misplaced as they allege notice when KSK sought to protect its interest in the select assets as opposed to when KSK obtained its interest in the select assets. The facts demonstrate that KSK obtained its interest in the select assets on December 1, 2004, as shown by the promissory note executed by Jung Jin Corporation.  Kim Depo at Exhibit D. This was prior to filing or institution of the current lawsuit. Notice of

---

[1]This deposition testimony does not refer to or mention a "swap of assets for the alleged outstanding  debt" as plaintiffs contend in ¶ 115 of their proposed findings of fact and conclusions of law.

plaintiffs FLSA claims at the time KSK sought to enforce the promissory note is insufficient notice for purposes of imposing successor liability. This reasoning is consistent with 9th Circuit jurisprudence as *Steinbach* explicitly holds that the primary function of the notice requirement is to "ensure fairness by guaranteeing that a successor had an opportunity to protect against liability by negotiating a lower price or indemnity clause." *Steinbach*, 51 F.3d at 847. See *Musikiwamba*, 760 F.2d at 750 [Unfair to impose successor liability when the successor did not have the opportunity to protect itself by an indemnification clause in the acquisition agreement or a lower purchase price.] This protection can only be achieved at the time of collateralizing the promissory note which was at the negotiation stage, and not at the time of taking possession of the collateral pursuant to the promissory note.

Plaintiffs have not and can not show that KSK possessed notice of their claims at the time of negotiating or collateralizing the promissory note. Plaintiffs' therefore, have not established that KSK possessed the requisite notice for imposition of successor liability. *See Steinbach*, 51 F.3d at 847. Alternatively, a genuine issue of material fact is presented regarding the sufficiency of the notice for successor liability purposes. *See Id.*


C.    **PLAINTIFFS HAVE NOT SHOWN THAT THEY ARE UNABLE TO COLLECT FROM THE ORIGINAL DEFENDANTS OR ALTERNATIVELY GENUINE ISSUES OF MATERIAL FACT PRECLUDE SUCH A DETERMINATION**

The ability to recover against the predecessor is a factor of significant weight in deciding whether to allow successor liability. *Musikiwamba*, 760 F.2d at 750 - 751. *See also Steinbach*, 51 F.3d at 847 [Purpose of successor liability is "not to provide windfalls" for people who were unable to recover from the predecessor because the predecessor had no means of satisfying the

claim]. Here plaintiffs claim they do not have an "adequate remedy against the Judgment Debtors for collection of the Judgment." Moving Memorandum at 15. In fashioning this argument, plaintiffs do not point to or identify any sufficient or relevant facts which support or justify such a conclusion. Instead, plaintiffs rest their argument on the fact that Kim Hank Kwon and Park Hwa Sun have "fled the country." Moving Memorandum at 15. Plaintiffs do not contend or point to any facts which show that Kim Hank Kwon and Park Hwa Sun do not have any assets. Moreover, the plaintiffs acknowledge that  Kim Hank Kwon and Park Hwa Sun have fled to Korea. Moving Memorandum at 9 ¶ xx.  Plaintiffs do not demonstrate or contend that they are unable to enforce the judgment against them in Korea. Plaintiffs bear the burden of proof on this issue and accordingly are compelled to establish by facts that they are unable to collect from Kim Hank Kwon and Park Hwa Sun. *See  Calderone* 799 F.2d at  259 (6th Cir.1986)[On those issues for which it bears the burden of proof, the moving party must make a showing that no reasonable trier of fact could find other than for the moving party]; *Chung ,*  2005 WL 1459674 at 1[same].

Plaintiffs have failed to satisfy their burden of proof on this factor. Alternatively, a genuine issue of material fact exists as to whether they cannot collect from Kim Hank Kwon and Park Hwa Sun.


D.     **PLAINTIFFS HAVE FAILED TO MEET THEIR BURDEN OF PROOF REGARDING EQUITY AND FAIRNESS OR  GENUINE ISSUES OF MATERIAL FACT PRECLUDE SUCH A DETERMINATION**

Equity and fairness play significant roles in determining whether to impose successor liability. *Steinbach*, 51 F.3d at 846 - 847. Plaintiffs do not address these crucial considerations in their motion. Accordingly, plaintiffs have not satisfied their burden. Alternatively, given the

rationale employed in *Steinbach* concerning distressed or failing companies, 51 F.3d at 846 -

847, equity and fairness in this case do not warrant the imposition of successor liability against

KSK based on its taking possession of certain assets to satisfy a debt owed under the promissory

note executed by Jung Jin Corporation. Alternatively, genuine factual issues exist which preclude

summary judgment.

It is also noted that the facts show that in on or about December, 2005 the original

defendants were advertising the sale of all of their assets in the Saipan Times, a Korean language

newspaper. Declaration of Counsel Exhibit D at ¶ 3. The newspaper advertisement is how KSK

learned of the defendants intention to sale the assets and then it took steps to take possession of

certain assets to satisfy its $100,000.00 loan. Kim Depo at 57 L. 18 - 59 L. 12. If KSK taking

possession of the assets was a fraudulent conveyance as plaintiffs claim, then there would not

have been a newspaper advertisement as such a step would have been unnecessary.


**III.    KSK WAS NOT A PARTICIPANT IN ANY FRAUDULENT TRANSFER OR
         ALTERNATIVELY GENUINE ISSUES OF MATERIAL FACT PRECLUDE
         SUMMARY JUDGMENT ON THE QUESTION**

Plaintiffs rely on *Sullivan v. Tarope*, Civil Action No. 98-1293D, Order (CNMI Super.

Cot. March 19, 2003) for the factors governing fraudulent conveyance. *See* Moving

Memorandum at 22 - 23. A review of the 8 identified factors in light of the facts of this case

establish that KSK was not a party to a fraudulent conveyance or alternatively genuine issues of

material fact exist on the matter.

The facts of this case demonstrate that the assets KSK received were in consideration for

a $100,000.00 loan, Kim Depo at Exhibit E, the conveyance was not of the debtors entire estate,

See Declaration of Counsel Exhibits B and C; Final Report of Auction Proceedings, Docket

Entry No. 165,   the conveyance did not diminish the debtor's entire estate, *Id*, the conveyance

was not secret or concealed, Kim Depo Exhibit D, the conveyance was not made to a family

member or to one with a close relationship, Kim Depo at 3 - 75, KSK did not take the property in

trust for the original defendants, Kim depo at L. 57 L. 18 - 59 L. 12, and the original defendants

did not remain in possession of the property, reserve the property for its use and benefit and deal

with the property as its own, *Id*.  These facts show that the transaction does not come within the

purview of a fraudulent conveyance in accordance with the

*Tarope* factors.

      Moreover, the lack of fraudulent intent is seen in that defendant Kim Ki Sung is the

person that purchased the real estate plaintiffs seized from the original defendants. Kim paid

$48,000.00 for the real property. If a fraudulent intent existed then reason and logic dictate that

KSK would have taken possession of the real property also to satisfy the $100,000.00 loan.

      The crux of plaintiffs assertion that the assets KSK obtained were a fraudulent

conveyance rests on the premise that plaintiffs do not believe KSK loaned $100,000 as Kim

testified and that, according to plaintiffs,  Kim lack credibility or believability. These basis are

issues for the trier of fact to resolve and are not properly considered on summary judgment.

*Kreisner v. San Diego*, 988 F.2d 883, 900 n. 1["Determinations of credibility are inappropriate

for summary judgment."], amended by 1 F.3d 775 (9th Cir.1993); *SEC v. Koracorp Industries,

Inc.*, 575 F.2d 692, 699 (9th Cir.1978) ["[S]ummary judgment is singularly inappropriate when

credibility is at issue."]. For sure, "the Supreme Court has warned that at summary judgment",

determinations of credibility determinations, the weighing of the evidence, and the drawing of

legitimate inferences from the facts are functions for the trier of fact and not those of a judge on summary judgment. *Berry v. Baca*, 379 F.3d 764, 771 (9th Cir. 2004) citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

III.    **KIM IS NOT THE ALTER EGO OF KSK OR ALTERNATIVELY GENUINE ISSUES OF MATERIAL FACT PRECLUDE SUMMARY JUDGMENT ON THE QUESTION**

Plaintiffs recognize that the criteria for establishing the alter ego theory is set forth by . *United Enterprises, Inc. v. King,* 4 N.M.I. 304, 307, 1995 WL 1943000 (N.M.I. 2005).

Plaintiffs bear the burden of proof on this issue. The facts plaintiffs rely upon to show 'alter ego' are essentially that the wife is a mere front for the husband controlling the corporation. *See* Moving Memorandum at 16 - 18. Such facts are insufficient under *United Enterprises* to establish that Kim and KSK are alter egos. *United Enterprises*, 4 N.M.I. at 307 - 308. Alternatively, a genuine issue of material fact exists regarding the question. In any event, plaintiffs are judicially estopped from seeking to collect any sum from Kim.

The doctrine of judicial estoppel, sometimes referred to as the doctrine of preclusion of inconsistent positions, precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position. *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir.1990), cert. denied, 501 U.S. 1260, 111 S.Ct. 2915, 115 L.Ed.2d 1078 (1991). "Judicial estoppel is most commonly applied to bar a party from making a factual assertion in a legal proceeding which directly contradicts an earlier assertion made in the same proceeding." *Id*. A judicial admission has also been referred to as a deliberate, clear, unequivocal statement of a party about a fact within that party's peculiar knowledge. *Greenwell v. Boatwright*,

184 F.3d 490, 498 (6th Cir.1999). To this extent, statements made by an attorney can be a

binding judicial admission. *Jadael Inc. v. Elliott*, 2007 WL 2480387 at 11 (M.D.Fla.2007);

*Halifax Paving, Inc. v. U.S. Fire Insurance Co.*, 481 F.Supp.2d 1331, 1336 (M.D.Fla. 2007).

  Here, during Kim's deposition, plaintiffs unequivocally told him that they "'aren't

making any claims that you owe them wages. They don't have any claims against you that you

owe them any money; do you understand?" Kim Depo at 18 L. 19 - 20. Kim then asked for

clarification on that point. *Id* at L. 21. Plaintiffs then reiterated that "they are trying to get the

money from Mr. Kim , Miss Park and their businesses, **not from you**." Id at 18 L. 22 - 19 L.

1(emphasis added). The representations plaintiffs made to Kim at the deposition constitute

judicial admissions that they are not pursing any recovery from Kim. Accordingly, plaintiffs are

estopped from seeking to obtain any recovery from Kim. *Russells*, 893 F.2d at 1037.


### CONCLUSION

  Plaintiffs are not entitled to summary judgment[2].


    Law Office of G. Anthony Long


    By:_____/s/_____
      G. Anthony Long

---

  [2]It appears that plaintiffs only moved for summary judgment on the issue of liability and not damages as there is not any proof as to the amounts sought to be recovered from KSK, Kim Ki Sung or Kim Sung Dun. Also, it appears that plaintiffs are not seeking summary judgment against Kim Sung Eun.