MARK B. HANSON, ESQ.
Second Floor, Macaranas Building
Beach Road, Garapan
PMB 738 P.O. Box 10,000
Saipan, Mariana Islands 96950
Telephone:  (670) 233-8600
Facsimile:   (670) 233-5262
E-mail:       mark@saipanlaw.com

Attorney for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS

| | |
|---|---|
| LI YING HUA, LI ZHENG ZHE and XU JING JI, ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> JUNG JIN CORPORATION, a CNMI corporation, ) <br> ASIA ENTERPRISES, INC., a CNMI corporation, ) <br> PARK HWA SUN and KIM HANG KWON, ) <br> KSK CORPORATION, a CNMI corporation, and ) <br> KIM KI SUNG, ) <br> ) <br> Defendants. ) <br> ) | CASE NO. CV 05-0019 <br><br> PLAINTIFFS' REPLY MEMORANDUM RE: MOTION FOR SUMMARY JUDGMENT AGAINST KSK CORP. AND KIM KI SUNG <br><br> Date:  Thursday, July 17, 2008 <br> Time:  8:30 a.m. <br> Judge: Hon. Alex R. Munson, Chief Judge |

Plaintiffs, by and through their undersigned attorney of record, hereby file this Reply Memorandum in response to the Opposition of Defendants KSK Corporation and Kim Ki Sung (collectively "KSK" herein unless otherwise noted) to Plaintiffs' Motion for Summary Judgment on their claims against those Defendants.[1]  As discussed below, Defendants have failed to show that there is any genuine issue of material fact for which their needs to be a bench trial in this matter. Defendants have also failed to rebut that Plaintiffs are, as a matter of law, entitled to the relief against Defendants they seek.  Accordingly, summary judgment against KSK Corporation its alter

---

[1] It should be noted that Kim Sung Eun is not a party to this action.

ego Kim Ki Sung should be granted.

A.  KSK AND KIM FALL FAR SHORT OF THEIR BURDEN ON A MOTION FOR SUMMARY JUDGMENT.

> The summary-judgment procedure authorized by Rule 56 is a method for promptly disposing of actions in which there is no genuine issue as to any material fact or in which only a question of law is involved. Thus, parties need not wait until a case is fully tried but may seek a final adjudication of the action by a motion under Rule 56. In this way, dilatory tactics resulting from the assertion of unfounded claims or the interposition of specious denials or sham defenses can be defeated, parties may be accorded expeditious justice, and some of the pressure on court dockets may be alleviated.

10A C. WRIGHT & A. MILLER, FEDERAL PRACTICE & PROCEDURE § 2712 (Purpose, Scope and Construction of Rule 56). *See also Meiri v. Dacon*, 759 F.2d 989, 998 (2nd Cir. 1985) (salutary purpose of summary judgment is to avoid protracted, expensive and harassing trials).

As explained by the Supreme Court in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) a dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. 2505.

The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Nelson v. Pima Community College*, 83 F.3d 1075, 1081-82 (9th Cir.1996) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment"); *Thornhill Pub. Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir.1979).

Here, KSK has provided the Court with a "Statement of Disputed Facts." See Doc. # 226. Nowhere in KSK's Statement of Disputed Facts, however, does KSK cite to any portion of the record

in this case (a substantial evidentiary record has been provided by Plaintiffs), nor does KSK provide any relevant evidence to support its conclusory assertions regarding "disputed facts" or explain why certain alleged facts are "material." Indeed, a review of KSK's conclusory assertions reveals that many of the "facts" cited by KSK are either not disputed by Plaintiffs, are not material to Plaintiffs claims, are not really facts at all, but ultimate legal questions.[2]

Indeed, KSK's allegedly disputed "facts" in large part are really only unfounded "conclusions" based on facts not identified by KSK in its opposition. For example, KSK's proposed disputed fact number 1 is "[w]hether KSK is a successor employer for any of the plaintiffs." To answer that *legal* question, the Court must look at the facts in evidence in this matter and apply the law of FLSA successor liability as espoused in *Steinbach v. Hubbard*, 51 F.3d 843 (9th Cir. 1995). KSK's fact number 1 is not a fact at all; it is a disputed legal contention. *See also* Statement of Disputed Facts Number 8 ("Whether KSK taking possession of the Welcome assets constitutes a fraudulent conveyance?").

A review of the rest of KSK's purported "disputed material facts" militates the same conclusion. At most, KSK proffers the initial question as to what the facts may or may not reveal — statements of issues more appropriate in a case management conference statement than in response to a motion for summary judgment. Plaintiffs, on the other hand, have introduced substantial admissible evidence to support their claims — evidence to answer the many questions posed by KSK's Statement of Disputed Material Facts.

In the face of the substantial evidence to support the contentions and conclusions advanced

---

[2] For example, KSK alleges that a disputed material fact is whether any of the plaintiffs performed services for Welcome Poker or Welcome Laundry. *See* Statement of Disputed Facts, ¶ 3. Notwithstanding that Li Zheng Zhe's uncontested testimony is that he did perform services for Welcome Laundry, such facts are not determinative of Plaintiffs' claims. All three plaintiffs worked for the enterprise that ran the establishments. That is the relevant and material fact that cannot be disputed.

by Plaintiffs in their moving papers, it is not enough for KSK to suggest that it disagrees with the contentions and conclusions; KSK has the obligation to point to specific evidence the creates a genuine dispute of material fact. *See, e.g.*, *Aprin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001) (non-movant's conclusory allegations unsupported by factual data was insufficient to defeat motion for summary judgment).

Indeed, one would question what new facts would come from a trial when there have already been two depositions of Kim Ki Sung, one of Kim Sung Eun, one each of the Plaintiffs and several other depositions, all of which are in the record. What evidence would KSK contest at trial? What new development of facts could KSK expect to present at trial? Why did KSK not contest evidence or present the new evidence in opposition to the present motion for summary judgment?

In this regard, KSK has utterly failed to create a genuine dispute as to the facts. To allow such factually unsubstantiated, conclusory allegations to prevail over a well supported motion for summary judgment will lead to needless, protracted litigation over facts about which there are not nor can there be any dispute.

C. THE LEGAL CONCLUSION TO BE DRAWN FROM THE UNDISPUTED FACTS IS THAT KSK AND KIM ARE SUCCESSORS TO THE LIABILITY OF THE JUDGMENT DEBTORS.

*1. KSK is a Bona Fide Successor of the Judgment Debtor enterprise.*

First, to be clear, the Judgment Debtors have been adjudged one enterprise. *See* first Proposed Findings of Uncontroverted Fact, ¶¶ 10, 106-118, Doc. # 76; Order Granting Plaintiffs' Motion for Summary Judgment, August 14, 2006, Doc. # 87. That Welcome Poker and Welcome Laundry were wholly owned business establishments of that enterprise and that KSK purchased and is in possession of those business establishments is not disputed. Whether Plaintiffs performed services for those particular business establishments is irrelevant to this Court's inquiry; Plaintiffs were employees of the enterprise that was the Judgment Debtors.' *Id.*, ¶¶ 17-39 (Li Ying Hua); 40-62 (Xu Jing Ji); and

63-85 (Li Zheng Zhe).

Plaintiffs obtained a judgment under the Fair Labor Standards Act against the Judgment Debtors. Judgment, August 24, 2006, Doc. # 93. The Judgment Debtors transferred substantially all of their business assets (the Welcome establishments *in toto*) to KSK which left Judgment Debtors insolvent. PFF ¶¶ 86-93, 94-100; 126-136. Those are the facts. The law applied to those facts requires a finding that KSK is *bona fide* successor within the meaning of *Steinbach v. Hubbard*, 51 F.3d 843, 846-847 (9th Cir. 1995).

On the facts of this case, the authority cited by KSK is inapposite: *Sullivan v. Dollar Tree*, 2008 WL 1730079 at * 1 (alleged successor defendant had only purchased lease of bankrupt, but all other assets were purchased by others); *NLRB v. Jarm Enters., Inc.*, 785 F.2d 195, 197 (7th Cir. 1986) (finding of "successor employer" upheld); *Bates v. Pacific Maritime Assoc.*, 744 F.2d 705, 709 (successor employer upheld finding: "In the context of NLRA obligations, successor employers may be required to remedy their predecessor's unfair labor practices on a broad scale. [citation omitted]").

Further, the case of *Rego v. ARC Water Treatment Co. of Pennsylvania*, 181 F.3d 396, 402-403 (3rd Cir. 1999) actually highlights the situation where an employee is left without recourse:

> This case does not involve the usual situation in which a predecessor employer transfers its assets to a single successor. In that circumstance, fairness may require that the successor be liable for its predecessor's discriminatory acts, for otherwise the injured employee may be left without a party against whom the employee may assert his claim.

In *Rego*, determinative factors were: (1) the employee continued to work for the business that took over half of the assets of the company, and (2) the employee had not filed a case before the assets of the company were split and sold off. *See* 181 F.3d at 403.

The analysis performed in successor liability cases can be done in here based on the uncontroverted facts of this case. A trial does not need to be held to apply the legal concepts of

successor liability.

It is also a factual error for KSK to suggest that KSK did not obtain substantial assets of Judgment Debtors. *See* Opposition at 6-8. In its opposition, KSK suggests that it didn't obtain "substantially all of the assets" of Judgment Debtors and therefore cannot be considered a successor, but it cites to four cases that cite the standard as "substantial assets." *Id.*

First, Plaintiffs would note that it was they that have claimed that KSK is in receipt of "substantial all of the operating assets of the Judgment Debtors" which comports with the facts of this case. Further, Plaintiffs have provided admissible evidence of all of the facts relevant to a determination of the substantial assets that were transferred to KSK, and minimal business and non-business assets that remained with Judgment Debtors in Commonwealth. PFF ¶¶ 86-93, 94-100; 126-136.

Again, there is no dispute as to the facts in evidence, only as to the conclusions to be drawn from those facts. Plaintiffs respectfully suggest that the facts demonstrate that, as a matter of law, KSK is the successor to the business of the Judgment Debtors.

*2. KSK had Notice of Plaintiffs' Claims of the Judgment Debtors Prior to Its Acquisition of Judgment Debtors Businesses.*

In its moving papers, Plaintiffs pointed to all of the facts that showed that Kim Ki Sung knew about Plaintiffs lawsuit (PFF ¶ 85) and even knew about the Judgment Debtors advertised fire sale (PFF ¶¶ 86-89). Interestingly, though Kim Ki Sung submitted a declaration with KSK's opposition to Plaintiffs' motion for summary judgment, he did not take the opportunity to introduce facts that would suggest that Kim Ki Sung did not have the requisite knowledge for him, or his company KSK for whom he is the "general manager," to be held liable as a successor. It is also worth mention that, as Kim Ki Sung recognizes in his opposition, two of the Plaintiffs worked for Daora Poker prior to their termination and lawsuit — Daora Poker being a partnership between Judgment Debtors and

1  Kim Ki Sung further bolstering Kim Ki Sung's knowledge of the underlying facts of Plaintiffs' claims.

2  Further, without citation to any authority, KSK argues that its interest in the Judgment
3  Debtors' assets arose prior to its notice of Plaintiffs' claims. *See* Opposition at 9-10. It appears that
4  KSK is arguing that the document they are calling the promissory note (Exhibit D to the March 9,
5  2006 Deposition of Kim Ki Sung, Doc. # 70) somehow created a security interest in the Judgment
6  Debtors' property. Again, this is not a factual dispute; it is a legal question.[3]

7  In any case, given the facts before the Court, particularly the substantial evidence in the
8  record that there was no perfected security interest in any of the Judgment Debtors assets, KSK's
9  misplaced argument has no import here.

10  Here, knowledge of Plaintiffs' case prior to the transfer of assets to KSK not, as argued, prior
11  to promissory note, is the relevant knowledge. It is not disputed that Kim Ki Sung knew of the claims
12  and simply chose not to believe Plaintiffs or look any further into the matter.

14  *3. Judgment Debtors are Unable to Provide Adequate Relief Directly.*

15  Again, KSK interposes conclusions rather than contradictory facts in its attempts to avoid
16  summary judgment. However, KSK has again failed to meet its burden in responding to this motion
17  and the facts presented by Plaintiffs. In its moving papers, Plaintiffs detailed its extensive collection
18  efforts. PFF ¶¶ 94-100. Plaintiffs identified the amounts still left to collect. *Id*. KSK has neither
19  challenged that evidence not has KSK proffered evidence that does in any way suggest that the
20  Judgment Debtors are, indeed, able to provide adequate relief directly.

21  No new facts will come out at the trial in this matter. If there were going to come from KSK

---

24  [3] There is also the *legal* question as to the effect, if any, of a security interest on successor
25  liability that KSK does not even offer to resolve. *But see Stoumbos v. Kilimnik*, 988 F.2d 949, 961-62
(9th Cir. 1993) (reversing on the issue of successor liability in commercial context holding that a
26  secured creditor can be considered a successor).

and Kim Ki Sung, they could have and should have come in response to this Motion. The question before the Court is a question of law, not a question of facts. Plaintiffs' respectfully suggest that the answer is that Plaintiffs, as a matter of law, have no adequate relief remaining against the Judgment Debtors directly.

   *4. Equity and Fairness.*

KSK knew of the claims of Plaintiffs. *See* sub-section 2, above. Just because it chose not to believe in the efficacy of the claims does not make successor liability in the face of the probability unfair or inequitable. Indeed, KSK was aware that the Judgment Debtors were trying to fire sell all of their assets. *Id*. It does not comport with the facts to say that imposing liability on KSK for the known liabilities of the Judgment Debtors is somehow unfair or inequitable. KSK was in the best position to determine its exposure to liability. *See, e.g., Musikiwamba v. ESSI, Inc.*, 760 F.2d 740, 752 (7th Cir. 1985) (transferee has duty to enquire into the extent of potential liabilities).

Plaintiffs, on the other hand, have been substantially prejudiced by the concerted actions of the Judgment Debtors and KSK in removing from Plaintiffs' reach substantially all of the Judgment Debtors business assets — assets that are still making money for KSK while the Judgment Debtors have indisputably fled to Korea. PFF ¶¶ 94-100.

In sum, Plaintiffs have introduced admissible, undisputed evidence of the facts necessary to prove by a preponderance of the evidence the elements of KSK's successor liability in this case, both under the FLSA successor concepts and in commercial successor liability, generally. KSK has not met its burden of showing that there is any dispute as to any issue of material fact or that Plaintiff is not entitled to a judgment as a matter of law. Accordingly, the Court should grant Plaintiffs' summary judgment on its successor liability claims.

D.  ANOTHER LEGAL CONCLUSION TO BE DRAWN FROM THE UNDISPUTED FACTS IS THAT KSK AND KIM ARE IN POSSESSION OF FRAUDULENTLY TRANSFERRED ASSETS.

In its Opposition, KSK argues that it is a question of fact whether KSK is in receipt of fraudulently transferred assets. KSK argues that Plaintiffs' argument is one involving the credibility of Kim Ki Sung and is, therefore, inappropriate for consideration on a motion for summary judgment. KSK has either refused to acknowledge the law or has grossly misread it.

As detailed at length in its Memorandum in Support of Summary Judgment, the common law of fraudulent conveyances is the law applicable in the Commonwealth. *See* Memorandum in Support at 19-23. At common law, once upon the presentation of "badges of fraud," the factual burden shifts to the transferee of the subject property to substantiate by "significantly clear" evidence the legitimacy of the transaction. *Acequia, Inc. v. Clinton*, 34 F.3d 800, 806 (9th Cir. 1994).

Here, again, Plaintiffs have provided a mountain of evidence in their moving papers as to the myriad badges of fraud present in this case. *See* Memorandum in Support at 25-31. Legally (not factually) the burden has shifted to KSK to come forward with significantly clear evidence (facts) of the legitimacy of KSK's transactions with the Judgment Debtors. KSK, however, has failed to provide any evidence whatsoever, much less the level of proof needed to overcome its burden at common law that KSK's dealings with the Judgment Debtors were not fraudulent.

Here, because KSK has failed to meet its burden, the Court can rule as an alternative to successor liability that KSK is in receipt of fraudulently transferred assets of Judgment Debtors and void the transaction, returning the assets to the Judgment Debtors and within the reach of Plaintiffs' collection efforts.[4]

---

[4] In making this argument, it is not Plaintiffs' intent to undermine their position that KSK is the successor to the liability of the Judgment Debtors. The fraudulent conveyance claim is an alternative to finding KSK (and Kim Ki Sung as its alter ego) primarily liable for the Judgment in favor of Plaintiffs.

E.   ANOTHER LEGAL CONCLUSION TO BE DRAWN FROM THE UNDISPUTED FACTS IS THAT KIM KI SUNG IS, INDEED, THE ALTER EGO OF KSK CORPORATION.

In its opposition, KSK offers nothing to refute, factually, the strong and substantial facts presented by Plaintiffs — Kim Ki Sung's own words among them — that necessitate a finding that Kim Ki Sung is the alter ego of KSK Corporation.  Indeed, KSK appears to rest its entire argument in opposition on the misplaced application of the equitable doctrine of judicial estoppel.

KSK correctly cites that this equitable doctrine can be applied by a court where a party makes "a factual assertion in a legal proceeding which directly contradicts an earlier assertion made in the same proceeding or a prior one."  *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990).  What KSK fails to provide the Court, whether by oversight or otherwise, are *the facts* — most importantly, dates.

Kim Ki Sung was deposed twice in this case.  The first time he was deposed, Kim Ki Sung appeared as a third party in response to a third party subpoena for his *wife* to appear for a deposition.  He was not a party to the action.  That was March 9, 2006 — a year and half before Plaintiffs' Second Amended Verified Complaint was filed and an alter ego claim was brought against Kim Ki Sung for which Plaintiffs now seek summary judgment.

In that deposition, to make it clear that Kim Ki Sung was not a party to the litigation, the undersigned told him that Plaintiffs were not then brining any claims against him — they didn't yet know that facts that eventually led them to the alter ego claim.

Contrary to KSK's suggestion in its opposition, it is factually true that in March 2006, Plaintiffs were not advancing claims for unpaid wages against Kim Ki Sung.  Once Plaintiffs found out that Kim Ki Sung and "his" company KSK were the benefactors of substantial assets of the Judgment Debtors and that the Judgment Debtors left very little from which to collect the eventual judgment Plaintiffs would obtain, Plaintiffs did then advance claims against Kim Ki Sung and his company KSK.  There is nothing at all inconsistent between the past assertion that Plaintiffs were not, at that time, advancing claims against Kim Ki Sung, and the fact that they are now because Plaintiffs' understanding of Kim Ki Sung's role in the case changed.

In any case, KSK has failed to cite to any case that prohibited an injured party from bringing legitimate claims against responsible parties after it was discovered that the responsible parties were legally liable. KSK certainly has not provided any authority that when a mountain of facts (mostly by admissions from the party himself) lead to the singular conclusion that this person does not separate himself — indeed, refuses to separate himself — from the identity of a corporate entity, that any prior questioning would provide that party with a shield to assets that are, no doubt, indistinguishable in ownership or, as is the case here, clearly acquisitions of the corporate entity and not the individual "general manager."

Importantly for this case in particular, and also tellingly on the issue of the alter ego claim, a substantial amount of the assets purchased or paid for with KSK funds are currently in the personal name of Kim Ki Sung, including, most recently, a change of the leases underlying Welcome Poker and Welcome Laundry from KSK to Kim Ki Sung, personally. PFF ¶ 61. Indeed, this changed happened while this lawsuit against KSK and Kim Ki Sung was pending *Id*.

Kim Ki Sung has done nothing to refute, factually, that he has not commingled his assets with those of KSK; Plaintiffs have identified substantial evidence that he has as well as other evidence of the indistinguishable relationship between Kim Ki Sung and his KSK. PFF ¶¶ 39-61. As a matter of law based on the undisputed facts of this case, Kim Ki Sung is, indeed, the alter ego of KSK Corporation and can and should be held jointly and severally liable for any liability KSK has to Plaintiffs.

F.   KSK AND KIM DO NOT APPEAR TO CONTEST PLAINTIFFS' RIGHT TO ATTORNEY'S FEES.

KSK does not address Plaintiffs' claim for statutory attorney's fees in these proceedings. As stated in its moving papers, Plaintiffs are entitled to section 216(b) of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*. *See* Memorandum in Support at 16.

G. CONCLUSION

Despite the myriad of undisputed facts presented to the Court by Plaintiffs to support their claims, the underlying facts of this matter are relatively simply and inescapable. The Judgment Debtors owed Plaintiffs a substantial amount of unpaid wages and other damages under the federal Fair Labor Standards Act. Instead of paying Plaintiffs, the Judgment Debtors transferred a substantial amount of their assets — indeed almost all of their operating businesses — to KSK and Kim Ki Sung and fled the country. The Judgment Debtors effectively sold a majority of their assets to KSK and Kim Ki Sung and absconded. This sale has effectively undermined the collection of Plaintiffs' statutory damage claims, enriching both the Judgment Debtors and KSK/Kim to the detriment of Plaintiffs.

The Fair Labor Standards Act and the laws applying the Act, including the concept of FLSA successor liability, militate that courts protect workers such as Plaintiffs from such opportunistic transactions that serve only to divert assets of obligors and change the relative positions of the parties solely to avoid federal statutory obligations.

Here, the burden was on KSK and Kim Ki Sung to bring forth facts to contradict the undisputed facts presented by Plaintiffs. KSK and Kim Ki Sung did no more than interject various assumptions and conclusions — they did *not* interject any contradictory facts. Indeed, it is difficult to imagine what new facts will come about at a trial in this matter that have not already been presented or could not have been presented in this motion.

Accordingly, given the undisputed facts of this case viewed in the light most favorable to KSK and Kim Ki Sung, Plaintiffs are entitled to judgment as a matter of law as to the successor liability of KSK and Kim Ki Sung, its alter ego, on their claims for successor liability and for fraudulent conveyance.

Respectfully submitted this 10th day of July, 2008.

/s/ Mark B. Hanson
MARK B. HANSON

Second Floor, Macaranas Building
Beach Road, Garapan
PMB 738 P.O. Box 10,000
Saipan, Mariana Islands 96950
Telephone:   (670) 233-8600
Facsimile:   (670) 233-5262
E-mail:   mark@saipanlaw.com

Attorney for Plaintiffs

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing will be deposited in the United States Post Office, first class mail, postage prepaid, addressed to the following:

| | |
|---|---|
| Jung Jin Corporation<br>P.O. Box 503428<br>Saipan, MP 96950<br>(670) 235-4321 | Park Hwa Sun<br>P.O. Box 503428<br>Saipan, MP 96950<br>(670) 235-4321 |
| Asia Enterprises Inc.<br>P.O. Box 503448<br>Saipan, MP 96950<br>(670) 235-4321 | Kim Hang Kwon<br>P.O. Box 503448<br>Saipan, MP 96950<br>(670) 235-4321 |

I further certify that the following were served with a copy of the foregoing via the Court's electronic case filing system:

G. Anthony Long, Esq.
LAW OFFICE OF G. ANTHONY LONG
P.O. Box 504970
Saipan, Mariana Islands 96950
E-mail:     gal@nmilaw.com

DATED: July 10, 2008                    /s/ Mark B. Hanson
_____                   _____
                                        MARK B. HANSON